11754220v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

CIVIL ACTION NO. 2:18-CV-00722-RCM
Consolidated

          Plaintiffs/Counterclaim
          Defendants,

The Honorable Robert C. Mitchell

          v.

PENNSYLVANIA SKILL GAMES, LLC,

          Defendant/Counterclaim
          Plaintiff.

## MOTION FOR ORDER DIRECTING THIRD PARTY WITNESS TO COMPLY WITH SUBPOENA, OR ALTERNATIVELY, FOR CONTEMPT

NOW COME Plaintiffs/Counterclaim Defendants POM of Pennsylvania, LLC, t/d/b/a

Pace-O-Matic, and Savvy Dog Systems, LLC (collectively, hereinafter referred to as "Plaintiffs"

or "Counterclaim Defendants"), by and through their undersigned counsel and moves this

Honorable Court as follows:

1.      On April 16, 2019, Plaintiffs issued and properly served a subpoena on the

American Italian Club to produce documents and attend and testify. A true and correct copy of

the subopoena, proof of service, and witness fees are collectively attached hereto as Exhibit 1.

2.      Plaintiffs provided advance notice of the subpoena to opposing counsel and

obtained counsel's consent to issue the Subpoena attached as Exhibit 1.

3.      The American Italian Club did not appear at the appointed place and time for the

aforementioned document production and testimony despite being properly served with a valid

subpoena.

11754220v1

4.     The anticipated testimony and production from the American Italian Club is reasonable, relevant, and necessary to assist in resolving material issues in this matter related to the underlying trademark dispute.

5.     It is requested that this Honorable Court enter an order directing the American Italian Club to appear at a deposition to be scheduled by a subsequent subpoena to be issued by Plaintiffs.

6.     Alternatively, if this Court deems it to be necessary, Plaintiffs request an Order holding the American Italian Club in contempt of court for failing to respond to Exhibit 1 without reasonable excuse.

WHEREFORE, Plaintiffs/Counterclaim Defendants POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic and Savvy Dog Systems, LLC respectfully request that this Honorable Court enter the attached Order.

Respectfully submitted,

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306

    T:  412-325-1116
    F:  412-325-3324
    E:  jneiser@spilmanlaw.com

    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219

    **Attorneys for Plaintiffs/Counterclaim Defendants POM of Pennsylvania, LLC, t/d/b/a Pace-O-Matic, and Savvy Dog Systems, LLC**

2

# Exhibit "1"

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:18-CV-722 Consolidated

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  American Italian Club

on *(date)*       04/14/2019       .

    ☑ I served the subpoena by delivering a copy to the named individual as follows:  hand delivery to the

 on shift bartender, Jane Doe, of whom stated she was authorized to accept service on behalf of the herein

 named business entity at 7:10 p.m.                                    on *(date)*      04/16/2019     ; or

    ☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

    $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date:       04/17/2019                    _Doyla Tyb_____
                                                          *Server's signature*

                                          Douglas Taylor, Process Server
                                          _____
                                                  *Printed name and title*
                                                  PA Virtual Services, LLC
                                                  9 Christine Drive
                                                  Cheswick, Pa 15024

                                          _____
                                                      *Server's address*

Additional information regarding attempted service, etc.:

PHYSICAL DESCRIPTION: White female, apprx. 40 years old, 5'6, 160 lbs with black/red hair, wearing glasses.

INTERNAL FILE NO. 19-1360

1697

**SPILMAN THOMAS & BATTLE, PLLC**
OPERATING ACCOUNT
1 OXFORD CENTRE SUITE 3440
301 GRANT ST.
PITTSBURGH, PA 15219

PNC Bank, N.A.
Pittsburgh, PA

8-9/430

4/8/2019

PAY TO THE
ORDER OF    American Italian Club

$  **55.90

Fifty-Five and 90/100**********************************************************************************************************    DOLLARS

American Italian Club
1928 Irwin St.
Aliquippa, PA  15001

MEMO

025093.0001 Witness Fee/Mileage

AUTHORIZED SIGNATURE

⑈001697⑈

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Pennsylvania

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, et al., | ) |
| *Plaintiff* | ) |
| v. | ) |
| PENNSYLVANIA SKILL GAMES, LLC | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.    2:18-CV-722 Consolidated

