IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NUMBER: 2:18-cv-00722-PLD |
| Plaintiffs, | The Hon. Patricia L. Dodge |
| V. | |
| PENNSYLVANIA SKILL GAMES, LLC, | MOTION FOR JOINDER PURSUANT TO FED.R.CIV.P. 19 |
| Defendant. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Plaintiff, | |
| V. | |
| PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC. | |
| Defendant. | |

**MOTION FOR JOINDER OF NECESSARY PARTIES
PURSUANT TO FED.R.CIV.P.**

**Background**

1. Generally speaking, there are two separate but inter-related disputes in the two above-captioned cases: *POM of Pennsylvania, LLC, t/d/b/a Pace-O-Matic, and Savvy Dog Systems, LLC, v. Pennsylvania Skill Games, LLC,* Case No. 2:18-cv-00722-PLD (the "**Pace-O-Matic Case**") and *Pennsylvania Skill Games, LLC v. Pace-O-Matic, Inc. and Miele Manufacturing, Inc.,* Case No. 2:18-cv-00941-RCM (the "**Pennsylvania Skill Case**").[1]

---

1 The Pennsylvania Skill Case was closed by Order of Consolidation, dated August 27, 2018 [Pennsylvania Skill Case, Doc. 10], with the Pace-O-Matic case proceeding as lead case.

2. Among other things, there is a dispute over trademark rights, and there is a dispute over exclusivity territorial rights in the distribution of products. These issues are interrelated because of the factual framework by which the legal rights were established.

3. As an initial point of consideration, it may be beneficial for the Court to take notice of the history of the "skill games" industry. Traditionally, amusement games that paid monies for "winning" were considered games of chance (gambling machines); however, basically stated, it is not a game of chance if skill is required to achieve a result.[2] There was a formative point for the skill games industry in this Commonwealth at which all machines that paid monies were at risk of being considered a gambling device.

4. Before the year 2012, Pennsylvania Skill Games was operated solely by Albert Unis, III, who did business using the branding of "PENNSYLVANIA SKILL GAMES." *See, e.g.,* Exhibit 1 (annotated for reference) and Exhibit 2.1 – Exhibit 2.3. At this time, Pace-O-Matic did not have a presence in this Commonwealth for skill games. *See,* Exhibit 3 (annotated for reference).

In mid-2012, Wayne Deluca, Esq. was the legal counsel for both Pennsylvania Skill Games and The Pennsylvania Amusement and Music Machine Association ("**PAMA**"). So far as is known from discovery to date, Pace-O-Matic and Louis Miele (a board member of PAMMA) contacted PAMMA looking for an entry into the Pennsylvania market, and Mr. Deluca naturally directed the inquiry to Pennsylvania Skill Games. At this time, *so there is no lack of clarity:* Pennsylvania Skill Games was already doing business in skill games in this Commonwealth exclusively using that branding, and Pace-O-Matic, Inc. was not doing so.[3] *Id.*

Albert Unis, III of Pennsylvania Skill Games, and Michael Pace as owner and President of Pace-O-Matic conducted multiple meetings about working together to develop the Commonwealth skill games market.

---

[2] A detailed explanation of the differences between a gambling machine and a skills game is incidental to the purpose motion, but can be provided upon request of the Court. See, also, *infra*, Page X, Exhibit ●, and accompanying text.

[3] Wayne Deluca, Esq. is now apparently employed by Pace-O-Matic.

As part of the discussions of developing the market, and in determining to develop the market, Pennsylvania Skill Games and Pace-O-Matic developed a stylized form of Pennsylvania Skill Games' name to use on the games to denote that the skill games were placed by Pennsylvania Skill Games, which already had a reputation for skill games. The name was intended to ease the entry of the new gaming manufacturer, Pace-O-Matic into this Commonwealth by use of Pennsylvania Skill Games' name. The stylized form of Pennsylvania Skill Games' name that was developed cannot and does not exist without use of Pennsylvania Skill Games' name.

