# Pennsylvania Skill Games

# Fed.R.Civ.P 19

# Motion for Joinder

# <u>EXHIBIT 4</u>

# COURT OF COMMON PLEAS OF BEAVER COUNTY

## DOCKET



**Docket Number: CP-04-MD-0000965-2013**

# MISCELLANEOUS DOCKET

### Return of Property

In Re:   Pace-O-Matic Equipment

Page 1 of 5

### CASE INFORMATION

| | | |
|---|---|---|
| Judge Assigned: | Date Filed: 12/13/2013 | Initiation Date: 12/13/2013 |
| OTN:                LOTN: | Originating Docket No: | |
| Initial Issuing Authority: | Final Issuing Authority: | |
| Arresting Agency: | Arresting Officer: | |
| Complaint/Incident #: | | |
| Case Local Number Type(s) | Case Local Number(s) | |

### STATUS INFORMATION

| Case Status: | Closed | Status Date | Processing Status |
|---|---|---|---|
| | | 12/23/2014 | Completed |
| | | 12/13/2013 | Awaiting Disposition |

### PETITIONER INFORMATION

Date Of Birth:                City/State/Zip:  Aliquippa, PA  15001

### CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Petitioner | Pace-O-Matic Equipment |

### COMMONWEALTH INFORMATION

Name:

Supreme Court No:

### ATTORNEY INFORMATION

Name:          Wayne Deluca, Esq.
              Private

Supreme Court No:     016309

Rep. Status:          Active

Phone Number(s):
       412-281-5336          (Phone)
       412-261-1900          (Office)
       412-281-5336          (Office)

Address:
       Eddy Osterman & DeLuca
       Manor Bldg Penthouse
       564 Forbes Avenue
       Pittsburgh, PA  15219

Representing: Pace-O-Matic Equipment

### ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 12/13/2013 | | Pace-O-Matic Equipment |
| Motion for Return of Property | | | |

**EXHIBIT**

**4.1**

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in  18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF BEAVER COUNTY

## DOCKET



Docket Number: CP-04-MD-0000965-2013
## MISCELLANEOUS DOCKET
### Return of Property

In Re:   Pace-O-Matic Equipment

Page 2 of 5

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |

**1** — 01/09/2014 — Knafelc, Harry E.
Order Granting Motion for Hearing on Return of Property on Feb. 24, 2014 at 9am
Deluca, Wayne
01/09/2014 — First Class
Pace-O-Matic Equipment
01/09/2014 — First Class

---

**1** — 02/20/2014 — 02/20/2014 — Knafelc, Harry E.
Order Granting Motion to Continue Hearing to March 26, 2014 @ 1:30 PM #4
Deluca, Wayne
02/21/2014 — First Class
District Attorney's Office
02/21/2014 — Interoffice

---

**1** — 02/26/2014 — 02/25/2014 — Deluca, Wayne
Motion to Continue Hearing

---

**2** — 02/26/2014 — 02/26/2014 — Knafelc, Harry E.
Order Granting Motion for Continuance of Hearing to April 17, 2014 at 9:15 a.m.
Beaver County District Attorney's Office
02/26/2014 — Interoffice
Deluca, Wayne
02/26/2014 — First Class
Pace-O-Matic Equipment
02/26/2014 — First Class

---

**1** — 03/28/2014 — Beaver County District Attorney's Office
Motion to Continue

---

**2** — 03/28/2014 — 03/28/2014 — Knafelc, Harry E.
Order-Hearing on Petition for Return of Seized Property continued to 4-28-14 @ 9:15 AM #4
Deluca, Wayne
03/28/2014 — First Class
District Attorney's Office
03/28/2014 — Interoffice

---

**1** — 03/31/2014 — Knafelc, Harry E.
Order Continuing Return of Property Hearing to April 29, 2014 at 1:30pm in Ctrm #4

Printed: 12/20/2019

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.



