**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

-------------------------------------------------------------------------------------------------------------------

PENNSYLVANIA SKILL GAMES, LLC

Plaintiff,

v.

PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC.,

Defendants.

## RESPONSE TO MOTION FOR JOINDER

AND NOW COME Pace-O-Matic, Inc., ("Pace-O-Matic") Miele Manufacturing, Inc., ("Miele"), POM of Pennsylvania, LLC ("POM"), and Savvy Dog, LLC ("Savvy Dog") (hereinafter collectively referred to as the "POM Parties"), by and through their undersigned counsel, and file the within Response to Motion for Joinder ("Joinder Motion") stating as follows:

## **INTRODUCTION**

The Joinder Motion by Pennsylvania Skill Games, LLC ("PSG") is baseless. It is legally incorrect, factually flawed, and premised upon a fictional account of PSG's case. It also attempts to shoehorn "evidence" of PSG's alleged trademark usage that was not previously produced by PSG in discovery despite repeated demands from the POM Parties. PSG has the burden of proof here, and it has failed to satisfy its burden. Pegasus Int'l, Inc. v. Crescent Mfg. Co., No. CIV.A. 06-2943, 2007 WL 1030457, at *2 (E.D. Pa. Apr. 2, 2007).

The record in this matter is set. With the exception of a number of documents, depositions, and physical machine inspections that PSG failed to provide/allow before prior counsel withdrew, discovery concluded in July 2019. Upon agreement of the parties, as discussed at the last status conference, the POM Parties are still entitled to these data.

Considering the advanced stage of this case, it would seem that if PSG had a factual basis to support its Joinder Motion, it would have put its best foot forward. It would seem that PSG could have substantively cited to one of nine deposition transcripts available or the documents produced in discovery over the past year. Instead, the Joinder Motion reflects PSG's entire case -- incomplete and built upon flawed assumptions that superficially cherry pick a handful of irrelevant documents.

The story of this case is simple. Pace-O-Matic in 2013 needed a human being—any human being—to put one of its machines into a location in Pennsylvania for the premediated purpose of having law enforcement seize the device. The seizure would then trigger a lawsuit from Pace-O-Matic to recover the machine, which (hopefully) would result in a court decision that the device and its software was predominantly a game of skill, not chance. The attorney for Pace-O-Matic at the time found someone to deliver the machine, and that person was Albert Unis

(Ex. A, POM 000001). Mr. Unis dropped off the machine at the Italian American Club on or about October 1, 2013, the police picked up the game, and Pace-O-Matic successfully litigated the dispute. On December 23, 2014, the Beaver County Court of Common Pleas granted Pace-O-Matic's petition for the return of property and ruled that the Pace-O-Matic machine was predominantly a game of skill, not chance. (Joinder Motion, Ex. 4).

Other than being a single-purpose vendor, Mr. Unis had no other involvement in the creation of the machine or the litigation.

Pace-O-Matic had never heard of or had any involvement with Mr. Unis prior to the service identified above, nor was it aware of any usage of the trade name "Pennsylvania Skill." (Ex. B). Any suggestion to the contrary is a complete fiction.

Contrary to the story PSG tells, the machine that Mr. Unis picked up and delivered was pre-loaded with the mark "Pennsylvania Skill" on its screen. (Exhibit C, POM 0000018). Pace-O-Matic had already sold other identical machines with identical marks **prior to** the date when Mr. Unis picked up the machine for his delivery. In fact, Pace-O-Matic sold a machine bearing the Pennsylvania Skill Mark to a company in Pottsville, Pennsylvania on September 2, 2013—a month before Mr. Unis delivered the machine for the controlled pickup in Beaver County. (Exhibit D, POM 0000053). Indeed, Pace-O-Matic began using the trademark "Pennsylvania Skill" before any interaction with Mr. Unis. (Ex. E, POM 000019-21). None of Pace-O-Matic's efforts occurred with the assistance of Mr. Unis or PSG, nor had the POM Parties had never even heard of Mr. Unis or PSG at that point.

