IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC AND SAVVY DOG SYSTEMS, LLC, | 2:18-CV-00722-PLD |
| Plaintiffs, | |
| vs. | |
| PENNSYLVANIA SKILL GAMES, LLC. | |
| Defendant. | |

PENNSYLVANIA SKILL GAMES, LLC

Plaintiff,

v.

PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC.,

Defendants.

**MEMORANDUM ORDER**

Pennsylvania Skill Games, LLC ("PSG") has filed a Motion for Joinder of Necessary Parties Pursuant to Fed. R. Civ. P. 19 (ECF No. 55) ("Motion") in which it seeks joinder of multiple parties in these consolidated actions. POM of Pennsylvania, LLC, t/d/b/a Pace-O-Matic, Inc. ("POM") and Savvy Dog, LLC ("Savvy Dog") (sometimes collectively referred to as "the POM Parties") and Miele Manufacturing, Inc. ("Miele Manufacturing") oppose PSG's Motion (ECF No. 56). For the reasons that follow, PSG's Motion will be denied.

I. **Relevant Procedural Background**

The POM Parties commenced an action against PSG in May of 2018 at Civil Action 18-722 (the "POM Action") (ECF No. 1). PSG responded by filing an Answer, Affirmative Defenses and Counterclaim against POM and Savvy Dog (ECF No. 7). The POM Parties later amended their Complaint (ECF No. 29) to which PSG responded by filing an Answer, Affirmative Defenses and Counterclaim (ECF No. 30).

Subsequent to the commencement of the POM action, PSG commenced a lawsuit at Civil Action 18-941 against Pace-O-Matic, Inc. and Miele Manufacturing, Inc. (the "PSG Action"). The POM Action and PSG Action have been consolidated at Civil Action 18-722.

Several extensions of discovery have been granted. After prior counsel for PSG sought and was granted leave to withdraw, substitute counsel entered his appearance and thereafter filed the pending Motion for Joinder. A status conference was held on March 4, 2020, during which the POM Parties indicated that from their standpoint, discovery is basically complete. PSG advised that it anticipates additional written discovery regarding certain financial information and may seek to amend its claims.

II. **Factual Background**[1]

A. Summary of Allegations in the POM Parties' Complaint and PSG's Counterclaim

In their Amended Complaint, the POM Parties allege that POM markets, sells and distributes coin-operated skill games in Pennsylvania under the mark PENNSYLVANIA SKILL and has used this mark continuously since at least September 4, 2013. In addition to the word

---

[1] This section is only intended to provide a brief, non-dispositive summary of the facts pleaded in the consolidated actions. The facts set forth herein are based solely on the allegations of the parties as set forth in the POM Parties' Amended Complaint, the Counterclaim filed by PSG and the PSG Complaint. The Court makes no findings of fact with respect to these allegations.

2

mark, POM uses various combination marks with design elements for the mark PENNSYLVANIA SKILL in association with the goods and services it provides. POM avers that it sells and distributes its PENNSYLVANIA SKILL goods and services throughout Pennsylvania to its distributor who, in turn, distributes it to route operators, including PSG.

Savvy Dog alleges that it is the owner of various marks for PENNSYLVANIA SKILL through common law usage and Pennsylvania registration. Savvy Dog licensed the PENNSYLVANIA SKILL trademark to POM for exclusive use in Pennsylvania under a licensing agreement dated June 1, 2017.

According to the POM Parties, in May of 2015, PSG purchased equipment from Pace-O-Matic, the predecessor of POM, which included Pennsylvania Skill terminals and hardware. PSG then began promoting its games and otherwise misrepresenting to the public that it was the source of goods and services for PENNSYLVANIA SKILL.  In March 2018, PSG filed trademark applications for the word mark and combination mark PENNSYLVANIA SKILL despite its prior knowledge that POM is the actual source of the goods and services identified in PSG's trademark applications.

POM asserts that it owns valid federal statutory and common law rights to the PENNSYLVANIA SKILL mark. The POM Parties state that their PENNSYLVANIA SKILL mark is distinctive to both the public and Plaintiffs' trade and that POM has expended substantial time, money, and resources marketing, advertising and promoting the game equipment and software sold under the PENNSYLVANIA SKILL marks.

In the Amended Complaint, the POM Parties plead causes of action against PSG for false designations of origin in violation of 15 U.S.C. §1125 et seq., violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq., common law trademark

infringement, unfair competition, violation of the Pennsylvania Trademark Act, 54 Pa. C.S.A. § 1101 et seq. and a declaratory judgment in their favor. POM also asserts claims for breach of contract and unjust enrichment.

