13511328

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC,

               Plaintiffs/Counterclaim Defendants,

             v.

PENNSYLVANIA SKILL GAMES, LLC,

             Defendant/Counterclaim Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

The Honorable Patricia L. Dodge

---------------------------------------------------------------------------------------------------------------------------

PENNSYLVANIA SKILL GAMES, LLC

             Plaintiff,

             v.

PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC.,

             Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

AND NOW COME Pace-O-Matic, Inc. ("Pace") and Miele Manufacturing, Inc. ("Miele")(collectively, "Defendants"), by and through their undersigned counsel and pursuant to F.R.C.P. 12(b)(6) and 12(e), state as follows in support of their Motion to Dismiss, or Alternatively, for a More Definite Statement:

## INTRODUCTION

Pennsylvania Skill Games, LLC ("PSG") claims in its Amended Complaint that Pace and Miele have engaged in "tortious interference with contract" and "civil conspiracy" because a price increase was imposed on PSG related to fills on gaming machines.

PSG claims that Pace and Miele had neither privilege nor justification to increase "fill" prices on legal skill games machines sold to PSG under an existing contract, and therefore, Pace and Miele have allegedly interfered with unnamed, unquantified, and anonymous alleged contractual relations of PSG—and they have committed "civil conspiracy" in doing so.

For the reasons set forth herein, the new causes of action set forth in the Amended Complaint should be dismissed for failure to state a claim, or alternatively, PSG should be required to provide a more definite statement, as the amendment contains threadbare, conclusory statements. Further, the claims alleged by PSG are barred under the gist of the action doctrine.

## **LEGAL STANDARD**

A plaintiff must plead more than the possibility of relief to survive a motion to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1955 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 209–10 (3d Cir. 2009).

The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Twombly, at 555, 127 S.Ct. 1955 Only factual allegations must be taken as true. Only a complaint that states a plausible claim for relief survives a motion to dismiss. Twombly, at 556. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Iqbal, at 662, 678–79.

Though PSG combined its proposed amendment of interference with contract into a single count, interference with existing and prospective contractual relations are two distinct causes of action. Simon Prop. Grp., Inc. v. Palombaro, 682 F. Supp. 2d 508, 511–12 (W.D. Pa. 2010).

2

Under Pennsylvania law, the elements of a claim for tortious interference with *existing* contractual relations are: (1) the existence of a contractual relation between the claimant and a third party; (2) purposeful action by the opposing party specifically intended to harm the existing relation; (3) the absence of privilege to do so; and (4) resulting damages. See Reading Radio, Inc. v. Fink, 833 A.2d 199, 211 (Pa.Super.Ct.2003).

Tortious interference with *prospective* contractual relations requires a showing of the existence of prospective contracts. Alvord–Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1014 (3d Cir.1994). The Court of Appeals for the Third Circuit has held that the Pennsylvania Supreme Court mandates that there be an objectively reasonable probability that the contract will come into existence. Schulman v. J.P. Morgan Inv. Management, Inc., 35 F.3d 799, 808 (3d Cir.1994).

Notably, in Pennsylvania, a party is not liable for tortious interference with contract for "merely making a third party's performance of his contract with another party more expensive or burdensome." Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir.1994); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

To establish civil conspiracy, it must be shown that: (1) two or more persons combined or agreed with intent to do an unlawful act; or (2) to do an otherwise lawful act by unlawful means. See Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A.2d 335 (1971). "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (1979). "Malice requires ... that the sole purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. Doltz v. Harris & Assoc., 280 F.Supp.2d 377, 389 (E.D.Pa.2003) (emphasis added). As malice can only be found when the sole purpose of the conspiracy is to injure the plaintiff, a showing that a

3

person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. See Bro–Tech Corp. v. Thermax, Inc., 651 F.Supp.2d 378, 419 (E.D.Pa.2009).

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Sun Co. (R & M) v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 368 (E.D. Pa. 1996).

### PSG'S CLAIMS REGARDING FILL PRICES

PSG generally alleges in its Amended Complaint that neither Pace nor Miele had any right to increase fill prices. PSG also alleges that Pace and Miele must assert some independent basis for the price change, such as increased cost, market conditions, or other factors that apply to every other operator in Pennsylvania. (See, ECF Document 87, ¶ 72, (the "Amended Complaint") a true and correct copy of which is attached to Defendants' Motion to Dismiss as Exhibit A). The contents of Defendants' Motion to Dismiss is incorporated herein as if set forth at length.

