**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

          Plaintiffs,

          V.

PENNSYLVANIA SKILL GAMES, LLC,

          Defendant.

---

PENNSYLVANIA SKILL GAMES, LLC,

          Plaintiff,

          V.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

          Defendants.

---

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES'
BRIEF IN OPPOSITION TO PACE-O-
MATIC AND MIELE MANUFACTUR-
ING JOINT MOTION TO DISMISS
AMENDED COMPLAINT**

**Background**

Plaintiff filed the claim for the malicious acts by Defendants, in concert with each other, done for the sole purpose of interfering with the existing and prospective contracts of Plaintiff, who has become a competitor.

This case arises from a very basic set of seminal facts; to wit:  Pennsylvania Skill Games, LLC ("Plaintiff" in this action) owns the trademark "PENNSYLVANIA SKILL GAMES" and used that trademark, including, but not limited to, on its electronic skill games as an initial "splash screen" (the screen that displays at startup), since at least as early as 2010.  [2:18-cv-00941, here-after "**x941**", ECF 1, ¶10]

The parties together coordinated a "controlled pickup" of Pace-O-Matic's machine at Plaintiff's customer location.  The "controlled pickup" is and was the process whereby the Commonwealth State Police was informed of the circumstance in order to trigger a seizure of the Pace-O-Matic machines from Plaintiff's client location, the American-Italian Club.  Although it should go without saying, the location was carefully selected by Plaintiff from its portfolio of client locations and convincing the establishment to participate in a seizure used significant effort and goodwill of Plaintiff. [*See,* x941 ¶¶15–24]

Indeed, the Pace-O-Matic equipment was seized by the controlled pickup, which triggered a Commonwealth, Beaver County Criminal Division, Petition to Return Seized Equipment, *In Re Pace-O-Matic, Inc. Terminal I.D. No. 142613,* M.D. 965-2013.  [x941, ¶23; "Exhibit A", ECF 1-1]

After the anticipated favorable adjudication in the *TID 142613* case on December 23, 2014,[1] the parties were thereby primed for Plaintiff to begin comfortably placing the Pace-O-Matic games into the Commonwealth, leading to the document attached to the Complaint Exhibit B, dated May 20, 2015 [x941, ¶¶25–29, "Exhibit B", ECF 1-2]  As of 2014, Pace-O-Matic was not using the trademark "PENNSYLVANIA SKILL GAMES" in any manner.

In 2016, Plaintiff learned that Defendants Pace-O-Matic and Miele were violating the Equipment Purchase Agreement and these lawsuits resulted.[2]

---

1 It is noted that the adjudicated version was the version reviewed by the Court, being v.402.44, a three-game version. This fact is immaterial at this time, but it is pointed out because it will become a material point at trial.  Currently, the release version is a 13 game version.

2 Notwithstanding Plaintiff asserted the violation against Defendants in 2016, this consolidated lead case (hereafter, "**x722**" case) was instituted first only because Plaintiff was under the impression that the parties were trying to resolve the claim and learned subsequently that the x722 case had been filed unbeknownst to Plaintiff.

During the discovery in this action, Plaintiff acquired significant information from third party operators with Pace-O-Matic skill game locations within Beaver County, providing the necessary evidence for Plaintiff to prove its claims. Thereupon, Defendants jointly retaliated as set forth in the Amendments to Complaint [hereafter, "**Amendment**", ECF 87]

Defendants jointly raise Fed.R.Civ.P. 12(b)(6) claiming a failure of a cause of action, by failure of plausibility and pleading technicality, and Defendants jointly alternatively request a more definite statement pursuant to Fed.R.Civ.P. 12(e).

### Standard of Review

For the purpose of Fed.R.Civ.P. 12(b)(6), Defendants have the burden of proof, and Plaintiff's averments are entitled to all inferences; to wit:

> **In reviewing a district court's dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, our review is plenary and we apply the same test as the district court. "A motion to dismiss pursuant to Rule 12(b)(6) may be granted *only if,* accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."** *In re Burlington Coat Factory Sec. Litig.,* **114 F.3d 1410, 1420 (3d Cir.1997) (*citing Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986)). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"** *Id.* **(*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).**

*Maio v. Aetna, Inc.,* 221 F.3d 472, at 481 (3rd Cir. 2000) (emphasis added).

