IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>PENNSYLVANIA SKILL GAMES, LLC,<br><br>Defendant. | Civil Action No. 18-722 |
| PENNSYLVANIA SKILL GAMES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC.<br><br>Defendants. | |

## MEMORANDUM ORDER

Pace-O-Matic, Inc., ("POM") and Miele Manufacturing, Inc., ("Miele") (collectively "Defendants") have moved the Court to either dismiss the claims alleged by Pennsylvania Skill Games, LLC, ("PSG") in its supplemental complaint, or require a more definite statement. (ECF No. 89.) Defendants' motion, which is fully briefed (ECF Nos. 90, 92), will be denied.

PSG's Complaint, which was filed in 2018, alleges a breach of contract claim based on an Equipment Purchase Agreement ("EPA"). (Civ. A. No. 18-941, ECF No. 1 ¶¶ 63–66.) The EPA covers the price of computer play "fills" that Defendants sold to PSG. (*See id.* ¶ 27.) In the supplemental complaint, PSG alleges that in June 2020, it "discovered . . . that [Defendants] had unilaterally . . . increased the price of computer play fills, from $1,325 to $2,120, or a 60% increase

in price." (ECF No. 86 ¶ 72.) Based on this information, PSG has alleged claims of "interference with contractual and prospective business relations"[1] and "civil conspiracy"[2] in the Supplemental Complaint. (*Id.* at 2, 4.) According to PSG, Defendants had neither privilege nor justification to increase "fill" prices sold to PSG, and therefore, they allegedly interfered with the contractual relations of PSG, and have engaged in civil conspiracy in doing so.

In permitting PSG to file the Supplemental Complaint, the Court determined that PSG had sufficiently stated these claims. As a result, Defendants' contention that the allegations in the supplemental complaint are "so vague or ambiguous" that they cannot reasonably be required to frame a responsive pleading is unavailing. Fed. R. Civ. P. 12(e). Defendants are therefore not entitled to a more definite statement under Federal Rule of Civil Procedure 12(e).

Similarly, in seeking dismissal of the Supplemental Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants set forth the same arguments that they advanced, and the Court rejected, in their opposition to PSG's motion to file the supplemental complaint. (ECF No. 72.)

---

[1] In Pennsylvania, "to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)).

[2] To state a claim for civil conspiracy, a plaintiff must allege "1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004) (citing *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000)).

The remaining basis for Defendants' motion is that PSG's tortious interference claim is barred by the gist of the action doctrine. Under Pennsylvania law, tort claims are barred under the gist of the action doctrine:

> (1) where the tort claim "aris[es] solely from a contract between the parties;"(2) where "the duties allegedly breached were created and grounded in the contract itself;"(3) where "the liability stems from a contract;" or (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 67 (Pa. 2014) (quoting *eToll Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 19 (Pa. Super. 2002)). Under this doctrine, "to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 (3d Cir. 2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. 1996)).

A tortious interference claim requires "a tortfeasor who intentionally interferes with a contract between the plaintiff and a third person." *Maier v. Maretti*, 671 A.2d 701, 707 (Pa. 1995). PSG alleges in the Supplemental Complaint that the price increase imposed by Defendants was solely for retaliatory reasons collateral to the breach of the parties' existing obligations and impacted its business relationships with third parties. Defendants contend that PSG's tortious interference claim is barred under the gist of the action doctrine because PSG's claim that Defendants interfered with third party contracts through a price increase is not independent of its claim that the EPA was breached. Defendants dispute that the EPA is still in effect but note that the EPA specifically provides that "[p]rices for software plays are subject to change in the future." Thus, Defendants argue, even if the EPA is still in effect, the parties agreed that Defendants could change the fill price at any time.

In asserting their respective positions, the parties have referenced facts outside the allegations of the Supplemental Complaint. (ECF Nos. 89 ¶ 6; 92 at 6 n.6.) Defendants have also raised various issues about the EPA, including whether it is still in effect. Moreover, whether the right to increase prices for plays was done for an improper purpose and thus may impact the enforceability of this provision, cannot be determined from the face of the pleading. Thus, to consider the parties' positions and rule on a dispositive motion, the Court would have to convert this motion into a motion for summary judgment under Federal Rule of Civil Procedure 56, and provide the parties with a further opportunity to brief these issues and submit relevant facts. Fed. R. Civ. P. 12(d). Because discovery is scheduled to close on February 1, 2020, and summary judgment motions are due no later than February 22, 2021, (ECF No. 88), the Court declines to convert the pending motion to dismiss to a motion for summary judgment. That said, Defendants may renew a dispositive motion about these issues in accordance with the summary judgment schedule that has been established.

Therefore, it is ORDERED that the motion to dismiss (ECF No. 89) filed by Pace-O-Matic, Inc., and Miele Manufacturing, Inc., is DENIED without prejudice. Pace-O-Matic, Inc. and Miele Manufacturing, Inc. shall file their Answer by February 1, 2021.

**SO ORDERED** this 19th day of January, 2021

s/ Patricia L Dodge
PATRICIA L. DODGE
United States Magistrate Judge