**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

      Plaintiffs,
      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant.

_____

PENNSYLVANIA SKILL GAMES, LLC,

      Plaintiff,
      v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

      Defendants.

_____

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES'
BRIEF IN OPPOSITION TO MOTION
FOR PROTECTIVE ORDER BY MO-
TION FOR PROTECTIVE ORDER OF
PACE-O-MATIC, POM OF PENNSYL-
VANIA, SAVVY DOG SYSTEMS, AND
MIELE MANUFACTURING**

Following is the testimony of Louis Miele, President of Miele Manufacturing, regarding

the retaliatory price increase claimed in the Amended Complaint [ECF 87]:

> **Q. Now, how would Pace-O-Matic convey to you to set that pricing from the previous
> amount to $2,000 and 1,000 for fill and half-fill respectively?
> A. Phone call.
> Q. No e-mail?
> A. No, sir.
> Q. No follow up by e-mail?
> A. No, sir.
> Q. Who called you?
> A. Greg Klein.
> Q. What did he tell you?**
> [Objections]
> _**Q. What did he tell you?**_
> _**A. Raise the price.**_

[Exhibit 1, Deposition of Louis Miele "**Miele Deposition**", P63:12–P64:20 (emphasis supplied).

Gregory Cline, Esq., is the common attorney for three parties: POM of Pennsylvania, Savvy Dog Systems, and Pace-O-Matic.  According to Mr. Miele, Mr. Cline directed him to implement the culpable acts set forth in the Amended Complaint, because Miele Manufacturing issues the "fill codes."  The only person who can testify first-hand as to why Mr. Cline said what he said is Mr. Cline.  Mr. Cline is not attorney for Miele Manufacturing.  [Exhibit 1, Miele Deposition, P54:10–P55:L10]  Miele Manufacturing is a named signatory with appurtenant duties and required good faith as set forth in Exhibit 1-2 to the Complaint in 2:18-cv-00941 [hereafter "**x941**" where noted; otherwise, references are to the lead case of 2:18-cv-00722]

The *relevance* and *weight* of Mr. Cline's testimony is *overwhelming* for *critical trial questions* for the averred cause of action.  [*See,* Exhibit 1, Miele Deposition, P61:L25–P66:L25]

Mr. Cline was not designated to testify in the prior 30(b)(6) deposition, notwithstanding that the subject-matter was *specifically identified* in Item (d) of the Notice and he is the *best and only* person to testify as to *why* he said what he said.  [Exhibit 2.1–2.4, Notices of Deposition]

Moreover, according to the foundational testimony of Daniel Warren, testifying jointly for POM of Pennsylvania, Savvy Dog and Pace-O-Matic, Mr. Cline does not act on his own authority:

> **Q. Okay. Do you have any understanding that Mr. Cline can make decisions with regard to product pricing on his own?**
> **A. Please ask it again.**
> **Q. Do you have any understanding that Mr. Cline can make decisions with regard to product pricing? And I can be clear, about product pricing for operators on his own?**
> **A. I'm saying no.**

[Exhibit 3, Deposition of Daniel Warren "**Warren Deposition**", P33:L18–P34:L1]  Therefore, either Mr. Cline went rogue, or he was conveying a specific determination from a specific POM-related source.[1]  [Id.]

---

[1] It is noted that there is a pending final request for production for any documents served in prudence regarding the amended claims; however, any responsive documents would properly be in the scope of a prior request.  No email

Apparently, the directive to raise the prices in retaliation was conveyed by Mr. Cline to Mr. Miele on a telephone call that Mr. Neiser purports himself to have been in attendance while he jointly represented all four parties: POM of Pennsylvania, Savvy Dog, Pace-O-Matic, and also Miele Manufacturing.  No documents are claimed by Mr. Miele to exist to be produced by him (so far), but a discovery request is pending.[2]  [Exhibit 1, Miele Deposition, P63:L17–21]  Mr. Warren testified that there have been drafts of contracts have been iterated with Mr. Miele, but no "signed" documents; none of these documents have been produced, although requested.  [See, Exhibit 3, Warren Deposition, P49:L2–9].

