**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**REPLY TO PENNSYLVANIA SKILL GAMES, LLC'S BRIEF IN
OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

AND NOW COMES Defendants Pace-O-Matic, Inc. ("Pace") and Miele Manufacturing, Inc., ("Miele") (hereinafter referred to as the "Pace Defendants"), by and through their undersigned counsel, and files the within Reply to Pennsylvania Skill Games, LLC's (hereinafter referred to as "PSG") Brief in Opposition to Motion for Protective Order ("Opposition"):

1.     PSG's Opposition makes arguments about <u>everything other than</u> demonstrating a need to depose the General Counsel of a party, without leave of court, for what would be its 20th deposition in this matter, after having a full opportunity to depose corporate designees.

2.     PSG claims in its Opposition that only Attorney Cline can testify as to why "Mr. Cline said what he said" regarding the corporate decision to increase fill prices and that Attorney Cline should have been a corporate designee. (Opposition, pg. 2).

3.     PSG also claims an "intentional delay" of four days to advise PSG about the price increase. This question is irrelevant to whether Pace or Miele lacked a right to increase the price of fills, let alone whether any conduct was intended to interfere with existing or prospective

contracts[1]. (Opposition, pg. 3). The increase occurred, the dates are set, and no other temporal testimony matters as to the elements of PSG's claims.

4.      Furthermore, PSG could have sent an interrogatory or Request for Admission for the same information it seeks from Attorney Cline. It did not. Less invasive means existed.

5.      PSG served a Notice of Deposition under FRCP 30(b)(6) to Pace, POM, and Savvy Dog after extensive negotiations regarding scope. A copy of the combined notices are attached hereto as **Exhibit A**. The depositions occurred on October 8 and 9, 2020, several days after the Miele 30(b)(6). Subsection (d) of each notice in Exhibit A establishes the relevant scope of testimony now sought from Attorney Cline.

6.      Attached hereto as **Exhibit B** is a more complete copy of the deposition transcript excerpts of Daniel Warren, the corporate designee for Pace, POM, and Savvy Dog. Counsel for PSG asked Mr. Warren to confirm he was testifying pursuant to the notices attached as **Exhibit A**, to include the specific components of the notice *including subsection (d)*. (Exhibit B, 8:21-10:18; 11:12-16).

7.      PSG asked Mr. Warren numerous questions about the fill increase and received full and complete answers. See Exhibit B, 33:18-34:1; 75:5-76:10; 80:22-24; 80:25-81:8; 99:12-103:16; 106:20-109:25; 112:2-115:6; 139:12-140:3; 143:7-144:2; 144:25-146:3; 158:1-13.

8.      The POM Parties produced witnesses to testify based upon PSG's 30(b)(6) deposition notice, PSG questioned the witnesses, and there was ample opportunity to bind the corporation regarding "why" the price increase occurred—the same testimony sought from

---

[1] PSG never asked a single witness about individual contractual relations with which Pace/Miele allegedly interfered with, Pace/Miele's knowledge of same, or anything related to potential "interference." PSG should have had that information ready to question the designees at the time of that deposition because it already sought leave to file its Amended Complaint months earlier.

Attorney Cline. PSG simply didn't ask the right questions and/or squandered its time on ancillary issues[2].

9.      If there were any questions PSG did not ask, neither Pace nor should Miele endure the expense and disruption to correct that issue, especially on claims with dubious merit.

10.      As noted in the Motion for Protective Order, PSG deposed Miele days before the Warren deposition. PSG therefore knew about the conversation between Miele and Attorney Cline prior to the Warren deposition. PSG easily could have made its inquiries to Mr. Warren at that time. It did not. In fact, PSG specifically asked Mr. Warren about the conversation with Miele and Cline, Mr. Warren gave responsive testimony, and PSG ended the deposition—and Warren's deposition continued weeks later on October 28, 2020. (Ex. B, 158:1-13).

