**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

            Plaintiffs,
            v.

PENNSYLVANIA SKILL GAMES, LLC,

            Defendant.

---

PENNSYLVANIA SKILL GAMES, LLC,

            Plaintiff,
            v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

            Defendants.

---

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES'
EMERGENCY MOTION TO COMPEL
PRODUCTION**

1.     Reference is made to the Order of Court dated February 9, 2021 [ECF 101] permitting the deposition of Gregory Cline, whom Louis Miele testified directed Mr. Miele to impose the retaliatory pricing that is the subject of the claims in the Amended Complaint, Counts VI and VII. [ECF 87]  The undersigned expects that this Court is still familiar with the general facts.

2.     The relationship of Miele Manufacturing *vis a vis* Pace-O-Matic, POM of Pennsylvania and/or Savvy Dog Systems is clearly at issue by the claims made in the Amended Complaint. [ECF 87] Moreover, Miele Manufacturing and Pace-O-Matic are both parties to the "Equipment Purchase Agreement," and the terms of their relationship as "Seller" as between themselves, on the one hand, with appurtenant duties to Pennsylvania Skill Games, on the other hand, is ostensibly discoverable. [2:18-cv-941-RCM ("**x941**", Complaint, ECF 1-1, Exhibit 1]

3.      The deposition of Gregory Cline is scheduled for Thursday, February 18, 2021, at 9:00 A.M.

4.      On February 12, 2021, the undersigned sent to counsel for Pace-O-Matic, Miele Manufacturing, POM of Pennsylvania and Savvy Dog Systems the confirming letter attached hereto as Exhibit 2, following up regarding clearly discoverable relevant information regarding documents that were testified to exist by Mr. Warren[1] from memory relating to the relationship between any or all of Mr. Neiser's other three clients with Miele Manufacturing; to wit:

> **Q. Do you have any understanding that the relationship where Miele Manufacturing, being the exclusive distributor for Pace-O-Matic in the state of Pennsylvania, is memorialized in writing somewhere?**
>
> **A. I do not know of any document that is memorialized with complete signatures by Pace-O-Matic or POM of Pennsylvania and the Miele Manufacturing corporate --**
>
> **Q. All right. So you --**
>
> **A. -- corporation, whatever legal.**
>
> **Q. All right. So you sort of qualified your answer in a way I need to ask a few questions about.  You said, I think, complete signatures. So what I'm really trying to find out is, you know, is there some document that memorializes it, perhaps it's a draft, perhaps it's completely countersigned, perhaps it's signed by one person, perhaps it's initialed, you know, it could be in lot of forms. But I'm just first trying to find out if there's some document that exists that memorializes, or at least purports to memorialize the relationship?**
>
> **A. There is definitely what I would refer to as a draft document between Miele Manufacturing and POM of Pennsylvania. I believe that's been in draft form for a significant period of time. So I believe there is a document that represents the -- the arrangement, but I don't believe, as we sit here today, it's been signed by both parties.**
>
> **Q. Do you have an understanding it's been signed by either party?**
>
> **A. I believe it's still in the draft, draft, uh, form.**

---

1 Mr. Warren was designated by Pace-O-Matic, POM of Pennsylvania and Savvy Dog Systems and simultaneously deposed.

**Q. And do you have an understanding of when that was first drafted?**

**A. I can tell you -- um, I can't give you an exact date, but I can tell you this process has been going on for a significant period of time.**

**Q. Significant being two years, three years?**

**A. I would tell you, if you told me two years, I would tell you that sounds reasonable.**

**Q. Do you have an understanding of whether it's a two-page document such as Mr. Miele testified or is it a somewhat longer document, such as Exhibit 2?**

**A. I believe it would be closer to Exhibit 2 in its length and its comprehensive terms.**

[Deposition of Daniel Warren, Exhibit 3 "**Warren Deposition**," P46:L6–P47:L25; *see, e.g.,* Exhibit 4 hereto, being the Exhibit 2 in the cited testimony for the Court's reference].

The documents were iterated between or among one or more of the parties; to wit:

**Q. All right. So if I -- if I -- I try to summarize that testimony, we should be able to find, perhaps two years ago, beginning two years ago, some -- or at least two years ago -- some *iteration of drafts* for a memorialized distribution agreement somewhat more like, let's call it, the Exhibit 2?**

**A. That would be accurate.**

Warren Deposition, P49:L3–9 ("iteration of drafts," being plural, emphasis added). Mr. Warren testified that he frequently used email with Mr. Miele to communicate:

**Q. When you communicated with Mr. Miele, you communicate by electronic mail frequently, isn't that right?**

**[Objection stated]**

**A. If you're asking -- are you asking me how I communicate or how does Pace-O-Matic communicate?**

**Q. Well, we can start with you?**

**A. Communicate phone, e-mails, some texts.**

3

**Q. And what about, to your knowledge -- and I didn't mean to cut you off, were you complete in your answer?**

**A. Yes.**

**Q. Okay. Or you did complete your answer, I should say?**

**A. Yes, sir.**

[Warren Deposition, P48:L1–15]  However, in preparation for the deposition of Mr. Cline, the undersigned could not locate any such documents having been produced, or any emails or communications related to any such document or documents, notwithstanding continued representations that "everything" was produced.[2]  Yet, none of it was produced: no iterated drafts, no cover communications, no texts and no emails.

