IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

- - - - -

POM OF PENNSYLVANIA, LLC, t/d/b/a )
PACE-O-MATIC, and SAVVY DOG       )
SYSTEMS, LLC,                     )
                                  )
        Plaintiffs,               ) CIVIL ACTION NUMBER
                                  ) 2:18-cv-00722-PLD
    vs.                           )
                                  )
PENNSYLVANIA SKILL GAMES, LLC,    )
                                  )
        Defendant.                )
_____

PENNSYLVANIA SKILL GAMES, LLC,    )
                                  )
        Plaintiff,                )
                                  )
    vs.                           )
                                  )
PACE-O-MATIC, INC., and MIELE     )
MANUFACTURING, INC.,              )
                                  )
        Defendants.               )

- - - - -

VIDEOTAPED DEPOSITION OF BENTLEY GREG CLINE, a witness,

called for examination by Pennsylvania Skill Games,

LLC, pursuant to the Federal Rules of Civil Procedure,

by and before Cynthia P. Simonovitch, a Court Reporter

and Notary Public in and for the Commonwealth of

Pennsylvania, conducted virtually via Zoom at 3450

Corporate Way, Duluth, Georgia  30096, on Thursday,

February 18, 2021, commencing at 9:20 a.m.

A P P E A R A N C E S

On behalf of POM of Pennsylvania, LLC, Pace-O-Matic Inc., Savvy Dog Systems, LLC, and Miele Manufacturing, Inc.:

  Julian E. Neiser, Esquire

  Spilman, Thomas & Battle, PLLC

  301 Grant Street

  One Oxford Centre, Suite 3440

  Pittsburgh, Pennsylvania  15219

  412.325.1116     jneiser@spilmanlaw.com

On behalf of Pennsylvania Skill Games, LLC:

  Gregg R. Zegarelli, Esquire

  Technology & Entrepreneurial Ventures Law Group, P.C.

  2585 Washington Road

  Summerfield Commons Office Park, Suite 134

  Pittsburgh, Pennsylvania  15241

  412.833.0600     mailroom.grz@zegarelli.com

Also present:

  J. dax Parise, Videographer

  Albert Unis IV

3

I N D E X

WITNESS

Bentley Greg Cline


EXAMINATION                                              PAGE

Examination by Mr. Zegarelli ......................   6

Examination by Mr. Neiser ........................   -


DEPOSITION                                    MARKED FOR

EXHIBIT NO.                                 IDENTIFICATION

1 (Excerpt of Transcript of Lou Miele) ............  19

2 (Letter dated 2/5/21 of Julian E. Neiser and
    Bates Documents POM 004713-POM 004715) .........  39

3 (Letter dated 2/16/21 of Julian E. Neiser and
    Privilege Log) .................................  39

4 (Excerpt of Transcript of Daniel Warren) ........  57

5 (Letter dated 2/16/21 of Julian E. Neiser) ......  66

4

                    P R O C E E D I N G S

                    (9:20 o'clock a.m.)

             VIDEOGRAPHER:  This is the video

deposition taken of Bentley Greg Cline taken

on Thursday, February 18, 2021.  The time is

9:20 a.m.

        The court reporter will please swear in

the witness.

             COURT REPORTER:  My name is

Cynthia Simonovitch and I am a court

reporter for Snyder Reporting Services.

        This is the remote video deposition of

Bentley Greg Cline taken in the matter of

POM of Pennsylvania, LLC, et al., vs.

Pennsylvania Skill Games, LLC, and

Pennsylvania Skill Games, LLC vs.

Pace-O-Matic, Inc., et al., filed in the

United States District Court for the Western

District of Pennsylvania at Case No.

2:18-cv-00722-PLD.

        The attorneys participating today

acknowledge that I am not physically present

in the proceeding room and that I will be

reporting this proceeding remotely.  They

further acknowledge that the witness will be

sworn in remotely by me. The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.

To comply with recent changes to the Pennsylvania notary rules, the administration of the oath will be recorded and retained by me.

Please indicate your agreement by stating your name and your agreement on the record. The taking attorney will go first, and then I will swear in the witness and we can proceed.

MR. ZEGARELLI: Greg Zegarelli representing Pennsylvania Skill Games, LLC. That is acceptable to me. Thank you.

MR. NEISER: Julian Neiser on behalf of Pace-O-Matic, Inc., POM of Pennsylvania, LLC, Savvy Dog Systems, LLC, and Miele Manufacturing, Inc., and I agree as well.

BENTLEY GREG CLINE, the deponent, having been first duly sworn, was deposed and testified as follows:

MR. ZEGARELLI: Before we begin,

Julian, are there any preliminary matters that we need to discuss with regard to privilege or anything that we should put on the record preliminarily?

I don't have anything. I mean, just to say, I know that you had mentioned I think at -- at some point if we needed to discuss privilege issues. So if there's anything we need to put on the record.

MR. NEISER: Well, I -- I was suggesting that so we did it before the deposition so we could resolve those issues without wasting anybody's time. But because we didn't do that, despite my invitation, we'll address them one by one.

MR. ZEGARELLI: Okay. And -- and from my end, is that was the way I would have presumed to do it, one by one. So, okay. Thank you.

EXAMINATION

BY MR. ZEGARELLI:

Q.    Mr. Cline, what is your address for the record, please?

A.    My home or business address?

Q.    Home, please.

A.     74 Glenleigh Drive -- I'm sorry, Glenleigh Court, Suwanee, Georgia  30024.

Q.     Okay.  And can you spell that address for the -- for the transcript, please.

A.     Yes.  G, as in golf, l, as in Lima, e, as in echo, n, as in November, l, as in Lima, e, as in echo, i, as in India, g, as in golf, h, as in hotel, Court, Suwanee, S-u, as in uniform, w, as in whiskey, a, as in alpha, n, as in November, e, as in echo, e, as in echo.

Q.     Thank you.

       Mr. Cline, have you ever been deposed before?

A.     Yes.

Q.     Okay.  And when have you been deposed before?

A.     It would have been approximately 2000 -- 2005 or '06.

Q.     And what was the purpose of the deposition?

A.     It was a fact -- for fact deposition testimony in a case in York, Pennsylvania.

Q.     Any other times?

A.     No.

Q.     Okay.  And you said it was fact testimony in York, Pennsylvania.  Are you saying when -- are you saying that you were not a representative of a business or entity?

A.     I was not acting as an attorney in the case,

correct.

Q.    You were a fact witness, I take it?

A.    Correct.

Q.    That's what you're saying.  Okay.

And what was the -- the caption of that case as best you recall it?

A.    I -- I don't recall the caption of the case.  It involved many parties.  I was a party in the case.

Q.    You were a named party?

A.    Correct.

Q.    And do you recall who the Plaintiff was?

A.    We were the Plaintiff, I among other people.

Q.    Was the subject of that case skill games, as you understand --

A.    No.

Q.    -- the term?  Okay.

A.    It was not.

Q.    Were any of the parties, to your recollection, parties that are currently involved in the case regarding which you're testifying today?

A.    No, they are not.

Q.    Okay.  So you're probably -- we -- we hope today this is not a long deposition, but just to go through some ground rules which you probably know.

You are a practicing attorney; correct?

A.      Yes.

Q.      Okay.  And I'll state for the record -- are you on any medication or drugs today that might affect your truthful testimony?

A.      No.

Q.      Okay.  If you need to take a break, as I'm sure you know, just let me know and we can try to accommodate you.  If you could give me some advance notice, that would be great.

If there's any question you don't understand, please ask me to clarify it.  If you don't ask me to clarify it, I'll proceed with the understanding that you understood my question.  Fair enough?

A.      Fair enough.

Q.      Okay.  Now, as you testify today, where are you physically?

A.      I am here in Duluth, Georgia.

Q.      Are you in your office or at home?

A.      I am in my office.

Q.      Okay.  And are you alone in your office at this time or is someone else with you?

A.      I am alone in my office.

Q.      Okay.  And please let me know if anybody else enters the room so that we know who's actually in attendance at the deposition.

10

A.     I will.

Q.     When you say you're at your office, is that a Pace-O-Matic office?

A.     It is.

Q.     Okay.  Now, I do have a couple -- a few exhibits to show you today.  How would you like me to manage those exhibits?  Would you like me to e-mail them to you, e-mail them to your counsel, e-mail to both, or I should ask Julian perhaps?

MR. ZEGARELLI:  How would you like exhibits distributed?

MR. NEISER:  You can send them through the chat function and we can put them up on the screen.

MR. ZEGARELLI:  Okay.  You don't want me to e-mail them?

MR. NEISER:  Well, if you put them through the chat function, it does the same thing.  But if you don't want to do that, you can e-mail them to -- to me and I'll forward them to Mr. Cline.

MR. ZEGARELLI:  Okay.

Off the record one second, please.

VIDEOGRAPHER:  We're going off the record.  The time is 9:28 a.m.

(At 9:28 a.m., a short break was taken.)

VIDEOGRAPHER:  We are -- we are going back on the record.  The time is 9:29 a.m.

(At 9:29 a.m., the deposition resumed with all parties present.)

BY MR. ZEGARELLI:

Q.    Mr. Cline, are you currently employed?

A.    Yes.

Q.    And where or for whom, I should say?

A.    Pace-O-Matic, Inc.

Q.    Are you employed anywhere else?

A.    No.

Q.    And how long have you been employed by Pace-O-Matic, Inc.?

A.    Approximately since I believe 2015.

Q.    And when you were first hired in 2015, did you have a title of some sort?

A.    Yes.

Q.    And what was the title, Mr. Cline?

A.    General counsel.

Q.    Now, as I understand general counsel, that would be in-house counsel or often referred to as in-house counsel?

BENTLEY GREG CLINE                                    12

A.    Yes.

Q.    Okay.  And you are licensed in what jurisdictions, Mr. Cline?

A.    Georgia and South Carolina.

Q.    Now, has your title ever changed since 2015 from general counsel?

A.    No.

Q.    Now, when I asked you if you were employed, you indicated Pace-O-Matic, Inc., you indicated you were not employed anywhere else.

Do you regularly provide legal services for any other entities during the term of your employment at Pace-O-Matic?

          MR. NEISER:  Gregg, I'm going to object.  The score -- the scope and extent of the court's order was to ask Mr. Cline about what he said to Mr. Miele and why he said it.

          MR. ZEGARELLI:  Well, I -- I think it would naturally be implied by any court order for -- to allow testimony to have credibility foundation for the witness testifying.

     I don't -- I don't think you can remove a credibility foundation from a -- from any

deposition, so --

MR. NEISER:  Sure I can.  The judge did.

MR. ZEGARELLI:  Well, I don't agree with that.  I think it's implied that you have to be able to credify every witness.

MR. NEISER:  Credify, I don't know what that means.  I don't understand what credibility has to do with a discovery deposition.

If you want to ask -- here's what I'm going to do.  I'm going to place an objection.  He -- if he wants to answer any questions about that just for basic foundation, I understand that.  But considering your prior motions and attempts to enlarge this case, we're sticking to the order.

So, Greg, you can go ahead and answer.

MR. ZEGARELLI:  All right.  And, first of all, I just -- I don't appreciate the characterization.

MR. NEISER:  I don't care.

MR. ZEGARELLI:  I understand the

objection.  You know, the -- the characterization I think is incorrect.

BY MR. ZEGARELLI:

Q.    But having said that, go ahead, Mr. Cline.

MR. NEISER:  I'm just making my objection clear on the record so there's no waiver from this point forward.

Go ahead, Mr. Cline.

MR. ZEGARELLI:  And I -- and I'll -- and I'll state it's a mischaracterization.

BY MR. ZEGARELLI:

Q.    But go ahead, Mr. Cline.

A.    Can you repeat the question?

Q.    Sure.

Do you regularly provide legal services for any other entities while you're employed at Pace-O-Matic, Inc.?

A.    I do not provide any other legal ad -- advice or work for any other entities outside the Pace-O-Matic companies, no.

Q.    All right.  Okay.  So that -- you answered a little different than I asked it.

What do -- what do you call the Pace-O-Matic companies?

BENTLEY GREG CLINE                                    15

A.     It's the -- the companies related to Pace-O-Matic.

Q.     Okay.  And what would be those companies?

A.     I don't have a list.  It would be the POM of entities, Pace-O-Matic entities, entities of Michael Pace's.

Q.     Okay.  So if I understand your testimony, you provide legal services for multiple entities, but is it fair to say that your W-2 paycheck comes from Pace-O-Matic, Inc.?

A.     Correct.

Q.     Okay.  Do you represent Miele Manufacturing?

A.     No.

Q.     Okay.  Do you represent any organization named with a Miele designation in it, Miele Amusements, Louis Miele?

A.     No.

Q.     You indicated that your title is general counsel. Do you ever identify yourself as a vice president?

A.     No.

Q.     Is general counsel, as you understand it, an officer of the company?

A.     No, it's not an officer of the company.

Q.     What are your duties as general counsel?

A.     To provide legal advice to the company for its

business activities, in short.

Q.    Who do you report to as general counsel?

A.    I report to Paul Gold -- Paul Goldean, who is our CEO.

Are you asking currently?

Q.    Yes.

A.    Paul Goldean, CEO.

Q.    And how do you spell his last name?

A.    G-o-l-d-e-a-n.

Q.    Thank you.

A.    And also I report to Mark Poovey, P-o-o-v-e-y.

Q.    I'm sorry, would you spell it again, please.

A.    P-o-o-v-e-y, V, as in Victor.

Q.    Okay.  And what is his title?

A.    I believe he's chief legal officer.

Q.    Now, can you just -- it looks like you were hired approximately, if I -- I do the math, sometime for a period of about five years; is that right?

