**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

Plaintiffs/Counterclaim
Defendants,

The Honorable Patricia L. Dodge

v.

PENNSYLVANIA SKILL GAMES, LLC,

Defendant/Counterclaim
Plaintiff.

**RESPONSE TO MOTION TO COMPEL**

AND NOW COMES Pace-O-Matic, Inc., ("Pace"), POM of Pennsylvania, LLC,

("POM"), Savvy Dog Systems, LLC, ("Savvy Dog"), and Miele Manufacturing, Inc. ("Miele")

(together, the "POM Parties), by and through their undersigned counsel, and in support of the

within Response to Motion to Compel state as follows:

1.      This case involves claims of: (1) breach of contract related to a 2015 Equipment

Purchase Agreement regarding sales of equipment and software plays in Beaver County and an

alleged "right of first refusal"; (2) trademark rights in PENNSYLVANIA SKILL as a word and

stylized mark, to include related unfair competition and other claims related to mark usage; and

(3) recent claims by PSG related to alleged interference with contract an corresponding civil

conspiracy related to an increased price on software fills.

2.      The case does not involve a dispute among the POM Parties or involve their

business relationship with one another.

3.      On February 16, 2021, Pennsylvania Skill Games, LLC ("PSG") filed an

Emergency Motion to Compel the production of draft agreements between POM of

Pennsylvania, LLC and Miele Manufacturing, Inc. (ECF No. 105) and a subsequent supplement and surreply. (ECF Nos. 116 and 117).

4.    The documents demanded by PSG are draft agreements that may exist between the POM Parties, specifically Miele and POM of Pennsylvania, regarding their relationship in Pennsylvania. PSG also is seeking all related emails and any other correspondence. Apparently, PSG also is asking for privileged emails that already have been produced, and are now seeking *in camera* review of same (ECF No. 112).

5.    The predicate to filing of the Motion to Compel was a "meet and confer" session on February 4, 2021, regarding the production of a draft agreement between Miele and POM. PSG claimed the document was needed to establish matters that are not part of the case, are not referenced in any form in the pleadings, and apparently pertain to some "usurpation" of rights that are not at issue in this litigation.

6.    At no time during this discussion was a specific document request or request for production of documents—or related definitions—discussed.

7.    Counsel for the POM Parties during the meet and confer session stated that the draft documents, to the extent they exist and in whatever form they exist, are not properly requested and are disproportionate to the litigation—but would discuss the matter with clients[1].

8.    PSG then submitted a letter to the POM Parties on Friday, February 12, 2021 requesting a response to same by close of business on or before the end of the day on February 16, 2021. A true and correct copy of the letter is attached hereto as Exhibit A, which PSG notably did not file in support of its own motion.

---

[1] This Court should note that PSG wants more that the draft agreement, it wants all related documents related to negotiations. It is seeking emails related to negotiations and related documents.

9.      Incredibly, PSG stated, "These [draft] documents or this document (and any related cover emails, etc.) have not been produced. My understanding is that you were going to discuss with your clients. I require these documents for the deposition of Mr. Cline." (Exhibit A).

10.     The reason why the above request is incredible is because it flies in the face of a prior ruling by this Court issued days earlier February 9, 2021 (ECF No. 101) regarding a protective order, granted in part and denied in part, related to the deposition of Pace-O-Matic General Counsel B. Greg Cline.

11.     This Honorable Court in the last sentence of her February 9, 2021 Order stated, "The subject matter of his [Cline's] deposition shall be limited to PSG's express representations about its purpose, that is, what Mr. Cline said to Mr. Miele and why he said it." (ECF No. 101, pg. 5). As this Court noted in her Order, PSG did not issue a document request in its several iterations of its notice of deposition to Mr. Cline.

12.     Counsel for the POM Parties responded to PSG as requested via letter on February 16, 2021. A true and correct copy of the letter is attached hereto as Exhibit B.

13.     The letter: (1) states the objection to producing a draft document; and (2) cautioned counsel that the use of any such document could not be used during the deposition of Attorney Cline considering this Court's Order. (Exhibit B).

14.     The POM Parties stated, based upon the scope of PSG's request, they do not agree the document should be produced or is within any valid discovery request. (Exhibit B).

