**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**CONSOLIDATED RESPONSE TO MOTION TO COMPEL TESTIMONY AND
MOTION FOR IN CAMERA REVIEW**

AND NOW COMES Pace-O-Matic, Inc., ("Pace"), POM of Pennsylvania, LLC, ("POM"), Savvy Dog Systems, LLC, ("Savvy Dog"), and Miele Manufacturing, Inc. ("Miele") (together, the "POM Parties), by and through their undersigned counsel, and in support of the within Consolidated Response to Motion to Compel Testimony of and for *In Camera* Review state as follows:

1.      Pennsylvania Skill Games, LLC ("PSG") filed a Motion for *In Camera* Review (ECF No. 112) and Motion to Compel the testimony of Pace General Counsel B. Gregory Cline ("Cline") at ECF No. 118 (the "Current Motions"). This Response is a consolidated response to the Current Motions because they relate to the same issues and to ease the burden on the Court.

2.      The issues raised by PSG involve: (a) production of a draft document that apparently is being negotiated between two of the POM Parties and does not involve PSG or any claim at issue in this litigation; (b) the review of a privileged email that has been produced already; and (c) reconvening a deposition that needed to be stopped due to PSG disregarding a Court Order.

3.      Said another way, PSG is forcing the Court and the POM Parties to dedicate resources based upon: (a) a demand for a draft agreement that PSG shouldn't have; (b) an email that it does have; and (c) to reconvene a deposition that was stopped because of PSG's own conduct.

4.      On Friday, February 26, 2021, the POM Parties filed a response to PSG's prior Motion to Compel (ECF No. 105) and PSG's related supplements, errata, and surreply. That filing from the POM Parties, which appears at ECF No. 126, is incorporated herein by reference.

5.      This Court probably could review PSG's response from last Friday and resolve the Current Motions. However, due to PSG's accusations and reservation of rights for "sanctions," the POM Parties have no choice but to answer the Current Motions.

6.      In last week's Response at ECF No. 126, the POM Parties described why PSG should not be entitled to the relief it seeks and that its own delays in requesting documents cut against PSG's current demands to compel discovery.

7.      With respect to the Current Motions, PSG claims it requires re-convening the deposition of Mr. Cline related to the "draft agreement" and other questions regarding the "relationship" with Miele Manufacturing. It also claims prejudice because of the timing of the Cline email production, even though the email and related testimony confirms what the POM Parties already admitted to: The fill prices to PSG were increased in June 2020 because of PSG's rampant misconduct. A true and correct copy of Cline's deposition is attached hereto as Exhibit A and will be referred to as needed herein.

8.      PSG also claims that this Court must take the extraordinary step of an "*in camera*" review for the aforementioned email[1].

---

[1] Notably, PSG disregarded its meet and confer obligations regarding the *In Camera* review and Motion to Compel Mr. Cline's deposition.

9.      As the POM Parties stated in their response at ECF No. 126, the document production PSG claims it needed for depositions during the week of October 5-9, 2021 were not due until the following week—per PSG's own document requests[2]. Further, the "interference with contract" and "civil conspiracy" claims were not at issue in this matter until November 12, 2021 per this Court's Order. Finally, the email on the subjects at issue was produced and arguably was not due until February 1, 2021. (ECF No. 126, ¶¶ 5-15, 39, 41, 42, 43-47).

10.     In particular, PSG claims that the Cline email could have been used to "cross examine" Miele Manufacturing on October 5, 2020. However, Miele testified fully on the subject, but simply may have been wrong about whether there was an email conversation, too. It's a collateral issue.

11.     More important, responses to PSG's document requests were not due until a week after the Miele deposition. (See, ECF No. 126, ¶ 34).

12.     Therefore, any claims of prejudice by PSG are self-inflicted, non-existent, or greatly exaggerated.

13.     As for the Cline email, PSG is overstating both its importance and the circumstances around the email.

14.     PSG claims in Paragraph 4 of its Motion to Compel the Deposition of Gregory Cline that "errors" were found in the email redaction. Technically, PSG is correct. Practically speaking, they are calling a technical foul that has no business being placed in front of the Court.

15.     During the deposition of Attorney Cline, it was noted that in one section of the produced email, the email header containing the email addresses was redacted, as were the words CONFIDENTIAL and PRIVILEGED. (Exhibit A; pg. 54-57). These are not substantive issues.

