### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

          Plaintiffs/Counterclaim
          Defendants,

          v.

PENNSYLVANIA SKILL GAMES, LLC,

          Defendant/Counterclaim
          Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

The Honorable Patricia L. Dodge

### REPLY BRIEF

POM of Pennsylvania, LLC, ("POM"), Savvy Dog Systems, LLC ("Savvy Dog"), Pace-O-Matic, Inc. ("Pace") and Miele Manufacturing, Inc. ("Miele") (together, the "POM Parties"), file the within Reply Brief to the Memorandum in Opposition ("Opposition") [ECF No. 135] submitted by Pennsylvania Skill Games, LLC ("PSG").

### INTRODUCTION

PSG's Opposition is representative of its entire strategy: Throw everything at the wall, claim every detail is critical, provide no authority for any contention other than archaic language and far-fetched arguments, and hope to live another day.

PSG's Opposition fails to establish the existence of material facts, a legal right to recover under its claims, or defenses to the POM Parties' claims. The lack of legal authority cited by PSG is stunning. The inability to cite to material contrary facts is telling. The failure to offer any responsive argument should be dispositive. PSG is trying to sell a fiction to this Court and it should not be permitted to continue.

{13887612.2}

**I.      PSG's Introduction is an attempt to cloud issues based upon immaterial, unsupported, and inadmissible "facts."**

PSG attempts to offer "seminal" and "critical" issues it claims to preclude summary judgment. It offers no actual proof of any "fact" other than one-sided testimony by an interested non-party without any other supporting facts, admissions, documents, evidence, or proof of course of conduct. These "facts" are a series of fragments and arguments that fail to reach a scintilla standard. This is the best PSG has after years of discovery, and it's not enough.

The following facts and points are ***undisputed*** and form the basis of the POM Parties Motion for Summary Judgment despite the "introduction" offered by PSG:

- There is no proof Albert Unis, III ("AU3") had any contact with any defendant before 2015, and AU3 could not define exactly when a "contract" was formed, but the "oral contract" was reduced to a writing. (Appendix Ex. Z, pg. 63:5-8).  He admits that the "exclusive" contract appears in Paragraph 4 of the EPA (Id. at 69:5-13) PSG admits the terms of the "oral contract" appear only in the EPA (Appendix, Ex. O, pg. 2, Answer #1, which refers to the EPA at Ex. BB). The EPA does not provide the rights PSG is claiming. Even if it did, it is unenforceable due to a lack of consideration.

- Further, AU3 admits that there was no discussion of an obligation on Pace to enforce any right of first refusal. (Id. at 54-55). As such, PSG's contract claims fail as a matter of law due to the lack of consideration or enforceable terms that provide rights PSG is claiming in this suit. PSG has the burden to come forward with some fact to establish the creation of an enforceable oral contract worth millions of dollars and trademark rights that impact the entire Pennsylvania market. It has not and its Opposition fails to point to a material issue of fact or legal right.

- AU3 admitted that the "Pennsylvania Skill Games" name was not and was never intended to be or used as a trademark. This is fatal and dispositive. [CSF ¶ 32].

- There is no evidence to suggest AU3 or AU4 had any involvement—at all—in developing the games at issue, the name, or the logo. The entire basis for the alleged "oral contract" is based upon "jointly developing games" and a number of other things that have zero proof of occurring in the record.[1] PSG has the burden to establish the existence of an enforceable "oral agreement," to include performance/consideration

---

[1] PSG creates a new theory in defense of summary judgment by defining a "Relationship Oral Agreement" in order to fabricate a issue of fact. There is zero proof of record this alleged 2012 "agreement" could have existed. There is no proof of a meeting, contact, communication, or otherwise of record prior to 2015. This contention is immaterial regardless, as there are no definite terms or consideration offered by PSG to support the "Relationship Oral Agreement."

{13887612.2}

and its "proof" in the Opposition is insufficient to establish either.  AU4 also admitted he never saw the PENNSYLVANIA SKILL stylized mark until Pace created it.

- PSG has taken creative license regarding facts and testimony. Citations to its Responsive Concise Statement of Material Facts ("RCSF") are in most circumstances incorrect, relate to immaterial/inadmissible "factual claims," or an attempt to elevate minutiae into material facts. For example, PSG resorts to relying on the ***file name under which a document was saved*** to create a legal right despite the fact that the underlying document contained no such agreement or designation (PSG Ex. 8.1 at PSG 714; RCSF  ¶ 8)[2]. At no time was a "master" distributor agreement agreed to, executed, referenced, or created in favor of PSG. In fact, the document relied upon by PSG mentions nothing about being a "distributor," nor does any fact or document of record set forth terms of any such arrangement.  PSG also cites to documents in its Responsive Concise Statement of Facts that are not used elsewhere in the brief or are irrelevant/immaterial. See, PSG Ex. 24.2 for just one example, and the POM Parties Motion to Strike filed contemporaneously with this Reply Brief.

