IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Civil Action 2:18-722 |
| PENNSYLVANIA SKILL GAMES, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

_____

| | |
|---|---|
| PENNSYLVANIA SKILL GAMES, LLC, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC. | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

Presently pending is the Motion to Compel Deposition Testimony Responses of B. Gregory Cline (the "Cline Motion") (ECF No. 118) filed by Pennsylvania Skill Games, LLC ("PSG"). Also at issue or otherwise relevant to the resolution of this motion are two related motions filed by PSG: its Emergency Motion to Compel Production (the "Production Motion") (ECF NO. 105) and its Motion for *In Camera* Review of POM Bates POM 004713–004715 (the "In Camera Motion") (ECF No. 112).

By way of background, in the Production Motion, PSG sought an order compelling the production of "any agreements and drafts or embodiments thereof between or among Pace-O-

Matic, POM of Pennsylvania and/or Savvy Dog Systems (the "POM Parties") on the one hand, and Miele Manufacturing, on the other hand, including cover communications thereof, emails and text messages relating thereto." PSG has asked that the deposition of Gregory Cline be postponed until these documents were produced by Pace-O-Matic, Miele Manufacturing, POM of Pennsylvania and Savvy Dog Systems. In its February 17, 2021 Order, the Court denied in part the Production Motion, directing that Mr. Cline's deposition go forward as scheduled, and deferred a ruling on issues related to the documents that were the basis for the motion. PSG filed a supplement to the Production Motion on February 22, 2021, to provide further information so that the POM Parties and Miele Manufacturing had an opportunity to address these facts.

Mr. Cline's deposition was taken on February 18, 2021. A dispute arose during the deposition regarding its scope. After the deposition, the Court participated in a telephone conference with counsel at their request. The Court inquired if either counsel requested that a court reporter attend in order to make a record, and both counsel indicated that it was not necessary to do so. Counsel then advised the Court of the nature of their dispute and their respective positions. Among the issues discussed during this conference related to whether Mr. Cline could be questioned concerning a draft agreement between Pace-O-Matic and Miele Manufacturing. The matter was not resolved during this preliminary conference pending a formal motion.

On February 19, 2021, PSG filed the In Camera Motion which relates to an email exchange between Mr. Cline and others. PSG challenged the redaction made by the POM Parties on the basis of attorney-client privilege. The Court granted PSG's motion and the POM Parties provided the document at issue to the Court as instructed on March 16, 2021.

On February 22, 2021, PSG filed the Cline Motion. In this motion, PSG moved to compel Mr. Cline to submit to a second deposition to answer certain questions posed at the February 18,

2021 deposition which he was instructed not to answer. The questions and objections are referenced in PSG's motion.

The Court will address each of PSG's pending motions in turn.

In Camera Motion

The Court has reviewed the unredacted and redacted versions of a document that consists of email exchanges.  This document is the subject of PSG's In Camera Motion. It is identified in POM's privilege log (ECF No. 112-3) as relating to "fill increase and legal analysis" and "provides legal analysis and legal strategy."  As the privilege log indicates, a redacted version was produced based upon the assertion of the attorney-client and attorney work product privileges.

Based upon a review of both the redacted and unredacted versions, the description of the document, including the content that was withheld, is accurately described in the privilege log. The redacted portion of the email exchange from Mr. Cline does, in fact, relate to the fill increase and includes legal analysis regarding the same.  Thus, the Court concludes that the privileges asserted by POM are well-founded.  Moreover, the redacted text does not discuss or describe a "draft agreement" between Pace-O-Matic and Miele Manufacturing.  As the unredacted portion states, counsel for POM and Mr. Miele were only asked if they were in agreement with the change in pricing for the fills done by PSG.

Therefore, PSG's request for the production of the unredacted copy will be denied.

Production Motion

In its motion, PSG seeks all drafts of a never-finalized draft agreement between Pace-O-Matic and Miele Manufacturing, as well as all documents related to any drafts, including those related to the negotiation of said agreement.  PSG asserts that its discovery requests included such

3

documents.  According to PSG, the relationship between these two companies is critical to this case.

POM disputes that these documents were actually requested.  Moreover, it argues, a draft agreement that was never finalized has no bearing upon the issues in this case. It asserts that the draft is not in force or executed, and moreover, whether a draft agreement exists does not relate to the claims by any of the parties in this case, including the alleged breach of an Equipment Purchase Agreement, Lanham Act violations and trademark infringement, as well as the civil conspiracy and interference with contractual relations claims asserted by PSG in its Amended Complaint. According to the POM Parties, the relationship between POM and Miele Manufacturing and how they do business is irrelevant to the issues in this case.

Clearly, the parties disagree regarding whether these documents were requested by PSG during discovery.  There is no need to reach this issue, however, because PSG has not shown that the documents at issue have any arguable relevance to the claims or defenses in these consolidated actions.