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        American Italian Club, 1928 Irwin Street, Aliquippa, Beaver County, Pennsylvania 15001

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

Please see the Attachment A.

| Place:  Spilman Thomas & Battle PLLC<br>One Oxford Centre, Suite 3440, 301 Grant Street<br>Pittsburgh, PA  15219 | Date and Time:<br>04/22/2019 9:00 am |
|---|---|

The deposition will be recorded by this method:    via Court Reporter

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Please see the Attachment B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        04/15/2019

CLERK OF COURT

OR

/s/ Julian E. Neiser

_____            _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, et al.,                    , who issues or requests this subpoena, are:

Julian E. Neiser, Esquire, Spilman Thomas & Battle, PLLC, One Oxford Centre, Suite 3440, 301 Grant Street, Pittsburgh, Pennsylvania 15219; jneiser@spilmanlaw.com; (412) 325-1116

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Attachment A

1. The use of the trademark PENNSYLVANIA SKILL in your place of business.

2. All business dealings with Albert Unis, III, Albert Unis IV, Pennsylvania Skill Games and Pennsylvania Skill Games LLC.

3. The placement of an electronic gaming machine in the American Italian Club in or about November 2013.

4. Any related follow up questions to the above areas of inquiry.

5. All discussions, negotiations, or other business dealings related to the document attached to this subpoena, which purports to be a contract dated February 1, 2010.

AGREEMENT


THIS AGREEMENT entered at _American Italian Club, Aliquippa PA_ hereinafter,

the "Location," on this __1ˢᵗ__ day of _Feb_____, 20_10_, by and between Pennsylvania

Skill Games, hereinafter, PA Skill Games" and/or "Operator" and ___Domenic_____

_Santia_____, hereinafter, the "Location Owner" and doing business

as/_AIC, 1908 Towist Aliquppa, PA 5ᵗʰ_"hereinafter, the "Premises."

In consideration for the mutual obligations and undertaking in this agreement, the

parties agree as follows:

1.  Location Owner hereby grants to PA Skill Games the exclusive right, privilege and license at the premises for the installation and operation of any coin, currency and credit operated games of skill, video lottery terminals (VLTS) and other gaming equipment, if permitted by law and also agrees that location owner and premises shall utilize the automatic teller machine (ATM) placed upon the premises by PA Skill Games (collectively, the "Equipment"). PA Skill Games reserves the exclusive right to determine the number, type and configuration of the Equipment located at the premises at any time and to further determine the price at which "plays" or use shall be made for or through the equipment.

2.  In consideration of Location Owner's agreement contained herein, PA Skill Games and location owner agree that the net receipts, after cartridge fee, distribution of prizes, credits and other payments due to a user based on his/her "play" or use of the equipment, collected with respect to the operation of any and all equipment on the premises, shall be divided as follows:

    - PA Skill Games to receive _100_%, Location owner to receive _0_%                    of the net receipts for ATM usage fees. The division of net receipts may be changed from time to time by mutual agreement of the parties in writing without affecting the terms of this Agreement. Location Owner shall promptly pay such amounts to PA Skill Games upon request.
    - PA Skill Games to receive _60_%, Location Owner to receive _40_% of the net receipts for all other equipment, other than ATM. The division of net receipts may be changed from time to time by mutual agreement of the parties in writing without affecting the terms of the Agreement. Location Owner shall promptly pay such amounts to PA Skill Games upon request

3.  PA Skill Games agrees to install the Equipment at its expense and use reasonable efforts to service the equipment. Failure by Operator to furnish service shall not constitute a breach hereof unless Location Owner has given written notice to the President of Operator of such failure and Operator has failed to provide service within three (3) weekdays after the receipt

PSG000001

of such notice. Any repairs or maintenance required by reason of misuse, abuse, vandalism, fire or casualty shall be at Customer's sole expense.

4. Location Owner agrees as follows: (a) it will furnish a prominent place on the Premises for the Equipment, the location of which to be mutually agreed upon by the parties and it will furnish, at its expense, all necessary telecommunications and electrical connections and current for the operation of the Equipment and it will keep the Equipment connected to a power supply so that the Equipment is in operating condition at all times; (b) it will immediately notify PA Skill Games of any failure of the Equipment to function properly or any matter affecting the proper operation of the Equipment; (c) it will permit PA Skill Games at all reasonable times to enter the Premises in order to examine, repair, maintain or replace the Equipment and to make collections from the Equipment; (d) it will permit only authorized employees or agents of PA Skill Games to move, remove, open or tamper with the Equipment and it will be solely responsible for any damages resulting from any moving, removal, opening or tampering not authorized by PA Skill Games, including the replacement cost of such Equipment; (e) it will procure and maintain insurance on the Equipment insuring the Equipment against fire, theft, vandalism, malicious mischief and other casualty, it will name PA Skill Games as an additional insured on such insurance policies and will provide PA Skill Games a copy of such policies upon request; and (f) it assumes all risk related to the legality of any Equipment operated at the Premises, it being acknowledged that PA Skill Games does not warrant the legality thereof.

PA SKILL GAMES WILL AGREE TO PROVIDE AN EXPERT TO EVALUATE AND/OR TESTIFY AS TO THE LEGALITY OF ANY SKILL GAME IF ANY COURT OF LAW OR GOVERNMENT AGENCY TAKES ANY ACTION WHICH INVOLVES A DETERMINATION THAT THE USE AND/OR POSSESSION OF ANY SKILL GAME IS ILLEGAL. HOWEVER, PA SKILL GAMES SHALL NOT BE LIABLE FOR, AND EXPRESSLY DISCLAIMS AND EXCLUDES, ANY AND ALL LIABILITY FOR ANY FINES, PENALTIES, COSTS, EXPENSES OR DAMAGES SUFFERED BY CUSTOMER OR ANY THIRD PARTY ON ACCOUNT OF THE USE, OPERATION OR LOCATION OF SKILL GAMES INCLUDING BUT NOT LIMITED TO CRIMINAL OR CIVIL FINES OR PENALTIES, INCIDENTAL, CONSEQUENTIAL, AND/OR COMPENSATORY DAMAGES, LOST PROFITS, COVER AND/OR INJURY TO PERSON OR PROPERTY, REGARDLESS OF WHETHER PA SKILL GAMES WAS AWARE OF THE POTENTIAL OR ACTUAL EXISTENCE OF SUCH DAMAGES.

5. Location Owner represents and warrants that it owns and operates the business conducted on the Premises, has full authority to enter into and perform this Agreement and has no written or oral agreement with any other person, governmental authority or entity for the installation, operation or service of Equipment on the Premises. If Location Owner has not acquired the business at the time of execution of this Agreement, this Agreement shall become automatically effective upon said acquisition.

6. The Equipment, together with the contents thereof, are and will remain at all times the sole and exclusive property of PA Skill Games and may be removed by PA Skill Games upon termination of this Agreement or breach by Location Owner of this Agreement.

7. Location Owner expressly agrees that during the term of this Agreement, and any renewal hereof, PA Skill Games shall have the sole and exclusive right to install, operate, furnish and service Equipment on the Premises and that it will not furnish, or cause to be furnished, nor

2

PSG000002

permit any other person, governmental authority or entity to install, operate, furnish or service any Equipment (3rd Party Equipment"), of any nature whatsoever, on the Premises, other than PA Skill Games' Equipment. This Agreement prohibits Location Owner from installing or operating (i) ATM machines, (ii) phonographs or jukeboxes, (iii) arcade or video games, or (iv) pool or air hockey tables or similar amusement devices. Location Owner specifically agrees that PA Skill Games shall have the exclusive right to install, operate, furnish any and all equipment and service video lottery terminals and other lottery and gambling devices/games at the Premises. The restrictions contained in this Section 7 shall be enforceable by PA Skill Games even if certain Equipment is solely authorized to be operated by a governmental authority or other third party other than PA Skill Games. The parties agree that this Section 7 is an essential and material part of this Agreement and PA Skill Games would not have entered into this Agreement without these covenants being made by Location Owner, as it would not be economically feasible for PA Skill Games to install, operate and service Equipment at the Premises unless Location Owner grants PA Skin Games such exclusive rights. In the event that the Location Owner breaches or attempts to breach this Section 7, PA Skill Games will have the right to either (a) terminate this Agreement and pursue all damages under Section 11, or (b) continue this Agreement and operate any of its Equipment remaining at the Premises and all net receipts received by Location Owner from 3rd Party Equipment shall be considered net receipts collected from the operation of the Equipment, which shall be divided as provided in Section 2. Location Owner agrees to provide PA Skill Games with all books and records related to any 3rd Party Equipment, including financial and accounting records, within 72 hours of such request. All amounts due PA Skill Games for the operation of 3rd Party Equipment on the Premises shall be paid to PA Skill Games within 5 business days after receipt by Location Owner.

8.    This Agreement shall be effective as of the date first stated above and shall remain in full force and effect for a term of Five (5) years thereafter. If neither party gives written notice to the other of the desire to terminate this Agreement at least ninety (90) days, but not longer than one hundred eight (180) days, prior to the expiration date of the original or any renewal term hereof, this Agreement shall be automatically renewed for successive periods of five (5) years upon the same terms and conditions as provided herein. In the event the business operations of Location Owner are interrupted or stopped for any reason, the original or any renewal term of this Agreement shall be extended for a period equal to the period of such interruption or stoppage.

9.    Notwithstanding any other provision of this Agreement, PA Skill Games shall have the right to terminate this Agreement at any time upon written notice to Location Owner if PA Skill Games determines, in its sole discretion, that the net receipts from the operation of the Equipment shall be less than an amount which will allow the PA Skill Games to earn a profit which PA Skill Games deems satisfactory.

10.    Neither this Agreement nor any interest herein may be assigned by Location Owner without the prior written consent of PA Skill Games. In the event of the proposed sale, assignment or transfer of the Location Owner's business, stock or assets (including, without limitation, the transfer of any liquor license for the business) at the Premises, Location Owner shall: (a) promptly notify PA Skill Games in writing of the identity and address of the proposed purchaser, assignee or transferee, and (b) require the written assumption of this Agreement by the proposed purchaser, assignee or transferee. If such proposed purchaser, assignee or transferee shall fail to fully assume the obligations of Location Owner hereunder, Location Owner shall be in breach hereof and PA Skill Games will have any and all remedies available to it under this Agreement or in law and equity, including those remedies under Section 11 hereof.

3

PSG000003

11.     In the event of the breach of this Agreement by Location Owner, the parties agree that the actual losses suffered by PA Skill Games will be difficult to ascertain and the liquidated damages set forth herein have been agreed by the parties after good faith efforts as a reasonable estimate of such losses and not as a penalty. PA Skill Games and Location Owner agree that PA Skill Games would not have entered into this Agreement but for this liquidated damages covenant. Therefore, in the event of the breach of this Agreement by Location Owner, PA Skill Games will be entitled to recover liquidated damages, in lieu of actual damages, computed as follows:

a)     The amount of the average weekly share of the net receipts from the operation of the Equipment received by PA Skill Games under this Agreement, as determined for the 26 week period immediately preceding the week in which the breach occurs or for the period since the commencement of the Agreement, whichever period is shorter, multiplied by the number of weeks remaining in the unexpired original or renewal term hereof; plus

b)     With respect to any games of skill or chance, video lottery devices or other games that become permitted by law to be operated by private enterprise or public agency after the date of this Agreement and is operated in breach hereof at the Premises as 3rd Party Equipment, the average weekly share of net receipts by Location Owner from such 3rd Party Equipment at the Premises, as determined for the 26 week period immediately following the week in which the breach occurs or until the current original or renewal term of this Agreement expires, whichever period is shorter, multiplied by the number of weeks remaining in such original or renewal term, and then divided as provided in Section 2 of this Agreement.

c)     The sum of a) and b) shall be reduced by Twenty-Five Percent (25%) to account for the PA Skill Games' reduced overhead cost.

Also in the event of a breach of this Agreement by Location Owner, the parties agree that PA Skill Games will be entitled to Attorney's Fees and Costs.

12.     If Location Owner transfers or relocates its business to a new location or establishes an additional business at other locations, PA Skill Games shall have the exclusive right and option to install and operate Equipment at such location(s), without further consideration to Location Owner, upon the same terms as contained herein.

13.     Location Owner may not resell or transfer any Equipment, or any component thereof. Location Owner may not reverse engineer, decompile, copy or modify any of the software for any Equipment. Location Owner agrees that no one under the age of 18 will be permitted to play any Equipment. Location Owner further agrees that no Equipment will be used for any illegal purpose, nor located in an area where any illegal games or activities take place. If Location Owner breaches the foregoing restrictions PA Skill Games may terminate this Agreement and remove any Skill Game from the Premises, without compensation to Location Owner. If any Equipment is at any time determined to be illegal by any court of law or government agency, Location Owner will immediately discontinue all use of any such Equipment and contact PA Skill Games to arrange for its return to PA Skill Games.

4

PSG000004

14.    This Agreement constitutes the entire agreement of the parties and no modification or amendment of this Agreement shall be binding unless made in writing and signed by both parties. The invalidity or unenforceability of any provision hereof shall in no way effect the validity or unenforceability of any other provision hereof, which shall remain in full force and effect. The parties agree that the court determining such invalidity or unenforceability shall have jurisdiction to reform such provision so that it is enforceable to the maximum extent permitted by law and this Agreement, as reformed, shall continue to be binding upon the parties. This Agreement shall inure to the benefit of and be binding on the parties and their heirs, executors, administrators, successors and assigns. If PA Skill Games is required to enforce the terms of this Agreement against Location Owner, including, but not limited to, the exclusivity provisions in Section 7, PA Skill Games shall be entitled to reimbursement by Location Owner of all of PA Skill Games' costs and expenses associated with the successful enforcement of this Agreement, including, without limitation, all of its attorney fees, litigation expenses and court costs. This Agreement shall be governed by and enforced under the laws of the Commonwealth of Pennsylvania. The parties hereby waive their rights to a jury trial in the event of litigation arising out of breach or alleged breach of this Agreement or the relationship of the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement by those duly

authorized on the date first above written.


In the Presence of:

_Chubb Unis_
Feb 1st 2010


_Chubb Unis_
Feb 1st 2010


PENNSYLVANIA SKILL GAMES
Albert Unis

By: _Albert Unis_
Managing Member   Albert Unis
Feb 1st 2010


LOCATION OWNER:

_Domenic Santon_

By: _President_
Title: Feb. 1st 2010


5

PSG000005

## Attachment B

1.      A copy of all contracts with Albert Unis III, Albert Unis IV, Pennsylvania Skill Games, and Pennsylvania Skill Games, LLC

2.      A copy of any letters, faxes, electronic mail messages, or other communications with Albert Unis III, Albert Unis IV, Pennsylvania Skill Games, and Pennsylvania Skill Games, LLC or any third party about the placement of an electronic gaming machine in the American Italian Club in or about November 2013.

3.      A copy of any advertisements, brochures, or any other items provided by Albert Unis III, Albert Unis IV, Pennsylvania Skill Games, and Pennsylvania Skill Games, LLC that contain the name/trademark PENNSYLVANIA SKILL.

4.      Photographs or any other media that shows usage, placement, or presence of the name "PENNSYLVANIA SKILL."

11754220v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

        Plaintiffs/Counterclaim
        Defendants,

        v.

PENNSYLVANIA SKILL GAMES, LLC,

        Defendant/Counterclaim
        Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-RCM

The Honorable Robert C. Mitchell

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Motion** was served upon the

undersigned counsel of record this 25th day of April, 2019 via the Court's CM/ECF System:

> C. James Zeszutek, Esquire
> Nicholas J. Godfrey, Esquire
> Dinsmore & Shohl LLP
> 1300 Six PPG Place
> Pittsburgh, PA  15222
>
> **Counsel for Defendant/Counterclaim Plaintiff Pennsylvania Skill Games, LLC**

        SPILMAN THOMAS & BATTLE, PLLC

        /s/ Julian E. Neiser
        Julian E. Neiser

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

    Plaintiffs/Counterclaim
    Defendants,

    v.

PENNSYLVANIA SKILL GAMES, LLC,

    Defendant/Counterclaim
    Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-RCM
Consolidated

The Honorable Robert C. Mitchell

### <u>ORDER OF COURT</u>

AND NOW, TO WIT, this _____ day of _____, 2019, it hereby is

ORDERED that the American Italian Club is directed to appear, testify, and produce documents

as requested via subpoena from the Plaintiffs in this matter, and that any subsequent failure to so

appear may result in an Order of Contempt.

           _____
           Mitchell, M.J.