5.  At this same time, it was understood that the skill games market was at risk of claims of being gambling devices. Therefore, Pennsylvania Skill Games introduced Pace-O-Matic to one of Pennsylvania Skill Games' customer sites in Aliquippa, Beaver County, PA, where Pennsylvania Skill Games had existing business (but Pace-O-Matic did not), in order to create a "controlled pickup" environment to allow a test court case. The site was "The American Italian Club" in Aliquippa, PA with whom Pennsylvania Skill Games had an existing relationship. *See,* Exhibit 1. Pennsylvania Skill Games and Pace-O-Matic coordinated contacting the Commonwealth State Police that a device was being placed into the site specifically with the intention that State Police confiscate it as a gambling device, which would create a cause of action to test the question of skill games versus gambling devices. The case that ensued in Beaver County (the "**Beaver Case**") was brought in the name of Pace-O-Matic as manufacturer and was resolved with a determination that the device was a skill game and not a gambling device, by Order of Court dated December 23, 2014. *See,* Exhibit 4.1–4.2.

6.  On the same effective date as the aforesaid Beaver Case Order of Court, an agreement was apparently entered into by "MDM Ventures DBA Miele Manufacturing" and Pace-O-Matic Inc. See Exhibit 5.[4] Pace-O-Matic, Inc. develops games in the form of computer software. "Miele" is in the business of making the cabinetry into which those computer games are placed as well as distribution of skill games machines ready for use by sites.

---

4 In the version produced through discovery during this litigation, only Pace-O-Matic, Inc's signature is present, although the understanding at this time is that the document evidences the relationship between the identified parties. That said, however, the purpose of its reference is not necessarily to assert its enforceability between those parties, but to assert the stated identification of the purported parties, being at least Pace-O-Matic, Inc's admitted understanding as doing business with MDM Ventures doing business as "Miele Manufacturing." The Court should take careful comparative notice of the party in the caption above, being an entity corporation in the caption above, as distinguished from the name of the party in Exhibit 5, being a different corporation using an unregistered fictitious name.

7. The commercialization of skill games generally consists of a few important points of definition: a) the game manufacturer develops the game software and hardware (the "**Software/Firmware**"); b) the Software/Firmware is placed into one of many available (wooden) boxes, or "stands" ("**Stands**"), noting that the same Software/Firmware could be placed into different types of Stands, depending upon preferred space and decor (s*ee,* Id.; Exhibit 5, Exh. A, item B, *e.g.,* "Flex 1," "Spartan," etc.); c) "**Terminals**" are the resultant Stands each of which contain a Software/Firmware; d) the "**Site**" are the places (*e.g.,* a tavern or game arcade) where the different Skill Game Machines are placed; e) the "**Operator**" is responsible for finding Sites into which to place the Terminals; and f) the Operator purchases the Terminals and also purchases "**Fills**," which puts an amount of digital currency into the respective Software/Firmware, which, after depletion from the net of user pay-ins/pay-outs, must be re-filled by the purchase of more Fills. (s*ee,* Exhibit 5, Exh. A, item C–D. The Software/Firmware tracks the pay statistics. *See,* Exhibit 6.1 – Exhibit 6.3 and Exhibit 6.4.[5]

8. Consistent with the favorable result on December 23, 2014, in the Beaver Case, following, in January, 2015, Pace-O-Matic, Inc. and "Miele Manufacturing" (designated, "collectively" and not individually), on the one hand, and "Albert Unis and Affiliates ("**AUA**") on the other hand, entered into a written agreement for "POM" (being both Pace-O-Matic, Inc. and "Miele Manufacturing") "not to sell terminals in Beaver County unless AUA refuses to place terminals in the location in question (Right of First Refusal)." Consistent with the joint marketing, "POM" (again, meaning *both* Pace-O-Matic and "Miele Manufacturing") "will commit to support AUA with agreed upon marketing efforts." *See,* Exhibit 7. This is supported by the February 2, 2015, email by Pace-O-Matic. *See,* Exhibit 8 (annotations added).

---

[5] It is noted from the last page of Exhibit 5 and Exhibit 6.4 that Fills are purchased by trackable credit cards. This is noted incidentally at this time as a result of failure of Pace-O-Matic and "Miele Manufacturing" to produce Fill tracking information to allow Pennsylvania Skill Games further to calculate damages.

9. Following the formation of Pennsylvania Skill Games, LLC, another agreement between the parties was entered into between Pace-O-Matic, Inc. and "Miele Manufacturing" as joint "Seller" on the one hand, and Pennsylvania Skill Games, LLC, on the other hand. *See,* Exhibit 9. This Agreement again reiterates the "right of first refusal" expressly granted by Pace-O-Matic, Inc. and "Miele Manufacturing," and notably expressly states that Pennsylvania Skill Games, LLC may assign the agreement, but no similar provision is included for either Pace-O-Matic, Inc. or "Miele Manufacturing." *See,* Exhibit 9 (annotation added)[6]

10. On or about March 12, 2016, Pennsylvania Skill Games determined that Pace-O-Matic, Inc. and "Miele Manufacturing" were in default by permitting competitive Operators and Terminals to be placed into Sites within Pennsylvania Skill Games' territory and using the Pennsylvania Skill Games' stylized name. On or about the same date, Albert Unis, III, contacted Daniel Warren of Pace-O-Matic to bring this to his attention. *See, also,* Exhibit 10.

This violative activity was causing Pennsylvania Skill Games to be exponentially injured, among other things, for: a) violation of Pennsylvania Skill Games' right of first refusal; b) and in doing so, Pace-O-Matic and "Miele Manufacturing" also intentionally and capriciously usurping Pennsylvania Skill Games own name; and c) using Pennsylvania Skill Games' name with Pennsylvania Skill Games' competitors.

11. Immediately after the March 12, 2016, notice by Albert Unis, Pace-O-Matic initiated a fraudulent "alter-ego" conveyance reorganization of the single Pace-O-Matic entity into approximately 22 separate entities, designated as "POM of []". *See,* Exhibit 11; Exhibit 12.1 – 12.19.

---

[6] Discovery disputes are not part of this motion, but the Court will note the "most favored nation clauses" and guarantee by both Pace-O-Matic and "Miele Manufacturing" regarding, *e.g.,* that any other vendor will not undersell. To effectuate these provisions and comply therewith, both Pace-O-Matic and "Miele Manufacturing" would necessarily to implement accountability tracking of each Operator and the Sites.

These entities have been filed by combinations of the Pace-O-Matic attorney, B. Greg Cline, Esq., or its Vice President, Daniel Warren, or its President, Michael Pace (using a variety of emails at @paceomatic.com, using the Pace-O-Matic emails, human resources, office, assets, equipment, and all in the same jurisdiction of Wyoming, all while maintaining control.[7] Moreover, Pace-O-Matic has diverted opportunities and fraudulently separated out assets and business into Savvy Dog Systems, LLC, Exhibit 13, and Bison Amusements, LLC Exhibit 14 (both also Wyoming companies formed by the aforesaid usual group of representatives).[8]

12.   Pennsylvania Skill Games filed its Pennsylvania Skill Case on July 18, 2019, and, in a conscious effort to try to cleans its tracks, Pace-O-Matic immediately began its systematic *ex post facto* attempt to claim ownership by filing for a state trademark registration, even though knowing that Pennsylvania Skill Games had filed for federal trademark protection on March 30, 2018, U.S. Serial Nos. 87/65441, Registration No. 5,887,224, October 15, 2019), 87/65441.  *See,* Exhibit 15.1 – Exhibit 15.7, which, by its own terms identifies the integrated interest of "Savvy Dog Systems, LLC d/b/a Pace-O-Matic, Inc." (emphasis added).  Exhibits 13 – Exhibit 15 were not provided by Pace-O-Matic.

13.   In Exhibit 7 and Exhibit 9, this Court will find the use of the term "Miele Manufacturing."  Such as it is for Pace-O-Matic, this term is at least ambiguous.  "Miele Manufacturing" may be one or any combination of Miele, Inc. (Pennsylvania), Miele Manufacturing, Inc. (Pennsylvania), MDM Ventures, Inc. (Pennsylvania) (noting the evidence of Exhibit 5, "dba Miele Manufacturing"), Miele Manufacturing and Distribution, LLC (Wyoming, dissolved in 2016), Louis Miele and perhaps others trading under the unregistered fictious name of "Miele Manufacturing."  *See,* Exhibit 16.1 – Exhibit 16. 4.  In a conscious effort to avoid detection, Miele Manufacturing, believed to be controlled by Louis Miele personally, has not duly registered the fictitious name with the Commonwealth of Pennsylvania.  Moreover, now he trades as "Miele Amusements," again without registering with the Commonwealth of Pennsylvania as a fictitious name, and asserting the rights that are or should be those of "Miele Manufacturing."  *See,* Exhibit 17

---

[7] To the extent that the exhibit does not self-evidence the use of "alter-ego" resources, or if the same is put into dispute with regard to this motion, discovery on that issue is requested.  *See,* Proposed Order.

[8] The Court will take notice that Pace-O-Matic, Inc. is not forthrightly the so-named plaintiff in the Pace-O-Matic Case for the purpose of avoiding counterclaim liability, hindering collection and keeping secret the deep web of fraudulent conveyances.

(annotations added).

**Law**

The law of joinder is set forth pursuant to Fed.R.Civ.P. 19; to wit:

**Rule 19. Required Joinder of Parties.**

**(a) Persons Required to Be Joined if Feasible.**

**(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:**

> **(A) in that person's absence, the court cannot accord complete relief among existing parties; or**
> **(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:**
>
>> **(i) as a practical matter impair or impede the person's ability to protect the interest; or**
>> **(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.**

**(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.**

**(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.**

Pursuant to 12 Pa.C.S.A. § 5104, regarding fraudulent transfers:

**(a) General rule.--A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:**

> **(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or**
>
> **(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:**
>
> **(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or**

**(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.**

**(b) Certain factors.--In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:**

**(1) the transfer or obligation was to an insider;**
**(2) the debtor retained possession or control of the property transferred after the transfer;**
**(3) the transfer or obligation was disclosed or concealed;**
**(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;**
**(5) the transfer was of substantially all the debtor's assets;**
**(6) the debtor absconded;**
**(7) the debtor removed or concealed assets;**
**(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;**
**(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;**
**(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and**
**(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.**

Clearly, the wide *ex post facto* fraudulent scheme of Pace-O-Matic, Inc., immediately following notice of violation by Pennsylvania Skill Games cannot be used to avoid and to hinder the collection of the assets of Pace-O-Matic, Inc. The variety of business diversions and assignments are simply the "alter-ego" of Pace-O-Matic, utilizing Pace-O-Matic staff, emails, office and other resources, while keeping control. Every conveyance made and every obligation incurred to hinder, delay, or defraud either present or future creditors, is fraudulent. *See,* IRS Litigation Guideline Memorandum, LGM GL-21 (IRS LGM), 1989 WL 989297, Internal Revenue Service (1989).

In considering the factors listed in § 4(b) a court should evaluate all the relevant circumstances involving a challenged transfer or obligation. Thus, the court may appropriately take into account all indicia negativing as well as those suggesting intent to hinder, delay, or defraud creditors; to wit, in the Pennsylvania Notes to Decisions to Section : *Salomon v. Kaiser (In re Kaiser),*

722 F.2d 1574, 1582-83 (2d Cir. 1983) (insolvent debtor's purchase of two residences in the name of his spouse and the creation of a dummy corporation for the purpose of concealing assets held to evidence intent to hinder, delay, or defraud creditors); *Banner Construction Corp. v. Arnold,* 128 So.2d 893 (Fla.Dist.App. 1961) (assignment by one corporation to another having identical directors and stockholders constituted a badge of fraud); *Travelers Indemnity Co. v. Cormaney,* 258 Iowa 237, 138 N.W.2d 50 (1965) (transfer between spouses said to be a circumstance that shed suspicion on the transfer and that with other circumstances warranted avoidance); *Hatheway v. Hanson,* 230 Iowa 386, 297 N.W. 824 (1941) (transfer from parent to child said to require a critical examination of surrounding circumstances, which, together with other indicia of intent to hinder, delay, or defraud creditors, warranted avoidance); *Harris v. Shaw,* 224 Ark. 150, 272 S.W.2d 53 (1954) (retention of property by transferor said to be a badge of fraud and, together with other badges, to warrant avoidance of transfer); *Stephens v. Reginstein,* 89 Ala. 561, 8 So. 68 (1890) (transferor's retention of control and management of property and business after transfer held material in determining transfer to be voidable); *Allen v. Massey,* 84 U.S. (17 Wall.) 351 (1872) (joint possession of furniture by transferor and transferee considered in holding transfer to be voidable); *Walton v. First National Bank,* 13 Colo. 265, 22 P. 440 (1889) (agreement between parties to conceal the transfer from the public said to be one of the strongest badges of fraud); Warner v. Norton, 61 U.S. (20 How.) 448 (1857) (although secrecy said to be a circumstance from which, when coupled with other badges, intent to hinder, delay, or defraud creditors may be inferred, transfer was held not to be voidable when made in good faith and transferor surrendered possession); *Harris v. Shaw,* 224 Ark. 150, 272 S.W.2d 53 (1954) (transfer held to be voidable when causally connected to pendency of litigation and accompanied by other badges of fraud); *Pergrem v. Smith,* 255 S.W.2d 42 (Ky.App. 1953) (transfer in anticipation of suit deemed to be a badge of

fraud; transfer held voidable when accompanied by insolvency of transferor who was related to transferee); *Bank of Sun Prairie v. Hovig,* 218 F.Supp. 769 (W.D.Ark. 1963); *Bentley v. Young,* 210 F. 202 (S.D.N.Y. 1914), aff'd, 223 F. 536 (2d Cir. 1915) (debtor's removal of goods from store to conceal their whereabouts and to sell them held to render sale voidable); *Cioli v. Kenourgios,* 59 Cal.App. 690, 211 P. 838 (1922) (debtor's sale of all assets and shipment of proceeds out of the country held to be voidable notwithstanding adequacy of consideration); *Toomay v. Graham,* 151 S.W.2d 119 (Mo.App. 1941) (although mere inadequacy of consideration said not to be a badge of fraud unless it is grossly inadequate, transfer held to be voidable when accompanied by other badges of fraud); *Texas Sand Co. v. Shield,* 381 S.W.2d 48 (Tex. 1964) (inadequate consideration said to be an indicator of intent to hinder, delay, or defraud creditors, and transfer held to be voidable because of inadequate consideration, pendency of suit, family relationship of transferee, and fact that all nonexempt property was transferred); *Shapiro v. Wilgus,* 287 U.S. 348, 354 (1932); *Means v. Dowd,* 128 U.S. 273, 288-89 (1888); *Consove v. Cohen* (In re Roco Corp.), 701 F.2d 978, 984 (1st Cir. 1983); *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.,* 20 F.2d 295, 297 (2d Cir. 1927); *Lippe v. Bairnco Corp.,* 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003) (§ 4(a)(1) applies to a transaction that "hinders" or "delays" a creditor, even if it does not "defraud" the creditor); *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.,* 20 F.2d 295, 297 (2d Cir. 1927) (L. Hand, J.) (a transaction that does not place an asset entirely beyond the reach of creditors may nevertheless "hinder, delay, or defraud" creditors if it makes the asset more difficult for creditors to reach; simple exchange by a debtor of an asset for a less liquid asset, or disposition of liquid assets while retaining illiquid assets, may be voidable for that reason; credit sale by a corporation to an affiliate).

It is voidable for a debtor intentionally to hinder creditors by transferring assets to a wholly-owned corporation or other organization, as may be the case if the equity interest in the organization is more difficult to realize upon than the assets (either because the equity interest is less liquid, or because the applicable procedural rules are more demanding). *See, e.g., Addison v. Tessier,* 335 P.2d 554, 557 (N.M. 1959); *First Nat'l Bank. v. F. C. Trebein Co.,* 52 N.E. 834, 837-38 (Ohio 1898) (overcollateralization actionable). Indeed, if such a conversion is done with intent to hinder creditors, it contravenes § 4(a)(1) regardless of whether it is effected by conveyance of the corporation's assets to a new entity or by conversion of the corporation to the alternative form. In both cases the owner begins with the stock of the corporation and ends with an ownership interest in the alternative organization, a property right with different attributes. Either is a "transfer" under the designedly sweeping language of § 1(16), which encompasses "every mode...of...parting with an asset or an interest in an asset." *Cf., e.g., United States v. Sims (In re Feiler),* 218 F.3d 948 (9th Cir. 2000) (debtor's irrevocable election under the Internal Revenue Code to waive carryback of net operating losses is a "transfer" under the substantially similar definition in the Bankruptcy Code); *Weaver v. Kellogg,* 216 B.R. 563, 573-74 (S.D. Tex. 1997) (exchange of notes owed to the debtor for new notes having different terms is a "transfer" by the debtor under that definition); *Dean v. Davis,* 242 U.S. 438, 444 (1917) (equating an act whose "obviously necessary effect" is to hinder, delay, or defraud creditors with an act intended to hinder, delay, or defraud creditors); *United States v. Tabor Court Realty Corp.,* 803 F.3d 1288, 1305 (3rd Cir. 1986) (holding that the trial court's finding of intent to hinder, delay, or defraud creditors properly followed from its finding that the debtor could have foreseen the effect of its act on its creditors, because "a party is

deemed to have intended the natural consequences of his acts"); *In re Sentinel Management Group Inc.,* 728 F.3d 660, 667 (7th Cir. 2013).

Pennsylvania Skill Games seeks an appropriate joinder of Pace-O-Matic, Inc. (a Wyoming corpora-tion), POM of Pennsylvania, LLC (a Wyoming limited liability company), POM of Pennsylvania as an unregistered fictitious name, Pace-O-Matic as an unregistered fictitious name, Savvy Dog Systems, LLC (a Wyoming limited liability company), Bison Amusements, LLC (a Wyoming limited liability company), POM of Alabama, LLC (a Wyoming limited liability company), POM of District of Columbia, LLC (a Wyoming limited liability company), POM of Florida, LLC (a Wyoming limited liability company), POM of Kansas, LLC (a Wyoming limited liability company), POM of Iowa, LLC (a Wyoming limited liability company), POM of Missouri, LLC (a Wyoming limited liability company), POM of Nebraska, LLC (a Wyoming limited liability company), POM of POM of Hawaii, LLC (a Wyoming limited liability company), POM of Illinois, LLC (a Wyoming limited liability company), POM of Massachusetts LLC (a Wyoming lim-ited liability company), POM of New York, LLC (a Wyoming limited liability company), POM of North Carolina, LLC (a Wyoming limited liability company), POM of Ohio, LLC (a Wyoming limited liability company), POM of South Carolina, LLC (a Wyoming limited liability company), POM of Texas, LLC (a Wyoming limited liability company), POM of Utah, LLC (a Wyoming limited liability company), POM of Virginia, LLC (a Wyoming limited liability company), POM of Wyoming, LLC (a Wyoming limited liability company), as well Lou Miele t/d/b/a "Miele Man-ufacturing," Miele Manufacturing and Distribution LLC (a Wyoming limited liability company) or its successors and transferees, Miele, Inc. (a Pennsylvania corporation), Louis Miele t/d/b/a

"Miele Amusements" as an unregistered fictitious name, and MDM Ventures, Inc. (a Pennsylvania corporation) t/d/b/a "Miele Manufacturing."

Pennsylvania Skill Games anticipates a Case Management Conference in accordance with the Order of this Court, dated December 17, 2019 [Doc. 47]. At that conference, Pennsylvania Skill Games will request leave in the schedule to amend the Complaint and its Answer, as the case may be, in order to conform to this claims and defenses raised by this motion and the relief sought in this motion.

Dated: February 17, 2020

        s/Gregg R. Zegarelli
        Gregg R. Zegarelli, Esq.
        Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.

Administrative Office:
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
v.412.833.0600
f.412.833.0601
mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing Motion for Joinder was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

February 17, 2020

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com

Respectfully submitted,

s/Gregg R. Zegarelli

Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.

Administrative Office:
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
v.412.833.0600
f.412.833.0601
mailroom.grz@zegarelli.com