# COURT OF COMMON PLEAS OF BEAVER COUNTY

## DOCKET

**Docket Number: CP-04-MD-0000965-2013**

# MISCELLANEOUS DOCKET

### Return of Property

In Re:   Pace-O-Matic Equipment

Page 3 of 5

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
| --- | --- | --- | --- |
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| Deluca, Wayne | | | |
| 03/31/2014 | Interoffice | | |
| Pace-O-Matic Equipment | | | |
| 03/31/2014 | First Class | | |

| | | | |
| --- | --- | --- | --- |
| 1 | 04/03/2014 | 04/03/2014 | Knafelc, Harry E. |
| Order Granting Hearing for Return of Seized Property to 4/29/14 at 1:30pm in CR 4 | | | |
| Beaver County Court Administration | | | |
| 04/03/2014 | Interoffice | | |
| Deluca, Wayne | | | |
| 04/03/2014 | First Class | | |
| Pace-O-Matic Equipment | | | |
| 04/03/2014 | First Class | | |

| | | | |
| --- | --- | --- | --- |
| 1 | 05/01/2014 | 05/01/2014 | Knafelc, Harry E. |
| Order-Motion to Continue granted-Hrg sch 7-28-14 @ 9 AM #4/Ct will entertain no other motions | | | |
| Beaver County District Attorney's Office | | | |
| 05/01/2014 | Fax | | |
| Deluca, Wayne | | | |
| 05/01/2014 | First Class | | |
| Pace-O-Matic Equipment | | | |
| 05/01/2014 | First Class | | |

| | | | |
| --- | --- | --- | --- |
| 1 | 07/24/2014 | 07/24/2014 | Knafelc, Harry E. |
| Order-Hearing on Motion to Return Property is continued to 9-26-14/Att. for deft objected to cont. | | | |
| Beaver County District Attorney's Office | | | |
| 07/24/2014 | Interoffice | | |
| Deluca, Wayne | | | |
| 07/24/2014 | First Class | | |
| Pace-O-Matic Equipment | | | |
| 07/24/2014 | First Class | | |

| | | | |
| --- | --- | --- | --- |
| 1 | 10/09/2014 | | Knafelc, Harry E. |
| Order Granting Request for Transcript of Motion to Return Seized Property Hearing held 9/26/14 | | | |
| Beaver County District Attorney's Office | | | |
| 10/09/2014 | Interoffice | | |
| Deluca, Wayne | | | |
| 10/09/2014 | First Class | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in  18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF BEAVER COUNTY

## DOCKET



Docket Number: CP-04-MD-0000965-2013

## MISCELLANEOUS DOCKET

### Return of Property

In Re:   Pace-O-Matic Equipment

Page 4 of 5

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
| --- | --- | --- | --- |
| Service To | | Service By | |
| Issue Date | Service Type | Status Date | Service Status |
| Pace-O-Matic Equipment | | | |
| 10/09/2014 | First Class | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |
| 1 | 11/18/2014 | | Knafelc, Harry E. |
| Transcript of Return of Property Hearing on Sept. 26, 2014 Filed -before Judge Knafelc | | | |
| Pace-O-Matic Equipment | | | |
| 11/18/2014 | First Class | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |
| 1 | 12/12/2014 | | Deluca, Wayne |
| Response to Commonwealth's Memorandum of Law in Opposition to Return of Seized Property (comments) | | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |
| 1 | 12/23/2014 | 12/23/2014 | Knafelc, Harry E. |
| Order -- Return of Property (Granted -- Returned) | | | |
| Beaver County District Attorney's Office | | | |
| 12/23/2014 | Interoffice | | |
| Deluca, Wayne | | | |
| 12/23/2014 | First Class | | |
| Pace-O-Matic Equipment | | | |
| 12/23/2014 | First Class | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |
| 1 | 12/16/2019 | | Raybuck, Gregory |
| Motion for Transcript | | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |
| 2 | 12/16/2019 | 12/16/2019 | Tesla, Kim |
| Order Granting Motion for Transcript | | | |
| Beaver County Court Administration | | | |
| 12/16/2019 | Hand Delivered | | |
| Beaver County Court Stenographers | | | |
| 12/16/2019 | Interoffice | | |
| Pace-O-Matic Equipment | | | |
| 12/16/2019 | First Class | | |
| — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — | | | |

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in  18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF BEAVER COUNTY

## DOCKET



Docket Number: CP-04-MD-0000965-2013

# MISCELLANEOUS DOCKET

**Return of Property**

In Re:   Pace-O-Matic Equipment

Page 5 of 5

## CASE FINANCIAL INFORMATION

Last Payment Date:  11/16/2015                                        Total of Last Payment:  -$35.00

| Pace-O-Matic Equipment<br>Petitioner | Assessment | Payments | Adjustments | Non Monetary<br>Payments | Total |
|---|---|---|---|---|---|
| **Costs/Fees** | | | | | |
| Petitions/Motions (Beaver) | $29.50 | ($29.50) | $0.00 | $0.00 | $0.00 |
| Transcripts (Beaver) | $111.93 | ($111.93) | $0.00 | $0.00 | $0.00 |
| Copies (Beaver) | $35.00 | ($35.00) | $0.00 | $0.00 | $0.00 |
| Costs/Fees Totals: | $176.43 | ($176.43) | $0.00 | $0.00 | $0.00 |
| Grand Totals: | $176.43 | ($176.43) | $0.00 | $0.00 | $0.00 |

** - Indicates assessment is subrogated

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets . Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports.  Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police.  Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in  18 Pa.C.S. Section 9183.

```
*****************************************************************************************
*                                                                          P. 01        *
*                              TRANSACTION REPORT                                        *
*                              ─────────────────                                         *
*                                                      DEC-24-2014 WED 12:12 PM          *
*                                                                                        *
*     FOR:  EddyDeLucaGravinaTownsen      412 281 3537                                   *
*─────────────────────────────────────────────────────────────────────────────────────*
*     SEND                                                                               *
*                                                                                        *
*   DATE  START    RECEIVER         TX TIME  PAGES TYPE      NOTE            M#  DP       *
*─────────────────────────────────────────────────────────────────────────────────────*
*   DEC-24 12:11 PM 17704415500     **'**"    0  FAX TX      BUSY            223          *
*─────────────────────────────────────────────────────────────────────────────────────*
*                                                                                        *
*        770·441 - 5550                       TOTAL :        OS  PAGES:   0               *
*                                                                                        *
*****************************************************************************************
```

# EDDY, DELUCA, GRAVINA & TOWNSEND

ATTORNEYS AT LAW*
MANOR BUILDING PENTHOUSE
564 FORBES AVENUE
PITTSBURGH, PENNSYLVANIA 15219

\* NOT A PARTNERSHIP

TELEPHONE 412 281-6256

JOHN D. EDDY
WAYNE V. DeLUCA
THOMAS J. GRAVINA
STEVEN C. TOWNSEND

FAX 412 281-3537
eddy@pghlaw.com

## FAX COVER SHEET

THIS FAX IS A CONFIDENTIAL COMMUNICATION INTENDED SOLELY FOR THE NAMED RECIPIENT. IF YOU ARE NOT SUCH PERSON OR SUCH PERSON'S AGENT, YOU ARE HEREBY DIRECTED TO TELEPHONE US IMMEDIATELY AND RETURN THIS COMMUNICATION TO US BY MAIL. ANY REVIEW, DISTRIBUTION, COPYING OR DISSEMINATION OF THIS COMMUNICATION BY AN UNINTENDED RECIPIENT IS PROHIBITED.

DATE: _12/24/14_

THIS FAX IS DIRECTED TO: _RYAN WOOD / MIKE PRICE_

FAX NO. _770 · 441 - 5550_

NUMBER OF PAGES (INCLUDING THIS COVER SHEET): _14_

RE: _BEAVER DECISION_

COMMENTS: _CONGRATULATIONS - COURT RULED_
_IN YOUR FAVOR - DECISION ATTACHED_
_I WILL BE IN MY OFFICE FRIDAY_
_LEAVING NOW -_

SENT BY: _WAYNE DELUCA_

FAX NO.: _(412) 281-3537_

## EXHIBIT
## 4.2

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY

PENNSYLVANIA

CRIMINAL DIVISION

| | |
|---|---|
| In re: | : |
| | : |
| PACE-O-MATIC, INC. EQUIPMENT | :     M.D. 965-2013 |
| | : |
| TERMINAL I.D. NO. 142613 | : |

**MEMORANDUM OPINION AND ORDER**

H. KNAFELC, J.                                                December 23rd, 2014

## I.    PROCEDURAL HISTORY

On November 19, 2013, agents of the Pennsylvania Bureau of Liquor Control Enforcement seized a Pace-O-Matic, Inc. video game device from the American-Italian Club located in Aliquippa, Beaver County. The manufacturer of the device filed a timely Petition for Return of Seized Property and requested a post-seizure hearing pursuant to Pennsylvania Rule of Criminal Procedure 588. This Court held a hearing on the matter on September 26, 2014. The sole purpose of that hearing was to gather evidence as to whether the confiscated property constituted a gambling device per se. The evidence fails to demonstrate that the machine is a gambling device per se, and Petitioner's motion for its return is GRANTED.

During the hearing, this Court heard testimony on the operation of the confiscated device. The Court heard testimony on two issues: first, whether Petitioner was entitled to lawful possession of the res; and second, whether the games installed on the device were games of

chance or games of skill. Both parties stipulated that the other elements of a gambling device per se, consideration and reward, were satisfied. The device requires a player to put in cash in order to access the games installed on the device. Successful play has the potential to reward a player with more credits than he or she put into the device. Thus, this Court is tasked only with resolving whether the games on the device are games of skill or games of chance. Because of the level of interactivity between the game and the player, as well as the gameplay mechanics, the evidence fails to show that the games included on the device—Tic-Tac-Toe, unlockable bonus game, and the "Follow-Me" mini-game—are anything other than games of skill. The device is therefore not a gambling device per se and shall be returned to Pace-O-Matic, Inc.

## II.    STATEMENT OF FACTS

The property seized in this case is a coin-operated table top machine that offers a Tic-Tac-Toe puzzle, an unlockable bonus game, and a "Follow-Me" mini-game. The player uses a touch screen navigate through the system. A player initiates the game by inserting money into the device. A player can place a bet of 40, 80, 120, 160, or 200 "points." One point equals one cent. A player then proceeds to select one of three themes. These are "Bombs and Bombshells," "Pirates Prize," and "Cocktail Cove." While the graphics and some pay amounts differ depending on which theme the player chooses, the gameplay is functionally equivalent among the three themes. The player has access to the same features regardless of which theme he or she chooses, and the themes will thus be treated interchangeably.

The first game that the player interacts with is the Tic-Tac-Toe puzzle. This is the primary game included on the device, and a player cannot access the other features of the game without first playing the Tic-Tac-Toe puzzle. Upon initiating gameplay, the game spins each of the nine reels arranged in a three-by-three grid on the screen. After the reels stop spinning, the

player has ten seconds to select one of the nine cells to change a symbol in that position to a wild symbol. The player is tasked with choosing the most advantageous spot to place the wild. Whether one spot is more advantageous than another depends on the value of the symbols in the row, column, or diagonal that was completed, and whether completion of one row, column, or diagonal completes another. If the player does not make a selection in the allotted time, no wild symbol will be placed on the screen. Because a random number generator excludes an automatic winning game, failure to place the wild will always result in a loss for the player. Each game will have at least one spot where placing the wild will result in a nonzero score, and no game will be completely unwinnable.

A player has the opportunity to access a bonus game while playing the Tic-Tac-Toe puzzle. Certain symbols in the three-by-three grid have the potential to unlock the bonus game. A player must align three bonus symbols in a row, column, or diagonal on the three-by-three grid. Where the player manages to place a wild in the proper position, the game awards the player with a bonus shooting game. There are slight differences in the bonus games depending on the theme chosen, but the core gameplay mechanics of the three bonus games are virtually identical, and will be treated in the same manner. The bonus games are shooting-style games. Targets appear at random positions across the screen, and the object of the bonus game is to target all of the symbols on the touch screen during the time allotted (30 or 45 seconds, depending on the theme chosen). The speed with which the targets appear on the screen and the fact that they are scattered about the screen provides the game's challenge. The player is rewarded with points depending on how many of the symbols he or she was able to target and touch.

If, during the Tic-Tac-Toe game, the player wins an amount that is less than 104% of the purchase price to play the game, the player is afforded the option of selecting the "Follow-Me" mini-game. A player who chooses to proceed with the Follow-Me feature is presented with a three-by-three grid of colored dots. Essentially, the Follow-Me feature is a memory game. The dots flash in a random sequence which the player must repeat. Starting with one circle flashing, the player will need to follow the correct sequence for a total of forty rounds of play, with each sequence adding another circle. If a player successfully follows the pattern each time, the player is awarded with 104% of his or her original wager. For example, if the player had wagered 40 credits, successful completion of the Follow-Me mini-game would result in a payout of 42 credits.

## III.    LEGAL BACKGROUND AND ANALYSIS

A motion for return of property pursuant to Rule 588 is intended to return goods to a person aggrieved by a search and seizure based upon the right to lawful possession and the non-contraband status of the goods. Pa. R. Crim. P. 588; *Com. v. Pomerantz*, 573 A.2d 1149, 1150 (Pa. Super. Ct. 1989). Rule 588 provides, in pertinent part, the following:

**Rule 588. Motion for Return of Property**

(A)    A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B)    The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

A petitioner's motion for return of property must, at a minimum, allege that the petitioner is entitled to lawful possession of the property at issue. *Pomerantz*, 573 A.2d at 1150. The

petitioner must prove that he is entitled to possession by a preponderance of the evidence. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. Ct. 2009). A preponderance of evidence standard is tantamount to a "more likely than not" standard. *Com. v. $6,425.00 Seized from Esquilin*, 880 A.2d 523 (Pa. 2005).

Where a petitioner meets the minimal burden of establishing entitlement to lawful possession, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property. *Ibid.* The Commonwealth must prove the per se nature of machines seized as gambling devices by a preponderance of the evidence. *Com. v. Irwin*, 636 A.2d 1106, 1107 (Pa. 1993).

A machine is a gambling device per se if three elements are present: (1) consideration, (2) result determined by chance rather than skill, and (3) reward. Because both the Petitioner and the Commonwealth have stipulated that the machine meets the consideration and reward elements, only the second element—whether the result is determined predominantly by chance or skill— will be addressed in depth.

That successful play is determined by chance rather than skill is an element essential to a finding that a machine is a gambling device per se. *Com. v. Two Elec. Video Poker Game Machs.*, 465 A.2d 973, 977 (Pa. 1983). Courts must determine in each case the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome. *Ibid.* In order for a game to constitute gambling, it must be a game where chance predominates rather than skill. *Ibid.* A showing of a large element of chance, without more, is not sufficient, and the outcome need not be wholly determined by skill in order for a machine to fall outside the gambling per se category. *Ibid.* The mere fact that a machine

involves a substantial element of chance is insufficient to find that a machine a gambling device. *Ibid.*

A game decided predominately on the basis of probability rather than any real input of skill from a player will be a game of chance. The level of interactivity and the consequences of a player's choices in playing the game are relevant in determining whether the game is one of chance or skill. *See id.* at 976 (noting that while skill, in the form of knowledge of probabilities, can improve a player's chances of winning a video poker game, chance ultimately determines the outcome because chance determines the card dealt and the cards from which one can draw); *compare Com. v. Dent*, 992 A.2d 190 (Pa. Super. Ct. 2010) (holding that although skill can determine the outcome in a poker game, players are still subject to defeat at the turn of the cards), *with Am. Amusements Co. v. Neb. Dep't of Revenue*, 807 N.W.2d 492 (Neb. 2011) (noting that because the gameplay in a tic-tac-toe puzzle was under the control of the player and not the machine, the game was one of skill rather than chance).

### A.   Lawful Possession

The initial burden is on the Petitioner, Pace-O-Matic, Inc., to prove that it is entitled to lawful possession of the res at issue by a preponderance of the evidence standard. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa. Super. 2009). Petitioner has met that burden here. The device at issue is a coin-operated tabletop video game machine manufactured by Pace-O-Matic, Inc. The fact that Petitioner has manufactured, designed, and provided the source code for the machine makes it more likely than not that Petitioner is entitled to lawful possession of the video game machine at issue.

## B. Gambling Device Per Se

Upon a showing of lawful entitlement, the burden shifts to the Commonwealth to prove by a preponderance of the evidence that the video game machine seized is contraband. *Com. v. Irwin*, 636 A.2d 1106, 1107 (Pa. 1993). Specifically, the government must show that the video game is a "gambling device per se." *Ibid.* In determining whether a machine can be seized, the machine must be so intrinsically connected with gambling as to constitute a gambling device per se. This intrinsic connection is met where three elements are present: (1) consideration, (2) result determined by chance rather than skill, and (3) reward. *Ibid.* The parties in this case have stipulated that, because a player must insert money to begin play and is enticed to play by the promise of a payout, the first element, consideration, and the third element, reward, are met. The only issue remaining is whether successful play is determined predominantly by skill or chance.

There is no doubt that the games at issue contain elements of skill and chance. It is therefore the task of this Court to determine, on balance, whether skill or chance is the dominant factor in successful play. The operation of the machine and the way a player interacts with the machine must be evaluated. As noted, the machine contains the following features: (1) a Tic-Tac-Toe puzzle; (2) an unlockable bonus shooting game; and (3) a "Follow-Me" mini-game. The extent to which chance and skill decide the outcome of each game must be evaluated.

### 1. Tic-Tac-Toe Puzzle

The parties disagree on whether skill or chance dominates the outcome of the Tic-Tac-Toe puzzle. The Commonwealth asserts that the skill required to place the wild symbol in a spot is outweighed by the chance determination of the puzzle itself. This Court respectfully disagrees with the Commonwealth's position. Although there often is, as the Commonwealth points out, an "obvious" position where placement of the wild would generate a nonzero score, several puzzles

have a position where placement of the wild will lead to a more advantageous score. It takes skill for a player to recognize both which symbols are most advantageous to his or her payout and which position will maximize the player's score. A player who lacks the skill to recognize that the placement of a wild symbol in a particular position will lead to the completion of two or three rows, columns, or diagonals will not achieve as high a score as one who does recognize those patterns. Were the game one predominantly based on chance, one would reasonably expect that a skilled player and an unskilled player would stand to gain roughly the same score. However, a more skilled player is much more likely to achieve a greater score than an unskilled player, which augurs in favor of holding that the game is one of skill, not chance.

The Commonwealth places heavy emphasis on the fact that the device utilizes a random number generator to generate the puzzle itself. However, the fact that a machine utilizes a random generator, without more, is insufficient to push this game into the realm of chance. The function of the random number generator is not to determine whether player wins or loses, but merely to determine which puzzle within a finite pool of puzzles will be presented to the player. The random number generator simply constructs the field on which the player will be playing. It establishes the constraints in which the player must operate to receive the most points possible. Additionally, the generation of a puzzle is not a purely random event. Each puzzle presented to the player has the possibility of a win, and the player will not be presented with a puzzle that is already solved. Thus, the purpose of the random number generator is only to choose, at random, which of a large—yet finite—pool of puzzles to present to the player. Even if the presentation of the puzzle were a "substantial element of chance," this, without more, is insufficient to a finding that the Tic-Tac-Toe game is a game of chance. *Com. v. Two Elec. Video Poker Game Machs.*, 465 A.2d 973, 977 (Pa. 1983).

Even more essential to the analysis than how the game is constructed and presented is the gameplay itself. During the course of play, the element of skill predominates and determines the outcome to a much higher degree than chance. It is up to the player to choose which spot to place the wild in order to achieve the most advantageous score. Our Superior Court's holding in *Dent* is instructive. There, the Court held that Texas Hold 'Em is predominantly a game of chance. *Com. v. Dent*, 992 A.2d 190 (Pa. Super. Ct. 2010). The Court placed great weight on the fact that while skill can determine the outcome in a Texas Hold 'Em poker game, "players are still subject to defeat at the turn of the cards." *Id.* at 196. In the Tic-Tac-Toe game at issue here, the players are not subject to victory or defeat at the spin of the reels. The game's code precludes automatic victories and automatic defeats. Unlike a traditional poker game, the players of the Pennsylvania Skill game are not at the mercy of the hand they are dealt. Every puzzle is winnable, and some have higher wins depending on whether the player has the skill to recognize the most advantageous spot to place the wild. In this game, the player's choices are the "instrumentality for victory"—in sharp contrast to the capricious nature of card dealing and shuffling present in a traditional game of Texas Hold 'Em. *See ibid; see also Am. Amusements Co. v. Neb. Dep't of Revenue*, 807 N.W.2d 492, 504 (Neb. 2011) (holding that where a puzzle is more controlled by the player than not, it is predominantly a game of skill).

This Tic-Tac-Toe puzzle is also different from the devices confiscated in *Two Electronic Poker Game Machines*. There, the Pennsylvania Supreme Court dealt with a coin-operated video game that simulated the events of five card draw poker. 465 A.2d 973 (Pa. 1983). The deck is "shuffled" by a random number generator, and the player is awarded points for various combinations of cards, ranging from one point for a pair of aces to fifty points for a straight flush. *Id.* at 976. The Court emphasized that chance was the predominant factor in the outcome

Page 9 of 13

because chance determined the cards dealt and the cards from which one could draw. *Id.* at 978. The "skill" at issue was knowledge of probabilities. *Ibid.* This is different from the Tic-Tac-Toe game in this case for two reasons. First, the random number generator in the machine here does not determine a win or loss; rather, it merely chooses the puzzle that the player is presented with. Second, knowledge of statistics was the skill at issue in *Two Electronic Poker Game Machines*, whereas the skill at issue here is ability to play Tic-Tac-Toe. Knowledge of statistics was a skill wholly independent of the simulated poker game, and was not contemplated by or integral to the gameplay. It was a skill that was based on the nature of the player rather than the nature of the game. Here, skill at Tic-Tac-Toe and pattern recognition is fully integrated into the gameplay, and is demanded of the player for successful play. A player cannot beat the game with mere knowledge of probabilities; the player must choose the most advantageous spot to place the wild in the allotted time. The player exercises control over the game, and is not at the mercy of getting a lucky hand.

On balance, the outcome of the game is determined predominantly by skill rather than chance.

### 2. Bonus Game

This shooting-style game is predominantly a game of skill. The game requires that the player recognize, target, and touch the symbol within the allotted time frame. This requires hand-eye coordination and dexterity. Chance or luck has very little to do with the outcome of the game. Instead, the outcome is dependent almost wholly on a player's skill. That the bonus game presents itself only if certain conditions are fulfilled is immaterial to determining whether skill or chance dominates in the bonus game. Rather, the availability of the game is simply a

consequence of one possible puzzle that a player may be presented with in the Tic-Tac-Toe game.

### 3. "Follow-Me" Mini-Game

Successful play of the Follow-Me feature undoubtedly requires a great deal of skill on the part of the player. The game starts out easy, but becomes progressively more difficult with each recurrence of flashing dots. It is true that the average player cannot be expected to complete the Follow-Me feature successfully. After 10 to 15 sequences, most players would be unable to remember the sequence. The feature is immensely difficult and demands a much higher level of cognitive skill than the average player could muster. This immense difficulty does not, as the Commonwealth suggests, transform the game into a game of chance. The only chance involved in the game is the sequence in which the circles flash. The odds against randomly choosing the correct sequence for each of the forty rounds (a total of 820 flashing dots) are astronomical. Skill determines how well a player does.

### IV. CONCLUSION

Each of the three games installed on the confiscated machine is predominantly a game of skill rather than a game of chance. Successful play at the Tic-Tac-Toe game depends mainly on a player's ability to recognize Tic-Tac-Toe patterns to maximize his or her score. The bonus game is essentially a shooting game, requiring a player to target and touch numerous symbols on the screen to achieve a high score. Finally, the Follow-Me mini-game, though immensely difficult for the average player, requires a great deal of cognitive ability for a player to remember the intricate sequence of flashing dots. Because the preponderance of the evidence fails to show that

the three games are games of chance, the Commonwealth has failed to prove that the property seized is a gambling device per se. The machine is therefore not contraband, and Petitioner's motion for return of property is granted.

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY

PENNSYLVANIA

CRIMINAL DIVISION

In re:                                    :
                                          :
                                          :
PACE-O-MATIC, INC. EQUIPMENT              :       M.D. 965-2013
                                          :
                                          :
TERMINAL I.D. NO. 142613                  :


## ORDER

AND NOW, this _23rd_ of _December_, 20_14_, it is hereby

ORDERED and DECREED that Petitioner's Motion of Return of Property pursuant to

Pennsylvania Rule of Criminal Procedure 588 is GRANTED. The Commonwealth is ORDERED

to return the Pennsylvania Skill game to Pace-O-Matic, Inc.


BY THE COURT

BY THE COURT

2014 DEC 23 A 9: 58

HARRY E. KNAFELC
JUDGE

_____ J.