If PSG has proof to establish that it "developed" a stylized form of the trademark at issue (Joinder Motion, ¶ 4) or that an attorney "naturally" directed Pace-O-Matic and Miele to Mr. Unis because of some perceived market presence, the POM Parties would love to see this

3

evidence because it is not of record. Notably, PSG attached no evidence to support these claims, despite referring to the "discovery to date." (Joinder Motion, ¶ 4). There is a reason for this; these assertions are blatant misrepresentations.

Somehow, over time, PSG started believing that it developed the "market" for legalized skill games in Pennsylvania and started taking credit for the decades of work Pace-O-Matic had financed and perfected. This PSG fiction culminated in the dispute before this Honorable Court after PSG filed a trademark application using artwork created solely by Pace-O-Matic.

PSG now demands—after nearly 18 months of litigation— that this Honorable Court permit it to add 20+ entities (which include fictitious names and individuals) based upon a confusing and unfounded assertion of an alleged "fraudulent conveyance" and an improper reading of Rule 19.

At its core, the Joinder Motion appears to allege that Pace-O-Matic created 22 state-specific entities (the "Potentially Joined Entities") sometime in 2016, when PSG allegedly complained about a breach of contract, which somehow necessitates joining all of those entities to this lawsuit. (Joinder Motion, ¶¶ 10, 11). PSG, which operates only about 100 legal[1] gaming machines in the Commonwealth of Pennsylvania (out of the thousands owned by other operators), believes that Pace-O-Matic launched a nationwide campaign to hide assets from PSG. By contrast, Pace-O-Matic has been in business since 2000, operates in numerous markets across the country, and is a national leader in the gaming industry. PSG is essentially a one-man operation run by a young man in his early 20s with literally no expertise in the business.

---

[1] PSG deploys illegal games in the Commonwealth of Pennsylvania and places them next to legal Pace-O-Matic machines. Pace-O-Matic not only singlehandedly obtained the Beaver County ruling that held that its games are legal games of skill, it has spent numerous hours and significant amounts of money working with the Pennsylvania legislature on regulatory requirements for the market. PSG's unlawful use of illegal games in proximity of legal Pace-O-Matic games puts the business interests of all the POM Parties at risk. Even worse, PSG is using illegal games under the Pace-O-Matic branding and trademarks.

This Motion should fail for the following reasons:

- F.R.C.P. 19 does not permit joinder under these circumstances;

- All the parties to the contract at issue are already parties to the present litigation, as are all parties that may have any interest in the trademark claims; and

- There is no suggestion of any insolvency or intent to hinder, delay, or defraud any creditor, even if PSG's Rule 19 argument were valid, which the POM Parties dispute.

What is stunning and most disconcerting, however, is while PSG failed to produce a single shred of evidence to support the claim that it used "Pennsylvania Skill Games" as a trademark in commerce (other than two contracts that allegedly display a trade name), it now attaches affidavits to the Joinder Motion in Exhibit 2 that contain several previously undisclosed photographs. These photographs purport to show usage in commerce of the word mark years ago. The photographs are also "attested to" by witnesses PSG did not disclose before its new counsel presented an amended initial disclosure on February 17, 2020. PSG wants this Court to believe on the eleventh hour of this case that it now has "evidence," which PSG improperly withheld, to not only support its principal claims, but to expand the litigation to include many additional corporate parties that have no involvement in this suit.

## **ARGUMENT**

### *A.      Joinder is Inappropriate*

PSG's sole argument appears to be that a fraudulent conveyance allegedly occurred when Pace-O-Matic created a series of state-specific entities, as corporations operating in numerous states often do, and therefore, those entities and all the parties that may be involved in their creation must be joined as indispensable parties. PSG also argues that alleged fictitious names used by Miele and Miele's principal must be added to the litigation. PSG makes no other arguments in this regard, nor does it claim complete relief is impossible with the current slate of

litigants. PSG fails to articulate a single relevant fact regarding the creation of these entities, that any transfer occurred, or that the creation of the various entities rendered the current parties to this litigation insolvent.

Other than restating the text of F.R.C.P. 19, PSG offered no analysis or any argument about why that rule should apply in this case to afford such extraordinary relief.

### 1.    *Joinder is inappropriate under Rule 19*

Pursuant to Rule 19, courts must engage in a two-pronged inquiry to determine whether joinder of a party should be required. First, the court must determine whether a party is 'necessary' to the action, and if so, whether the party is 'indispensable' to the action under Rule 19(b). Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc., 210 F.3d 246, 249-50 (4th Cir. 2000) (citing Fed. R. Civ. P. 19(a), (b)). Thus, Rule 19(a)(1)(A) focuses on the relief to existing parties, whereas Rule 19(a)(1)(B) focuses on the interest of the absent person and the effect, if any, her absence would have on either herself or the existing parties.

The applicable parts of F.R.C.P. 19 state:

(a) Persons Required to Be Joined if Feasible.

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

In short, Rule 19 requires that a "person" who may be subject to service of process and will not deprive a court of subject matter jurisdiction must be joined if complete relief cannot be afforded among existing parties or that person (the party to be joined) has an interest in the action, and disposing of the lawsuit would impair the potentially joined party's ability to protect its interest or leave the existing litigants to a "substantial risk" of incurring double, multiple, or inconsistent obligations.

Here, the "person" (or "people") PSG seeks to join under Rule 19 are the Potentially Joined Entities, which have no interest in the action other than PSG's newly asserted claims of "fraudulent conveyance." None of these entities has an interest in the current litigation. Disposing of this litigation is of no moment to these entities. None of the Potentially Joined Entities are parties to the underlying contract or have interests in the trademark claims in dispute. In sum, none of these entities have any involvement, rights, interest, or otherwise in this litigation. PSG may suggest it has a claim against those parties, but any such suggestions do not support joinder under Rule 19.

For purposes of analysis, if the term "person" in Rule 19 were substituted for "Potentially Joined Entities" and the roadmap crystalizes[2]. When doing so, it is clear that this Court can afford complete relief on all claims to this litigation as to all existing parties. PSG alleges only unfair competition, trademark violations, and breach of contract in its counterclaim and complaint. All the parties required to afford relief on those causes of action are already present in the case.

---

[2] PSG has not addressed how jurisdiction would be appropriate here. There is no suggestion in its filing that any of the Potentially Joined Entities has sufficient minimum contacts with the forum state for personal jurisdiction.

7

PSG does not offer a <u>single</u> case that supports joinder based upon an alleged fraudulent conveyance to a third party or any fact pattern remotely similar to this case. In fact, it is unclear what specific part of F.R.C.P. 19 PSG is relying upon.

The Eastern District considered the issue of joinder in <u>Pegasus Int'l, Inc. v. Crescent Mfg. Co.</u>, No. CIV.A. 06-2943, 2007 WL 1030457, at *4 (E.D. Pa. Apr. 2, 2007). The case does not involve a fraudulent conveyance, but the analysis is helpful.

In that case, the plaintiff and defendant had a business relationship. The defendant sold cleaning products to the plaintiff, which resold them to retail stores, including Dollar General. The plaintiff sued on theories of breach of contract and tortious interference with contract due to alleged competition. <u>Id</u>. The defendant filed a counterclaim alleging sixteen counts, including fraud and breach of contract. <u>Id</u>.

The plaintiff filed a motion for joinder, claiming that the defendant pretended to be another company called S.S. Nathans, which was a third-party to the litigation and an approved vendor for Dollar General. Plaintiff claimed that S.S. Nathans was going to file suit against the same defendant and pursue the same damages, e.g., disgorgement of profits, which means that the parties would be fighting over the same pot of money.

The <u>Pegasus</u> court denied the motion. That court noted that under F.R.C.P. 19(a)(1), complete relief could be afforded to all existing parties to the litigation. S.S. Nathans was not a party to the contract that formed the basis for the claims. As such, full relief could be afforded without any joinder. (<u>Id.</u> at 3).

The <u>Pegasus</u> court then examined joinder under F.R.C.P. 19(a)(2), which related to whether the defendant had a substantial risk of double or inconsistent obligations because both the plaintiff and S.S. Nathans would both seek disgorgement of profits. The court held that the

8

assertion was too speculative, the causes of action would be different, and S.S. Nathans was not a party to the underlying contract. The court also noted that the defendant was unconcerned about S.S. Nathans being absent from the litigation. The POM Parties are similarly unconcerned about adding the Potentially Joined Entities.

In In re Olympic Mills Corp., 477 F.3d 1, 9 (1st Cir. 2007), the court was confronted with the question of whether parties to a subordination agreement that had competing interests to an asset should be joined in an adversary proceeding under the bankruptcy rules for required joinder, which rules are identical to the federal rules. The Olympic court concluded that the adversary proceeding litigation concerning the subordination agreement was entirely different from the alleged fraudulent conveyance claims, and the parties seeking joinder could bring those claims in a separate action. Id. That analysis is instructive because PSG's alleged claims in the present litigation sound in trademark and contract, not fraudulent conveyance. If PSG truly has a separate fraudulent conveyance claim, it is free to file such a claim (or it should have already).

This Honorable Court also may wish to consider the impact of adding the Potentially Joined Parties to the present litigation. "Findings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 106, 88 S.Ct. 733, 736, 19 L.Ed.2d 936 (1968).  If the Potentially Joined Entities were compelled to enter this litigation after the close of discovery and exchange of expert disclosures, this case will become unwieldy, excessively expensive, and would go on for a substantial period. Simply, the argument of PSG in this regard does not justify the relief it requests.

9

### 2.    *Claims of "Fraudulent Conveyance" Do Not Support Joinder*

In the event that this Honorable Court were to find merit in PSG's Rule 19 argument, the next inquiry would be whether PSG set forth facts sufficient to allege a fraudulent conveyance, which could only be achieved through the amending the pleadings and expanding the instant litigation -- or filing another lawsuit.

While decidedly unclear from its papers, PSG appears to rely upon generic references to the Pennsylvania Uniform Fraudulent Conveyance Act (the "Act") 12 Pa.C.S.A. § 5101, et seq., Under the Act, creditors may obtain voidance of a transfer or obligation made to another party under three conditions: 1) the plaintiffs are "creditors" as defined by the statute; 2) the transfers were made with actual fraudulent intent; and 3) there are no viable defenses. Id. § 5104(a)(1); 5107(a)(1); 5108(d). Carroll v. Stettler, 941 F. Supp. 2d 572, 578 (E.D. Pa. 2013).

PSG is arguing that allegedly fraudulent conveyances allegedly occurred, which requires the joinder of the Potentially Joined Entities regardless if they have any interest or claim in the present litigation. PSG has thrown up a series of case notes and regurgitated a statute, but left it up to this Court and the POM Parties to decipher its argument.

The crux of PSG's argument in this regard, to the extent it can be discerned, appears to be that Pace-O-Matic and Miele allegedly breached the contract in this case and then Pace-O-Matic initiated a "fraudulent alter-ego conveyance reorganization of the single Pace-O-Matic entity into approximately 22 separate entities." (Motion ¶ 11). Apparently, PSG believes that Pace-O-Matic, which does business all over the country, restructured its entire corporate operations in fear of an unfounded, unproven, and as-yet unasserted claim by PSG—an entity that owns only a handful of the thousands of Pace-O-Matic games sold in the Commonwealth of Pennsylvania. Based on

10

this unsubstantiated belief (and a temporal coincidence), PSG argues that the Potentially Joined Entities must be present in this litigation.

PSG also makes the statement that "Pace-O-Matic has diverted opportunities[3] and fraudulently separated out assets and business into Savvy Dog Systems, LLC … and Bison Amusements, LLC…" (Id.)  PSG also seems to claim that Miele, which is a duly registered corporation in the Commonwealth of Pennsylvania, somehow needs to have its veil pierced because it may or may not use a fictitious name (despite not averring a single element required to pierce the corporate veil). PSG calls the creation of the state-specific LLCs a "wide *ex post facto* fraudulent scheme to avoid and hinder the collection of the assets of Pace-O-Matic." (Motion for Joinder, pg. 9). It goes on to list dozens of unanalyzed citations from unrelated jurisdictions. PSG does not articulate a single fact to support any of these bald assertions of alleged fraud, despite having an entire record before it.

A significant problem with PSG's argument is that any alleged "fraudulent intent" has no basis. Pace-O-Matic and Miele are the only parties to the terminated contract with PSG. Both entities are indeed very much alive and well. Both entities employ people, pay their bills, and engage in commerce. There are no facts alleged in the Joinder Motion to the contrary. Interestingly, PSG still buys fills from Miele (Joinder Motion Ex. 6.4) and up until recently, was buying machines from Pace-O-Matic. Pace-O-Matic recently stopped selling machines to PSG because of PSG's misconduct in the market, including the use of illegal gaming machines, misbranding equipment, and engaging in anti-competitive behavior.

The moral of the story is that in the unlikely event that PSG were to obtain a judgment in this litigation, the creation in the ordinary course by the POM Parties over 3 years ago of

---

[3] It is unclear how to respond to this assertion, as the POM Parties have no idea what opportunities PSG refers to, or how PSG even has standing to raise this issue, to the extent it even existed. No party here has any fiduciary obligation to PSG.

separate, state-specific entities  in connection with their national operations will have no bearing on PSG's ability to collect a judgment. The allegations by PSG of allegedly fraudulent conveyances, or any conveyances for that matter, are too remote and too speculative to carry the day on this motion.

### 3. *References to Miele Amusements or Lou Miele Individually are Improper*

PSG is alleging that some usage by Miele of an allegedly unregistered fictitious name gives rise to unspecified liability with respect to Miele Manufacturing, Inc., which then somehow gives rise to individual liability against Lou Miele. PSG alleges that there is some confusion over what "Miele Manufacturing" is or is not, and makes the unsupported allegation that there is a "conscious effort to avoid detection" of an unknown nature and that Lou Miele is asserting the "rights that are or should be those of Miele Manufacturing." (Joinder Motion, ¶ 13).

PSG has no standing to raise any issues as to how Miele Manufacturing does business. Miele Manufacturing is a duly registered corporation in the Commonwealth of Pennsylvania. Miele Manufacturing was organized on February 13, 2015. (Ex. F). The only effect of registering a fictitious name or being registered to do business in the Commonwealth is that it governs the ability of an entity to commence a lawsuit in its own name. In the present litigation, Miele appears only as a defendant, and does so under its corporate name.

If PSG is calling foul on the fact that its own contract lists "Miele Manufacturing" as a signatory instead of "Miele Manufacturing, Inc.," then that is PSG's issue. It cannot now recreate the wheel or attempt to add new parties, let alone an individual, based upon a speculative argument to add parties to this case.

Like the rest of PSG's Joinder Motion, the POM Parties cannot quite discern what PSG is asking for with respect to Miele or what support it has for its position. From the four corners of

12

the Motion, PSG has not set forth any rational basis to add any fictitious names (to the extent it even can) or individuals related to Miele.

## <u>CONCLUSION</u>

For the reasons set forth above, the Motion for Joinder must be denied.

Respectfully submitted,

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
   Julian E. Neiser
   Pa. Id. No. 87306
   T:  412-325-1116
   F:  412-325-3324
   E:  jneiser@spilmanlaw.com

   William P. Smith
   Pa. Id. No. 50352
   T:  412-325-1115
   F:  412-325-3324
   E:  wsmith@spilmanlaw.com

   One Oxford Centre, Suite 3440
   301 Grant Street
   Pittsburgh, PA  15219

   **Attorneys for POM Parties**

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

CIVIL ACTION NO. 2:18-CV-00722-PLD

The Honorable Patricia L. Dodge

      Plaintiffs/Counterclaim
      Defendants,

      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant/Counterclaim
      Plaintiff.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **Response to Motion for Joinder** was served upon the counsel of record this 2nd day of March, 2020 via ECF and as follows:

> Gregg R. Zegarelli, Esq.
> TECHNOLOGY & ENTREPRENEURIAL
> VENTURES LAW GROUP, P.C.
> Administrative Office:
> 2585 Washington Road, Suite 134
> Summerfield Commons Office Park
> Pittsburgh, PA 15241-2565, USA
> v.412.833.0600
> f.412.833.0601
> mailroom.grz@zegarelli.com
>
> **Counsel for Plaintiff Pennsylvania Skill Games, LLC**
>
> SPILMAN THOMAS & BATTLE, PLLC
>
> /s/ Julian E. Neiser
> Julian E. Neiser