In its Counterclaim against POM and Savvy Dog, PSG alleges that it is the owner of the trademark and has used it since at least 2010 in connection with the advertising, marketing, promotion and operation of its electronic video game machines throughout Pennsylvania. PSG asserts that it has expended significant resources in connection with the use of its PENNSYLVANIA SKILL trademark.

According to the Counterclaim, PSG and Pace-O-Matic entered into an oral agreement to jointly develop electronic video game machines compliant with Pennsylvania law. It was agreed that Pace-O-Matic, with the assistance of PSG and Miele Manufacturing, would design and manufacture these video games. Among other things, it was also agreed that these games would be marketed and operated using the PENNSYLVANIA SKILL trademark. The parties successfully litigated the legality of these games under Pennsylvania law.

Thereafter, in May 2015, Pace-O-Matic and Miele Manufacturing entered into an Equipment Purchase Agreement with PSG pursuant to which Pace-O-Matic and Miele Manufacturing agreed to sell and assign to PSG terminals and hardware for electronic video games that contained legally permissible games and software. This included a right of first refusal, i.e., if PSG opted not to place video game machines in certain locations, Pace-O-Matic and Miele Manufacturing could do so.

In March 2018, PSG applied for two trademarks, one for the word mark PENNSYLVANIA SKILL and a second for the combination mark PENNSYLVANIA SKILL and design. According to PSG, Pace-O-Matic and Miele Manufacturing have improperly used the PENNSYLVANIA

4

SKILL trademark on video games that do not include skill games and software plays that are compliant with Pennsylvania law and have made false representations about these machines. PSG asserts that they have also falsely claimed to be the owners/licensees of the PENNSYLVANIA SKILL trademark.

PSG asserts the following counterclaims against the POM Parties: false designation of origin in violation of 15 U.S.C. §1125(A); false advertising in violation of 15 U.S.C. §1125(A); common law trademark infringement; breach of contract; and common law unfair competition.

B. The PSG Lawsuit

In the PSG Action, PSG brings claims against Pace-O-Matic, Inc. and Miele Manufacturing, Inc. In large measure, the factual allegations are substantially similar to those in the Counterclaim, and the same causes of action are pleaded. As mentioned previously, this case was consolidated with the POM Action by Order dated August 27, 2018.

III. **PSG's Motion for Joinder**

In its Motion for Joinder of Necessary Parties, PSG seeks to join twenty-eight parties, and cites Rule 19(a) of the Federal Rules of Civil Procedure as the basis for its motion.[2] PSG's Motion appears to be primarily based upon its assertion that there has been a "fraudulent 'alter-ego' conveyance of the single Pace-O-Matic entity into approximately 22 separate entities . . . ." (ECF No. 55 ¶ 11). According to PSG, this fraudulent scheme was done "immediately" following PSG's notice to Pace-O-Matic and "Miele Manufacturing" in March 2016 that they were in default of an

---

[2] PSG does not invoke Rule 19(b) or otherwise argue that joinder is not feasible with respect to the parties it seeks to join. Given the Court's analysis under Rule 19(a), it is not necessary to determine whether the proposed parties are indispensable.

Equipment Manufacturing Agreement between the parties. (*Id.* ¶¶ 9–11.)[3] It suggests that this scheme was implemented to avoid and hinder the collection of the assets of Pace-O-Matic.

Federal Rule of Civil Procedure 19(a) provides that:

(1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
   (A) in that person's absence, the court cannot accord complete relief among existing parties; or
   (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
      (i) as a practical matter impair or impede the person's ability to protect the interest; or
      (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P.19(a). The Court of Appeals has held that the clauses in Rule 19(a) should be treated in the disjunctive, that is, if either condition is met, the absent party is "necessary" *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312-19 (3d Cir. 2007). As the moving party, PSG "bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011).

As an initial matter, it should be noted while PSG claims that "the variety of business diversions and assignments are simply the alter ego of Pace-O-Matic," (ECF No. 55 at 8) there is a strong presumption against piercing the corporate veil. *See Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (PA. 1995); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) (the burden is "notoriously difficult" to meet). While not exhaustive, the relevant factors to consider include undercapitalization, failure to adhere to corporate formalities, intermingling of corporate and personal affairs and the use of a corporate form to perpetrate a fraud. *Lomax*, 669

---

[3] While PSG states that this reorganization took place immediately after the March 2016 notice, the documents attached to the Motion as Exhibits 11 and 12.1 through 12.19 (ECF No. 52-11&12) include a number of incorporation dates well past 2016.

A.2d at 895. PSG asserts that at least some of the entities it seeks to join are the alter ego of Pace-O-Matic, "utilizing Pace-O-Matic staff, emails, office and other resources, while keeping control" and that Pace-O-Matic engaged in a fraudulent scheme to hinder the collection of its assets. (ECF No. 55 at 8.) However, neither these allegations nor the exhibits provided by PSG that show that various POM-related entities were formed between 2016 and 2019 are sufficient to support an alter-ego theory that would impose *liability* for the claims PSG has asserted.[4]

Additionally, the Motion filed by PSG seeks to join some entities that are already parties to this action. In the POM Action, plaintiffs POM of Pennsylvania, LLC. t/d/b/a Pace-O-Matic and Savvy Dog Systems, LLC allege that they are limited liability companies formed under the laws of Wyoming. POM further alleges that it trades and does business as Pace-O-Matic, and that it is the exclusive licensee of the marks under a license agreement with Savvy Dog. PSG has asserted claims against these parties in the Counterclaim in the POM Action. In the PSG Action, PSG asserts multiple claims against Pace-O-Matic and Miele Manufacturing, Inc. PSG's Complaint describes Pace-O-Matic as a Georgia corporation and Miele Manufacturing as a Pennsylvania corporation. Thus, Pace-O-Matic, Inc., POM of Pennsylvania, LLC and Savvy Dog Systems, LLC, all parties that PSG seeks to join, are already parties to this consolidated action.

While PSG cites Rule 19 of the Federal Rules of Civil Procedure as the basis for its Motion, it fails to explain how it meets the requirements of the two alternative bases for joinder that are

---

[4] PSG asserts in its Reply that "Pace-O-Matic, Inc. is not, but must be, a party to the Pace-O-Matic case" and that the failure of the POM Parties to "bring an action with Pace-O-Matic is a constructive admission and manifestation of the intended scheme to delay, defraud and to avoid Pace-O-Matic's liability." (ECF No. 57 at 2). If Pace-O-Matic, rather than POM or Savvy Dog, is the real party in interest with respect to the claims asserted by the POM Parties in the POM Action, however, then these claims would fail as a matter of law. Moreover, Pace-O-Matic is a party defendant in the PSG Action. Notably, PSG does not allege that any of the other POM entities which it seeks to join as necessary parties engaged in any of the wrongful conduct that forms the basis for the claims asserted in its Counterclaim and Complaint.

7

permitted by this rule. In fact, neither are satisfied here. First, as to Rule 19(a)(1)(A), PSG does not contend that the court cannot accord complete relief among existing parties in the absence of the numerous parties it wants to join. Rather, it relies on allegations of a scheme by Pace-O-Matic to hinder the collection of its assets, an issue that presumably becomes relevant *after* PSG obtains a judgment in its favor. PSG cites no authority that suggests that fraudulent conveyance of assets to avoid collection of a judgment is a basis for joinder under Rule 19. Moreover, both Pace-O-Matic, Inc. and Miele Manufacturing, Inc. are present parties to this action, having been sued by PSG. PSG alleges that these parties, along with POM and Savvy Dog, committed various wrongful acts. The parties that PSG seeks to join are not alleged by it to have engaged in any conduct regarding the underlying claims that would require joining them in order to afford full relief.

Turning to Rule 19(a)(1)(B), the second basis upon which to join a party under Rule 19, none of the parties PSG seeks to join have claimed an interest in the subject of the action or assert that adjudicating this case in their absence may impair or impede their ability to protect their interests. Further, PSG does not contend that disposing of the action in the absence of the proposed parties subjects any existing party to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of their interest. Indeed, there is no evidence that any of the absent parties have claims against PSG which arise out of the subject matter of this action. In addition, if PSG has a claim against any of the absent parties, as opposed to arguing that they are necessary parties based upon fraudulent conveyances that hinder collection, then it can bring an action against them.

Simply put, PSG has failed to demonstrate that the twenty-eight parties it has identified should be joined as necessary parties in this action.

The Court acknowledges that based upon the exhibits submitted by PSG as part of its Motion, as well as the allegations in the pleadings as to the state of incorporation of some of the parties to these actions, there may be a need for discovery regarding the formation, ownership or relevant activities of the parties to this action as it relates to the claims that have been asserted. However, the solution is not to name every conceivable person, entity and fictitious name that has a similar name or any association with a party to this action.

Therefore, the Motion for Joinder of Necessary Parties Pursuant to Fed. R. Civ. P. 19 of Pennsylvania Skill Games, LLC (ECF No. 55) is DENIED.

SO ORDERED this 20th day of April, 2020

PATRICIA L. DODGE
United States Magistrate Judge