The ability of PSG to purchase fills from Pace or Miele is based on a 2015 document called an "Equipment Purchase Agreement," a true and correct copy of which is attached to Defendants' Motion to Dismiss as Exhibit B. The PSG complaint specifically alleges only one "contract" related to the purchase of fills and equipment, and that is the EPA. Even taking PSG's other claims in its current complaint to the extreme, including the series of undefined "oral contracts," none relate to equipment/fill purchases or pricing. Therefore, the only "contract" PSG can rely upon to make any claim related to fill prices is the EPA.

It is Pace and Miele's position that the EPA has long been terminated, abandoned, and unenforceable. At best, the EPA sets initial pricing for machines and fills at the beginning of the relationship, and no "contract" alleged or otherwise in the pleadings changes the reality that

4

Defendants could change fill prices at any time and for any reason. (See, Exhibit B). Even assuming the EPA is still in effect, it specifically states that "[p]rices for software plays are subject to change in the future." As a result, Pace and Miele held contractual right, even if the EPA were still in effect, to change the fill price at any time. The Amended Complaint fails to allege any any definite terms regarding course of conduct or performance agreed to by the parties that create plausible facts to support PSG's claims, or requires Defendants to abide by PSG's unilateral assertions of a lifetime price lock.

There also is no allegation in the Amended Complaint that the parties agreed to modify the EPA. To the contrary, PSG refers directly to the Breach of Contract claim in Count IV to establish its "existing obligations." (Exhibit A, ¶ 73). PSG attempts to dodge this reality by pleading a threadbare recital that its alleged harm in Count VI is based upon rights that are "collateral" to the contract. However, PSG makes this "collateral" allegation to support claims regarding the *motive or intent of the alleged interference—not the parties' actual obligations under the EPA.*

Stated otherwise, PSG cannot claim that Defendants interfered with third party contracts through a price increase independently from its claim that the underlying agreement was breached. Indeed, the ability of PSG to buy fills from Defendants is based solely on a contractual right emanating from the EPA. The Amended Complaint does not allege otherwise. Absent plausible factual allegations to support a claim that some conduct above and beyond those already at issue in the breach of contract claim exists, the Amended Complaint fails.

PSG is confined to the rights and those claims in the pleadings. There are no other contracts alleged in any pleading by PSG that would apply, and the Amendment certainly does not change that fact.

5

## THE PROPOSED AMENDMENT BY PSG FAILS TO STATE A CLAIM

The original claim filed by PSG against Pace and Miele includes a claim in Count IV for

"breach of contract." As noted above, this claim was filed on July 18, 2018 at 2:18-cv-941 and

was consolidated into the present action on August 27, 2018.

PSG's breach of contract claim in the original complaint ¶¶ 16 through 29 alleges a

myriad of "oral contracts" and claims:

- Pace, Miele, and PSG would "jointly develop" legalized skill games;

- PSG would assist Pace and Miele in the "design and manufacture" of electronic video game machines;

- The parties, pursuant to some "oral" agreement, would advertise and market these games using the PENNSYLVANIA SKILL trademark, which also would be jointly developed into a stylized mark;

- That PSG would have an "exclusive" right to advertise, market, and promote and operate the electronic video game machines and be granted an exclusive right to advertise, market, and promote, and operate the electronic video games in Beaver County, Pennsylvania.

- That PSG and Pace "jointly designed and developed the electronic video game machines, including a stylized form of the PENNSYLVANIA SKILL trademark for use in connection with the advertisement, marketing, and promotion, and operation, of the electronic video game machines.

The actual text of the Breach of Contract count IV states:

64. By selling, transferring, and assigning to Pennsylvania Skill Games electronic video game machines that do not contain the skill games and software plays determined to be legal in the Beaver County Criminal Case and which instead contain games of chance and software plays which are not in compliance with Pennsylvania law, and specifically 18 Pa. C.S. § 5513, Pace-O-Matic and Miele Manufacturing, and upon information and belief based upon the averments of its Complaint, POM of Pennsylvania, have materially breached the terms and conditions of the Equipment Purchase Agreement.

65. By selling, transferring, and assigning electronic video game machines to other vendors for distribution in Beaver County, without first giving notice to Pennsylvania Skill Games of their intention to sell, transfer, and assign the same and without providing Pennsylvania Skill Games an opportunity to exercise its Right of First Refusal, Pace-O-Matic and Miele Manufacturing, and upon information and belief based upon the averments of its Complaint, POM of

6

> Pennsylvania, have materially breached the terms and conditions of the Equipment Purchase Agreement.

> 66.    As a direct and proximate result of Pace-O-Matic's and Miele Manufacturing's, and upon information and belief based upon the averments of its Complaint, POM of Pennsylvania's, material breaches of the terms and conditions of the Equipment Purchase Agreement, Pennsylvania Skill Games has suffered irreparable harm and damages.

Indeed, other than the alleged "oral" contracts regarding "joint" development of the electronic gaming machines/software and related stylized logo, the entirety of PSG's breach of contract claim regarding equipment and fill purchases is based upon the EPA and is confined only to Beaver County[1].

Returning to the Amended Complaint, PSG's allegations focus on a claim that the fill increase is based upon "retaliatory, interference, and harassment reasons collateral to the breach of existing obligations set forth in Count IV." Exhibit A, ¶ 73). No actual supporting facts are alleged.

PSG goes on to allege a mishmash of conclusory statements to try and meet the base pleading requirements, which is insufficient since Iqbal and Twombly. PSG offers some theory of a "scheme" to interfere with unknown and unstated business operations to "force the submission of Plaintiff from continuing to assert Plaintiff's rightful claims in this action." (Exhibit B, ¶ 83). In doing so, Plaintiff fails to actually allege facts that assert an actionable claim, to include existing or actual prospective business interests with which Pace and Miele have interfered. If Plaintiff actually had a business relationship that was interfered with, it should have alleged facts that detail this alleged interference.

Notably, the *proposed amendment does not contain a single factual assertion that an actual contractual relationship was terminated or lost or that legally compensable damages*

---

[1] To be clear, Pace, Miele, POM of Pennsylvania, LLC and Savvy Dog, LLC refute all of PSG's allegations regarding these "oral contracts."

*exist*. The closest PSG gets to anything remotely resembling an allegation of damages is the following vague and barren claim:

> 77.     Except for the conduct of Defendants, Plaintiff was reasonably certain to have continued the business relationship or to have entered into the business relationships upon the terms and conditions as were customary without significant unjustified unilateral, harassing and retaliatory bad faith action.

PSG also fails to allege a single fact that explains how any of the alleged conduct, even if taken as true, would be collateral to the underlying EPA. The proposed amendment is exactly the type of conclusory statement to which Iqbal and Twombly stand opposed.

PSG also seems to allege that neither Pace nor Miele can increase fill prices without PSG's permission. This is an incredible assertion that lacks any factual merit within the EPA, even considering all facts in a light most favorable to PSG.

The text of the EPA related to equipment sales and fill prices states, verbatim:

## Payment and Terms

1.  Subject to the terms and conditions of this Agreement the Seller shall sell, transfer, and assign the Buyer Compliant Terminals and/or Hardware Components at a mutually agreeable price. The initial prices at the time of the effective date of this Agreement is as follows:

    - A.  Flex1 Compliant Terminal complete            $2,495.00
    - B.  HD Compliant Hardware Component complete    $995.00

    Prices are subject to change due to changes in material costs of the Compliant Terminals and Compliant Hardware Components

2.  Seller will sell software plays to Buyer at an initial cost of $1,250.00 for a "full or 1.0" set of software plays and $675.00 for a "1/2 or .5" set of software plays. Prices for software plays are subject to change in the future.

As stated above, the EPA is the only contract in this case, which was, which was signed in 2015. No price increase to PSG has occurred in the past five years. Conversely, there is no allegation that any other agreement on the subject exists or that the terms of the EPA grant PSG a

lifetime price lock. ***Even assuming that it still is binding, the EPA under its own terms allows for pricing changes: "[p]rices for software plays are subject to change in the future."*** There are no other contracts related to fills alleged by any party to this litigation, nor does PSG have any other rights other than what appears in the EPA. Despite PSG's perpetual reliance on "oral contracts" that fit their need or allegations, there is no allegation in the Amended Complaint related to any promise or agreement to maintain set fill prices in perpetuity. To the contrary, the EPA expressly states that prices are subject to change, and confers no right on PSG to control those amounts. See, Exhibit B.

No other allegation in the proposed amendment changes this reality. There are no allegations that the parties entered into yet another "oral contract" or there was some other right that PSG is relying upon for perpetually favorable pricing treatment. The Amended Complaint simply alleges that the price increase is in violation of the existing Count IV, Breach of Contract, and that claim expressly refers to the EPA. Therefore, there are no set of facts that PSG can rely upon to state a claim, let alone a plausible one.

PSG goes on, "The averred actions by Defendants are not commercially or legally justified, are not grounded on fair or appropriate commercial basis, and are not part of any general price increase necessitated by a commercially reasonable basis." (Ex. A., ¶ 82).

What PSG fails to mention is that a fill price of $2,000 is "in line" with fill pricing in Pennsylvania for minor operators such as PSG. Attached to the Motion to Dismiss as Exhibit C is a copy of the 2018 loyalty partner program for fill prices. PSG has this document in its possession, and indeed, discussed it at a recent deposition as its own exhibit (it even bears PSG's Bates number). The fill levels and pricing arrangements set forth in Exhibit C exist for operators who participate in a loyalty program, have signed the terms and conditions for operators, and have not had any violations within the past year. It is submitted that PSG has not signed the terms and conditions and, if it had, would have had several violations that have occurred and

continue to occur. Therefore, the fill prices by Pace and Miele are not only permissible under the EPA, they are in line with the standards set forth in the loyalty program for other operators. Further, PSG has no right to say what is or is not commercially reasonable for Pace or Miele, nor can it make baseless allegations without establishing an affirmative factual basis to recover.

Pace and Miele recognize that PSG need not prove its case at this point. But PSG does need to allege plausible facts sufficient to state a claim. To recover on a tortious intentional interference with existing or prospective contractual relationships claim in Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts: "While some jurisdictions consider a justification for a defendant's interference to be an affirmative defense, **Pennsylvania courts require the plaintiff, as part of his *prima facie* case, to show that the defendant's conduct was not justified.**" Triffin v. Janssen, 426 Pa.Super. 57, 626 A.2d 571, 574 n. 3 (1993)(emphasis supplied); Silver v. Mendel, 894 F.2d 598, 602 n. 6 (3d Cir.1990); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 214 (3d Cir. 2009).

Considering the case law, and taking all well-pleaded allegations as true, PSG cannot meet its threshold prima facie case because it has not made a single factual allegation that neither Pace nor Miele were justified for the price increase, even taking any of PSG's very few well-pleaded allegations as true. To the contrary, Exhibits B and C demonstrate the opposite. PSG cannot make bald accusations and tell this Court that such claims are good enough considering that Pennsylvania law requires an affirmative showing that Pace and Miele's conduct was not justified. (See, Triffin, supra.)

PSG also pleaded directly into the primary exceptions to interference with existing or prospective tortious interference with contract. In determining whether there is a *prospective* contractual relationship in a tortious interference case, Pennsylvania courts have considered whether the evidence supports a finding that there was an objectively "reasonable likelihood or

probability" that the contemplated contract would have materialized absent the defendant's interference. See Glenn v. Point Park Coll., 441 Pa. 474, 272 A.2d 895, 898–99 (1971); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir.1997). A "reasonable likelihood" of occurrence is something less than a contractual right but more than a mere hope that there will be a future contract. Phillips v. Selig, 959 A.2d 420, 428 (Pa.Super.Ct.2008). Furthermore, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship. Id. at 429. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 213 (3d Cir. 2009).

The allegations of the Amended Complaint, even if taken as true, does not allege a single likely or existing contract that would/will be lost or a specific existing opportunity lost or legal damages related to any alleged interference. Consider the following allegation by PSG, which, respectfully is not enough under the federal pleading standards[2]:

> Plaintiff has existing business relationships and expectancies with the probability of future economic benefit for the Plaintiff with its customers and prospective customers, regarding which the aforesaid actions by Defendants have interfered, as averred.

(Exhibit B, ¶ 75).

Pennsylvania law clearly states that conduct that makes performance of a contract more expensive or burdensome is not actionable. As the Third Circuit noted, a party is not liable for tortious interference contract for "merely making a third party's performance of his contract with another party more expensive or burdensome." Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir.1994); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).

---

[2] "To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. Iqbal, 129 S.Ct. at 1940 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

A review of the proposed amended complaint demonstrates that PSG is specifically alleging that performance would be more expensive or burdensome, which represents the extent of its claims.

Assuming all facts in a light most favorable to PSG, no claim has been stated and the amended causes of action should be dismissed with prejudice.

### PSG'S CIVIL CONSPIRACY COUNT FAILS TO STATE A CLAIM

For similar reasons to the alleged interference with contract claim, PSG's civil conspiracy claim must not be permitted to move forward. If the interference with contract claim is dismissed, the civil conspiracy count must fall due to the lack of a supporting tort claim.

PSG's claim for alleged civil conspiracy is also a stream of meaningless legal conclusions without any actual factual averments. See, Exhibit A, ¶¶ 88-91. Therefore, it is not well pleaded, and at the very least requires a more specific statement.

To establish civil conspiracy, it must be shown that: (1) two or more persons combined or agreed with intent to do an unlawful act; or (2) to do an otherwise lawful act by unlawful means. See Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A.2d 335 (1971); Fife v. Great Atlantic and Pacific Tea Co., 356 Pa. 265, 52 A.2d 24 (1947); Bausbach v. Reiff, 244 Pa. 559, 91 A. 224 (1914); Baker v. Rangos, 229 Pa.Super. 333, 324 A.2d 498 (1974). Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy. Miller v. Post Publishing Co., 266 Pa. 533, 110 A. 265 (1920); Miller v. Harvey, 215 Pa. 103, 64 A.2d 330 (1906); Irvine v. Elliott, 206 Pa. 152, 55 A.2d 859 (1903). This unlawful intent must be absent justification. The test was stated in Rosenblum v. Rosenblum, 320 Pa. 103, 108-09, 181 A. 583, 585 (1935):

> Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, Was it done with or without "just cause or excuse"? If it was bona fide done in the use of a man's own property * * * such legal justification would * * * exist not the less because what was done might seem to others to be selfish or unreasonable. * * * But such legal justification would not exist when the act was merely done with the intention of causing

12

temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

Therefore, unless PSG can make a factual allegation that Miele and Pace cannot increase prices to sell their own property for their own gain and interest, and that the increase was purely done to harm PSG, then the claim cannot lie. Conversely, if PSG does so and alleges such a right under a contract, the interference with contract claim must fail under the gist of the action doctrine.

Regarding the first element of civil conspiracy, e.g., the performance of an unlawful act, even considering all facts in the light most favorable to PSG, Pace and Miele are apparently being accused of doing something unlawful with their own property, e.g., increasing prices. However, there are no facts or legal theory alleged whereby Pace and/or Miele **cannot** increase their prices. The EPA specifically states that the fill pricing can change. Pace and Miele have the right to charge whatever rate they choose or is appropriate. Furthermore, the pricing change still keeps PSG's fill price is in line with other operators, to the extent that matters. (See, Exhibit C). Therefore, the fills are the "property" of both Pace and Miele until such a time that they are licensed to PSG and under conditions that Pace and Miele set. Therefore, Pace and Miele are acting within their lawful right to do something, which destroys the element of civil conspiracy, e.g., two people combined to agree to intentionally do an unlawful thing.

The second element similarly fails, which requires a showing that two or more people agree to do something lawful by unlawful means. PSG makes no factual averment sufficient to suggest otherwise. Importantly, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (1979). "Malice requires ... that the sole purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. Doltz v. Harris & Assoc., 280 F.Supp.2d 377, 389 (E.D.Pa.2003) (emphasis added). As malice can only be found when the sole purpose of the

13

conspiracy is to injure the plaintiff, a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. See Bro–Tech Corp. v. Thermax, Inc., 651 F.Supp.2d 378, 419 (E.D.Pa.2009); Thompson Coal Co., 412 A.2d at 472 (noting that the intent to injure must be without justification, which cannot exist when an act is merely done "with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights") (quoting Rosenblum v. Rosenblum, 320 Pa. 103, 181 A. 583, 585 (1935)).  See also, Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 735–36 (E.D. Pa. 2014).

It should be noted that PSG has ultimately become a competitor of Pace and POM of Pennsylvania. Indeed, PSG is acting contrary to the interest of Pace and Miele, yet demands to be treated with all deference and care.

Assuming all facts in a light most favorable to PSG, no claim has been stated and the amended causes of action should be dismissed with prejudice.

## THE GIST OF THE ACTION DOCTRINE BARS
## THE INTERFERENCE WITH CONTRACT CLAIM

The Amended Complaint fails to separate the "interference with contract claim" with the existing breach of contract claim, which is a fatal defect. All rights PSG may against Defendants arise solely under the EPA. PSG has already alleged a breach of the EPA (Count IV). The price increase claimed by PSG is allegedly in violation of duties under the EPA. PSG has no other rights to purchase fills other than what exists in the EPA, so the notion of an independent tort is an impossibility.

Simply, the "interference with contract" claim cannot exist separately or independently from the underlying breach of contract claim, the liability stems from the contract, and the alleged tort claims are duplicative of any contract claim.

14

Pennsylvania's Gist of the Action Doctrine acts to foreclose tort claims: (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. Hart v. Arnold, 2005 PA Super 328, 884 A.2d 316, 340 (2005). Where the alleged misrepresentation or fraud concerns the performance of contractual duties, "then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties." eToll, Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10, 19 (2002).

The gist of the action doctrine precludes plaintiffs from "recasting ordinary breach of contract claims into tort claims" and maintains the "conceptual distinction between breach of contract claims and tort claims." Smith v. Lincoln Ben. Life Co., 395 F. App'x 821, 823 (3d Cir. 2010).

Here, there is no difference between PSG's tort claims and its existing breach of contract claim. The gist of the action doctrine should preclude the interference with contract count and render civil conspiracy claim as moot.

## ALTERNATIVELY, A MORE SPECIFIC STATEMENT IS NEEDED

Pace and Miele believe that the Amended Complaint should be dismissed with prejudice. In the alternative, a more specific statement is required by Plaintiff before an answer can be filed.

Simply, Plaintiff alleged the bare elements for its two new causes of action and changed a few words. The amendments are not "well-pleaded," they are generic, and they fail to state claims to which Defendants can form a meaningful response. PSG's amendment is insufficient.

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a

15

more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). <u>Sun Co. (R & M) v. Badger Design & Constructors, Inc.</u>, 939 F. Supp. 365, 368 (E.D. Pa. 1996).

Plaintiff's amendment is a vague, generic argument that a cost increase occurred, some unnamed contractual "relations" were interfered with, and that there was "turmoil" and renegotiations with customers. (Ex. A, ¶¶ 74, 75). Plaintiff must know at this point what specific contracts were interfered with, what damages existed, what relationships were "lost" or how the actual "turmoil" manifested. Yet, none of these facts appears in the amendment.

While this Court must accept all "well-pleaded" allegations of the amendment as true, it need not accept vague or conclusory statements as true.


WHEREFORE, Pace-O-Matic, Inc. and Miele Manufacturing, Inc. respectfully request that this Honorable Court dismiss the amendments at ECF Doc. No. 87 with prejudice.

Respectfully submitted,

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306

    T:  412-325-1116
    F:  412-325-3324
    E:  jneiser@spilmanlaw.com

    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219

    **Attorneys for Pace-O-Matic, Inc. and Miele Manufacturing, Inc.**

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

　　　　　Plaintiffs/Counterclaim
　　　　　Defendants,

　　　　　v.

PENNSYLVANIA SKILL GAMES, LLC,

　　　　　Defendant/Counterclaim
　　　　　Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

The Honorable Patricia L. Dodge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Memorandum of Law in Support of Motion to Dismiss** was served upon the undersigned counsel of record this 16th day of November, 2020 via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Zegarelli Technology & Entrepreneurial Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241

**Counsel for Plaintiff Pennsylvania Skill Games LLC**

　　　　　　　　SPILMAN THOMAS & BATTLE, PLLC

　　　　　　　　/s/ Julian E. Neiser
　　　　　　　　Julian E. Neiser