Fed.R.Civ.P. 8(a)(2) requires only a short and plain statement of the claim. Accordingly, motions for a more definite statement are discouraged, "it is directed to the *rare case* where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." *Schaedler v. Reading Eagle Publication, Inc.,* 370 F.2d 795 (1967) (emphasis added). The U.S. District Court, Middle District, held:

> **We have reviewed the plaintiffs' complaint and in light of the standard set forth in Rule 12(e), we believe that the complaint is sufficient to require the defendant to respond. The complaint specifically identifies the sections of the FLSA that the**

3

**defendant allegedly violated. The complaint also describes the nature of the violations. Further, the general time period in which the alleged violations occurred is specified in the complaint. Additionally, the complaint notifies the defendant of the relief that plaintiffs seek.**

**A motion for a more definite statement is not a substitute for the discovery process. Moreover, motions for more definite statements are not favored and the granting of such motions is within the sound discretion of the court. *Wilson v. United States,* 585 F.Supp. 202, 205 (M.D.Pa.1984); *In re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 406 (E.D.Pa.1981). The specific information which the defendant seeks in this case, namely dates of violations, can be obtained through discovery. We also believe that the information sought by the defendant concerning the extent and nature of the plaintiffs' FLSA claims is within the defendant's knowledge. *See Barrett v. National Malleable and Steel Castings Co.,* 68 F.Supp. 410 (W.D.Pa.1946). Therefore, since we find that the defendant's motion for a more definite statement is not warranted, we will deny the motion. The defendant will be directed to file an answer.**

*Wheeler v. U.S. Postal Service,* 120 F.R.D. 487 (M.D.Pa 1987); FEDERAL CIVIL RULES HANDBOOK 2021, *citing, Babcock & Wilcox Co. v. Mc Griff, Seibels & Williams,* 235 F.R.D. 632, 633 (E.D.La 2006) ([12(e)] motions are particularly ill-suited to situations where the information sought is already within the defendant's knowledge and the motion merely seeks the formality of the recital of known facts).

### Argument

Fed.R.Civ.P. 8(a)(2) requires only a short and plain statement of the claim, which was clearly satisfied as pleaded.  It is a known tactic of pleading rhetoric to present a volume of argument on the maximum of unlimited things that were not pleaded, but could be pleaded, rather than the effect of the minimum facts actually pleaded.[3]

---

3 *E.g.,* the gist of short and plain; to wit, "The at-will employee was terminated on June 18, 2020, only because she was a black woman."  "On June 18, 2020, with malice aforethought, the man entered the shop and shot his ex-wife's lover between the eyes killing him."  Both of these claims can be completely summarily denied if there was no termination of the woman or nothing possibly implicating the man, unless part of it is true, in which case more information might be required.

Defendants set forth pages and pages of burdensome argumentative and unverified disputed trial facts—even in desperation submitting evidence,[4]—clearly arguing themselves out of court. [ECF 90, hereafter "**Defendants' Joint Brief**", pp. 4–10]  To present such a significant volume of disputed trial facts in violation of the applicable standard clearly contradicts failure of *plausibility. Defendants protest too much.*  Defendants are jumping the gun and arguing the same post-fact discovery motion practice that this Court ordered due in February, 2021 [ECF 88], and Defendants can fully raise the issues there, in conjunction with providing an appropriate record.

The averments, accepted as true, is that there was a no-notice, after-the-fact, withdrawal only from Plaintiff's bank account, in June, 2020, for a malicious and retaliatory purpose as averred. [Amendment ¶¶72–73, 87]  Whether Defendants are "allowed" to do the act they desperately want this Court to believe, is a post-discovery trial question after evidence has been fairly presented for that determination. [Amendment, ¶78]  *Anderson v. Liberty Lobby,* 477 U.S. 242, at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *cf., Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir.2004) ("[For] summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'").

Challenging for *plausibility* is ostensibly ungrounded; to wit, the context is overtly plausible as retaliatory.  Indeed, the context is an untenable 60% increase only to Plaintiff, not, for

---

4 POM attached a disputed Exhibit C [ECF 89-3], which is scandalous, impertinent and immaterial for this purpose and the applicable legal standard to be applied at this stage of the process.  It must be excluded from consideration for a 12(b)(6) motion pursuant to Fed.R.Civ.P. 12(d).  This document, such as it appears, was created post-litigation, claiming itself to be a "loyalty" document.  This "loyalty" document, of course, jointly suggests by Defendants that Plaintiff is "disloyal" for not signing a volume of Defendants' new unilaterally created and jointly presented self-serving documents which would contradict or waive rights under Plaintiff's existing agreement (that all other "loyal" operators must sign), even further suggesting Defendants jointly retaliated exactly as averred for such "disloyalty." Plaintiff is unique because Plaintiff is the first and only Pennsylvania operator with the seminal agreement and precedes other Commonwealth third party operators (which should not even exist for Beaver County).

example, a 5% increase only to Plaintiff, and not a 60% increase to all operators, but a 60% increase to only Plaintiff.  The act itself screams as a retaliatory interference, and that is the proper inference.

At Defendants' Brief, ¶4, pp. 4–10, Defendants assert their own meandering interpretation of the metes and bounds of the averred contract, what that document is or is not supposed to be, continuing for pages about lifetime price locks, agreements to modify, self-serving interpretations of what the Defendants were allowed or were not allowed to do pursuant to the contract, all of which beg the ultimate trial question.  Then, Defendants continue further with pulling out certain self-serving text of the contract, with even more self-serving conclusions of interpretation against the moving party contrary to law, expecting this Court to sort out core questions reserved for trial.[5]

This is not a question of *plausibility* in the *abstract*, but similar to any other retaliation claim, which runs collateral to some other dispute for which an independent retaliation cause of action is the effect.  It is not *merely* breaching a contract.  Is it clearly plausible using *common sense and experience*—and we see it all the time—for example, that a football player gets penalized for illegal conduct because he does what many people do when frustration sets in: he gets angry when he is losing.  Defendants simply got angry after Plaintiff adduced all the new evidence from *third parties,* and Defendants jointly retaliated in a malicious way to injure Plaintiff beyond the metes and bounds of the contract.[6]  [Amendment, ¶74]

---

5 If this Court really desires or finds it necessary to rule on the substance of the Equipment Purchase Agreement as a matter of law, Plaintiff invites the Court to ready that document, closely.  But, with or without that document, or any contract breach, the malicious tortious conduct remains.  The murder weapon is collateral to the intended socially violative effect—any weapon will do.  A murder is not *merely* an ordinary death.

6 Just to frame it for the Court in a context of timing, gravity and proportionality, to Defendants' obvious increasing frustration, Plaintiff has so-far discovered that more than 400 violative terminals have been placed into Beaver County, with Defendants' advertised average machine revenue *to the operator* of $250 per week.  The injury is significant.

Defendants have argued themselves out of a *plausibility* challenge.  [*See,* Defendants' Joint Brief, pp. 4–10]  A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The U.S. Supreme Court has specifically indicated that determining whether a complaint states a plausible claim for relief under this standard is "a context-specific task that requires the reviewing court to draw on its judicial *experience and common sense*."  Id. at 679 (emphasis added).

Having determined the clear existence of factual plausibility, as to the legal merits of the claim itself, federal pleading rules call only for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2).  The federal rules do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby,* 574 U.S. 10 (2014); *citing* Advisory Committee Report of October 1955, reprinted in 12A C. WRIGHT, A. MILLER, M. KANE, R. MARCUS, AND A. STEINMAN, FEDERAL PRACTICE AND PROCEDURE, p. 644 (2014 ed.) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, §1215, p. 172 (3d ed. 2002).

Defendants set forth the *gist of the action* doctrine, and repeat, once-again, the inapplicable *Gemini Physical Therapy & Rehab. v. State Farm Mut.,* 40 F3d 63, 66 (3rd 1994).  *Gemini* is clearly inapplicable, as it simply does not opine to anything regarding Pennsylvania law, but simply references Pennsylvania out of the otherwise stated analysis. *Gemini*, 40 F3d at 66.  The more recent *Acumed v. Advanced Surgical,* 561 F.3d 199, 212 (3rd Cir. 2009) cited by Defendants sets forth the standard of *proof*:

**Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a <u>contractual or prospective contractual or economic relationship</u> between the plaintiff and a third party; (2) <u>purposeful action</u> by the defendant, specifically intended to harm an <u>existing relationship</u> or <u>intended to prevent</u> a prospective relation from occurring; (3) the <u>absence of privilege or justification</u> on the part of the defendant; (4) <u>legal damage</u> to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a <u>reasonable likelihood that the relationship</u> would have occurred but for the defendant's interference. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir.1998).**

There is no question that Defendants acted in concert to cause the interferences pleaded, as stated or that Plaintiff is now an admitted competitor. [Defendants' Join Brief, pp. 14, ¶2] Pursuant to *Johnson,* Plaintiff has clearly pleaded the elements in a "short and plain" statement in a manner compliant with Fed.R.Civ.P. 8(a)(2). Plaintiff has alleged the existence of a contractual or prospective contractual or economic relationship between Plaintiff and a third party at Amendment, ¶74. In proper instances, a defendant might need a more definite statement, but here, the matter is unique because Defendants admit their awareness of the referenced accounts in Defendants' Joint Brief, pp. 4–10. Defendants argue an abstract point at their joint Brief at p. 8, ¶1; Defendants would have this Court believe in that single argument, that Defendants are unaware of the customers, when Defendants have already admitted necessarily receiving the Terminal ID in every instance.[7] Plaintiff pleaded purposeful action by the Defendants, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring at Amendment ¶¶76–80. Plaintiff pleaded the absence of privilege or justification on the part of the Defendants. [Amendment, ¶¶82–85] Plaintiff pleaded legal damage as a result of the averred conduct, which will be included within Plaintiff's damages expert report. [Amendment, ¶¶83, ¶86] Plaintiff pleaded a reasonable likelihood that the relationships would have occurred but for the defendant's interference. [Amendment, ¶77]

---

7 *See also,* Defendants' Joint Brief in Opposition of Motion for Leave to Amend, ECF 72, pp. 2–4 "How Fills Work".

Defendants jointly cite *eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 102002 PA Super 347 (Pa.Super 2002), which abstractly begs the question here regarding *gist of the action,* because *gist of the action* stands for the principle that a tort cannot replace a contract, within the same space of the claim. However, *eToll* itself and *gist of the action* expressly permit the tort and the contract when occurring in different spaces, the contract being *collateral* to the claim, which is the case here. [*See, e.g.,* Amendment, ¶¶73–74] Any contract between the parties is incidental to accomplishing the malicious and tortious *intended effect.* [*See,* fn. 5, *supra*] As pleaded, and with all inferences favorable to the Plaintiff, Plaintiff and the Defendants are competitor operators and the tortious conspiratorial acts averred were used specifically to cause Plaintiff embarrassment, disruption, and injury, "collateral to the breach...". [Amendment, ¶73] Defendants did not take an act for a proper purpose, but conspired to injure Plaintiff for malicious purposes contrary to social standards. [Amendment, ¶78] This is not <u>*merely*</u> an "ordinary breach" but a calculated tortious joint act by Defendants who became competitors with Plaintiff and seek to destroy Plaintiff's relationships with venues so that Defendants can disrupt and take over the accounts.

Defendants are entitled to defend the accusation at trial or by proper summary judgment following appropriate fact discovery as has been already granted. [ECF 88, Scheduling Order]

As to the pleading conformities, Defendants raise a technical issue regarding the pleading of two counts as one, which, if form prevails, is an easy non-futile conformity amendment, although Pennsylvania courts have conjoined the claims. *See, Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337 (Pa.Super 1987) ("To set forth a legally sufficient cause of action for <u>intentional interference with contractual or prospective contractual relations</u>...."). Even so, it is beyond dispute and admitted by Defendants that every fill order regards a contract with the venue in which the machine is placed, and the averred overt acts were and are purposeful, there was no privilege, and

9

there was damage.  [*See,* Amendment, ¶¶72–86; Defendants' Joint Brief, pp. 4–10; fn. 7, *supra*] Even Defendants' own reliance upon this venue's *Simon Property Group, Inc. v. Palombaro,* 682 F.Supp.2d 508 (W.D.Pa 2010), which is not precedential for notice pleading purposes in federal court, and the subject of a statutory claim, resulted in a ministerial point with the right to amend without prejudice.

Defendants claim to need more and more facts at Defendants' Joint Brief, P.7, ¶2.  This is disingenuous, particularly in light of the admissions of Defendants' Brief.  [Defendants' Joint Brief, pp. 4–10]  Defendants already know every Terminal ID for which that retaliatory injurious fee has been charged, they know each date and time they did it, by their own admission, by volunteering trial facts.  Moreover, Defendants jointly suggest that they need more facts simply to deny the averment with or without more facts, which is nothing more than the same type of pleading technical set forth in the denial in *Wheeler, supra.*

Plaintiff pleaded in Amendment ¶88 an unlawful act or a lawful act done for an unlawful purpose.  Once again, Defendants jointly argue in Defendants' Joint Brief at pp.12–13, that they are accused of doing something "with their own property" which avoids the entire claim being raised and begs the trial question.  To this joint defiant admission of combined interest or scheme, Plaintiff points to the grounds of "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Strickland v. Univ. of Scranton,* 700 A.2d 979, 987–988 (Pa.Super. 1997).  Plaintiff identified the parties, who share unity by clear admission of Defendants beyond any rational contention, with the overt act of increasing <u>only</u> the pricing of Pennsylvania Skill Games for the malicious retaliatory

purposes as stated, with actual legal damage of the clearly pleaded 60% increase from $1,325 to $2,120 per fill. [*See, e.g.,* Amendment, ¶¶72–74, ¶¶87–88]

Pennsylvania Skill Games prays that Defendants' Joint Motion to Dismiss be DENIED, or, in the alternative, grant the right to amend.

Dated: December 1, 2020     s/Gregg R. Zegarelli
              Gregg R. Zegarelli, Esq.
              Pa. I.D. #52717

              TECHNOLOGY & ENTREPRENEURIAL
               VENTURES LAW GROUP, P.C.
              2585 Washington Road, Suite 134
              Pittsburgh, PA 15241-2565, USA
              v.412.833.0600 f.412.833.0601
              mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing Reply Brief was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

December 1, 2020

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com


Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com