The first coordinated violative illegal and unauthorized taking of money that occurred by Mr. Neiser's clients—Pace-O-Matic and Miele Manufacturing—coordinated with all or some of Mr. Cline's clients—being POM of Pennsylvania, Savvy Dog and/or Pace-O-Matic—occurred on June 15, 2020 as summarily evidenced by Exhibit 4.1, demonstrating the unauthorized withdrawal by the price increase from long-recurring $1,325 to $2,120 from Pennsylvania Skill Games' bank account.  The taking of the unauthorized funds occurred in the middle of the day on a Monday without good faith or any fair advance notice whatsoever, being a $795 increase against the authorized recurring $1,325 fill price.  Four (4) days later, that is, after an apparently intentional delay of four days, on the Friday afternoon of June 19, 2020, Mr. Neiser added an incidental comment at the bottom of an email mentioning the now 4-day old issue of taking money from Pennsylvania Skill Games' bank account without prior notice.  Exhibit 4.2.

---

communications or other documents have yet been produced on this issue, notwithstanding common use of electronic mail.  See, Exhibit 5.3, Request 3.a–f; Warren Deposition P48:L1–22.  Not having one responsive tangible item for an entire group of at least four companies, with multiple involved staff, whether producible or privileged, is remote.

[2] POM of Pennsylvania, Savvy Dog, Pace-O-Matic, and Miele Manufacturing have collectively produced a total of five (5), that is, five (5), conversational emails as responsive to requests in this *entire* litigation.

Mr. Cline's purported telephone call necessarily occurred prior to the retaliatory price increase, because it was the averred causation.  If Mr. Neiser was on the call, it was at least a period of four (4) days of unauthorized, unnoticed, and illegal withdrawals from Pennsylvania Skill Games' bank account, before Mr. Neiser's Friday afternoon notice to the undersigned, so the dates and occurrence of Mr. Cline's "phone call" are of critical importance.

Unless Mr. Cline went rogue, at some point, according to Messrs. Miele and Warren, one or more of POM of Pennsylvania, Savvy Dog and/or Pace-O-Matic (we do not yet know who Mr. Cline was representing at that moment in light of the joint representation) would have directed Mr. Cline to implement the retaliatory, unnoticed, bad faith price onto Pennsylvania Skill Games through Mr. Miele.  A culpable "directive" and any response are not attorney-client privileged, are not mental impressions, and discovery of the dates, methods, and origin are critical, as well as whether Mr. Miele's testimony will even be corroborated.  Moreover, if anyone is "relying upon the advice of counsel," that fact must be made known of record.

1.       On November 3, 2020, by leave of this Court, Pennsylvania Skill Games amended its Complaint. [x941 ECF 1; ECF 87].  As this Court recently denied Defendants' Joint Motion to Dismiss the Complaint as amended [ECF 93], the undersigned believes that this Court remains generally familiar with the claims.

2.       The only person who can testify first-hand as to why Mr. Cline said what he said is Mr. Cline.  The relevance and weight of Mr. Cline's testimony is overwhelming on a critical trial question.  Mr. Cline was not designated or otherwise made available to testify in any 30(b)(6) deposition, notwithstanding that the subject was identified in item (d) and he is the best and only

person to testify as to why he said what he said.  The deposition requested of Mr. Cline is not duplicative, irrespective of the depositions that have *occurred by all sides* by stipulation.[3]

3.      The fact that Miele Manufacturing (the arms and legs) might assert that some "order" came down from Pace-O-Matic (the brain) does not defeat conspiracy, but simply evidence different roles. *See, e.g., United States v. Fattah*, 902 F.3d 197 (3rd Cir. 2018).  If the *origination* of the directive for Mr. Client to extract the pricing from Pennsylvania Skill Games occurred contemporaneously on the purported telephone call, by the advice of Mr. Neiser, then Mr. Cline can assert a privilege or indicate that his client(s) are relying upon the advice of counsel.  Only Mr. Client can testify as to the seminal facts regarding his "directive" to Mr. Miele.

4.      From a timing of the notice perspective, the undersigned noticed Mr. Neiser informally of a request for the deposition of Mr. Cline on December 31, 2020, [Exhibit 5.1].  The undersigned had specifically to follow up with a second request as a result of no acknowledgement or response whatsoever as of January 7, 2021, when Mr. Neiser was making an inquiry [Exhibit 5.2 (thread starting at bottom, and noting Exhibit 5.3 is the referenced Request for Production with the transcript references as set forth in the email)[4]].  After a cancellation by Mr. Neiser for the "meet and confer," the parties met and conferred on January 13, 2021, and the Notice of Deposition was formally issued on January 14, 2021, per the conference, to position all or any of Mr. Neiser's clients to move for a protective order, which was filed eight days later after working hours on Friday, January 22, 2021.  [ECF 94; Exhibit 5.4]

---

[3] Other depositions do not replace Mr. Cline's testimony.  If 100 people see the assassination of John F. Kennedy, that does not replace the testimony of Lee Harvey Oswald, whether available or unavailable, as the case may be.

[4] Starting on 12/31/20, the email thread is summarized as follows: "PSG would like a short deposition of Mr. Cline." [Delay] "PSG is waiting for your answer to a deposition of Mr. Cline." "POM objects and you need a court order." "Why are you objecting?" "Why you want the deposition?" "You've already stated the objection; therefore, PSG's basis must be irrelevant to your already-stated objection; but see the 12/31/20 production request." "POM refuses to look at your production request."

5.        *First,* the Court should note that Mr. Miele's testimony is directed to Pace-O-Matic, and not Mr. Neiser's other clients.  *Second,* this Court should note that Mr. Miele and POM of Pennsylvania, Savvy Dog and Pace-O-Matic are ostensibly placed into a framework of finger-pointing.  *Third,* this Court should see some difficulty in one attorney or firm representing four clients and the other attorney representing a discrete subset of three parties, which raises disqualification by conflict of interest issues.  *Fourth,* attorneys who participate in culpable acts are not immune from culpability.  *See, Heffernan v. Hunter,* 189 F.3d 405 (3rd Cir. 1999).  Mr. Cline does not represent Mr. Miele and Mr. Cline's "directive" is not privileged.  A directive is not a legal impression or advice.[5]  Mr. Cline was not acting as an advisor, but as the specific tool of communication for the averred culpable act.

---

5 Mr. Miele's testimony separates him in defense, and such a distinct separation raise other collateral issues. *See, e.g.,* Pennsylvania Rules of Professional Conduct, 1.7(b) and the Official Notes:

Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent. On the other hand, simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (a)(2). A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as in civil cases. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met...

If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1). After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise provided in Rule 1.6. Neither this Rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like. Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to guide conduct in connection with this Rule, the lawyer may make inquiry within the organization as indicated in Rule 1.13(b)....

In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great the multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the

6.      If questions elicit privilege objections, then this Court will then have a proper record upon which further to rule in the interests of justice, but a presupposition as to what would be objectionable inquiry is ungrounded, particularly in light of the facts and occurrences at issue. Clearly, depositions of attorneys are permitted; to wit:

> **The cases make it clear that Ms. Frazier is not entitled to a protective order merely because SEPTA seeks to depose her attorney. This court has previously recognized that "[t]he fact that the proposed deponent is an attorney for one of the parties in the case is clearly not enough, by itself, to justify granting in full the motion for a protective order."** *In re Arthur Treacher's Franchisee Litigation,* **92 F.R.D. 429, 437 (E.D.Pa.1981);** *see Johnston,* **130 F.R.D. at 352 (no general rule prohibiting the deposition of opposing counsel regarding relevant, non-privileged information); Rule 30(a)(1) (providing that "[a] party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court...." (emphasis added)). Thus, we may grant Ms. Frazier's request for a protective order only if she establishes undue burden or oppression measured by (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition.** *Johnston,* **130 F.R.D. at 353.**

*Frazier v. Southeastern Pennsylvania Transp. Authority,* E.D. Pennsylvania. 161 F.R.D. 30932 Fed.R.Serv.3d 1141 (E.D.Pa 1995).

7.      The moving parties have not met their burden regarding unique critical testimony. Prejudice will occur if the deposition is not permitted, and no prejudice in allowing the deposition.

8.      As a somewhat incidental point, there is a reference that the Notice of Deposition was mis-designated as a 30(b)(6) instead of a 30(b)(1), with a specific deponent identified. *See, e.g.,* FEDERAL RULES HANDBOOK 2021, Baicker-McKee, p. 886 (in specifying a party representative, only a notice is required). This issue is a minor and non-substantive issue and beyond the substance of the "meet and confer." However, the attached revised Notice of Deposition, removing the reference, has been or will be served as set forth in Exhibit 6.

---

situation involves creating or terminating a relationship between the parties.

Pennsylvania Skill Games prays that the joint Motion for Protective Order of Pace-O-Matic, POM of Pennsylvania, Savvy Dog Systems, and Miele Manufacturing be DENIED.

Dated: January 29, 2021

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Pittsburgh, PA 15241-2565, USA
v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

8

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing Reply Brief was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

January 29, 2021

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com