11.      Indeed, Mr. Warren provided all the testimony on behalf of Pace, POM, and Savvy Dog that PSG seeks to obtain from Attorney Cline, and PSG had every opportunity to make its inquiries. As such, no need exists to depose Attorney Cline let alone prejudice to PSG.

12.      At no time was any objection made about the insufficiency of Mr. Warren as a designee or that Mr. Warren was not prepared.  Approximately **two months** after the aforementioned deposition, PSG requested the deposition of Mr. Cline.

13.      PSG complains about counsel not responding fast enough, that a meet-and-confer was moved a day, and other arguments that have nothing to do with anything—as part of this ongoing notion of a conspiracy—to somehow support the argument that Attorney Cline should

---

[2] For example, PSG provided an incomplete transcript of the Deposition of Danny Warren to support its alleged need to depose Attorney Cline (ECF No. 96-3). Of the 17 pages (two of which lack testimony), PSG dedicates 10 pages of testimony on a draft of an agreement between Pace and Miele regarding their business relationship that has *absolutely no* bearing on this case. (Opposition, page. 3). The issue here is whether Attorney Cline should be deposed in relation to price increases. Agreements by and between the parties—in draft form—could not be more irrelevant to this issue or any issue in this case.

be deposed. These accusations are baseless chatter that not only are wholly irrelevant to the issue, they have no bearing on establishing prejudice or addressing the merits of this Motion.

14.     Ultimately, there is zero prejudice to PSG if the Motion for Protective Order is granted. Conversely, the POM Parties are prejudiced because of the expense, disruption, and harassment that will occur.

15.     As a final note, PSG saw fit to dedicate precious space in its Opposition to make specious arguments about disqualification of counsel due to a "conflict." PSG also makes backhanded comments about discovery and emails that are equally meritless.

16.     The reality is this: If PSG actually thinks there is a basis to disqualify counsel for the Pace Defendants, it should file a motion. Otherwise, PSG should have kept its thoughts to itself. The accusations in PSG opposition should be stricken from the record, are offensive, irrelevant and an unprofessional attempt to discredit opposing counsel before this Court without actually addressing any of the issues regarding the questions raised by the Motion for Protective Order. It also speaks volumes about PSG and its tactics.

17.     Any suggestion that counsel for the Pace Defendants intentionally delayed, hindered, or otherwise tried to "position" clients to issue a protective order is both strange and flatly wrong. The reality is that a "meet and confer" meeting with PSG's counsel needed to be moved a single day to accommodate schedule, PSG sent its notice of deposition a day later—without seeking leave of court—and then the Motion for Protective Order was filed a week later. Arguably, because PSG failed to seek leave of court, Pace and Miele could have simply ignored the notice of deposition to Attorney Cline.

18.     As for PSG mentioning that the Motion for Protective Order was filed "after hours," if that somehow is an offense, counsel for the POM Parties apologies for being busy and

4

doing something completely within the rules that wouldn't have been necessary but for PSG's unilateral demand for Attorney Cline's deposition.

19.     Finally, PSG incredibly draws some comparison between Attorney Cline's deposition and the assassination of JFK. PSG may find this to be clever or insightful, but it's not. Oswald was killed before anyone had the chance to question him. Here, PSG had the opportunity to ask all its questions to a corporate designee(s) and it did not. Its opposition to the Motion for Protective Order should meet the same fate as Oswald. The body need not be exhumed.

WHEREFORE, Defendants Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC request that this Honorable Court to grant their Motion for Protective Order.

Respectfully submitted,

Dated:  February 5, 2021

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc. and Miele Manufacturing, Inc.**

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**CERTIFICATE OF SERVICE**

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on the 5th day of February, 2021, I served the foregoing **Reply to Pennsylvania Skill Games, LLC's Brief in Opposition to Motion for Protective Order** to counsel of record via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
  Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
      Julian E. Neiser