5.      On this date, at 4:37 P.M., the undersigned received the response identified as Exhibit 5, indicating that one or more documents actually exist, notwithstanding that the documents were the subject of document Responses and Objections to Pennsylvania Skill Games, LLC's First Set of Requests for Production of Documents, whereby any such existing documents should have been produced long ago.  This Court will note the "**None in its possession**" and "**Produced**" representations.  [Exhibit 6.1–6.8, Nos. 1, 7, 8, 18, 26, 28, 31 and 32 (for the Court's convenience, noting that Exhibit 6.2 is the Miele response ); *see, fn.* 2, *supra.*]

6.      The undersigned believes that, only because the Cline deposition has been brought to the attention of this Court, the document or documents are now represented to exist.  There is no burden in producing them.  Counsel for Pace-O-Matic, Miele Manufacturing, POM of Pennsylvania and Savvy Dog Systems appears simply to be arguing that documents are withheld by a heretofore unknown relevancy objection, which is an absolutely groundless objection.

---

2 *See, e.g.,* Exhibit 3, P50:L8–50:L13: "MR. NEISER: I've produced every document that's been requested, every communication and I don't -- whatever is in existence between the parties has been sent over to you that falls within the scope of the discovery request."

7.      The grounding of the relationship between Miele Manufacturing and Mr. Neiser's other three clients, in light of the issues in this case and the claims made, are so overwhelming that a relevancy objection is simply frivolous; to wit:

> **Q . Are you currently selling to Pennsylvania Skill Games HD compliant hardware components complete, $995?**
>
> **A . No.**
>
> **Q . Why not?**
>
> **A . Because we are no longer selling Pennsylvania Skill, LLC hardware.**
>
> **Q . Why not?**
>
> **A . That was a Pace-O-Matic decision.**

[Deposition of Miele Manufacturing, Exhibit 7, P60:L10–20]  If some power by Pace-O-Matic over Miele Manufacturing is claimed, it is evidenced by the discoverable "memorialized writings." And the finger pointing continues:

> **Q . Do you have an understanding that Pace-O-Matic tells you what to do with regard to your conduct under this agreement?**
>
> **A . Pace-O-Matic controls the price of fills.**

[Deposition of Miele Manufacturing, P62:L17–22 ("this agreement" is the Equipment Purchase Agreement, x941, ECF 1-1]  Again, any "control" or proposed control by Miele Manufacturing over Pace-O-Matic, or Pace-O-Matic over Miele, is clearly relevant regarding a critical matter in this dispute and cannot be withheld.  Moreover, Daniel Warren testified to the effect that it is Mr. Miele who controls the relevant market; to wit:

> **Q. Okay. So it was you in at least 2014 and 2015, and at least your understanding is the function of iteration, to any extent there was further iteration, would have been with Mr. Cline?**
>
> **A. Well, over a period of time it would have been pushed into that area of the company that handles the legal and contract. So certainly when Greg, when it was**

**just Greg, there, it would have been Greg, and then as the company grows. So as I mentioned, the current draft, I couldn't tell you. I can tell you it's not me, but I couldn't -- I'm not trying to speak for Greg, either, whether Greg is working on that or any other person is working on it, currently.**

**Q. Mr. Warren, what are you -- you testified that Miele Manufacturing is the exclusive distributor in the state of Pennsylvania. What do you understand that role to be, or what does that mean in terms of duties or obligations or benefit?**

**A. The distributor role for Pace-O-Matic, you know, we're based in Atlanta, our business model is to find capable people and companies in the markets that we -- utilize our software, and let them, in effect, be the lead and run the day-to-day operations. So in that capacity, Lou, in his -- as the head of Miele Manufacturing, Lou would be the entity that contracts with operators and an operator then would contract with the location. So we're, if you think of as used as the vertical, we're the manufacturer and below us is the distributor. And so, as an example, Lou will – Lou is more knowledgeable about the marketplace because he lives and breathes the Commonwealth of Pennsylvania, we don't. So we provide support and -- for Lou, but Lou, Lou takes the initiative on marketing programs, sales, those two come to -- come to, the first two that come to mind or recollection.**

Warren Deposition, Exhibit 3, P50:L25–P52:L11.

Whether "memorialized with complete signatures" such as initially *qualified* by Mr. Warren at P46:L11, or if in draft form, or signed by one party or more, or initialed in the corner, the existing evidence is clearly discoverable as to which party is or may be responsible or not responsible for what, or who may or may not control whom. Both Miele Manufacturing and Pace-O-Matic have duties stated within the Equipment Purchase Agreement, and documents between the two of them are discoverable to determine if or how certain duties between them may or have affected their duties under the Equipment Purchase Agreement, including, for example, how one or the other, or both, would make sure, "*Seller will use all reasonable efforts to make sure Buyer has access to software plays for its Compliant Terminals and Hardware components as long as Seller is in the market.*" [*See, e.g.,* Exhibit 1, §3]

Iterated draft documents are a form of admission by the drafters, and the iterations evidence the revisions between the parties regarding the terms and modifications thereto, with the cover

communications, emails and texts documenting relevant timing issues and surrounding discussions.  This is a basic and obvious point that is well-known to all.  The documents should have been produced long ago or referenced with some form of "withholding" notice.  Stating a relevancy objection to this subject-matter is so absolutely groundless as to be clearly frivolous.

WHEREFORE, Pennsylvania Skill Games prays that its Motion to Compel Production be granted as set forth in the proposed Order attached hereto.

Dated: February 16, 2021

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
  VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Pittsburgh, PA 15241-2565, USA
v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

7

## RULE 26(c)(1) and 37(a)(1) CERTIFICATION

I hereby certify that on January 16, 2021, at 4:54 P.M., I conferred in good faith with the counsel for the non-moving party in attempt to resolve the within discovery dispute without court intervention, but was unable to do so.

February 16, 2021

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

**CERTIFICATE OF SERVICE**

I hereby certify my belief that a true and correct copy of the foregoing Motion to Compel was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

February 16, 2021

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com