A.    Yes.

Q.    Okay.  And during the five-year period can you just, if you can sequentially, who did you report to when you began and at what dates did you -- to whom you reported change?

A.    I reported to -- when I first was employed I reported to Danny Warren and Michael Pace.

BENTLEY GREG CLINE                                    17

17

Q.    Okay.  And when after that did -- did that change?

A.    That changed around 2019.  I reported to Paul Goldean.

Q.    Now, when you say in 2019 you began to report to Paul Goldean, was that in replacement of someone or was that in addition to someone?

A.    In replacement.

Q.    Okay.  And replacement of both Dan Warren and Michael Pace or one or the other?

A.    Danny Warren.  Certainly I've always reported to Michael Pace in -- in a capacity through my time here.

Q.    Okay.  And that's still true?

A.    Yes.

Q.    Okay.  All right.

A.    I still consider him my boss.

Q.    Okay.  And when did Mr. Poovey come into your line of reporting?

A.    Last year I believe, 2020.  Like the dates are hazy.  My memory's not entirely 100 percent accurate, but that's about what I recall.

Q.    Okay.  So when you began it was Dan Warren and Michael Pace, 2019 Paul Goldean and Michael Pace, 2020 it was Mark Poovey and Paul Gol -- Goldean and Michael Pace?

BENTLEY GREG CLINE                                    18

18

A.    Correct.

Q.    Okay.  Now, is it your understanding that in your role at any time -- well, let me at least be a little bit more specific.

      Well, at any time in your -- in your tenure are you authorized on your own discretion to make business decisions with regard to pricing of fills, if you understand that term?

A.    No.

Q.    Okay.  Let me say it a different way.  You understand the term, but you're not authorized on your own to make a decision with regard to fills?

A.    No, I am not authorized.

Q.    Okay.  Now, you've attended on the record many of the depositions that have been taking -- that have taken place in this case, and you understan -- do you understand that you're here today to testify with regard to testimony made of record by Lou Miele?  And we're -- we're trying to gain an understanding from your perspective of that testimony.

      What I'm going to do is I'm going to send -- I'll put it on my screen in a minute, so I'll put that up, and I'll -- I'll, for the record, submit by e-mail to Mr. Neiser as well as to the court reporter the exhibit.  I'll put it on the screen and I'll take --

let you take a look at it.  Give me one second, please.

(Deposition Exhibit No. 1 was marked

for identification.)

BY MR. ZEGARELLI:

Q.    Mr. Cline, are you able to see my screen?

A.    I am, although I'm -- I'm looking at it on my phone.  It's very -- it's a -- it's very small.  I'd prefer to get it by e-mail if I could.

Q.    Okay.  We'll give you a second.  Your counsel should have a copy of it shortly and he can forward it off to you.

A.    Okay.  I have it now on my computer screen here.

Q.    Okay.  And I'll direct your attention to -- as an attorney, I expect you're familiar with the -- the referencing to a transcript.  But I'll reference you to Page 63, Line 8, and I'll get that on my screen.

A.    Okay.  I'm there.

Q.    All right.  And, in fact, what I should do is refer you to Line 12.  So let's look at Line 12.

Would you read the testimony, please, before I begin to ask you some questions.  If you would, if you would read 63, Lines 12 through 24, which is the actual testimony, and then back at 64 through the whole page, which would actually start with 19 to 25.

And I'll put that back up on the screen.  You'll

BENTLEY GREG CLINE                                          20

20

see language that it begins with an initial question, "Now, how would Pace-O-Matic convey to you" -- now this is to Miele, Mr. Miele. "Now, how would Pace-O-Matic convey to you to set that pricing from the previous amount of 2,000 and 1,000 for fill and half-fill respectively?" And the question (sic) is "Phone call."

"No e-mail" -- I'm sorry. The answer was "Phone call."

The question was "No e-mail?" "No, sir."

"No follow up (sic) e-mail?" "No, sir."

"Who called you?" And you'll see -- although your name is incorrectly spelled there, Mr. Cline, you'll see in 63-23 he says that "Greg Klein" called him, to which I asked, "What did he tell you?"

And then we go down to 64-19, repeating the question, "What did he tell you?" Mr. Miele testifies "Raise the price."

Question to Mr. Miele, "Why?"

And Mr. Miele responds "That was a Pace-O-Matic (sic) decision."

"That's all he said?"

So the first thing I'm going to ask you is: Is there anything in that line of testimony from Mr. Miele that you believe is incorrect?

A.    Yes.

BENTLEY GREG CLINE                                           21

21

Q.    Okay.  What is incorrect as -- as you read that testimony?  And you have -- you have the document yourself, but if you need me to scroll the pages, I'm glad to do it for you.

A.    I think the first thing would be that -- that I believe we conveyed to him by e-mail that Pace-O-Matic had decided to raise the fill price, in order to consult with him if he agreed with that.  So there was an e-mail, which I believe was produced to you.

The second thing was I did not tell him to raise the price.  I think the e-mail conveys, that you have, that it was a consultation, that Pace-O-Matic had decided to raise the price.

Q.    Okay.  So let me -- let me break that down a minute.  The first issue is that in Line 63-17 -- 60 -- Page 63, Line 17, Mr. Miele responds that a phone call occurred.

So just to -- to make sure I understand, as you sit here today and testify, that's incorrect?

A.    Insofar as that was to convey him to set the price -- that the fill price was $2,000.

Q.    Okay.

A.    I -- I did have discussions with Lou by phone call concerning this, but the -- setting the price was done by an e-mail, which I believe has been produced to

BENTLEY GREG CLINE                                          22

                                                                    22

you.

Q.    Okay.  Okay.  So then let me -- let me just see again.  And certainly let me know if I'm not restating this correctly.

But the phone call by which the price -- the phone call testified to by Mr. Miele by which the price was raised is not correct; that particular issue was done by e-mail?

A.    The raising of the -- notifying him of the raising of the price and asking him whether he agreed with that or not, yes, that was done by e-mail.

Q.    Okay.  But I want to just get -- try to get clear on the record.  You know, Mr. Miele testified there was a phone call.  You don't have any recollection of the, A, phone call by which you conveyed to set the pricing from the previous amount to 2,000 and 1,000 for fill and half-fill respectively?

MR. NEISER:  Object to form.

A.    I did not set the price.  Pace-O-Matic set the price.  I do recall having phone calls dis -- discussing with him about the possibility of this.  But it was not a phone call that I had where I set the price and called him on it.

Q.    All right.  So -- all right.  So let me ask you the question.  How would Pace-O-Matic convey to Mr.

Miele to set the pricing -- or how did Pace-O-Matic convey to Mr. Miele to set the pricing from the previous amount to 2,000 and 1,000 for fill and half-fill respectively?

MR. NEISER:  Object to form and asked and answered.

A.    Yeah, I believe I testified that we sent an e-mail to him and we produced to you.

Q.    Okay.  All right.  Fair enough.

Now, you testified that some phone calls occurred with Mr. Miele; is that right?

A.    Correct.

Q.    Okay.  And these phone calls that occurred, was Mr. Neiser on the line on any of those phone calls?

A.    Yes, he was.

Q.    Okay.  Was he on the phone for all of the phone calls?

A.    I don't recall.  I believe that he was, but I don't recall.

Q.    Do you recall how many phone calls?

A.    Approximately two or three, possibly four.

Q.    And if I understand your testimony, these phone calls were for the purpose of discussing a price increase?

A.    Among other things, yes.

24

Q.     Okay.  Why did you contact Mr. Miele with regard to raising the prices on Pennsylvania Skill Games?

A.     Why did I send him the e-mail?  I don't understand your question.

Q.     Okay.  Why did you, No. 1, have the phone calls that you've testified to?  What caused you to call Mr. Miele for the purpose of discussing the raising of prices?

A.     I don't recall whether I called him or he called me.  It's entirely possible that he called me at --

Q.     Do you have an understanding --

A.     I'm sorry?

Q.     No.  Go ahead.  You can finish your question.  I don't mean to interrupt.

A.     No, I just seem to recall that he called me on at least one or multiple occasions.

Q.     Do you recall how you or if you included Mr. Neiser on the line for those phone calls?

A.     Yeah.  I would have called or brought Julian in on a conference call or Julian may have been talking with Lou at the time, I don't recall, and they both called me.

There also may have been conference calls set up that we called in to.  That's possible as well.

Q.     All right.  So there's three or four calls?

A.    That I recall, yes.

Q.    If I understand your testimony, you don't recall who called whom?

A.    I don't specifically or --

Q.    Generally?

A.    -- or if it was a conference call that was set up by all of the parties.  I don't -- I don't recall that.

Q.    Do you recall any of the conversations that occurred during these calls?

A.    Yes.

Q.    Do you recall -- and I think you testified that at least some of the calls might have been for other issues in addition to the pricing increase.

      Do you recall if any of the calls were specifically for the pricing increase?

A.    I don't recall if they were specifically for the price increase or not.  I don't recall that.

Q.    All right.  And for conference call setups, do you recall how you were invited?

A.    It would have been through a calendar invitation or an e-mail.

Q.    And the calendar invitation is an electronic?

A.    It is.

Q.    Okay.  Okay.  So for these discussions with Mr. Miele, again, we get to the question of -- and I -- I

BENTLEY GREG CLINE                                    26

26

think we started this -- my initial question was what caused you to call Mr. Miele to discuss the pricing and to which you responded it might have been that he called you.  So maybe I'll ask it a bit more generally.

What -- why were you and Mr. Miele, as best you understand, discussing price increases with regard to Pennsylvania Skill Games?

A.    Well, Mr. Miele was concerned and Pace-O-Matic was concerned about your client's activities and -- and violations that we felt that were occurring by placing illegal games out in the market and putting those -- putting -- putting our wraps or our labels on them.

In addition -- in addition, there were instances that Lou had mentioned where -- and also our compliance team, where your client was -- had sold terminals to locations and then was re-selling fills to those locations, which is normally a violation by any operator in Pennsylvania.

Q.    Okay.  Do you have a contract with Mr. Miele, being Pace-O-Matic?

MR. NEISER:  Object.  It's outside the scope.

Q.    You can answer the question.

MR. NEISER:  No, he can't.

MR. ZEGARELLI:  You're going to

direct him not to answer whether or not

there is a contract with --

MR. NEISER:  He has a contract

with him, he himself?

MR. ZEGARELLI:  No; Pace-O-Matic,

if that needs to be made more clear.

MR. NEISER:  Object to form.

BY MR. ZEGARELLI:

Q.    Do you have an understanding if Pace-O-Matic has

an agreement with Mr. Miele?

MR. NEISER:  With Lou Miele

individually?

MR. ZEGARELLI:  Miele

Manufacturing.  Let's start there.

MR. NEISER:  Wait a minute.  Hold

on for one minute.

MR. ZEGARELLI:  I'm sorry, Julian?

MR. NEISER:  Hang on for a second.

MR. ZEGARELLI:  Excuse me, why --

why are we hanging on for a second?

MR. NEISER:  Because I'm thinking

about something, Gregg.  You can wait for a

second.

MR. ZEGARELLI:  Are you

communicating with the witness?

BENTLEY GREG CLINE                                    28

28

MR. NEISER:  Does it look like I'm communicating with the witness, Gregg?

MR. ZEGARELLI:  I don't know.  I don't have --

MR. NEISER:  Actually, I am.  He's on the line with you right now, so he can --

MR. ZEGARELLI:  I'm sorry, Julian. I'm not trying to be smug.  I'm just asking you --

MR. NEISER:  Gregg, I said I need a second to think about something, and you're asking me if I'm communicating with the witness.  I'm putting my hands up and you can see everything I'm doing.  Does that satisfy your question?

MR. ZEGARELLI:  I'm sorry, Julian. I don't have the video on my screen.  I'm looking at the -- the screen that's online.

MR. NEISER:  Not -- Gregg, just take a second, okay.  I said I needed a second to think about something.  If -- if that's not sufficient for you, I'm sorry. I'm just asking for 30 seconds.  Every time you keep asking me a question like that, it's taking more time.  Hang tight for a

29

second, okay.

Go ahead and answer, Greg.

THE WITNESS:  I'm sorry?

MR. NEISER:  You can answer.  And I'm going to make an objection that he'll answer this question, but we're not going any further than this based upon the court's order on that particular line.

A.    Well, I'll answer it this way.  We have a business relationship with Mr. Miele.  Asking whether we have a contract, quote, unquote, is a -- is asking me for a legal opinion about our status with Mr. Miele that I'm -- I'm -- I'm not going to answer because that invades the attorney/client privilege.

BY MR. ZEGARELLI:

Q.    Okay.  So you're going to refuse to answer the question of whether you believe that you have a contract -- Pace-O-Matic has a contract with Miele Manufacturing?

A.    Yes.

Q.    Okay.  Is the -- is the business relationship to which you've testified embodied in any writing?

MR. NEISER:  Objection.  Outside the scope.  You're not -- don't answer.

A.    Yeah, I'm not going to answer.  That, again, call

BENTLEY GREG CLINE                              30

30

-- to me invades my attorney/client opinion about whether certain documents document our legal relationship.

Q.    I'm simply asking if there's a document that embodies the relationship that you've testified to. But if you're not -- if you're going to refuse to answer it, that's what the record will hold.

MR. NEISER:  And if we do keep going on this, we're going to call Judge Dodge.

MR. ZEGARELLI:  Okay.  I understand your position.

BY MR. ZEGARELLI:

Q.    So now I'm going to direct your attention, Mr. Cline, to Mr. Miele's testimony at 64-19.  And Mr. Miele testified that you told him on a phone call to raise the price and it was Pace-O-Matic's decision.

If I understand your testimony, that -- Mr. Miele's testimony is not correct?

A.    Well, that it was an e-mail, that's correct.

Q.    Okay.  But not a phone call?

A.    Correct.

Q.    That's the first thing.

So it's not an e -- it's not a phone call, it's an e-mail.  And the second thing is you did not tell

him to raise the price, if I understand your testimony?

MR. NEISER:  Objection, mischaracterizes; asked and answered.

A.   That's correct, that I -- the e-mail is correct, in that I informed him it was Pace-O-Matic's decision they wanted to raise the fill price, and I consulted with Mr. Miele if he agreed to that or not.

Q.   And did he agree to it?

A.   To my knowledge, yes.

Q.   Did you need him to agree to it?

MR. NEISER:  What did you say, Gregg?  I couldn't hear you.

Q.   Did Pace-O-Matic need Mr. Miele to agree to it?

MR. NEISER:  Object to form.

A.   Yeah, I -- it calls for speculation.  I was consulting whether he agreed to it or not.  If he didn't, I'm sure we would have had further conversations.  As to what that -- would have happened and how that would have played out, I have no idea. That would be speculation.

Q.   So your testimony as general counsel is that you don't know if Mr. Miele had to agree to it?

MR. NEISER:  Well, no.  First off, wait a minute.  He is being deposed here individually.  This is not a corporate

designee deposition, as the order says, and he -- I'm going to object to asked and answered.

Q.   All right.  But you can answer my question because --

MR. ZEGARELLI:  You know, whether or not -- you know, how the court would ultimately or who's responsible for binding the testimony --

MR. NEISER:  I didn't instruct him not to answer, Gregg.

MR. ZEGARELLI:  Well -- I'm sorry, Julian?

MR. NEISER:  I did not instruct him not to answer.  I didn't tell him --

MR. ZEGARELLI:  Right.

MR. NEISER:  -- not to answer.  I just put an objection on the record.

MR. ZEGARELLI:  Right.  I -- right.

BY MR. ZEGARELLI:

Q.   So -- so, Mr. Cline, is it -- was it your understanding that Mr. Miele had to agree to the price increase?

A.   I did not have an understanding one way or the

other.  I consulted him.  If he agreed, then he agreed.
We went forward.  If he didn't, then we would have
discussed it.

Q.    Who sets the market price for fills?

A.    I -- I don't know.

Q.    At some point did Mr. Miele tell you that he
would comply?  You'll see his testimony here at Page
65, Line 1 and 2.

A.    I'm sorry, could you repeat the question.

Q.    Yes.

      Can you see on Page 65 --

A.    Yes.

Q.    Okay.  And Mr. Miele -- I asked Mr. Miele, "What
did you tell him," you being him.  And he said you --
he complied.

      And I said, "You told him you would comply," Mr.
Miele would comply.  He says, "Yes."

      "Did you raise an (sic) objection?"  Mr. Miele
says he didn't raise any objection.

      Is that your understanding?

A.    Well, there's several questions in there.  Did he
raise an objection, no, to my knowledge he didn't.

      As far as telling me to comply or not, the only
response that would have been -- to my knowledge would
have been a response to my e-mail, and he did not

respond negatively or positively either way.

Q.    Did he respond at all?

A.    Not that I recall.

Q.    So there's no response whatsoever from Mr. Miele with regard to the pricing?

A.    Not that I recall.

Q.    So he may have responded to you by e-mail, if I understand your testimony?

A.    No.  I do not believe he responded to me by e-mail.

Q.    You don't recall whether he did or not, if I understand your testimony?

            MR. NEISER:  Objection.  That's not what he said.

A.    Yeah, that's -- that's correct, that's not what I said.

      I -- I do not -- I do not -- he did not respond to me by e-mail.  Whether he called me or not, I don't recall that.

Q.    I'm sorry.  To understand your testimony, are you saying that you're sure he did not send you an e-mail in response?

A.    Yes.

Q.    Okay.  So he responded.  As you understand, his testimony would have been by some non e-mail form of

response?

A.    I don't recall whether he did or not.  I simply do not recall.

Q.    Did or do not -- he did or did not what?

A.    Respond to me in -- in any other way other than e-mail.

Q.    Okay.

A.    He called me or -- or -- I don't -- I don't -- I don't recall whether he called me or not.  I do not recall that.

Q.    Okay.  So you're sure it wasn't a response by e-mail, but you can't recall how he responded, but it just -- you're sure it wasn't by e-mail?

A.    I'm -- I'm very confused.  I'm not sure he responded to me.

Q.    Okay.  Does that mean then that you're not sure if he agreed to raise the prices?

                MR. NEISER:  Object to form.

A.    I'm sure he did not object.  Whether he called me in response -- some other response, I do not recall.

Q.    All right.  So as you sit here today, you can testify that he did not respond by e-mail, but whether he responded or not in some other way you don't recall?

A.    Correct.

Q.    Okay.  Thank you.

Do you have an understanding how the market price is set for fills?

A.    No.

MR. NEISER:  Objection.  Stop. The order says what it says.  That isn't part of it, Gregg.

MR. ZEGARELLI:  And I'll -- I'll state for the record that I think, Julian, the foundation that you and I think is necessary with regard to the court order is -- is not congruent.  So, I mean, if you make the -- the request for him not to respond, you know, we'll -- we'll move forward.

It is pursuant to a court order, so I think that -- you know, I will try to accommodate as best I can.  If you tell him not to answer, we'll just -- we'll move forward.  So I don't -- I don't want to belabor this.

MR. NEISER:  Gregg, we're not going to do that.  As a matter of fact, you have an affirmative obligation under this court's order to abide by her order.  I'm making an objection to it, okay.  She was

37

very, very clear on what is happening here, all right, and she said very specifically what the order says.

Now, if you need me to pull it up here and we need to read it and -- I asked you in the letter and I made clear to you that there's a limitation.  I'm not objecting to any of your other testimony, your questions on the subject, even though I disagree with it.  I'm following the court's order.  So, therefore, I'm placing an objection.

If you keep asking him questions outside of the scope of what the court order says, which is what was said and why he said it -- and I can't see how setting the market price would remotely fall within that scope -- then we're going to stop and we're going to call the judge.  And that's the last thing I'm going to say on it until I stop the deposition and we call the judge.

MR. ZEGARELLI:  Okay.

MR. NEISER:  I'm not interrupting. I don't agree with -- this is not foundation or credibility or any of the other things that you said that have nothing to do with

anything.  I'm just trying to abide by a court order.

MR. ZEGARELLI:  Okay.  And I'm trying to -- and -- and I'm certainly trying to abide by the court order as well.

MR. NEISER:  Well, I disagree with that.

MR. ZEGARELLI:  Okay.  Well, that's your prerogative.  But I'll state for the record I'm doing my best to abide by the court's order.  The court did grant the deposition.  The deposition scope's limited, I respect that.  The deposition subject is why he said and what he said with regard to fill price increases.

So I think it naturally follows -- a question regarding how market prices are set is naturally part of -- within the scope of proper questioning.  So -- but he has answered the question so we can move on.

MR. NEISER:  Well, he actually didn't.  I'm not going to instruct him not to -- well, go ahead.  Keep going.

MR. ZEGARELLI:  Well, the -- the record will speak for itself.

MR. NEISER:  It always does.

MR. ZEGARELLI:  Okay.  All right.

One second.  I'm going to send over

another exhibit.  I've sent over Exhibit 2.

I'll put it on my screen.

MR. NEISER:  Greg Cline, it's in

your inbox.

(Deposition Exhibit No. 2 was marked

for identification.)

BY MR. ZEGARELLI:

Q.    Mr. Cline, tell me when you have the -- what I've marked as Exhibit 2 is a -- well, let me -- let me back up.  I'm going to send you another exhibit here in a second.

(Deposition Exhibit No. 3 was marked

for identification.)

BY MR. ZEGARELLI:

Q.    Mr. Cline, I sent you over Exhibits 2 and 3, documents marked as Exhibits 2 and 3.  For the record, I -- I can tell you that Exhibit 2 is a set of redacted e-mails that were forwarded from Mr. Neiser on February 5th, and a Privilege Log of February 16 that addresses the e-mails.  And I -- and I sent over the Privilege Log because, as we'll see in these e-mails, there are redactions.  And so the Privilege Log identifies the

redaction.

Mr. Cline, do you have Exhibit 2 available?

A.    I do.

Q.    Okay.  Now, you testified earlier about some e-mails and conveying some information to Mr. Miele by e-mails.

Are the e-mails that have been produced the e-mails that -- to which you referred?

A.    In my -- in my deposition testimony recently?

Q.    Yes.

A.    Yes, they are.

Q.    Okay.  Now, I'm going to start at the bottom because that's where the e-mail thread begins here and I'm going to ask you to testify as to these documents.

Mr. Cline, I'm going to direct your attention to pages.  I may refer to them by this number at the bottom as you recognize, a Bates number, POM 4714, for example, as my cursor points to it.  Do you see that?

A.    Yes.

Q.    Okay.  So on POM 4714 it appears to be an e-mail from Chris O'Bier.  Is that your understanding of this e-mail?

A.    Yes.

Q.    And by the way, just so I understand where this e-mail came from, you produced this e-mail?

41

A.    Yes.

Q.    Okay.  All right.  So there is a -- I've asked your counsel for a copy of this image.  Do you have an understanding of what this image is (indicating)?

A.    I don't understand your question.

Q.    Do you see the -- the blue, perhaps, hyperlinked word I've highlighted with my cursor, image230945.png? Do you see that?

A.    Yes.

Q.    Now, at least my understanding is that normally shows as a graphic in an e-mail.  Do you recall what image230945.png graphically represented, if anything?

A.    I don't recall.  My -- my guess would be it would be the Pace-O-Matic logo.

Q.    Okay.  And I've asked -- I've asked your counsel to produce it just so we see the e-mail as it actually was sent.

                MR. NEISER:  Gregg --

                MR. ZEGARELLI:  Yes.

                MR. NEISER:  -- I have to -- I can send you that.  I'll tell you over the phone or on the -- on the record that I'm looking at the source e-mail and it is the Pace-O-Matic logo.  But I'll --

                MR. ZEGARELLI:  Okay.

MR. NEISER: -- send it over to you just to -- to close the inquiry. But I'll -- I'll send you a screenshot of the thing, but it is indeed the Pace-O-Matic logo. It is nothing substantive.

MR. ZEGARELLI: Okay. Thanks. Fair enough.

BY MR. ZEGARELLI:

Q. Okay. So, Mr. Cline, you received this. And if I look at the -- what appears to be -- the -- the attribute is -- the subject is Albie fill pricing. You understand Albie to be Mr. Unis from Pennsylvania Skill Games?

A. Yes. Correct.

Q. Okay. And the e-mail's from Chris O'Bier?

A. Correct.

Q. And what's Chris O'Bier's title at the time this e-mail was -- on the date this e-mail was sent, which would have been June 9th of 2020?

A. I don't know his title offhand.

Q. Okay. Now, the text below Mr. O'Bier is sending you appears to say -- well, I'll just read it. "Please send me (sic) the e-mail stating the change in pricing for fills done by PA Skill Games."

Now, do you have an understanding of what he

43

meant by "send the e-mail"?  It appears he's referencing something specific.

A.    Yeah, what I -- what I recall is I had a telephone conversation with Chris about Pace-O-Matic's decision to raise the -- the fill price, and he wanted a confirming e-mail to that regard.

And I also believe he -- I believe Chris wanted confirmation from Lou that that was -- that he understood that as well.

Q.    Was Mr. O'Bier on any of the phone calls that you've testified earlier?

A.    Not that I recall.

Q.    Okay.  Do you have an understanding if Mr. Miele called Chris O'Bier with regard to the pricing increases?

A.    I -- I don't have any understanding or knowledge of that, no.

Q.    And you understand PA Skill Games here used by Mr. O'Bier is referencing Mr. Unis and Pennsylvania Skill Games, the party in this case?

MR. NEISER:  Wait.  Wait.  No. Stop.  No.  The inquiry is why he said it -- what was said and why he said it.

MR. ZEGARELLI:  And -- and he's testified that these e-mails are exactly

that, and I'm inquiring with regard to the e-mails relating to his testimony.

MR. NEISER:  No.

MR. ZEGARELLI:  Well, I'll ask the question and if you direct him not to answer, that's what you'll do, Julian.

I mean, I can only ask the questions I think are pertinent and, you know, you -- and if you feel you have to object, you're going to object.

MR. NEISER:  I -- I just did, Gregg.

MR. ZEGARELLI:  Okay.  All right. So you're directing him not to answer?

MR. NEISER:  Yes.

MR. ZEGARELLI:  Okay.

BY MR. ZEGARELLI:

Q.   Now, Mr. Cline, you say "Albie's fill price is $2000."  How did -- how do you know that?

A.   Because that was Pace-O-Matic's decision to -- to raise the fill price.

Q.   Now, you say that you're "ccing," meaning carbon copying, "Lou and Julian to make sure they are in agreement."

So I'm clear, Lou is Mr. Miele; is that correct?

BENTLEY GREG CLINE                                    45

45

A.    Correct.

Q.    And Julian is Mr. Neiser?

A.    Correct.

Q.    Why did you cc Mr. Miele to make sure he was in agreement?

A.    As I testified before, I wanted to consult with Mr. Miele to -- to make sure he was in agreement with that.

Q.    And your testimony is you don't recall if he did agree to it?

            MR. NEISER:  Objection;
        mischaracterizes testimony and asked and
        answered.

A.    That's correct, I -- it's correct you're mischaracterizing my testimony.

My understanding is that Lou did not disagree with that.  My testimony's I do not recall whether he called me to confirm that.  I don't recall one way or the other.  I do recall that he did not object to it.

Q.    Okay.  Okay.  And -- and Mr. Neiser, why did you -- why did you cc him to make sure he agreed to it?

A.    Because this case is in litigation and I wanted to consult with my attorney.

Q.    Now, if I understand, Mr. -- Mr. Neiser's role is not as a business partner with you; is that correct?

BENTLEY GREG CLINE                                    46

                                                     46

A.    Correct.

Q.    Okay.  So were you seeking an opinion of counsel by asking if he agreed to the act?

A.    Yes.

          MR. NEISER:  Wait a minute.  Wait.

       Go ahead, Greg.  Go ahead.

A.    Yeah.  No, I'm seeking his legal opinion to whether he objects and to consult with him on this potential decision going forward.

          MR. NEISER:  And I'm going to
      place an objection.  At no time is anybody
      asserting advice of counsel.

Q.    Okay.  As we move up the screen, there is a redaction.  Do you see that?

A.    I see a black box, yes.

Q.    Okay.  And why was that space redacted?

          MR. NEISER:  Object to privilege.

          MR. ZEGARELLI:  All right.  You're
      claiming a privilege?

          MR. NEISER:  You can -- Greg, you
      can answer generally without divulging the
      contents, please.

A.    Yeah, you know, I'd have to -- I'd have to take a look at what's in there, but I believe it was -- you know, legal opinions were pro -- were provided in that

47

black box.

MR. ZEGARELLI:  Julian, can you represent that the privilege is -- if I look at the log in Exhibit 3, it indicates provides legal analysis and legal strategy. Can you confirm that's the basis of the redaction?

MR. NEISER:  That's what the Privilege Log says.

MR. ZEGARELLI:  So that's a confirmation?

MR. NEISER:  I'm not being deposed here, Gregg.  I gave you a Privilege Log.

MR. ZEGARELLI:  All right.

MR. NEISER:  And the witness just said the same thing.

MR. ZEGARELLI:  Okay.

BY MR. ZEGARELLI:

Q.   And what did you mean by "so speak now or forever hold your peace"?

A.   I wanted to let people know that this was the decision going forward and if you disagreed with it, you had to let me know.

Q.   Now, you testified to some phone calls that occurred.  I think you testified they may have been by

48

conference call, it may have been Mr. Miele called you, you may have called Mr. Miele, it might have been a conference call by some calendar setup.

Were those calls before -- I think this thread starts on June 9, 2020, and ends on June 12th. Were those phone calls prior to June 9th, during this range of three or four days, or after, if you recall -- can recall?

MR. NEISER: Object to form.

A. The best I can recall is they -- they -- they occurred before June 9th.

Q. Okay. Mr. Cline, did you do the redactions or did Mr. Neiser's office do the redactions?

A. My attorney did the redactions.

Q. Okay. That would be Mr. --

MR. NEISER: Object to privilege.

Q. -- Mr. Neis -- Mr. Neiser? So are you indicating Mr. Neiser performed the redactions?

MR. NEISER: Object to form.

A. Yes. I -- I did not -- I did not block out the e-mails --

Q. Okay.

A. -- when I sent it to them.

Q. Now, this is one thread of one e-mail produced by you, Mr. Cline. Are there any e-mails related to this

e-mail?

A.    I don't know what you mean by related to.

Q.    Well, I mean, this e-mail, for example, went to Mr. O'Bier, Lou Miele.  I mean, did they respond to you in any way by e-mail?

MR. NEISER:  Objection; asked and answered.

MR. ZEGARELLI:  No, I don't think I did ask or -- nor did he answer.  I haven't asked the question before.

BY MR. ZEGARELLI:

Q.    With regard to these e-mails, are there any -- this e-mail thread, were there any other responses by e-mail by any of the recipients?

A.    Not that I recall.

Q.    Did you search?

A.    Yes.

Q.    Okay.  So if there were any responsive e-mails for -- they -- they would have been produced?

A.    If they were unprivileged, not privileged, yes.

Q.    Okay.  And if they were privileged, it would show up on your log; is that right?

A.    I'm assuming so.

Q.    Okay.  Now, the e-mail lou@miele -- I'll highlight it on my screen, l-o-u@MieleManufacturing or

m-i-e-l-e-m-f-g.com, you understand that to be Mr. Miele's e-mail address?

A.    Yes.

Q.    Do you have any reason to believe this e-mail was not delivered to Mr. Miele's e-mail inbox?

A.    I wouldn't have any knowledge one way or the other.

Q.    Has Mr. Miele ever responded to an e-mail from you?

A.    Are you talking about ever?

Q.    At this e-mail address.  Let's make it even a little more clear.

A.    Yes, he has responded back to me on e-mails from that e-mail address.

Q.    Okay.  Mr. Cline, you're at your computer, as I understand it, getting e-mail.  Are you able to look at the original of this particular e-mail thread?

A.    I'd have to search for it.

Q.    If you could, please.

            THE WITNESS:  Julian, could you send it?  Julian may --

            MR. NEISER:  I'm sending it to you right now, Greg.

       Mr. Cline, let us know when you get it up.

BENTLEY GREG CLINE                                                51

51

THE WITNESS:  I will.

MR. NEISER:  The e-mail that is.

THE WITNESS:  Okay.  I have it.

BY MR. ZEGARELLI:

Q.    Okay.  Now what I'd like to do is I want to confirm -- and if you need to break off line with counsel, I want to confirm that -- that as stated in the Privilege Log, provides legal analysis and legal strategy, is what is under each of these redacted sections.

So there are one.  There's two.  There's either one or two.  It looks like two different ones, but there's three redactions.  And I want you to confirm for me, if you would now, that all three of those redactions are covering only the providing of legal analysis and legal strategy.

MR. NEISER:  So I'm going to object to the extent that it calls for a legal conclusion, one.

But, Greg, if you feel like you can answer it, go ahead.

A.    Yes, it calls for legal conclusions and legal analysis.

Q.    All right.  So let's go through the three of them if we -- if you don't mind.  The first one is on 4713.

52

Underneath that redaction is -- this would be communications from you?

A.    Correct.

Q.    That is, if I understand it, you providing legal analysis and legal strategy; is that right?

A.    Correct.

Q.    Okay.  And then if we go down to what is above your name on 4714, this second area, that is also from you or by you providing legal analysis and legal strategy; is that correct?

A.    It's hard to match up -- it's hard to match up what it is --

Q.    Okay.

A.    -- in this because it's different paginations on mine.  It's really two communications.

Q.    All right.  So we're looking at the section that's on my screen.  It's -- it's from you to Julian Neiser with a carbon copy to Chris O'Bier and Lou Miele --

A.    Right.

Q.    -- June 9th.  Okay.  So we're just going to slide down.

      I think you already testified that the first portion on -- and, again, it may be one or two, maybe one adjacent area on yours, but it's -- it's actually

the entire content of the e-mail it appears, you know, all the way through to your name?

A.    Correct.

Q.    So basically that entire e-mail.

There's nothing under those redactions that is not providing legal analysis and legal strategy, if I understand?

A.    Correct.

Q.    Okay.  We -- we've moved down and we're underneath your name now, which it's hard to tell if -- it looks like it's -- at the top is -- is what is -- all of what is underneath that redaction, being immediately above the phraseology on June 9, 2020, at 2:08 PM Greg Cline, and your e-mail address, wrote colon, above that.  Do you see the -- do you see that reference?

A.    Yes.

Q.    Okay.  Is everything above that underneath the redaction legal analysis and legal strategy?

A.    Yes.  It's -- it's the header for the e-mail and then the e-mail, yes.

Q.    Okay.  So you said it was the header for the e-mail.  When you say the header for the e-mail, what do you mean by that?

A.    It tells you who it's from and who it's to.

Case 2:18-cv-00722-PLD    Document 115    Filed 02/19/21    Page 54 of 85
BENTLEY GREG CLINE                                                54

54

Q.    Okay.  And when you say the header of the e-mail, from and to, it's the same sort of look and feel let's call it as what's up here above on my screen?

A.    Correct.

Q.    Okay.  Well, that's not legal analysis and strategy, is it?

A.    I'm not going to argue what is or what isn't or what was chosen to be redacted or not.

Q.    Okay.

MR. ZEGARELLI:  So I'll -- so I'll ask your counsel who redacted it if you're going to stay by the position of whatever's underneath the redaction that we're referencing is legal analysis and legal strategy?

MR. NEISER:  Gregg, the only thing that is under -- there is one aspect of what is redacted that is privileged communication and the header is not privileged.

If you would like -- and all it is is the header that appears throughout the e-mail, and the redaction may have just gone a little bit far to include the header and that's all it is.

MR. ZEGARELLI:  Okay.  Well, then

412-338-1058        SNYDER REPORTING SERVICES        412-980-8228

why don't we -- do you just want to e-mail me real quickly the -- the portion that is not properly redacted?

MR. NEISER:  Sure.

MR. ZEGARELLI:  Okay.  I'll just -- I'll just hang tight.

MR. NEISER:  You want me to take -- send you the header that appears, okay.

MR. ZEGARELLI:  I just want you to send me another submission, but properly redacted.

MR. NEISER:  All right.  I just sent it.  I made one error in doing so considering the circumstances, and I'll explain it to you in a second but it's of no moment.

Be right back.

All right.

MR. ZEGARELLI:  I'm sorry, Julian, we're ready to go?

MR. NEISER:  Yeah.

MR. ZEGARELLI:  Okay.  I thought there was something you had to explain.

MR. NEISER:  Yeah.  Sure.  Pull it up and I'll show you.

BENTLEY GREG CLINE                                          56

56

Scroll down.  Keep going.  There.  So there -- stop.  Stop.  So the middle box above Original Message at the top of the blue line, there is no text under that. There is nothing redacted under that.

For whatever reason, I had my mouse drawn across the line and there is nothing -- there is absolutely no text there and I will represent there is no text under there.

MR. ZEGARELLI:  Okay.

MR. NEISER:  I couldn't get rid of it because of the way the redaction went. By the time I pressed apply, it applied all the redactions.

And the change -- the difference between those two messages are -- are this: One, that -- what you're seeing right there, the e-mail string of the to and from as we just said it would be is there.  And I kept -- in the larger box above I unredacted where it said confidential and privileged. Otherwise, it's the exact same.  So you got your e-mail string back and I left out confidential and privileged.

BY MR. ZEGARELLI:

57

Q.     So, Mr. Cline, I think your testimony is that you don't -- you did not receive or they would have been produced any e-mail responses to this e-mail thread. Who then authorized you to raise the price on behalf of Pace-O-Matic?

MR. NEISER:  Object to form.

A.     It would have been Pace-O-Matic's executive team, principally Ryan Wood who was in charge of the Pennsylvania market.

Q.     Anyone else?

A.     Well, the executive team at that time would have been Paul Goldean, Michael Pace would have been on it, and Lee Wesson.  But my instructions came from Ryan Wood, who is also on the executive team.

Q.     At this time was Danny Warren on the executive team?

A.     I don't recall.

Q.     Now, Mr. Cline, I've forwarded over to your counsel Exhibit 4.

MR. NEISER:  Mr. Cline has it in his inbox.

MR. ZEGARELLI:  Oh, okay.  Very good.  I'll put it on my screen.

(Deposition Exhibit No. 4 was marked for identification.)

BY MR. ZEGARELLI:

Q.   Dan Warren, has Dan Warren ever been a member of the executive team?

A.   Yes.

Q.   Is he still now a member of the executive team?

A.   No.

Q.   Do you recall when he stopped being a member of the executive team?

A.   I don't recall the specific date, no.

Q.   Now, with regard to Mr. Warren's testimony, I'll direct your attention to Page 50, Line 15.

A.   Okay.

Q.   All right.  Now, this is also the subject of a matter before the court currently with regard to some form of documentation or draft -- regarding a draft of a document between Pace-O-Matic and Mr. -- I'm sorry, between Pace-O-Matic and Miele Manufacturing, and let's -- are you familiar with this document?

                MR. NEISER:  Stop.  Do not answer.

                MR. ZEGARELLI:  I'll state for the
        record that the court did not rule on
        relevancy, and the document --

                MR. NEISER:  Stop.  Let's call the
        judge.

                MR. ZEGARELLI:  -- and --

59

MR. NEISER:  Let's call the judge right now.

MR. ZEGARELLI:  Go ahead.

MR. NEISER:  Court reporter, are you able to assist us?

COURT REPORTER:  I'm sorry, Mr. Julian, what did you ask?

MR. NEISER:  Could you please contact -- are you able to conference the court in or do I need to do that?

COURT REPORTER:  If you're able --

MR. NEISER:  I have -- I have the phone number.

COURT REPORTER:  Okay.  If you're able to do that quicker than myself, I would appreciate that.

MR. NEISER:  Okay.  Here, I'll tell you what, before I do this, Mr. Zegarelli, is it your intention to ask him questions about this draft agreement?

MR. ZEGARELLI:  Yes, if -- I mean, if -- obviously if there, you know --

MR. NEISER:  No, no, no.  You answered the question, man.

MR. ZEGARELLI:  Yeah.  I mean,

60

yeah.

MR. NEISER:  That's all I'm asking you.

MR. ZEGARELLI:  Yes.  Right.  I mean, it is my intention to ask him questions about the agreement to the extent he recalls.

MR. NEISER:  And you do recognize that the court's order says that it's limited to the specific inquiry of what Mr. Cline said to Mr. Miele and why he said it?

MR. ZEGARELLI:  I suggest to you that if there is -- as I've indicated to the court, and we're waiting for a ruling, that --

MR. NEISER:  It's a pretty easy answer, man.  You -- you do acknowledge that that's what the court said; right?

MR. ZEGARELLI:  I do acknowledge that's what the court said.

MR. NEISER:  Okay.

Patti, what's -- here, hold on.  I'm going to call the court so everybody can hear it and the court may need to dial in to the -- to the conference.

61

One second, please.

UNIDENTIFIED WOMAN:  Judge Dodge's office.  McKenzie speaking.

MR. NEISER:  McKenzie, good morning.  My name is Julian Neiser.  I'm counsel for Pace-O-Matic.  And we are in the deposition --

UNIDENTIFIED WOMAN:  Yes.

MR. NEISER:  -- of Gregory Cline, the attorney for Pace-O-Matic that was subject to a recent court order.  And this is in relation to the Pennsylvania skill matter at 2:18-cv I believe it's 722.  We have a dispute --

UNIDENTIFIED WOMAN:  Yes.

MR. NEISER:  -- during the course of the deposition that requires the court's intervention, please.

If the court's not available, we can proceed.

UNIDENTIFIED WOMAN:  Okay.  Yes, at this point in time we're currently in the middle of an oral argument on another case.  What I can certainly do, Mr. Neiser, is inform the judge as soon as we are done with

our oral argument that there is a current discovery dis -- or rather there is a dispute as far as the deposition and connect -- potentially advise counsel by way of e-mail that we might be ready at that point in time for a telephone call.

MR. NEISER:  That would be wonderful.  Thank you.  I'm sorry to interrupt.

UNIDENTIFIED WOMAN:  Okay.  Not -- not -- no need to apologize, Mr. Neiser.  I will inform her as soon as I'm able to do so.

MR. NEISER:  Thank you.

Was everybody able to hear that?

MR. ZEGARELLI:  You -- you know what, Julian, I was not able to hear it very well.

MR. NEISER:  Okay.  I specif -- I said to -- McKenzie from the court's office answered.  I introduced myself.  I gave her the caption of the case.  I told her we were in the process of deposing Mr. Cline, we had an issue on the deposition that requires the court's intervention, and I wanted to know

how she proceeded.

She responded that the court is in the middle of oral argument and she will communicate with us by e-mail when she is free and how she would like us to proceed.

MR. ZEGARELLI:  Okay.

So I did send you over what I'll put into the record as Exhibit 5, which is basically, Julian, your cover letter with regard to the so-called draft.  I'll just attach it to the exhibit at this point.  I mean, we're not going to testify to it. It's just part of the record I'll make with regard to the -- the draft that apparently exists.

I think that the draft that you're referencing is testified to by Mr. Warren per our meet and confer, and I understand you're not going to let the -- the witness testify as to anything regarding that draft. So, quite frankly, Julian, at this time I don't have further questions for Mr. Cline.

MR. NEISER:  Well, I'm going to put something on the record since you see fit to put my letter in -- in the document.

64

One, your request for production of documents, which you did not reference in our previous communications or your letter to me, asked for documents, including drafts.  The request for production asked for agreements.  It's a misrepresentation of what this -- course and scope of the request for production are.  You need to withdraw your motion.

MR. ZEGARELLI:  Okay.

MR. NEISER:  No. 2, I'm going to say it again, we have no obligation to provide you a draft of an agreement between the parties whatsoever.  It's not within the course and scope of discovery.  It is disproportionate and it is not what was asked for.  So if you want to continue to proceed with it, as I told you on the phone, we're going to seek fees for it.

So if you're going to put my letter on the record, I want to make sure it's very clear that your claims to the court, the ones that you filed last night especially and this, are beyond the pale.

So if you're going to start putting

comments by lawyers in the record to try and do something that is outside what we need to do as attorneys to move the case forward, then there -- there's -- there are issues here and I take issue with all of it.

So put your letter in. We can talk to the judge later. But it -- I'm not going to let you put in an incomplete statement and just say that you're entitled to drafts of agreements because you're not.

MR. ZEGARELLI: Okay. So we disagree with what you've just indicated. We've made a record of it. We stand behind the requests we've made of the record and, you know, we'll just proceed in due course accordingly. But I have no further --

MR. NEISER: I don't know what that means. But I know this much. We did not meet and confer on what you -- your subject matter that you filed yesterday and it's inappropriate.

I filed my objection. We'll deal with the court. If you have no other questions for Mr. Cline, we will read and waive -- or, I'm sorry, we will read and sign.

BENTLEY GREG CLINE                                66

66

MR. ZEGARELLI:  And with regard to what you just indicated, we've put it in the record, our position on the reason why it's entered.  I understand you don't agree with it.  And at this point we have no further questions for Mr. Cline.

MR. NEISER:  Mr. Cline, you're excused.  Thank you.

MR. ZEGARELLI:  Yeah.  So I should say there's no further questions for Mr. Cline subject to the court -- to any further court order, of course.  Thank you.

VIDEOGRAPHER:  Thank you.  This concludes the deposition.  We are going off the record.  The time is 11:10 a.m.

(Deposition Exhibit No. 5 was marked for identification.)

(Signature was not waived.)

(At 11:10 a.m., the deposition concluded.)

- - - - -

67

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

Page No._____Line No._____Change to:_____

_____

Reason for change:_____

SIGNATURE:_____DATE:_____

BENTLEY  GREG  CLINE                              CS

C E R T I F I C A T E

I, BENTLEY GREG CLINE, having read the foregoing transcript, certify that all corrections with my transcript that I desire to make, together with my reasons for such corrections, appear on the preceding page, and I further certify that the foregoing transcript is a true record of my testimony.

In all other respects, the transcript is true and correct.

_____

BENTLEY GREG CLINE

Subscribed and sworn to before me
this _____ day of _____, 2021

_____
Notary Public                                        CS

C E R T I F I C A T I O N

I hereby certify pursuant to F.R.C.P. No. 30(f)(1), that the witness, BENTLEY GREG CLINE, was duly sworn by me and that the foregoing deposition is a true record of the testimony of the witness.

The foregoing certification does not apply to any reproduction of this transcript in any respect unless under the direct control and/or direction of the certifying reporter.

_____

Cynthia P. Simonovitch

Notary Public

My Commission expires February 5, 2025

BENTLEY GREG CLINE                                           70

---

**$**

**$2,000** 21:21

**$2000** 44:19

---

**0**

**004713-POM** 3:16

**004715** 3:16

**06** 7:15

---

**1**

**1** 3:15 19:2 24:5 33:8

**1,000** 20:5 22:16 23:3

**100** 17:20

**11:10** 66:15,19

**12** 19:19,22

**12th** 48:5

**134** 2:16

**15** 58:11

**15219** 2:8

**15241** 2:17

**16** 39:22

**17** 21:16

**18** 1:24 4:5

**19** 3:15 19:24

---

**2**

**2** 3:16 33:8 39:4,8,18,19 64:11

**2,000** 20:5 22:16 23:3

**2/16/21** 3:17,20

**2/5/21** 3:16

**2:08** 53:14

**2:18-cv** 61:13

**2:18-cv-00722-PLD**

---

1:6 4:20

**2000** 7:14

**2005** 7:14

**2015** 11:17,18 12:5

**2019** 17:3,5,23

**2020** 17:19,23 42:19 48:5 53:13

**2021** 1:24 4:5 68:22

**2025** 69:20

**24** 19:22

**25** 19:24

**2585** 2:15

---

**3**

**3** 3:17 39:15,18,19 47:4

**30** 28:23

**30(f)(1** 69:5

**30024** 7:2

**30096** 1:23

**301** 2:6

**3440** 2:7

**3450** 1:22

**39** 3:16,18

---

**4**

**4** 3:19 57:19,24

**412.325.1116** 2:9

**412.833.0600** 2:18

**4713** 51:25

**4714** 40:17,20 52:8

---

**5**

**5** 3:20 63:8 66:16 69:20

**50** 58:11

**57** 3:19

---

**5th** 39:22

---

**6**

**6** 3:6

**60** 21:15

**63** 19:16,22 21:16

**63-17** 21:15

**63-23** 20:13

**64** 19:23

**64-19** 20:15 30:15

**65** 33:8,11

**66** 3:20

---

**7**

**722** 61:13

**74** 7:1

---

**8**

**8** 19:16

---

**9**

**9** 48:5 53:13

**9:20** 1:24 4:2,6

**9:28** 10:25 11:1

**9:29** 11:4,6

**9th** 42:19 48:6,11 52:21

---

**A**

**a.m** 1:24 4:2,6 10:25 11:1,5,6 66:15,19

**abide** 36:24 38:1,5,10

**able** 13:6 19:5 50:16 59:5,9,11,15 62:12,15,17

**absolutely** 56:8

**acceptable** 5:16

**accommodate** 9:8

---

BENTLEY GREG CLINE                                      71

36:17

**accordingly** 65:16

**accurate** 17:20

**acknowledge** 4:22,25
60:17,19

**across** 56:7

**act** 46:3

**acting** 7:25

**ACTION** 1:6

**activities** 16:1 26:9

**actual** 19:22

**actually** 9:24 19:24
28:5 38:21 41:16
52:25

**ad** 14:19

**addition** 17:7 25:13
26:13

**address** 6:15,22,24
7:3 50:2,11,14
53:14

**addresses** 39:22

**adjacent** 52:25

**administration** 5:7

**advance** 9:8

**advice** 14:19 15:25
46:12

**advise** 62:4

**affect** 9:3

**affirmative** 36:23

**agreed** 21:8 22:10
31:7,16 33:1 35:17
45:21 46:3

**agreement** 5:9,10
27:10 44:24 45:5,7
59:20 60:6 64:13

**agreements** 64:6
65:10

**ahead** 13:20

14:4,8,13 24:13
29:2 38:23 46:6
51:21 59:3

**al** 4:14,17

**Albert** 2:23

**Albie** 42:11,12

**Albie's** 44:18

**allow** 12:21

**alone** 9:20,22

**alpha** 7:9

**already** 52:23

**am** 4:10,22
9:17,19,22 18:13
19:6 28:5

**among** 8:12 23:25

**amount** 20:5 22:16
23:3

**Amusements** 15:15

**analysis** 47:5
51:8,16,23 52:5,9
53:6,19 54:5,14

**and/or** 69:10

**answer** 13:14,20 20:7
26:23 27:1
29:2,4,6,9,13,16,24
,25 30:7
32:4,11,15,17 36:18
44:6,14 46:21 49:9
51:21 58:19 60:17

**answered** 14:22 23:6
31:3 32:3 38:20
45:13 49:7 59:24
62:21

**anybody** 9:23 46:11

**anybody's** 6:13

**Anyone** 57:10

**anything** 6:3,5,8
20:23 38:1 41:12
63:20

**anywhere** 11:13 12:10

**apologize** 62:11

**apparently** 63:14

**appear** 68:5

**appears** 40:20
42:10,22 43:1 53:1
54:21 55:8

**applied** 56:13

**apply** 56:13 69:8

**appreciate** 13:22
59:16

**approximately** 7:14
11:17 16:17 23:21

**area** 52:8,25

**argue** 54:7

**argument** 61:23 62:1
63:3

**arrangement** 5:2

**aspect** 54:17

**asserting** 46:12

**assist** 59:5

**assuming** 49:23

**attach** 63:11

**attempts** 13:17

**attendance** 9:25

**attended** 18:14

**attention** 19:13
30:14 40:15 58:11

**attorney** 5:11 7:25
8:25 19:14 45:23
48:14 61:10

**attorney/client**
29:14 30:1

**attorneys** 4:21 65:3

**attribute** 42:11

**authorized**
18:6,11,13 57:4

**available** 40:2 61:19

— B —

**based** 29:7

**basic** 13:15

**basically** 53:4 63:9

**basis** 47:6

**Bates** 3:16 40:17

**Battle** 2:5

**begin** 5:25 19:21

**begins** 20:1 40:13

**behalf** 2:2,12 5:18 57:4

**behind** 65:13

**belabor** 36:20

**believe** 11:17 16:15 17:19 20:24 21:6,9,25 23:7,18 29:17 34:9 43:7 46:24 50:4 61:13

**Bentley** 1:17 3:3 4:4,13 5:22 67:25 68:2,17 69:5

**best** 8:6 26:5 36:17 38:10 48:10

**beyond** 64:24

**binding** 32:8

**bit** 18:4 26:4 54:23

**black** 46:15 47:1

**block** 48:20

**blue** 41:6 56:4

**boss** 17:16

**bottom** 40:12,17

**box** 46:15 47:1 56:2,20

**break** 9:6 11:1 21:14 51:6

**brought** 24:19

**business** 6:24 7:23 16:1 18:6 29:10,21 45:25

— C —

**calendar** 25:20,22 48:3

**capacity** 17:12

**caption** 8:5,7 62:22

**carbon** 44:22 52:18

**care** 13:24

**Carolina** 12:4

**case** 4:19 7:18,25 8:5,7,8,13,19 13:18 18:16 43:20 45:22 61:23 62:22 65:3

**caused** 24:6 26:2

**cc** 45:4,21

**ccing** 44:22

**Centre** 2:7

**CEO** 16:4,7

**certain** 30:2

**certainly** 17:11 22:3 38:4 61:24

**certification** 69:8

**certify** 68:3,6 69:4

**certifying** 69:11

**change** 16:23 17:2 42:23 56:15 67:4,7,10,13,16,19, 22

**changed** 12:5 17:3

**changes** 5:5

**characterization** 13:23 14:2

**charge** 57:8

**chat** 10:13,18

**chief** 16:15

**chosen** 54:8

**Chris** 40:21 42:15,17 43:4,7,14 52:18

**circumstances** 55:14

**Civil** 1:6,19

**claiming** 46:19

**claims** 64:22

**clarify** 9:11,12

**clear** 14:6 22:12 27:6 37:1,6 44:25 50:12 64:22

**client** 26:15

**client's** 26:9

**Cline** 1:17 3:3 4:4,13 5:22 6:22 7:11 10:21 11:9,21 12:3,16 14:4,8,13 19:5 20:12 30:15 32:22 39:6,11,18 40:2,15 42:9 44:18 48:12,25 50:15,24 53:14 57:1,18,20 60:11 61:9 62:23 63:22 65:24 66:6,7,11 67:25 68:2,17 69:5

**close** 42:2

**colon** 53:15

**comes** 15:9

**commencing** 1:24

**comments** 65:1

**Commission** 69:20

**Commons** 2:16

**Commonwealth** 1:21

**communicate** 63:4

**communicating** 27:25 28:2,12

**communication** 54:18

**communications** 52:2,15 64:3

**companies** 14:21,25 15:1,3

**company** 15:22,23,25

**compliance** 26:14

**complied** 33:15

**comply** 5:5 33:7,16,17,23

**computer** 19:12 50:15

**concerned** 26:8,9

**concerning** 21:24

**concluded** 66:20

**concludes** 66:14

**conclusion** 51:19

**conclusions** 51:22

**conducted** 1:22

**confer** 63:18 65:19

**conference** 24:20,23 25:6,18 48:1,3 59:9 60:25

**confidential** 56:21,24

**confirm** 45:18 47:6 51:6,7,13

**confirmation** 43:8 47:11

**confirming** 43:6

**confused** 35:14

**congruent** 36:11

**connect** 62:3

**consent** 5:2

**consider** 17:16

**considering** 13:17 55:14

**consult** 21:8 45:6,23 46:8

**consultation** 21:12

**consulted** 31:6 33:1

**consulting** 31:16

**contact** 24:1 59:9

**content** 53:1

**contents** 46:22

**continue** 64:17

**contract** 26:19 27:2,3 29:11,18

**control** 69:10

**conversation** 43:4

**conversations** 25:8 31:18

**convey** 20:2,4 21:20 22:25 23:2

**conveyed** 21:6 22:15

**conveying** 40:5

**conveys** 21:11

**copy** 19:10 41:3 52:18

**copying** 44:23

**corporate** 1:23 31:25

**correct** 8:1,3,10,25 15:11 18:1 22:7 23:12 30:19,20,22 31:4 34:15 35:24 42:14,16 44:25 45:1,3,14,25 46:1 52:3,6,10 53:3,8 54:4 68:10

**corrections** 68:3,5

**correctly** 22:4

**counsel** 5:2 10:8 11:22,23,24,25 12:6 15:18,21,24 16:2 19:9 31:21 41:3,15 46:2,12 51:7 54:11 57:19 61:6 62:4

**couple** 10:5

**course** 61:16 64:7,15 65:15 66:12

**court** 1:1,20 4:7,9,10,18 7:1,7 12:20 18:24 32:7 36:10,15 37:13 38:2,5,11 58:14,21 59:4,6,10,11,14 60:14,18,20,23,24 61:11 63:2 64:22 65:23 66:11,12

**court's** 12:16 29:7 36:24 37:10 38:11 60:9 61:17,19 62:20,25

**cover** 63:9

**covering** 51:15

**credibility** 12:22,25 13:10 37:24

**credify** 13:6,8

**CS** 67:25 68:25

**current** 62:1

**currently** 8:19 11:9 16:5 58:14 61:22

**cursor** 40:18 41:7

**Cynthia** 1:20 4:10 69:16

---

D

**Dan** 17:9,22 58:2

**Daniel** 3:19

**Danny** 16:25 17:11 57:15

**date** 42:18 58:9

**dated** 3:16,17,20

**dates** 16:22 17:19

**dax** 2:22

**day** 68:22

**days** 48:7

**deal** 65:22

**decided** 21:7,13

**decision** 18:12 20:20 30:17 31:5 43:5 44:20 46:9 47:22

**decisions** 18:7

**Defendant** 1:9

**Defendants** 1:15

**delivered** 50:5

**deponent** 5:23

**deposed** 5:23 7:11,13 31:24 47:12

**deposing** 62:23

**deposition** 1:17 3:13 4:4,12 6:12 7:16,17 8:23 9:25 11:6 13:1,11 19:2 32:1 37:20 38:12,13 39:8,15 40:9 57:24 61:7,17 62:3,24 66:14,16,19 67:1 69:6

**depositions** 18:15

**designation** 15:15

**designee** 32:1

**desire** 68:4

**despite** 6:14

**dial** 60:24

**difference** 56:15

**different** 14:23 18:10 51:12 52:14

**direct** 19:13 27:1 30:14 40:15 44:5 58:11 69:10

**directing** 44:14

**direction** 69:10

**dis** 22:20 62:2

**disagree** 37:9 38:6

45:16 65:12

**disagreed** 47:22

**discovery** 13:10 62:2 64:15

**discretion** 18:6

**discuss** 6:2,7 26:2

**discussed** 33:3

**discussing** 22:21 23:23 24:7 26:6

**discussions** 21:23 25:24

**disproportionate** 64:16

**dispute** 61:14 62:3

**distributed** 10:11

**District** 1:1,2 4:18,19

**divulging** 46:21

**document** 21:2 30:2,4 58:16,18,22 63:25

**documentation** 58:15

**documents** 3:16 30:2 39:19 40:14 64:2,4

**Dodge** 30:10

**Dodge's** 61:2

**Dog** 1:4 2:2 5:19

**done** 21:25 22:8,11 42:24 61:25

**draft** 58:15 59:20 63:10,14,16,20 64:13

**drafts** 64:5 65:9

**drawn** 56:7

**Drive** 7:1

**drugs** 9:3

**due** 65:15

**Duluth** 1:23 9:17

**duly** 5:23 69:6

**during** 12:12 16:20 25:9 48:6 61:16

**duties** 15:24

---
E
---

**earlier** 40:4 43:11

**easy** 60:16

**echo** 7:6,9

**either** 34:1 51:11

**electronic** 25:22

**else** 9:21,23 11:13 12:10 57:10

**e-mail** 10:7,8,16,20 18:23 19:8 20:7,9,10 21:6,9,11,25 22:8,11 23:8 24:3 25:21 30:20,25 31:4 33:25 34:7,10,18,21,25 35:6,12,13,22 40:13,20,22,25 41:11,16,23 42:18,23 43:1,6 48:24 49:1,3,5,13,14,24 50:2,4,5,8,11,14,16,17 51:2 53:1,4,14,20,21,23 54:1,22 55:1 56:18,23 57:3 62:5 63:4

**e-mails** 39:21,23,24 40:5,6,7,8 43:25 44:2 48:21,25 49:12,18 50:13

**e-mail's** 42:15

**embodied** 29:22

**embodies** 30:5

**employed** 11:9,13,15 12:8,10 14:17 16:24

**employment** 12:12

**enlarge** 13:18

**entered** 66:4

**enters** 9:24

**entire** 53:1,4

**entirely** 17:20 24:10

**entities** 12:12 14:17,20 15:5,8

**entitled** 65:9

**entity** 7:24

**Entrepreneurial** 2:14

**ERRATA** 67:1

**error** 55:13

**especially** 64:23

**Esquire** 2:4,13

**et** 4:14,17

**everybody** 60:23 62:15

**everything** 28:14 53:18

**exact** 56:22

**exactly** 43:25

**examination** 1:18 3:5,6,7 6:20

**example** 40:18 49:3

**Excerpt** 3:15,19

**Excuse** 27:19

**excused** 66:8

**executive** 57:7,11,14,15 58:3,5,8

**exhibit** 3:14 18:25 19:2 39:4,8,13,15 47:4 57:19,24 63:8,11 66:16

**Exhibit 2** 39:12,20 40:2

**exhibits** 10:5,7,11 39:18,19

**exists** 63:15

**expect** 19:14

**expires** 69:20

**explain** 55:15,23

**extent** 12:15 51:18 60:6

---
F
---

**F.R.C.P** 69:4

**fact** 7:17,21 8:2 19:18 36:22

**fair** 9:13,14 15:9 23:9 42:7

**fall** 37:16

**familiar** 19:14 58:18

**February** 1:24 4:5 39:21,22 69:20

**Federal** 1:19

**feel** 44:9 51:20 54:2

**fees** 64:19

**felt** 26:10

**filed** 4:17 64:23 65:20,22

**fill** 20:5 21:7,21 22:16 23:3 31:6 38:15 42:11 43:5 44:18,21

**fills** 18:7,12 26:16 33:4 36:2 42:24

**finish** 24:13

**first** 5:11,23 11:18 13:22 16:24 20:22 21:5,15 30:23 31:23 51:25 52:23

**fit** 63:25

**five** 16:18

**five-year** 16:20

**foregoing** 68:3,6 69:6,8

**forever** 47:19

**form** 22:18 23:5 27:7 31:14 34:25 35:18 48:9,19 57:6 58:15

**forward** 10:21 14:7 19:10 33:2 36:14,19 46:9 47:22 65:3

**forwarded** 39:21 57:18

**foundation** 12:22,25 13:16 36:9 37:23

**frankly** 63:21

**free** 63:5

**function** 10:13,18

---
G
---

**gain** 18:19

**games** 1:8,10,18 2:12 4:15,16 5:15 8:13 24:2 26:7,11 42:13,24 43:18,20

**general** 11:22,23 12:6 15:18,21,24 16:2 31:21

**generally** 25:5 26:4 46:21

**Georgia** 1:23 7:2 9:17 12:4

**getting** 50:16

**glad** 21:4

**Glenleigh** 7:1

**Gol** 17:24

**Gold** 16:3

**Goldean** 16:3,7 17:4,6,23,24 57:12

**G-o-l-d-e-a-n** 16:9

BENTLEY GREG CLINE                                    76

**golf** 7:5,7

**gone** 54:22

**grant** 2:6 38:11

**graphic** 41:11

**graphically** 41:12

**great** 9:9

**Greg** 1:17 3:3 4:4,13 5:14,22 13:20 20:13 29:2 39:6 46:6,20 50:23 51:20 53:14 67:25 68:2,17 69:5

**Gregg** 2:13 12:14 27:22 28:2,10,19 31:12 32:11 36:6,21 41:18 44:12 47:13 54:16

**Gregory** 61:9

**ground** 8:24

**Group** 2:14

**guess** 41:13

------

H

**half-fill** 20:5 22:17 23:4

**hands** 28:13

**hang** 27:18 28:25 55:6

**hanging** 27:20

**happened** 31:18

**hard** 52:11 53:10

**haven't** 49:10

**having** 5:23 14:4 22:20 68:2

**hazy** 17:20

**header** 53:20,22,23 54:1,19,21,23 55:8

**hear** 31:12 60:24 62:15,17

**he'll** 29:5

**hereby** 69:4

**here's** 13:12

**he's** 16:15 28:5 43:1,24

**highlight** 49:25

**highlighted** 41:7

**hired** 11:18 16:16

**hold** 27:15 30:7 47:20 60:22

**home** 6:24,25 9:18

**hope** 8:22

**hotel** 7:7

**hyperlinked** 41:6

------

I

**I'd** 19:7 46:23 50:18 51:5

**idea** 31:19

**identification** 3:14 19:3 39:9,16 57:25 66:17

**identifies** 39:25

**identify** 15:19

**I'll** 9:2,12 10:20 14:9,10 18:21,22,23,25 19:13,15,16,25 26:4 29:9 36:7 38:9 39:5 41:21,24 42:3,22 44:4 49:24 54:10 55:5,6,14,25 57:23 58:10,20 59:17 63:7,10,13

**illegal** 26:11

**I'm** 7:1 9:6 12:14 13:12,13 14:5 16:12 18:21 19:6,17 20:7,22 21:3 22:3 24:12 27:17,21

28:1,7,8,12,13,14,1 6,17,22,23 29:3,5,13,25 30:4,14 31:17 32:2,12 33:9 34:20 35:14,19 36:24 37:7,10,11,19,22 38:1,3,4,10,22 39:3,13 40:12,14,15 41:22 44:1,25 46:7,10 47:12 49:23 50:22 51:17 54:7 55:19 58:16 59:6 60:2,22 61:5 62:8,12 63:23 64:11 65:7,25

**image** 41:3,4

**image230945.png** 41:7,12

**immediately** 53:13

**implied** 12:20 13:5

**inappropriate** 65:21

**inbox** 39:7 50:5 57:21

**Inc** 1:13,14 2:2,3 4:17 5:18,20 11:12,16 12:9 14:18 15:10

**include** 54:23

**included** 24:17

**including** 64:4

**incomplete** 65:8

**incorrect** 14:2 20:24 21:1,19

**incorrectly** 20:12

**increase** 23:24 25:13,15,17 32:24

**increases** 26:6 38:15 43:15

**indeed** 42:4

**India** 7:7

**indicate** 5:9

**indicated** 12:9 15:18
  60:13 65:12 66:2

**indicates** 47:4

**indicating** 41:4
  48:17

**individually** 27:12
  31:25

**inform** 61:25 62:12

**information** 40:5

**informed** 31:5

**in-house** 11:24

**initial** 20:1 26:1

**inquiring** 44:1

**inquiry** 42:2 43:22
  60:10

**Insofar** 21:20

**instances** 26:13

**instruct** 32:10,14
  38:22

**instructions** 57:13

**intention** 59:19 60:5

**interrupt** 24:14 62:9

**interrupting** 37:22

**intervention** 61:18
  62:25

**introduced** 62:21

**invades** 29:14 30:1

**invitation** 6:14
  25:20,22

**invited** 25:19

**involved** 8:8,19

**isn't** 36:5 54:7

**issue** 21:15 22:7
  62:24 65:5

**issues** 6:8,12 25:13

65:4

**IV** 2:23

**I've** 17:11 39:4,11
  41:2,7,15 57:18
  60:13

― J ―

**jneiser@spilmanlaw.c
  om** 2:9

**judge** 13:3 30:9
  37:18,20 58:24 59:1
  61:2,25 65:7

**Julian** 2:4
  3:16,17,20 5:17 6:1
  10:9 24:19,20 27:17
  28:7,16 32:13 36:8
  44:6,23 45:2 47:2
  50:20,21 52:17
  55:19 59:7 61:5
  62:17 63:9,21

**June** 42:19 48:5,6,11
  52:21 53:13

**jurisdictions** 12:3

― K ―

**Klein** 20:13

**knowledge** 31:9
  33:22,24 43:16 50:6

― L ―

**labels** 26:12

**language** 20:1

**larger** 56:20

**last** 16:8 17:19
  37:19 64:23

**later** 65:7

**Law** 2:14

**lawyers** 65:1

**least** 18:3 24:16
  25:12 41:10

**Lee** 57:13

**legal** 12:11 14:16,19
  15:8,25 16:15 29:12
  30:2 46:7,25 47:5
  51:8,15,16,19,22
  52:4,5,9 53:6,19
  54:5,14

**let's** 19:19 27:14
  50:11 51:24 54:2
  58:17,23 59:1

**letter** 3:16,17,20
  37:6 63:9,25
  64:3,20 65:6

**licensed** 12:2

**Lima** 7:5,6

**limitation** 37:7

**limited** 38:12 60:10

**line** 17:18 19:16,19
  20:23 21:15,16
  23:14 24:18 28:6
  29:8 33:8 51:6
  56:4,7 58:11

**Lines** 19:22

**list** 15:4

**litigation** 45:22

**little** 14:23 18:3
  50:12 54:23

**LLC** 1:4,5,8,10,19
  2:2,12 4:14,15,16
  5:15,19

**locations** 26:16,17

**log** 3:18 39:22,24,25
  47:4,9,13 49:22
  51:8

**logo** 41:14,24 42:5

**long** 8:23 11:15

**Lou** 3:15 18:18 21:23
  24:21 26:14 27:11
  43:8 44:23,25 45:16
  49:4 52:18

lou@miele 49:24

l-o-
  u@MieleManufacturin
  g 49:25

Louis 15:15

— M —

mailroom.grz@zegarel
  li.com 2:18

man 59:24 60:17

manage 10:6

manner 5:3

Manufacturing 1:14
  2:2 5:20 15:12
  27:14 29:19 58:17

Mark 16:11 17:24

marked 3:13 19:2
  39:8,12,15,19 57:24
  66:16

market 26:11 33:4
  36:1 37:15 38:17
  57:9

match 52:11

math 16:17

matter 4:13 36:22
  58:14 61:13 65:20

matters 6:1

may 24:20,23 34:7
  40:16 47:25 48:1,2
  50:21 52:24 54:22
  60:24

maybe 26:4 52:24

McKenzie 61:3,4
  62:20

mean 6:5 24:14 35:16
  36:11 44:7 47:19
  49:2,3,4 53:24
  59:21,25 60:5 63:12

meaning 44:22

means 13:9 65:18

meant 43:1

medication 9:3

meet 63:18 65:19

member 58:2,5,7

memory's 17:20

mentioned 6:6 26:14

Message 56:3

messages 56:16

Michael 15:5 16:25
  17:10,12,23,24
  57:12

middle 56:2 61:23
  63:3

Miele 1:13 2:2 3:15
  5:20 12:17
  15:12,15,16 18:18
  20:3,16,18,19,23
  21:16 22:6,13
  23:1,2,11 24:1,7
  25:25 26:2,5,8,19
  27:10,11,13
  29:10,12,18 30:16
  31:7,13,22 32:23
  33:6,13,17,18 34:4
  40:5 43:13 44:25
  45:4,7 48:1,2 49:4
  50:8 52:19 58:17
  60:11

m-i-e-l-e-m-f-g.com
  50:1

Miele's 30:15,19
  50:2,5

mind 51:25

mine 52:15

minute 18:22 21:15
  27:15,16 31:24 46:5

mischaracterization
  14:11

mischaracterizes

31:3 45:12

mischaracterizing
  45:15

misrepresentation
  64:6

moment 55:16

morning 61:5

motion 64:9

motions 13:17

mouse 56:6

move 36:13,18 38:20
  46:13 65:3

moved 53:9

multiple 15:8 24:16

myself 59:15 62:21

— N —

naturally 12:20
  38:16,18

necessary 36:10

negatively 34:1

Neis 48:17

Neiser 2:4
  3:7,16,17,20 5:17
  6:10 10:12,17 12:14
  13:2,8,24 14:5
  18:24 22:18 23:5,14
  24:18 26:21,24
  27:3,7,11,15,18,21
  28:1,5,10,19
  29:4,23 30:8
  31:2,11,14,23
  32:10,14,17 34:13
  35:18 36:4,21 37:22
  38:6,21 39:1,6,21
  41:18,20 42:1 43:21
  44:3,11,15
  45:2,11,20
  46:5,10,17,20
  47:8,12,15
  48:9,16,17,18,19

49:6 50:22 51:2,17
52:18 54:16
55:4,7,12,21,24
56:11 57:6,20
58:19,23
59:1,4,8,12,17,23
60:2,8,16,21
61:4,5,9,16,24
62:7,11,14,19 63:23
64:11 65:17 66:7

**Neiser's** 45:24 48:13

**night** 64:23

**No.____Change**
67:2,5,8,11,14,17,2
0

**No.____Line**
67:2,5,8,11,14,17,2
0

**non** 34:25

**nor** 49:9

**normally** 26:17 41:10

**notary** 1:21 5:6
68:25 69:17

**nothing** 37:25 42:5
53:5 56:5,7

**notice** 9:9

**notifying** 22:9

**November** 7:6,9

---
O
---

**oath** 5:7

**O'Bier** 40:21
42:15,21
43:10,14,19 49:4
52:18

**O'Bier's** 42:17

**object** 12:15 22:18
23:5 26:21 27:7
31:14 32:2 35:18,19
44:9,10 45:19 46:17
48:9,16,19 51:18

57:6

**objecting** 37:7

**objection** 13:14
14:1,6 29:5,23 31:2
32:18 33:18,19,22
34:13 36:4,25 37:11
45:11 46:11 49:6
65:22

**objections** 5:3

**objects** 46:8

**obligation** 36:23
64:12

**obviously** 59:22

**occasions** 24:16

**occurred** 21:17
23:10,13 25:9 47:25
48:11

**occurring** 26:10

**o'clock** 4:2

**offhand** 42:20

**office** 2:16
9:18,19,20,22
10:2,3 48:13 61:3
62:20

**officer** 15:22,23
16:15

**Oh** 57:22

**okay** 6:16,19
7:3,13,21 8:4,16,22
9:2,6,15,20,23
10:5,15,22 12:2
14:22 15:3,7,12,14
16:14,20
17:1,9,13,15,17,22
18:2,10,14
19:9,12,13,17
21:1,14,22 22:2,12
23:9,13,16 24:1,5
25:24 26:19 28:20
29:1,16,21 30:11,21
33:13 34:24
35:7,11,16,25 36:25

37:21 38:3,8 39:2
40:4,12,20
41:2,15,25
42:6,9,15,21 43:13
44:13,16 45:20
46:2,13,16 47:17
48:12,15,22
49:18,21,24 50:15
51:3,5 52:7,13,21
53:9,18,22
54:1,5,9,25
55:5,8,22 56:10
57:22 58:12
59:14,17 60:21
61:21 62:10,19 63:6
64:10 65:11

**ones** 51:12 64:23

**online** 28:18

**operator** 26:18

**opinion** 29:12 30:1
46:2,7

**opinions** 46:25

**oral** 61:23 62:1 63:3

**order** 12:16,21 13:19
21:7 29:8 32:1
36:5,10,15,24
37:3,10,13
38:2,5,11 60:9
61:11 66:12

**organization** 15:14

**original** 50:17 56:3

**Otherwise** 56:22

**outside** 14:20 26:21
29:23 37:13 65:2

**Oxford** 2:7

---
P
---

**P.C** 2:14

**PA** 42:24 43:18

**Pace** 16:25
17:10,12,23,25

57:12

**Pace-O-Matic** 1:4,13 2:2 4:17 5:18 10:3 11:12,16 12:9,13 14:17,20,24 15:2,5,10 20:2,3,19 21:6,12 22:19,25 23:1 26:8,20 27:5,9 29:18 31:13 41:14,24 42:4 57:5 58:16,17 61:6,10

**Pace-O-Matic's** 30:17 31:5 43:4 44:20 57:7

**Pace's** 15:6

**page** 3:5 19:16,23 21:16 33:7,11 58:11 67:2,5,8,11,14,17,20 68:6

**pages** 21:3 40:16

**paginations** 52:14

**pale** 64:24

**Parise** 2:22

**Park** 2:16

**participating** 4:21

**particular** 22:7 29:8 50:17

**parties** 5:1 8:8,18,19 11:7 25:7 64:14

**partner** 45:25

**party** 8:8,9 43:20

**Patti** 60:22

**Paul** 16:3,7 17:3,6,23,24 57:12

**paycheck** 15:9

**peace** 47:20

**Pennsylvania** 1:2,4,8,10,18,22 2:2,8,12,17

4:14,15,16,19 5:6,15,19 7:18,22 24:2 26:7,18 42:12 43:19 57:9 61:12

**people** 8:12 47:21

**per** 63:18

**percent** 17:20

**performed** 48:18

**perhaps** 10:9 41:6

**period** 16:18,20

**perspective** 18:20

**pertinent** 44:8

**phone** 19:7 20:6,7 21:16,23 22:5,6,14,15,20,22 23:10,13,14,16,20,22 24:5,18 30:16,21,24 41:21 43:10 47:24 48:6 59:13 64:18

**phraseology** 53:13

**physically** 4:22 9:16

**Pittsburgh** 2:8,17

**placing** 26:10 37:11

**Plaintiff** 1:11 8:11,12

**Plaintiffs** 1:6

**played** 31:19

**please** 4:7 5:9 6:23,25 7:4 9:11,23 10:23 16:12 19:1,20 42:22 46:22 50:19 59:8 61:1,18

**PLLC** 2:5

**PM** 53:14

**point** 6:7 14:7 33:6 61:22 62:5 63:11 66:5

**points** 40:18

**POM** 1:4 2:2 3:16 4:14 5:18 15:4 40:17,20

**Poovey** 16:11 17:17,24

**P-o-o-v-e-y** 16:11,13

**portion** 52:24 55:2

**position** 30:12 54:12 66:3

**positively** 34:1

**possibility** 22:21

**possible** 24:10,24

**possibly** 23:21

**potential** 46:9

**potentially** 62:4

**practicing** 8:25

**preceding** 68:5

**prefer** 19:8

**preliminarily** 6:4

**preliminary** 6:1

**prerogative** 38:9

**present** 2:21 4:22 11:7

**president** 15:19

**pressed** 56:13

**presumed** 6:18

**pretty** 60:16

**previous** 20:4 22:16 23:3 64:3

**price** 20:17 21:7,11,13,21,24 22:5,6,10,19,20,23 23:23 25:17 26:6 30:17 31:1,6 32:23 33:4 36:1 37:16 38:15 43:5 44:18,21 57:4

**prices** 24:2,8 35:17

38:17

**pricing** 18:7 20:4
22:15 23:1,2
25:13,15 26:2 34:5
42:11,23 43:14

**principally** 57:8

**prior** 13:17 48:6

**privilege** 3:18 6:3,8
29:14 39:22,23,25
46:17,19 47:3,9,13
48:16 51:8

**privileged** 49:20,21
54:18,19 56:21,24

**pro** 46:25

**probably** 8:22,24

**Procedure** 1:19

**proceed** 5:13 9:12
61:20 63:5 64:18
65:15

**proceeded** 63:1

**proceeding** 4:23,24

**process** 62:23

**produce** 41:16

**produced** 21:9,25
23:8 40:7,25 48:24
49:19 57:3

**production** 64:1,5,8

**proper** 38:19

**properly** 55:3,10

**provide** 12:11
14:16,19 15:8,25
64:13

**provided** 46:25

**provides** 47:5 51:8

**providing** 51:15
52:4,9 53:6

**Public** 1:21 68:25
69:17

**pull** 37:4 55:24

**purpose** 7:16 23:23
24:7

**pursuant** 1:19 36:15
69:4

**putting** 26:11,12
28:13 64:25

_____
          Q
_____

**question** 9:10,13
14:14
20:1,6,9,16,18
22:25 24:4,13 25:25
26:1,23 28:15,24
29:6,17 32:4 33:9
38:17,20 41:5 44:5
49:10 59:24

**questioning** 38:19

**questions** 13:15
19:21 33:21 37:8,12
44:7 59:20 60:6
63:22 65:23 66:6,10

**quicker** 59:15

**quickly** 55:2

**quite** 63:21

**quote** 29:11

_____
          R
_____

**raise** 20:17
21:7,10,13 30:17
31:1,6 33:18,19,22
35:17 43:5 44:21
57:4

**raised** 22:7

**raising** 22:9,10
24:2,7

**range** 48:6

**rather** 62:2

**ready** 55:20 62:5

**real** 55:2

**really** 52:15

**reason** 50:4 56:6
66:3
67:4,7,10,13,16,19,
22

**reasons** 68:5

**recall** 8:6,7,11
17:21 22:20
23:18,19,20
24:9,15,17,21
25:1,2,7,8,11,14,16
,17,19 34:3,6,11,19
35:2,3,9,10,12,20,2
3 41:11,13 43:3,12
45:9,17,18,19
48:7,8,10 49:15
57:17 58:7,9

**recalls** 60:7

**receive** 57:2

**received** 42:9

**recent** 5:5 61:11

**recently** 40:9

**recipients** 49:14

**recognize** 40:17 60:8

**recollection** 8:18
22:14

**record** 5:11 6:4,9,22
9:2 10:23,25 11:4
14:6 18:14,18,23
22:13 30:7 32:18
36:8 38:10,25 39:19
41:22 58:21
63:8,13,24 64:21
65:1,13,14 66:3,15
68:7 69:7

**recorded** 5:7

**redacted** 39:20 46:16
51:9 54:8,11,18
55:3,11 56:5

**redaction** 40:1 46:14
47:7 52:1 53:12,19

BENTLEY GREG CLINE                                    82

54:13,22 56:12

**redactions** 39:25
  48:12,13,14,18
  51:13,15 53:5 56:14

**refer** 19:19 40:16

**reference** 19:15
  53:16 64:2

**referencing** 19:15
  43:2,19 54:14 63:17

**referred** 11:24 40:8

**refuse** 29:16 30:6

**regard** 6:2
  18:7,12,18 24:1
  26:6 34:5 36:10
  38:14 43:6,14 44:1
  49:12 58:10,14
  63:10,14 66:1

**regarding** 8:20 38:17
  58:15 63:20

**regularly** 12:11
  14:16

**related** 15:1 48:25
  49:2

**relating** 44:2

**relation** 61:12

**relationship**
  29:10,21 30:3,5

**relevancy** 58:22

**remote** 4:12

**remotely** 4:24 5:1
  37:16

**remove** 12:24

**repeat** 14:14 33:9

**repeating** 20:15

**replacement** 17:6,8,9

**report** 16:2,3,11,21
  17:5

**reported** 16:23,24,25
  17:3,11

**reporter** 1:20
  4:7,9,11 18:24
  59:4,6,11,14 69:11

**reporting** 4:11,24
  5:4 17:18

**represent** 15:12,14
  47:3 56:9

**representative** 7:23

**represented** 41:12

**representing** 5:15

**reproduction** 69:9

**request** 36:12
  64:1,5,7

**requests** 65:14

**requires** 61:17 62:24

**re-selling** 26:16

**resolve** 6:12

**respect** 38:13 69:9

**respectively** 20:6
  22:17 23:4

**respects** 68:9

**respond** 34:1,2,17
  35:5,22 36:13 49:4

**responded** 26:3
  34:7,9,24
  35:12,15,23 50:8,13
  63:2

**responds** 20:19 21:16

**response** 33:24,25
  34:4,22 35:1,11,20

**responses** 49:13 57:3

**responsible** 32:8

**responsive** 49:18

**restating** 22:3

**resumed** 11:6

**retained** 5:8

**rid** 56:11

**Road** 2:15

**role** 18:3 45:24

**room** 4:23 9:24

**rule** 58:21

**rules** 1:19 5:6 8:24

**ruling** 60:14

**Ryan** 57:8,13

_____
          S
_____

**satisfy** 28:15

**Savvy** 1:4 2:2 5:19

**scope** 12:15 26:22
  29:24 37:13,17
  38:18 64:7,15

**scope's** 38:12

**score** 12:15

**screen** 10:14
  18:22,25
  19:5,12,16,25
  28:17,18 39:5 46:13
  49:25 52:17 54:3
  57:23

**screenshot** 42:3

**scroll** 21:3 56:1

**search** 49:16 50:18

**second** 10:23 19:1,9
  21:10 27:18,20,23
  28:11,20,21 29:1
  30:25 39:3,14 52:8
  55:15 61:1

**seconds** 28:23

**section** 52:16

**sections** 51:10

**seeing** 56:17

**seek** 64:19

**seeking** 46:2,7

**seem** 24:15

**send** 10:12 18:21

24:3 34:21 39:3,13 41:21 42:1,3,23 43:1 50:21 55:8,10 63:7

**sending** 42:21 50:22

**sent** 23:7 39:4,18,23 41:17 42:18 48:23 55:13

**sequentially** 16:21

**services** 4:11 12:11 14:16 15:8

**sets** 33:4

**setting** 21:24 37:15

**setup** 48:3

**setups** 25:18

**several** 33:21

**SHEET** 67:1

**short** 11:1 16:1

**shortly** 19:10

**shows** 41:11

**sic** 20:6,10,20 33:18 42:23

**sign** 65:25

**Signature** 66:18

**SIGNATURE:_____**
**_____DATE**
67:24

**Simonovitch** 1:20 4:10 69:16

**simply** 30:4 35:2

**sir** 20:9,10

**sit** 21:19 35:21

**skill** 1:8,10,18 2:12 4:15,16 5:15 8:13 24:2 26:7 42:12,24 43:18,20 61:12

**slide** 52:21

**small** 19:7

**smug** 28:8

**Snyder** 4:11

**so-called** 63:10

**sold** 26:15

**someone** 9:21 17:6,7

**sometime** 16:17

**sorry** 7:1 16:12 20:7 24:12 27:17 28:7,16,22 29:3 32:12 33:9 34:20 55:19 58:16 59:6 62:8 65:25

**sort** 11:19 54:2

**source** 41:23

**South** 12:4

**space** 46:16

**speak** 38:25 47:19

**speaking** 61:3

**specif** 62:19

**specific** 18:4 43:2 58:9 60:10

**specifically** 25:4,15,16 37:2

**speculation** 31:15,20

**spell** 7:3 16:8,12

**spelled** 20:12

**Spilman** 2:5

**stand** 65:13

**start** 19:24 27:14 40:12 64:25

**started** 26:1

**starts** 48:5

**state** 9:2 14:10 36:8 38:9 58:20

**stated** 51:7

**statement** 65:8

**States** 1:1 4:18

**stating** 5:10 42:23

**status** 29:12

**stay** 54:12

**sticking** 13:18

**stop** 36:4 37:17,20 43:22 56:2 58:19,23

**stopped** 58:7

**strategy** 47:5 51:9,16 52:5,10 53:6,19 54:6,15

**Street** 2:6

**string** 56:18,23

**S-u** 7:8

**subject** 8:13 37:9 38:13 42:11 58:13 61:11 65:20 66:11

**submission** 55:10

**submit** 18:23

**Subscribed** 68:22

**substantive** 42:5

**sufficient** 28:22

**suggest** 60:12

**suggesting** 6:11

**Suite** 2:7,16

**Summerfield** 2:16

**sure** 9:6 13:2 14:15 21:18 31:17 34:21 35:11,13,14,16,19 44:23 45:4,7,21 55:4,24 64:21

**Suwanee** 7:2,8

**swear** 4:7 5:12

**sworn** 5:1,23 68:22 69:6

**Systems** 1:5 2:2 5:19

_____
_____T_____

BENTLEY GREG CLINE                                                         84

**t/d/b/a** 1:4

**taking** 5:11 18:15
28:25

**talk** 65:6

**talking** 24:20 50:10

**team** 26:15
57:7,11,14,16
58:3,5,8

**Technology** 2:14

**telephone** 43:4 62:6

**tenure** 18:5

**term** 8:16 12:12
18:8,11

**terminals** 26:15

**testified** 5:24
22:6,13 23:7,10
24:6 25:11 29:22
30:5,16 40:4
43:11,25 45:6
47:24,25 52:23
63:17

**testifies** 20:16

**testify** 9:15 18:17
21:19 35:22 40:14
63:12,20

**testifying** 8:20
12:23

**testimony** 7:17,21
9:4 12:21 15:7
18:18,20 19:20,23
20:23 21:2 23:22
25:2 30:15,18,19
31:1,21 32:9 33:7
34:8,12,20,25 37:8
40:9 44:2
45:9,12,15 57:1
58:10 68:7 69:7

**testimony's** 45:17

**text** 42:21 56:4,8,9

**Thank** 5:16 6:19 7:10
16:10 35:25 62:8,14

66:8,12,13

**Thanks** 42:6

**therefore** 37:11

**there's** 6:8 9:10
14:6 24:25 30:4
33:21 34:4 37:7
51:11,13 53:5 65:4
66:10

**Thomas** 2:5

**thread** 40:13 48:4,24
49:13 50:17 57:3

**throughout** 54:21

**Thursday** 1:23 4:5

**tight** 28:25 55:6

**title** 11:19,21 12:5
15:18 16:14
42:17,20

**today** 4:21 8:20,22
9:3,15 10:6 18:17
21:19 35:21

**top** 53:11 56:3

**transcript** 3:15,19
7:4 19:15
68:3,4,7,9 69:9

**true** 17:13 68:7,10
69:7

**truthful** 9:4

**try** 9:7 22:12 36:16
65:1

**trying** 18:19 28:8
38:1,4

---
U
---

**ultimately** 32:8

**underneath** 52:1
53:10,12,18 54:13

**understan** 18:16

**understand** 8:14 9:10
11:23 13:9,16,25
15:7,21 18:8,11,17

21:18 23:22 24:4
25:2 26:6 30:12,18
31:1 34:8,12,20,24
40:24 41:5 42:12
43:18 45:24 50:1,16
52:4 53:7 63:18
66:4

**understanding** 9:12
18:2,19 24:11 27:9
32:23,25 33:20 36:1
40:21 41:4,10 42:25
43:13,16 45:16

**understood** 9:13 43:9

**UNIDENTIFIED**
61:2,8,15,21 62:10

**uniform** 7:8

**Unis** 2:23 42:12
43:19

**United** 1:1 4:18

**unless** 69:10

**unprivileged** 49:20

**unquote** 29:11

**unredacted** 56:20

**upon** 29:7

---
V
---

**Ventures** 2:14

**via** 1:22

**vice** 15:19

**Victor** 16:13

**video** 4:3,12 28:17

**Videographer** 2:22
4:3 10:24 11:3
66:13

**VIDEOTAPED** 1:17

**violation** 26:17

**violations** 26:10

**virtually** 1:22

**vs** 1:7,12 4:14,16

---
**W**
---

**W-2** 15:9

**wait** 27:15,22 31:24 43:21 46:5

**waiting** 60:14

**waive** 5:3 65:24

**waived** 66:18

**waiver** 14:7

**Warren** 3:19 16:25 17:9,11,22 57:15 58:2 63:17

**Warren's** 58:10

**Washington** 2:15

**wasn't** 35:11,13

**wasting** 6:13

**we'll** 6:15 19:9 36:13,18 39:24 65:15,22

**we're** 10:24 13:18 18:19 29:6 30:9 36:21 37:17 52:16,21 53:9 54:13 55:20 60:14 61:22 63:12 64:19

**Wesson** 57:13

**Western** 1:2 4:18

**we've** 53:9 65:13,14 66:2

**whatever** 56:6

**whatever's** 54:12

**whatsoever** 34:4 64:14

**whether** 22:10 24:9 27:1 29:10,17 30:2 31:16 32:6 34:11,18 35:2,9,19,22 45:17 46:8

**whiskey** 7:8

**whole** 19:23

**whom** 11:11 16:22 25:3

**who's** 9:24 32:8

**withdraw** 64:8

**witness** 1:17 3:2 4:8,25 5:12 8:2 12:22 13:7 27:25 28:2,13 29:3 47:15 50:20 51:1,3 63:19 69:5,7

**WOMAN** 61:2,8,15,21 62:10

**wonderful** 62:8

**Wood** 57:8,14

**work** 14:20

**wraps** 26:12

**writing** 29:22

**wrote** 53:14

---
**Y**
---

**yesterday** 65:20

**York** 7:18,22

**you'll** 19:25 20:11,13 33:7 44:6

**yours** 52:25

**yourself** 15:19 21:3

**you've** 18:14 24:6 29:22 30:5 43:11 65:12

---
**Z**
---

**Zegarelli** 2:13 3:6 5:14,25 6:16,21 10:10,15,22 11:8 12:19 13:4,21,25 14:3,9,12 19:4 26:25 27:5,8,13,17,19,24 28:3,7,16 29:15 30:11,13 32:6,12,16,19,21 36:7 37:21 38:3,8,24 39:2,10,17 41:19,25 42:6,8 43:24 44:4,13,16,17 46:18 47:2,10,14,17,18 49:8,11 51:4 54:10,25 55:5,9,19,22 56:10,25 57:22 58:1,20,25 59:3,19,21,25 60:4,12,19 62:16 63:6 64:10 65:11 66:1,9

**Zoom** 1:22