15.     The POM Parties quoted this Court's Order in Exhibit B. The POM Parties expressly stated to PSG, "Notably, the Order does not reference any draft contracts or anything of the sort. **If you require clarification of the Court's Order, we suggest you do so before the deposition.**" (Exhibit B, pg. 2)(emphasis added). PSG was warned to steer clear of the limits of

3

this Court's Order several times and was cautioned to obtain clarity prior to the deposition to avoid an issue. It did not.

16.    Counsel for PSG demanded an additional phone call on February 16, 2021 to discuss the aforementioned letter, no resolution was reached, and PSG filed an Emergency Motion to Compel later that evening. (ECF No. 105), attaching eight exhibits.

17.    The exhibits of ECF No. 105 included PSG's First Requests for Production of Documents and related responses to establish its basis for the motion. PSG claims that "draft" agreements between the parties is expressly requested in the applicable RPDs, they must be produced, and are <u>critical</u>. (See, ECF No. 105-6).

18.    PSG's own document requests define a document as:

> As used herein, the term "documents" means all items within the scope of Rule 34 of the Federal Rules of Civil Procedure, including the **original, draft(s), revisions, and copies that are different in any way from the original, whether by interlineation**, receipt stamp notation, indication of copies sent or received or otherwise, of any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including electronic mail, fax cover sheets, records relating to the sending and receipt of faxes, and also specifically including all of your internal memoranda and electronic communications.

19.    Based on the above definition, the POM Parties' interpretation of a request for "Documents" only requires "drafts" when they are different in any way from the "original." Further, a reasonable reading of this request would require a draft only if a final, original document were completed/existed. As such, PSG's own definition is ambiguous and vague, and was objected to.

20.    Here, no original exists, because the alleged agreement remains in draft form. An agreement *does not exist*.

4

21.     Deciding what is or is not a "document" need not be addressed, because the exact requests from PSG's RPDs, (with emphasis supplied) do not ask for a "**document**." The requests ask for "**agreements**":

> 1.     All **agreements** between you and Pace-O-Matic that refer or relate to electronic video game machines under the PENNSYLVANIA SKILL mark in the Commonwealth of Pennsylvania.
>
> 2.     All **agreements** between you and POM of Pennsylvania that refer or relate to electronic video game machines under the PENNSYLVANIA SKILL mark in the Commonwealth of Pennsylvania.
>
> 3.     All **agreements** between you and Savvy Dog that refer or relate to electronic video game machines under the PENNSYLVANIA SKILL mark in the Commonwealth of Pennsylvania.

22.     None of the underlying requests for production of documents define "agreements." None of the requests above seek "documents." None of the requests for "agreements" request <u>drafts</u> of "agreements." As such, the POM Parties interpret that request to be exactly what was asked for—agreements. Not drafts, incomplete thoughts, or negotiations.

23.     Regardless, draft documents between the parties have no bearing on any claim or defense in this case and are therefore disproportionate to the litigation. If this case involved claims between the POM Parties related to a contract and parol evidence were at issue, then they may be remotely relevant. There are no such claims, however, so the request is disproportionate and inappropriate.

24.     PSG's apparent basis for needing this discovery, despite not actually asking for it in its own RPDs, are ostensibly contained in the following two paragraphs in its Motion to Compel:

> Whether "memorialized with complete signatures" such as initially qualified by Mr. Warren at P46:L11, or if in draft form, or signed by one party or more, or initialed in the corner, the existing evidence is clearly discoverable as to which party is or may be responsible or not responsible for what, or who may or may not control whom. Both Miele Manufacturing and Pace-OMatic have duties stated within the Equipment

Purchase Agreement, and documents between the two of them are discoverable to determine if or how certain duties between them may or have affected their duties under the Equipment Purchase Agreement, including, for example, how one or the other, or both, would make sure, "Seller will use all reasonable efforts to make sure Buyer has access to software plays for its Compliant Terminals and Hardware components as long as Seller is in the market." [See, e.g., Exhibit 1, §3]

Iterated draft documents are a form of admission by the drafters, and the iterations evidence the revisions between the parties regarding the terms and modifications thereto, with the cover communications, emails and texts documenting relevant timing issues and surrounding discussions. This is a basic and obvious point that is well-known to all. The documents should have been produced long ago or referenced with some form of "withholding" notice. Stating a relevancy objection to this subject-matter is so absolutely groundless as to be clearly frivolous.

25.   The existential question posed by PSG appears to be that the draft agreement will identify what entity has control over what other entity to determine how "duties" under the Equipment Purchase Agreement may have affected other "duties" between the other parties, which somehow affects performance under the Equipment Purchase Agreement. Notably, PSG had plenty of opportunity to depose corporate designees on this subject, so it is unclear why or how that opportunity was insufficient.

26.   Try as it might to sell some threadbare connection to the Court based upon minutae to connect the POM Parties in some far ranging conspiracy, such an effort must fail. Not only is this discovery demand being pursued for speculative and harassing reasons on the eve of summary judgment and after discovery closed, PSG's campaign would be improper at any time. There is no connection to the case and the discovery request.

27.   Also, according to PSG, "iterated" draft documents somehow are "known to all" as being admissions and setting dates and time for what is considered "critical" by PSG. PSG is making a faulty assumption and cites no authority for its position.

28.   The only contract at issue in this case is the Equipment Purchase Agreement, which relates to sales of equipment and software plays, and the alleged "right of first refusal" in

Beaver County. PSG claims that the right of first refusal was breached and that it has a lifetime right to fixed equipment prices (despite the fact that it expressly states that fill prices can change in the future).

29.     Either the agreement was breached or it wasn't. Either PSG can establish the existence of an enforceable agreement supported by adequate consideration or it can't. The POM Parties have admitted to increasing the fill prices based upon legal and factual justification. Drafts of an unrelated agreement not at issue in the litigation between POM and Miele—plus all related emails and other correspondence—cannot possibly have any bearing on the inquiry or any other part of the litigation. As such, it is clearly disproportionate to the litigation and causes undue expense and harassment to the POM Parties[2].

30.     Contrary to PSG's unsourced assertion of something "well known to all," the POM Parties deny that a draft document is an admission, and it certainly would not be one admissible into evidence. In fact, the parol evidence rule, which the POM Parties raised as an affirmative defense in the underlying litigation, precludes prior statements from being used to interpret the meaning of a written agreement. "Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in

---

[2] The POM Parties have consistently stated since February 14, 2018 that the Equipment Purchase Agreement was terminated, to include stating in pleadings that the agreement was abandoned or terminated. Therefore, there is even less of a basis for the current contractual relationship between the POM Parties to be subject to discovery.

evidence. Phillips Gas and Oil Co. v. Kline, 368 Pa. 516, 519 (1951); LeDonne v. Kessler, 256 Pa. Super. 280, 286–87, 389 A.2d 1123, 1126–27 (1978).

31.     While PSG is referring to a situation that is somewhat distinguishable from a typical parol evidence rule issue, e.g., opposing parties to a contract have a dispute over a term, the documents PSG demanded by PSG involve parties who are not in a dispute with each other and are apparently negotiating commercial terms that have no involvement in this litigation. Either way, the claim of admissions in "drafts" has no application under the facts of this case.

32.     As for the production of the "can't miss" Attorney Cline email and the related accusations, to include ongoing *ad hominem* attacks on counsel, this position is unwarranted.

33.     PSG needs to look at its own document requests and the chronology of its requests, not to mention their scope and lack of clarity.

34.     The RPDs cited to by PSG regarding fill pricing was issued on September 11, 2020, making them due on October 12, 2020. A redacted true and correct copy of the POM Parties' Answers and Objections to PSG's Third Request for Production of Documents is attached as Exhibit C.

35.     In that request, PSG demanded: Produce all communications (including, but not limited to, email) to pennsylvaniaskillgames@gmail.com or otherwise known to be directed to PENNYLVANIA [SIC] SKILL GAMES, LLC or any person with the last name, "Unis." (See Response to Third Request.

36.     One day later, PSG sent an amendment to the Third Requests, amending the first request with a single request for production.

37.     Three days later, on September 15, 2020, PSG sent its fourth request for production, which was mislabeled Third Request, a copy of which PSG filed at ECF No. 116-2. In this request, PSG sought in vague, overly broad, and undefined terms: "Documents and

communications referring to any "Unis" named person, or "Pennsylvania Skill Games," whether or not those specific names are used (or example, if "Unis" and "Pennsylvania Skill Games" are other-wise referred to or designated)". Id. at Request 10.

38.     PSG cites to the POM Parties' responses to their Fourth Request for Production of Documents, which states "Produced" in response to RPD 6 (iv)[3]. However, there were introductory objections to the scope and definitions of the RPDs—and responsive documents related to the aforementioned email addresses and the "Unis" definition were already produced, as were all other responsive documents related to the actual claims at issue.

39.     This Court should note that the 30(b)(6) depositions of the POM Parties were completed the week of October 5, 2020 and the productions were not due until after they were complete (See paragraph 34, supra).  As such, PSG could have waited until it had the requested documents for the depositions, but it did not. Therefore, no prejudice to PSG exists with respect to deposing witnesses[4].

40.     Additionally, PSG originally was denied the ability to amend its complaint regarding the interference with contract and civil conspiracy claims due to mis-classifying its basis for doing so. PSG sought reconsideration, and this Honorable Court granted the Amendment on November 3, 2020 (ECF Nos. 85, 86). As of the 30(b)(6) motions in this case, during the week of October 5-9, 2020, the interference with contract and civil conspiracy claims were not part of the litigation.

---

[3] If PSG would like the POM Parties to submit an amended response containing a more specific objection to the request from Exhibit A regarding the scope of "whether those specific names are used," the POM Parties will do so. PSG's request is unduly broad and burdensome due to the terms requested.

[4] The designee of Pace, POM of Pennsylvania and Savvy Dog, Daniel Warren, was continued to October 28, 2020 as a courtesy to PSG because it had some "financial" questions that could not be done in a single day. That continuation was to be of limited scope.

41.    On November 12, 2020, a status conference with this Court occurred and the counsel for Pace and Miele stated that a motion to dismiss would be filed. This Court then directed the parties to complete discovery on the interference with contract and civil conspiracy claims while the motion was being considered, and this Court denied the Motion to Dismiss on January 19, 2021. (ECF NO. 88, 93).

42.    It was unclear up to November 12, 2020 whether any discovery on the interference with contract and civil conspiracy claims would be appropriately within the case. Nonetheless, PSG was permitted to ask all the questions it wanted to the corporate designees on the subjects, and, as noted above, any document production would have come after the depositions anyway.

43.    On December 31, 2020, PSG submitted its Fifth Request for Production of Documents, the POM Parties advised PSG on or about February 2, 2021 that a few documents (including Attorney Cline's email) would be produced in  days. They were. A true and correct copy of the POM Parties' Answers and Objetions to PSG's Fifth Request for Production is attached hereto as Exhibit D.

44.    PSG 's Fifth Request made the following vague and ambiguous requests:

Produce the documents that support, contradict and/or relate to the testimony provided at Deposition of Louis Miele Deposition at the following designations, with the further instruction that, in the event that the testimony is not cognizable as exactly expressed by the witness, that the request is made regarding the subject of the testimony:

a. P62:L8–16 that the referenced price increase was the decision of Pace-O-Matic;

b. P62:L21–22 that Pace-O-Matic controls the price of fills;

c. P63:L2–3 that Pace-O-Matic controls the market price;

d. P63:L8–10 to the extent that documents exist relating to referenced Miele commissions;

e. P63:L12–24; P64:L19–P65:L21 relating to the referenced communications;

f. P66:L4–15 relating to so-called "compliance issues."

45.     The POM Parties provided the following response (with emphasis supplied):

Objection. Responding parties are not obligated to interpret what Pennsylvania Skill Games, LLC considers to be support, contradiction, or relation to testimony. Documents related to the price increase of fills to Pennsylvania Skill Games will be produced. Responding further:

a.      Any responsive, **non-privileged** emails will be produced.

b.      No documents exist.

c.      No documents exist.

d.      All documents related to Miele commissions are irrelevant, disproportionate, and have no relation to the inquiry. To the extent Pennsylvania Skill Games wants this information, it can be identified in the documents already in Pennsylvania Skill Games' possession within the Miele invoices. Further, all commissions have been disclosed via oral testimony.

e.      Responding parties will search for and produce any responsive, **nonprivileged** documents.

f.      All compliance reports have been produced. Further, this request is vague, ambiguous, and disproportionate.

46.     Therefore, the POM Parties have indeed produced requested, responsive documents and provided objections as needed, to include objections on privilege.

47.     The production to PSG included the redacted emails from Pace General Counsel, B. Gregory Cline. Based on the aforementioned timing, the late inclusion of claims related to the interference of contract claims, and the flurry of discovery requests from September 15, 2020 until December 31, 2020, the discovery responses of the POM Parties are reasonable, appropriate, and sufficient. No prejudice to PSG exists or is established.

11

48.    Attached hereto as Exhibit E is a transcript of Mr. Cline's deposition. Attorney Cline testified that all communications on the subject of raising fills on PSG are reflected in the email chain that at issue in the "in camera" motion by PSG. (Ex. D, 40:4-11; 49:12-23; See confirmation of PSG Counsel 57:1-5).

49.    PSG also suggests that because the POM Parties' counsel was cc:ed on an email chain regarding the increase of PSG's fill prices, that goes to show proof that this was a "can't miss" document and intentionally withheld production, and resulting prejudice has occurred.

50.    Counsel for the POM Parties is a flawed human. He does not remember everything, nor can he recall one of literally thousands and thousands of emails that are sent and received on this and many other cases, especially considering the endless requests and demands from PSG.

51.    There is also no obligation for counsel to be involved in a memory test, nor should PSG conflate the lawyers with the clients. A reasonable inquiry to collect documents was made, the documents were produced, and PSG has not been prejudiced. In response to the Fifth Request for Production of Documents, the POM Parties went back to verify that documents had been produced, identified the email string involving Attorney Cline, opposing counsel was told the emails were coming, they were redacted, then they *were produced*. Over objection, Attorney Cline was deposed on the subject. The emails are not "critical." They merely confirm a fact to which the parties have admitted.

52.    Based upon the chronology of events, PSG has not been prejudiced, its own discovery requests would not have generated document productions in time for depositions anyway, it received the responsive documents, and was able to depose witnesses on the subjects at issue.  Further, PSG's own document requests did not properly seek the documents it is seeking now.

53. Finally, with respect to the "draft" agreements PSG demands, the POM Parties are free to conduct business with each other in any way they see fit, and PSG has no say in the matter. Not only is any draft document outside of any reasonable scope of discovery (not to mention the fact that PSG did not actually ask for it in a valid discovery request), it's none of PSG's business. It is a competitor and its conduct should be apparent in the recent summary judgment filing.

54. There is no prejudice to PSG if it does not receive any draft contracts or related communications. Conversely, there is prejudice to the POM Parties if these documents are produced to a competitor like PSG.

55. Finally, PSG has made the suggestion that the POM Parties "must" be hiding something because of the opposition to this document.

56. PSG has been given an excessive amount of latitude to complete discovery, despite it representing expressly at the beginning of the case that it needed some financial discovery (Minute Entry, 03/04/20). PSG's demands are non-stop, and everything is an emergency, conspiracy, cover up, or some other fictionalized account. Its only hope of survival is to find a technical foul and remain in a world of endless discovery.

57. Accordingly, enough is enough, there is no plausible or reasonable basis to seek production of a draft agreement that is not in force, is not executed by the parties, and is subject to change (not to mention digging into the minutae related to the communication), nor is there any basis to produce any other documents of any sort. Further, the POM Parties reserve all rights to file motions to compel on past requests by PSG that have gone unfulfilled and to recover fees in defense of this motion.

58. The POM Parties should not be forced to concede these points simply because a path of least resistance exists.

13

WHEREFORE, Defendants Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of

Pennsylvania, LLC, and Savvy Dog Systems, LLC request that this Honorable Court DENY the

Motion to Compel filed by Pennsylvania Skill Games, LLC.

Respectfully submitted,

Dated:  February 26, 2021                    SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., POM of Pennsylvania, LLC, Savvy Dog Systems, LLC, and Miele Manufacturing, Inc..**

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a     CIVIL ACTION NO. 2:18-CV-00722-PLD
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,     CONSOLIDATED

      Plaintiffs/Counterclaim     The Honorable Patricia L. Dodge
      Defendants,

      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant/Counterclaim
      Plaintiff.

## <u>CERTIFICATE OF SERVICE</u>

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy

Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on

the 26th day of February, 2021, I served the foregoing **Motion for Leave** to counsel of record via

the Court's CM/ECF System:

Via email to [mailroom.grz@zegarelli.com](mailto:mailroom.grz@zegarelli.com)

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
   Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
      Julian E. Neiser