---

[2] Also, PSG's Requests for Production of Documents cited as the basis for the production of the "draft agreement" were not properly sought in those requests. (See, ECF 126, ¶¶ 17-22).

16.     During the deposition, counsel for the POM Parties had to go through the exercise of un-redacting the email header and words CONFIDENTIAL AND PRIVILEGED and sent PSG a new version just to appease PSG. A true and correct copy of the email is attached hereto as Exhibit B.

17.     Mr. Cline testified under oath (while reviewing the unredacted original email) that the redacted versions of the email were indeed privileged and went to legal strategy (Ex. A, 52:4-53:21).

18.     So, PSG got exactly what was represented, but that is not good enough for PSG, it seems. PSG feels that this issue must be cryptically slipped in a motion to a federal judge as if it is material and requires greater scrutiny. It doesn't.

19.     PSG also claims some connection between to the "pivotal" call to raise PSG's fill prices as it relates to the "critical" email (ECF No. 112, ¶ 1).

20.     In this vein, PSG recasts this Court's Order after the fact and claims the Order was "implicitly qualified by the facts of which the undersigned and this Court were not aware of the withheld critical emails during motion practice." (Id. at ¶ 7).

21.     PSG claims in this regard that this Court needs to see the emails in redacted form "to understand the basis for the production of the draft agreement" and related "iterations." This argument fails for several reasons.

22.     First, the "critical" email was produced, and it isn't critical on its face. It confirms what the POM Parties already admitted to. The fill prices were increased because of misconduct by PSG. The increase was permissible because the underlying agreement has either been terminated or expressly allows for a price increase. Further, the price increases are in line with what is charged to other operators.

4

23.     Second, the "pivotal" phone call has been discussed and admitted to. The only difference is that Miele Manufacturing said that the discussion was done via telephone and not email. PSG is free to try and impeach Miele at trial, which probably would not be improper because it is a collateral issue.

24.     Third, the "critical" email has nothing to do with the "draft agreement." The Court can see from the face of Exhibit B that there is no hint of reference to a "draft" contract. There are no facts, whatsoever, that allows PSG to make the tortured connection between the Cline email and the "draft agreement" — which isn't relevant to any issue anyway.

25.     PSG has no basis whatsoever to claim the Cline email relates to the "draft agreement." There is no correlation between PSG's arguments here any actual fact of record. There is no citation to any fact that supports this incredible suggestion by PSG.

26.     Fourth, there is no "good faith" disagreement among counsel regarding this Court's Order and there was no implicit qualification by this Court.

27.     It is audacious for PSG to substitute its judgment for the Court to suggest what the Court "implicitly" meant, then knowingly run roughshod over a very clear Order—after being warned before and during the deposition to not do so—and then have the gall to file motions to ask this Court to compel a re-convening of that same testimony and an *in camera* review of an email.

28.     To be clear, there is absolutely no gray area in this Court's Order. It expressly stated the limits of the deposition: What did Mr. Cline say to Miele and why did he say it?

29.     The POM Parties detailed the steps taken to warn PSG from not violating the Court's Order prior to the deposition. (ECF No. 126, ¶¶ 5-15). Therefore, there is no excuse for PSG to have crossed the line set by this Court and no argument by PSG can justify its actions.

30.     In addition to being warned twice before the deposition (Id.), PSG was told four times during the deposition to stay within the bounds of this Court's Order. The deposition was stopped after PSG blew right through the limits of this Court's Order. Portions of the relevant testimony are highlighted in Exhibit A, and the exchange below appears at Exhibit A, 58:13-60:21:

```
Q.   All right. Now, this is also the subject
of a matter before the court currently with
regard to some form of documentation or draft -
- regarding a draft of a document between Pace-
O-Matic and Mr. -- I'm sorry, between Pace-O-
Matic and miele manufacturing, and let's are
you familiar with this document?

MR. NEISER: Stop. Do not answer.

MR. ZEGARELLI: I'll state for the record
that the court did not rule on relevancy,
and the document --

MR. NEISER: Stop. Let's call the judge.

MR. ZEGARELLI: -- and --

MR. NEISER: Let's call the judge right now.

MR. ZEGARELLI: Go ahead.

MR. NEISER: Court reporter, are you able
to assist us?

COURT REPORTER: I'm sorry, Mr. Julian,
what did you ask?

MR. NEISER: Could you please contact --
are you able to conference the court in
or do I need to do that?

COURT REPORTER: If you're able MR.
NEISER: I have -- I have the phone
number.

COURT REPORTER: Okay. If you're able to do
that quicker than myself, I would
appreciate that.

MR. NEISER: Okay. Here, I'll tell you what, before I
do this, Mr. Zegarelli, is it your intention to ask
him questions about this draft agreement?
```

MR. ZEGARELLI: Yes, if -- I mean, if --
obviously if there, you know --

MR. NEISER: No, no, no. You answered the question,
man.

MR. ZEGARELLI: Yeah. I mean, yeah.

MR. NEISER: That's all I'm asking you.

MR. ZEGARELLI: Yes. Right. I mean, it
is my intention to ask him questions
about the agreement to the extent he
recalls.

MR. NEISER: And you do recognize that the
court's order says that it's limited to
the specific inquiry of what Mr. Cline
said to Mr. Miele and why he said it?

MR. ZEGARELLI: I suggest to you that if
there is -- as I've indicated to the
court, and we're waiting for a ruling,
that --

MR. NEISER: It's a pretty easy answer,
man. YOU -- you do acknowledge that that's
what the court said; right?

MR. ZEGARELLI: I do acknowledge that's
what the court said.

MR. NEISER: Okay.

31.   This is not a "good faith" disagreement among counsel.

32.   Prior to the deposition being stopped, PSG had apparently completed its inquiries related to "what Mr. Cline said and why he said it." Therefore, there is no reason to re-convene his deposition.

33.   Also, PSG seems to forget that Mr. Cline was deposed as an individual, not a corporate representative. Any argument that he should testify as to the "relationship" between Pace and Miele is beyond the scope of his appearance and would amount to a legal conclusion in any event. The inquiry also is irrelevant.

34.     As for the Motion for *In Camera* Review, this Court should not have any more of her time wasted on the issues raised by PSG and there is no reason why privileged discussions among the POM Parties should be disclosed to anyone.

35.     It is clear that the privilege may apply where the communication is to in-house counsel rather than to outside counsel retained for a particular matter." Upjohn Co. v. United States, 449 U.S. 383, 389–90, 394-95 (1981). Even when "the decision include [s] consideration of" various business concerns, the attorney-client privilege still applies to the communications if the decision "was infused with legal concerns and was reached only after securing legal advice." Se. Pennsylvania Transp. Auth. v. Caremarkpcs Health, L.P., 254 F.R.D. 253, 258 (E.D. Pa. 2008).

36.     The communications at issue were sent to both General Counsel of Pace and outside counsel for the present litigation. The privileged communications related to legal strategy and legal advice. The non-privileged aspects were produced. The redacted portions of the email should remain private.

37.     If the Court wishes to review the email in camera, the POM Parties have nothing to hide. However, the POM Parties' right to keep privileged its communications with counsel should not be compromised on the flimsy basis alleged by PSG.

38.     Ultimately, PSG has failed to establish any prejudice if the Current Motions are not granted. Conversely, the POM Parties will be prejudiced by having the attorney client privilege invaded and because they have spent an inordinate amount of time and money defending discovery motions on collateral matters.

39.     More important, PSG has the burden as the moving party to establish its right to relief. It has not done so.

8

40. Based on the foregoing, PSG's Motions to Compel should be denied, as should its motion for *in camera* review.

WHEREFORE, Defendants Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC request that this Honorable Court DENY the Motion to Compel and Motion for In Camera Review filed by Pennsylvania Skill Games, LLC.

Respectfully submitted,

Dated: March 1, 2021

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
Julian E. Neiser
Pa. Id. No. 87306
One Oxford Centre, Suite 3440
301 Grant Street
Pittsburgh, PA 15219
T: (412) 325-1116
F: (412) 325-3324
E: jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., POM of Pennsylvania, LLC, Savvy Dog Systems, LLC, and Miele Manufacturing, Inc..**

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

## CERTIFICATE OF SERVICE

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on the 1st day of March, 2021, I served the foregoing **Consolidated Response to Motion to Compel and Motion for In Camera Review** to counsel of record via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
 Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
      Julian E. Neiser