- PSG also goes to great lengths to discuss the rights of AU3 and continue to claim the existence of an "exclusive" contract. (Opposition, pg. 6). AU3 is not a party to the litigation, has not established a valid assignment of any contractual rights, and cannot demonstrate that the "oral" agreement wasn't superseded by a written agreement.

## II.    Trademark Issues

PSG's Opposition ignores the admission that "Pennsylvania Skill Games" is a trade name and was never intended to be a trademark. PSG does not bother to offer a counter argument to the stark admission by its corporate designee. [CSF ¶ 32].

Second, PSG introduces the new and irrelevant argument of a "bubbly serif" font and a "refreshed" logo. In doing so, PSG misrepresents to this Court a key fact on Page 9 of the Opposition where it provides an incomplete and misleading comparison of the "bubbly serif" to the "refreshed" logo by only showing the Court a partial image.  PSG's omission of the complete image by PSG and comparing it to the Pace trademark is an obvious attempt to misdirect this Court that PSG was using the Pace trademark rather than a trade name.  Further, the "bubbly serif"

---

[2] Under this logic, litigants could sidestep contractual obligations or create new ones based upon how a document was saved or the naming convention used. If this notion truly constituted a material fact, then the purpose of summary judgment would be destroyed and the costs of discovery would be worse than they already are.

version was related to a class of goods that is entirely distinguishable from the underlying trademark applications. [POM CSF ¶ 70]. The complete version the image displaying its trade name (allegedly in usage) is provided to the Court on the right below.




### III.     Additional Issues:

PSG repeatedly relies upon "facts" in its Responsive Statement of Facts, but upon review of the actual record, these facts are distorted, do not support the related contentions, or are incomprehensible. For example, PSG claims Lou Miele "testified that the Equipment Purchase Agreement is effective." [PSG RSCF, at ¶ 66 (citing at POM Ex. CC, Miele Manufacturing October 5, 2020 Dep. 211:8–212:10)]. He said no such thing. This testimony expressly states that Miele was providing an example of how the "right of first refusal" may work under the Equipment Purchase Agreement—nothing else. Id. PSG also cites to RCSF ¶ 66 for the proposition that AU3 advised Michael Pace of competitor names. (Opposition, pg. 17). No such citation to the record at RCSF ¶ 66 exists, nor is there any fact that gives credence to this fictional assertion by PSG.

PSG offers *no legal authority* in support of its contract claim. The POM Parties raised substantial arguments regarding consideration, ambiguities, and enforceability, not to mention the lack of facts sufficient evidence to support the existence of an oral agreement. Not only did PSG ignore the substantive arguments, it offered *no responsive* case law. The POM Parties' position is that there is no genuine issue of material fact, and regardless of resolving inferences in PSG's favor, PSG's contract claims fail as a matter of law.

4

PSG failed to offer a single legal argument related to the commercial tort claims or to defeat the fact that no contract precluded an increase in fills against PSG, that the fill price increase was in line with other operators, and the underlying contract had been terminated for years. Again, it offered *no responsive authority* or argument related to PSG's legal basis to pursue these claims.

PSG makes no substantive argument in response to the Unfair Trade Practices, Pennsylvania Trademark, Common Law Trademark, and Declaratory Judgment and merely states it "begs the question of the entire case." That constitutes waiver.

PSG claims an "admission" regarding the "factual dispute of successor liability" without first establishing that any legal liability exists. (Opposition, pg. 15). PSG also—again—attempts to raise issues related to the alleged corporate "reorganization" of Pace that didn't occur and is not at issue in this case due to the denial of PSG's Motion for Joinder. Id.[3]

PSG has offered no facts or argument to establish that Pace drafted the EPA. To the contrary, Pace has offered evidence that it has not. (POM CSF ¶ 41). The evidence relied upon in this regard by PSG relates to separate agreements involving different entities. (PSG RCSF ¶ 6). As such, PSG is the drafter of the EPA and all ambiguities should be resolved against it.

Dated: April 7, 2021

Respectfully submitted,

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    E:  jneiser@spilmanlaw.com

---

[3] Under no circumstances can PSG establish "successor liability" on Savvy Dog Systems, LLC. There is simply no contractual liability against that entity under any theory, fact pattern, or document.

{13887612.2}

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA SKILL GAMES LLC,  CIVIL ACTION NO. 2:20-cv-01177-PLD

    Plaintiff,

           The Honorable Patricia L. Dodge

  v.

ACTION SKILL GAMES, LLC,

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **POM's Memorandum in Support of Summary Judgment** was served upon the undersigned counsel of record this 7th day of April, 2021 via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

  Gregg R. Zegarelli, Esquire
  Zegarelli Technology & Entrepreneurial
  Ventures Law Group, P.C.
  2585 Washington Road, Suite 134
  Summerfield Commons Office Park
  Pittsburgh, PA  15241

  **Counsel for Plaintiff Pennsylvania**
  **Skill Games LLC**

    SPILMAN THOMAS & BATTLE, PLLC

    /s/ Julian E. Neiser
    Julian E. Neiser

{13887612.2}