PSG alleges in its original Complaint that both the POM Parties and Miele Manufacturing are liable for PSG's claims related to the Lanham Act, common law trademark infringement and breach of the Equipment Purchase Agreement, all of which relate to events that occurred no later than 2018.

In PSG's breach of contract claim, it alleges that Pace-O-Matic and Miele Manufacturing breached the Equipment Purchase Agreement in or around 2018 by, among other things, selling electronic video game machines to other vendors for distribution in Beaver County without first giving notice to PSG or providing it with an opportunity to exercise a right of first refusal, and by selling electronic video game machines that are not in compliance with Pennsylvania law. PSG's

contention that an unexecuted draft agreement that was discussed several years ago relates to the relationship of Pace-O-Matic and Miele Manufacturing "as 'Seller' as between themselves, on one hand, with appurtenant duties to [PSG], on the other hand" (ECF No. 105, p. 1) in connection with the 2015 Equipment Purchase Agreement, is untenable. A draft agreement would not be admissible or relevant to the terms or interpretation of the Equipment Purchase Agreement, including the duties of Miele Manufacturing or Pace-O-Matic to PSG or their relationship as "Sellers" under the terms of the Equipment Purchase Agreement.  Similarly, later negotiations about a distributorship relationship has no bearing on whether either or both of these parties engaged in the trademark infringement alleged in the Complaint.

Moreover, PSG has had the opportunity to depose designees of the POM Parties and Miele Manufacturing about the actual nature of their relationship, including which party is responsible for certain duties or who may control certain aspects of their relationship.

Turning to PSG's Amended Complaint, it alleges that the June 2019 increase in the price of fills was done by Pace-O-Matic and Miele Manufacturing solely for retaliatory, interference and harassment reasons collateral to the breach of their existing obligations under the Equipment Purchase Agreement, and that they conspired to harass and interfere with PSG and its customers to extract PSG's submission from proceeding with its rightful claims. In turn, the POM Parties and Miele Manufacturing have asserted that the price was increased as a result of PSG's conduct, and take the position that the increase was permissible either because the Equipment Purchase Agreement has been terminated or allows for such increase. The existence of one or more draft agreements and related documents regarding a business relationship that has been discussed for two or three years, according to Mr. Warren's testimony, has no bearing on these tort claims.

Finally, as discussed previously, the redacted text in the document reviewed in camera does not reference a draft agreement in connection with the decision to increase the price of the fills or the claims asserted in the Amended Complaint.

For these reasons, PSG's Production Motion will be denied.

<u>Cline Motion</u>

In its Order of February 9, 2021, regarding POM's Motion for Protective Order with respect to the deposition of Gregory Cline, the Court permitted PSG to depose Mr. Cline, but only as a fact witness in his individual capacity and only as to matters that are not protected by the attorney-client privilege. As the order indicated, the subject matter of his deposition was limited to what Mr. Cline said to Mr. Miele and why he said it.

In the Cline Motion, PSG seeks to ask Mr. Cline about the following:

1) Whether Pace-O-Matic has a contract with Miele Manufacturing (Cline deposition transcript ("Cline DT"), p. 29, lines 16-19).

2) Whether their business relationship is embodied in writing (Cline DT, p. 29, lines 21-22).

3) Whether a reference in the June 9, 2020 email to Pennsylvania Skill Games is a reference to PSG (Cline DT, p. 43, lines 18-20); and

4) Whether Mr. Cline is familiar with a draft agreement between Pace-O-Matic and Miele Manufacturing (Cline DT, p. 58, lines 13-18).

As to items 1, 3 and 4, POM objected on the grounds that these questions were outside the scope of the topics permitted by the Court in its February 17, 2021 Order. POM objected to item 2 because it would require Mr. Cline to give his opinion as to whether certain documents detail the legal relationship between the two companies.

As indicated above, the previous order addressing Mr. Cline's deposition limited the subject matter of the questions posed to him. None of the proffered questions relate to what Mr.

Cline may have said to Mr. Miele about the increase in the fill prices to PSG or why he said it. Moreover, the fact that the testimony of Mr. Cline and Mr. Miele may not be consistent as to the method of communication, or indeed, what may have been said, does not open the door to questions about the business relationship between Pace-O-Matic and Miele Manufacturing or the existence of an agreement between them. In addition, as discussed in connection with the Production Motion, the substance of an agreement that was never finalized or executed is simply not relevant to the issues in this case.

For these reasons, PSG's motion to compel deposition testimony responses of B. Gregory Cline will be denied.

Therefore, this 20th day of April 2021, it is ORDERED that the Motion to Compel Production (ECF No. 105) and the Motion to Compel Deposition Testimony Responses of B. Gregory Cline (ECF No. 118) are DENIED.

BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge