**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

        Plaintiffs,
        v.

PENNSYLVANIA SKILL GAMES, LLC,

        Defendant.

PENNSYLVANIA SKILL GAMES, LLC,

        Plaintiff,
        v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

        Defendants.

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES' SUP-
PLEMENT TO RESPONSIVE CON-
CISE STATEMENT TO POM PARTIES
CONCISE STATEMENT OF MATE-
RIAL FACTS [ECF 122-1]**

| | | |
|---|---|---|
| 1.1[1] | Pace was involved with games of chance, but skill-dominant doctrine-type games is what Pace claims to specializes in "today" (April 24, 2019) | POM Ex. L, Michael Pace April 24, 2019 Dep. ("**Pace Dep.**") P23:L9–22 |
| 1.2 | Pace was only doing business in the Commonwealth of Pennsylvania by way of Albert Unis, III opening the Pennsylvania market in 2015, beginning from his discussions with Pace in 2012. | POM Ex. R, Deposition of Albert Unis, III, April 17, 2019 ("**UA3.19 Dep.**") P68:L2–P75:L17; P68:L22–24; POM Ex. Z Deposition of Albert Unis, III, October 20, 2020 ("**AU3.20 Dep.**") P111:23–P112:L2; POM Ex. S, Deposition of Albert Unis, IV, April 18, 2019 ("**UA4.19 Dep.**") P44:L25–P45:L6, |

---

[1] To maintain review conformity and referential integrity, paragraph number references are matched to the PSG Response to Concise Statement of Facts to which this document is a supplement. General references to exhibits with sub-exhibits is intended to reference all sub-exhibits thereby.

| | | |
|---|---|---|
| | | P45:L18–P46:12, P54:L1–8; P232:L25–P234:L10 |
| 1.3 | Pace's games continue to be seized in violation of the agreements between the parties as gambling devices and not "compliant" skill games. | Ex. 1; POM Ex. SSS, Deposition of Albert Unis, IV, January 29, 2021 ("**UA4.21 Dep.**") P127:1–18 |
| 1.4 | The version/build in the "**Beaver County Case**" [*In re Pace-O-Matic Equipment, Terminal ID No. 142613*, No. MD-965-2013] was not version being released in the marketplace. | Ex. 37; AU4.19 P91:L11–22 |
| 1.5 | The only feature of the game currently that is skill-based is a "follow-me" feature that is optional. | Ex. 35, 30(b)(6) Deposition of Pace/Savvy/POM by Christopher O'Bier, October 9, 2020 ("**O'Bier Dep.**") P57:L11–13 |
| 1.6 | There are now thirteen games in the release version rather than the three games in release version in the Beaver County Case. | **O'Bier Dep.** P52:L18–24 |
| 1.7 | Version 402.49 came after 402.65. | **O'Bier Dep.** P67:L10–14 |
| 1.8 | There is unlimited-time "see-ahead" in which a player of the Pace game can have unlimited time to "see-ahead" to the next game to see if the game is a "winner" prior to playing the game. | **O'Bier Dep.** P60:L6–19, P14:L11–13 |
| 1.9 | Albert Unis, III was the customer for Pace in Beaver County who was putting out all the machines. | Ex. 34 |
| 1.10 | Ryan Woods issued an internal email identifying "Albert is the customer in Beaver County who is putting out all the machines." | Ex. 34 |
| 2.1 | Pennsylvania State Police continue to seize Pace games. | **UA4.21 Dep.** P127:1–18 |
| 3.1 | Pace moved away from Pennsylvania project until 2012, after Pace was contacted by Albert Unis, III. | POM Ex. L, Pace Dep. 29:13–14, P30:L7–14; POM Ex. G; **AU3.19 Dep.** P68:L3–16; **AU3.20 Dep.** P106:L1–20; **UA4.19 Dep.** P44:L25–P45:L6 |
| 3.2 | Pace has no product as of August 10, 2012. | Ex. 29 |
| 3.3 | Pace has no name as of August 10, 2012. | Ex. 29 |
| 4.1 | A game title was not developed until after conversations by Pace with Albert Unis III. | Ex. 29; **AU3.19 Dep.** P68:L3–16; **AU3.20 Dep.** P106:L1–20 |
| 4.2 | The first run of Pace Pennsylvania games had not been made as of January 13, 2015 | Ex. 6 |
| 4.3 | On January 13, 2015, Ryan Woods confirmed, "I will keep my word on you being part of the first run." | Ex. 6 |

2

| 4.4 | As of January 30, 2015, Pace games assemblies were anticipated to start the next week. | Ex. 8.1; Ex. 8.2, POM Ex. Y |
|---|---|---|
| 4.5 | On January 30, 2015, Ryan Woods represented by email that the "games are starting assembly next week..." | Ex. 8.1; Ex. 8.2, POM Ex. Y |
| 6.1 | PSG only permitted use of its trademark if Pace maintained the terms and conditions of their agreement. | Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P98:L10–P99:L8, P124:L18–P123:2; **AU4.19 Dep.** P81:L5–14, P82:L6–9 |
| 6.2 | The relationship began in 2012 ("**The Relationship Oral Agreement**"), although not yet documented as such in writing. | POM Ex. H; **AU3.19 Dep.** P61:L13–15, P66:23–P67:2, P68:L2–75:L17; **AU3.20 Dep.** P51:L25–P52:L7; **AU3.20 Dep.** P54:L2–P55:L1, P106:L1–20; **UA4.19 Dep.** P44:L25–P45:L6, P45:L18–P46:12, P54:L1–8; P232:L25–P234:L10 |
| 6.3 | Albert Unis, III had repeatedly contacted his then-current attorney, Wayne DeLuca, Esq., culminating in the coordinated 2013 "controlled pickup" through the Beaver County Case Ruling on December 23, 2013. | POM Ex. H, Ex. 37; **AU3.19 Dep.** P114:L20–P118:L2, P120:L5–6 |
| 6.4 | The relationship was documented in writing on January 19, 2015 ("**January Agreement**"). | Ex. 6; Ex. 8.1, Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P97:L2–12; P97:L22–P98:L1; P98:L10–P99:L8 |
| 6.5 | Daniel Warren of Pace supplied the "draft of an agreement between Pace and Albert." | Ex. 8.1, Ex. 8.2, POM Ex. Y |
| 6.6 | The name of the document supplied by Daniel Warren of Pace was "PA Distributor Agreement.doc". | Ex. 8.1, Ex. 8.2, POM Ex. Y |
| 6.7 | "PA Distributor Agreement.doc" for the intended master distributor relationship on January 19, 2015 | Ex. 8.1, Ex. 8.2, POM Ex. Y; **AU3.20 Dep.** P54:L2–15 |
| 6.8 | Daniel Warren, CFO of Pace, signed the January Agreement for Miele Manufacturing with authority to do so. | Ex. 8.1, Ex. 8.2, POM Ex. Y, POM Ex. HH, Deposition of Daniel Warren, July 11, 2019 ("**Warren.1 Dep.**") Warren.1 Dep. P53:L14–23 |
| 6.9 | The parties further documented their relationship in writing on May 20, 2015 (the "**Equipment Purchase Agreement**"). | Ex. 7, Ex. 8.1, Ex. 8.2, POM Ex. Y, Ex. 11.1–11.2; **AU3.19 Dep.** P97:L2–12; P97:L22–P98:L1; P98:L10–P99:L8 |
| 6.10 | The first draft of the Equipment Purchase Agreement was prepared from shells they had at Pace. | Ex. 7; Ex. 11.1–11.2 |
| 6.11 | Daniel Warren supplied the first draft of the Equipment Purchase Agreement from "shells we have at Pace." | Ex. 7; Ex. 11.1–11.2 |

| | | |
|---|---|---|
| 6.12 | Development of the Pennsylvania market other than with Messrs. Unis and Pennsylvania Skill Games is a violation of the Equipment Purchase Agreement. | **AU3.19 Dep.** P81:L6–7, 108:L25–P109:L7, P104:L12–P108:4, P125:L9–P126:L4, P160:L12–P161:L8; **AU3.20 Dep.** P33:L1–10, P39:L6–9, P43:L8–13, P44:L11–19, P45:L5–14, P54:L2–15, P63:L4–8, P83:L20–24, P89:7–17, P91:L5–11, P91:L13–P93:L6, |
| 6.13 | The process was a continuum from The Relationship Oral Agreement though the Equipment Purchase Agreement when it was taken over by Albert Unis, IV. | Ex. 6, Ex. 7, Ex. 8.1, Ex. 8.2, POM Ex. Y, Ex. 32, Ex. 34; **AU3.19 Dep.** P18:L25–P19:L11, P52:9–18, P97:L2–12; P97:L22–P98:L1, P97:L22–P99:L8, P108:L17–P110:L14; **AU3.20 Dep.** 16:10–19:23, P18:L13–P20:L15, P28:L1–9, P63:L4–8, P111:L23–P112:L2, P116:L11–P119:L11; **AU4.21 Dep.** P115:L15–P117:L25; **AU4.21 Dep.** P117:L12 |
| 7.1 | Other than with PSG, Pace claims only a single isolated sale in the entire period from 2012 through 2015, being in September, 2013. | POM Ex. G |
| 8.1 | PSG was the master distributor in Beaver County with the exclusive right to place Pace games into Beaver County. | Ex. 7; Ex. 8.1; Ex. 8.2, POM Ex. Y; Ex. 11.1–2; **AU3.19 Dep.** P71:L8–11, P128:L16–23, P135:L19–P138:L13, P142:L9–19, P145:L17–P147:L16; **AU3.20 Dep.** P37:L2–24, P45:L18–P48:L1, P51:L25–P54:L15, P54:L4, P55:2–7, P57:6–14, P57:L10, P69:L1–4, P78:L24–91:L2; P129:L1–4; **AU4.19 Dep.** P31:9, P55:L2–8 |
| 8.2 | The draft January Agreement was named "PA Distributor Agreement.doc" in accordance with the verbal agreement of the parties that PSG was the master distributer in Beaver County with the exclusive to place Pace games into Beaver County. | Ex. 7; Ex. 8.1; Ex. 8.2, POM Ex. Y; Ex. 11.1–2; **AU3.19 Dep.** P71:L8–11, P128:L16–23, P135:L19–P138:L13, P142:L9–19, P145:L17– |

4

| | | |
|---|---|---|
| | | P147:L16; **AU3.20 Dep.** P37:L2–24, P45:L18–P48:L1, P51:L25–P54:L15, P54:L4, P55:2–7, P57:6–14, P57:L10, P69:L1–4, P78:L24–91:L2; P129:L1–4; **AU4.19 Dep.** P31:9, P55:L2–8 |
| 8.3 | Pace indicated that it wanted to do business with one vendor in Beaver County. | **AU3.19 Dep.** P47:L10–11; **AU4.19 Dep.** P52:L22–23, P53:L3–5; P55:L9–24, P56:L9–12 |
| 8.4 | References to the "exclusive" arrangement were also embodied in and added onto the terms relating to the right of refusal in Beaver County. | Ex. 16; **AU4.19 Dep.** P60:L1–6, P62:L1–P62:L9, P68:L16–24, P69:L14–21, P70:L7–9, P114:23–P117:L11, P126:L7–24, P196:L4–10; **AU3.19 Dep.** P141:L9–10; P145:L11–P146–L15; POM Ex. NNN, Deposition of Marvin Harris, January 20, 2021 ("**Harris Dep.**") P30:L24–P31:L16; |
| 8.5 | Pace indicated that it could turn off the fills to control the exclusive market in Beaver County. | **AU3.19 Dep.** P145:L15–P146:L15; P160:L12–P161:L8; **AU4.19 Dep.** P55:L25–P57:L10, P57:L2–10; P58:L4–L21, P145:L11–P146–L15; **AU4.21 Dep.** P63:L23–P64:L8; ECF: 70, 72, 75, 77, 81, 84, 89, 92 |
| 8.6 | Pace stopped fills for a location called "Jack Pot Fever" upon notice from PSG. | **AU4.19 Dep.** P62:L16–P64:L8 |
| 8.7 | In 2017, notice of another violation was raised, regarding which Pace/Miele refused to comply with their agreement. | Ex. 21.1–21.5; **AU3.20 Dep.** P33:L1–10; **AU4.19 Dep.** P82:6–P87:L6 |
| 8.8 | In 2017, Pace started its division of its otherwise simple corporate structure. | ECF-52, particularly, Ex. 11 thereto |
| 8.9 | Pace and Miele were discovered to repeat the violation in 2018 involving ProATM. | Ex. 21.1–21.5 |
| 8.10 | Pace-O-Matic was selling hardware and software directly to Pennsylvania Skill Games through November 1, 2019. | Ex. 18 |

| | | |
|---|---|---|
| 8.11 | On February 10, 2020, Pace refused to sell to Pennsylvania Skill Games. | Ex. 31 |
| 8.12 | L&M Amusements is an operator of Pace games. | Ex. 1; Ex. 22.2; **AU3.20 Dep.** P54:L4; Deposition of Rick Goodling ("**Goodling Dep.**") P84:L8–P85:L5 |
| 8.13 | Miele Amusement, rather than Miele Manufacturing, Inc, claims to be Master Distributor for Pace games. | Ex. 24.2 |
| 8.14 | No Miele entity is duly registered with the Commonwealth of Pennsylvania. | Ex. 22.7 |
| 9.1 | The Equipment Purchase Agreement has words permitting Pennsylvania Skill Games to assign its rights. | Ex. 7 |
| 9.2 | The Equipment Purchase Agreement does not have words for Pace or Miele to assign rights. | Ex. 7 |
| 9.3 | Pace contributed the background art in furtherance of Section 7.6 of the Equipment Purchase Agreement. | Ex. 7 §6, Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P34:L15–P35:L7, P98:L10–P99:L8; **AU4.19 Dep.** P178:L1–8 |
| 9.4 | The January Agreement expressly requires that Pace and Miele support PSG's marketing (not the other way around), at which time PSG had been using the mark since 2010. | Ex. 7 §6, Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P34:L15–P35:L7, P98:L10–P99:L8; **AU4.19 Dep.** P82:L6–9 |
| 9.5 | The Equipment Purchase Agreement expressly requires that Pace and Miele support PSG's marketing. | Ex. 7 §6, Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P34:L15–P35:L7, P98:L10–P99:L8; **AU4.19 Dep.** P82:L6–9 |
| 9.6 | PSG has been using "PENNSYLVANIA SKILL GAMES" to designate its business since 2010 | **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; POM Ex. VV, Deposition of Brian Dutcher, Brian Dutcher, 2021 ("**Dutcher Dep.**") P8:L1–13, P8:L6, |

| | | |
|---|---|---|
| | | P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; POM Ex. JJ, Affidavit of Pamela Kendrew, October 15, 2020 ("**Kendrew Dep.**") P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; POM Ex. LL, Deposition of Curtis Martin, October 15, 2020 ("**Martin Dep.**") P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 9.7 | Albert Unis, III is not an attorney. | **AU3.19 Dep.** P49:L4–6 |
| 10.1 | AU3 use of "PENNSYLVANIA SKILL GAMES" was intended to be a designation that distinguished the company from other venders. | Ex. 7, POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; <u>**AU3.20 Dep.**</u> P16:L10–24; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 10.2 | "PENNSYLVANIA SKILL GAMES" was intended to be a designation that distinguished AU3 and PSG from other venders, since at least as early as 2010. | Ex. 7, POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** |

7

| | | |
|---|---|---|
| | | P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 10.3 | Michael Pace admitted for Pace against Pace's own interest that the designation "PENSYLVANIA SKILL GAMES" was generic. | POM Ex. L, Pace Dep. P26:L9–11 |
| 10.4 | The Equipment Purchase Agreement, §7, permits only assignment of rights or duties by PSG. | Ex. 7, Ex. 8.2, POM Ex. Y |
| 11.1 | PSG was using the word mark in interstate commerce as set forth in its federal trademark applications, being 2010. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, |

| | | |
|---|---|---|
| | | P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 11.2 | PSG was in using a stylized form of the mark in interstate commerce as set forth in its federal trademark applications, being 2010. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 11.4 | The background art to "PENNSYLVANIA SKILL GAMES" changed all the time. | **Ex. 14.1–14.3; AU3.19 Dep.** P35:L2–11; P42:L4–L10; **AU3.20 Dep.** P124:L2–8 |
| 11.5 | Pace used the existing stylized logo which looks the same, using a similar stylized fonting. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** |

| | | |
|---|---|---|
| | | P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 11.6 | The refreshed PSG brand has no market distinction without PSG's word mark or preexisting serif stylized fonting as part of the brand, which was always understood by the parties to be brand of significance. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, |

| | | |
|---|---|---|
| | | P26:L19;   AU3.19   Dep. P35:L6–7 |
| 11.7 | The refreshed background theme is public domain artwork replacing game theme with the patriotic background as part of the new game rollout in accordance with the Equipment Purchase Agreement. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P42:L4–L10, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU3.20 Dep.** P124:L2–8; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 11.8 | Three bar owners and deponents testified that the association of the brand with PSG. | Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, |

11

| | | |
|---|---|---|
| | | P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 11.9 | It is denied that Pace used any word mark using a formative of PSG's mark in interstate commerce prior to January 12, 2015. | POM Ex. I, POM Ex. PP-1, POM Ex. PP-2 |
| 11.10 | POM asserts that the stylized formative that it claims was created between 1/9/15–1/13/15 | POM Ex. I, POM Ex. PP-1, POM Ex. PP-2 |
| 11.11 | POM asserts a first use date of November 19, 2013 in its federal trademark applications. | POM Ex. I, POM Ex. PP-1, POM Ex. PP-2 |
| 11.12 | POM's use date is junior to PSG's use date and there is no evidence that any of the POM Parties used the PSG brand prior to PSG at least as early as 2010. | POM Ex. I, POM Ex. PP-1, POM Ex. PP-2; Ex. 13.1–13.2; Ex. 7, 8.2, POM Ex. Y; POM Ex. OO-1, POM Ex. OO-2; **AU3.19 Dep.** P35:L6–7, P42:L4–L10, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU3.20 Dep.** P124:L2–8; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19; AU3.19 Dep. P35:L6–7 |
| 13.1 | The Pace claimed ship date for its isolated sale in the three-year period of 2012–2015, of September 16, 2013, after the conversations with Albert Unis III in 2012 and | POM Ex. G; POM Ex. H; **AU3.20 Dep.** P48:L2–L17, P49:L14–P52:L7 |

| | | |
|---|---|---|
| | after Albert Unis had already placed the game in his account for the "controlled pickup." | |
| 15.1 | Wayne Deluca was representing the interests of Albert Unis III through the date of the "controlled pickup" which would provide Pace the opportunity to obtain an order from the Court of Common Pleas stating that its game was legal in Pennsylvania. | **AU3.19 Dep.** P18:L3–8, P38:L9–20, P49:L10–16, P61:L18–21, P65:L5–16, 119:12–L25; **AU3.20 Dep.** P54:L21–P55:L1, P64:L18–23, P106:L1–20 |
| 15.2 | Wayne DeLuca was then-currently representing both parties in the joint effort. | **AU3.19 Dep.** 119:12–L25; **AU3.20 Dep.** P54:L24, P64:L18–23, P106:L1–20 |
| 15.3 | Wayne Deluca represented Albert Unis before Mr. DeLuca had begun also represented Pace. | **AU3.19 Dep.** P18:L3–8, P38:L9–20, P49:L10–16, P61:L18–21, P65:L5–16, 119:12–L25; **AU3.20 Dep.** P54:L21–P55:L1, P64:L18–23, P106:L1–20 |
| 15.4 | Wayne Deluca only represented Pace exclusively in the limited purpose of drafting the Purchase Equipment Agreement, for which Rodgers represented PSG. | Ex. 11.1–11.2; **AU4.19 Dep.** P85:L13 |
| 15.5 | Wayne Deluca represented Albert Unis, III prior to and up to the negotiation of the Equipment Purchase Agreement. | **AU3.19 Dep.** P18:L3–8, P38:L9–20, P49:L10–16, P61:L18–21, P65:L5–16, 119:12–L25; **AU3.20 Dep.** P54:L21–P55:L1, P56:L2–3, P64:L18–23, P106:L1–20 |
| 15.6 | Even after signing the Equipment Purchase Agreement, DeLuca continued to represent PSG and held himself out as doing so. | Ex. 16 |
| 15.7 | The correct term used by the authorities for the event is not "friendly pickup" but a "controlled pickup." | **AU3.20 Dep.** P48:L13–17, P50:L2–19, P61:L17–22 |
| 15.8 | Albert Unis III contributed valuable assistance in developing the circumstances to bring the Beaver County Case with his then-current attorney, | Ex. 17; **AU3.19 Dep.** P116:L16–21, P90:16–P91:L25, P95:L13–P95:L22, P104:L12–P108:4 [Ex. 6 is POM Ex. Y], P68:10–16, P94:L4–15–P97:L12, P111:L17–P112:2, 116:L12–P118:L23, P117:L14–P122:L20; **AU3.20 Dep.** P28:L1–9, P61:L25–P63:8, P55:L2–P57:14, P60:L23–P61:L6, P62:L8–22, P105:L8–P106:L20, P107:14–P112:L2, P116:L11– |

| | | |
|---|---|---|
| | | P120:L13 |
| 15.9 | Albert Unis supplied the Pace game to his AIC account venue. | Ex. 17; **AU3.19 Dep.** P58:L2–P59:L8, P90:L16–P92:L13, P122:L1–2 |
| 15.10 | Albert Unis III convinced the venue to take the risk because he was well known to provide legal games unlike other vendors. | **AU3.19 Dep.** P58:L2–P59:L8, P75:L4–17, P142:L12–25 |
| 15.11 | Albert Unis III would not "hide" like other vendors from a lawsuit. | **AU3.19 Dep.** P82:L12–13, P116:L23–P117:L3 |
| 15.12 | Albert Unis III provided business experiential advice for the lawsuit. | **AU3.19 Dep.** P116:L16–21, P90:16–P91:L25, P95:L13–P95:L22, P104:L12–P108:4 [Ex. 6 is POM Ex. Y], P68:10–16, P94:L4–15–P97:L12, P111:L17–P112:2, 116:L12–P118:L23, P117:L14–P122:L20; **AU3.20 Dep.** P28:L1–9, P61:L25–P63:8, P55:L2–P57:14, P60:L23–P61:L6, P62:L8–22, P105:L8–P106:L20, P107:14–P112:L2, P116:L11–P120:L13 |
| 15.13 | Albert Unis III is entitled to "high percentage" of the credit for the successful result in the Beaver County case. | **AU3.19 Dep.** P94:L4–7 |
| 15.14 | Albert Unis III paid the permit fees related to placement of the game used in the Beaver County case. | **AU3.19 Dep.** P104:L25–P105:L2; P116:L16–21; P122:L2 |
| 15.15 | Albert Unis III assisted in getting the game to perform well was difficult in opening the market at that time. | **AU3.19 Dep.** P140:L1–11; AU4.19 Dep. P47:11–25 |
| 15.16 | Albert Unis III also provided valuable assistance with the development of the Pace game in light of the goal of legalization, speaking confidentially regarding competitive strategy. | **AU3.19 Dep.** P47:L3–P48:L10, P48:L4–L10, P63:L10–P66:L8, P70:6–73:21, P74:L10–P75:L17, P77:9–P78:L1, P78:16–P80:9, P83:12–P84:L14, P85:L12–P87:23, P113:L11–18, P139:L1–11, P143:L1–144:L3, P155:L18–25, P122:L1–20, P123:L19–24, P145:L11–16; **AU3.20 Dep.** P20:L11–14; P26:L9–25, P116:L11–P118:L18 |
| 15.17 | Messrs. Unis opened the market in Pennsylvania. | **AU3.19 Dep.** P62:16– |

14

| | | |
|---|---|---|
| | | P64:L9, P75:L4–16, P68:L22–24, P143:L1–6, P152:L3–P154:L12, P156:L1–L159; **AU3.20 Dep.** P18:L2, P107:L14–P112:25, P116:L11–P120:L13; **AU4.19 Dep.** P45:L3–6 P45:L20, P45:L18–P46:12, P54:L1–8, P232:L25–P234:L10 |
| 15.18 | Daniel Warren personally guaranteed he could protect the territory by stopping fills. | **AU3.19 Dep.** 145:L15–P146:L15; **AU3.20 Dep.** 79:19–81:20 |
| 15.19 | Marvin Harris was engaged by Albert Unis III getting the his PA Skill Games that had compliance with the rules and regulations. | **Harris Dep.** P11:L15–25; P12:L12–14 |
| 15.20 | Other vendors at the time were running illegal games and it was important to run legal games to keep Albert Unis, IV safe in the gaming field. | Harris Dep. P11:L15–25; P12:L12–14; **AU3.19 Dep.** P142:L7–25; **AU3.20 Dep.** P108:L4–12; P119:L3–11 |
| 16.1 | The POM Parties sell to operators and venues through intermediaries, including Bison Amusements LLC and L & M Music Company, Inc., and Miele Amusements. | Ex. 1; **Warren Dep.1** P81:17–P83:L10; **Goodling Dep.** P84:L8–P85:L5 |
| 16.2 | Louis Miele is an operator though L & M. | Ex. 1; **AU3.20 Dep.** P42:L18–P43:L13; **Goodling Dep.** P84:L8–P85:L5 |
| 18.1 | The POM Parties sell through third-parties, namely Miele Amusements, L&M Music Company, Inc. that Miele owns or controls, and Bison Amusement in a conspiratorial scheme. | Ex. 1, Ex. 2, Ex. 3; **Warren Dep.1** P81:17–P83:L10; **Goodling Dep.** P84:L8–P85:L5 |
| 18.2 | On May 2, 2018, counsel for PSG sent a notice of suit to Pace and Miele with a copy of the claims made against them. | Ex. 19.1 |
| 18.3 | On May 23, 2018, without notice or service of process, a "Pace" party filed an unknown lawsuit in Beaver County while they were purporting to act amicably, then, on June 1, 2018, filed the within federal action and PSG filed its action on July 18, 2018. | Ex. 19.2–19.3; **AU4.19 Dep.** P83:L15–P86:L18 |
| 18.4 | On June 7, 2018, after its Beaver County and federal actions were filed, the POM Parties called a "summit" for operators without inviting PSG and forwarded new post-litigation terms to PSG for the first time as indicated by the postage stamp on the material of July, 2018. | Ex. 2, Ex. 33 |

| 20.1 | There was a significant amount of trepidation and risk for the AIC venue and Albert Unis III to be involved in a "controlled pickup" seizure and legal proceeding. | **AU3.19 Dep.** P58:L2–P59:L8, P75:L4–17, P142:L12–25 |
|---|---|---|
| 23.1 | Albert Unis picked up the machine for use in his AIC account and already placed prior to October 1, 2013 for months. | **AU3.20 Dep.** P48:L8–17, P51:L22, P59:L6–P60:L12 |
| 24.1 | Pace was the manufacturer of the software and supplied the terminal to PSG, which PSG provided as the operator with the location contract. | Ex. 17; Ex. 37; **DeLuca Dep.** P78:L14–20, P81:L13–21 |
| 24.2 | The Beaver County case Order of Court opined only to one build, being PEN 402.44, as set forth in the expert report relied upon by the court. | **Deluca Dep.** P81:L13–21 |
| 25.1 | No *voire dire* was performed by the county and Mr. Farley nor Mr. Unis was required to be called as witnesses. | **Deluca Dep.** P79:L21–24; **AU3.19 Dep.** P117:L11–13 |
| 27.1 | Ryan Wood's email on January 14, 2015 was expressly to further the deal that already existed. | Ex. 32 |
| 29.1 | The term "affiliates" was used in the January Agreement for the purpose of referencing assignment rights and exclusivity rights, including to allow Albert Unis competitors be brought under his control in Beaver County. | **AU3.19 Dep.** P101:L1–8; **AU3.20 Dep.** P18:L16–P19:L23, P20:L24–25, P21:L19–21, P25:L13–P26:19, P26:L9–P27:6, P30:L1–9, P31:L9–P40:L15, P33:L19–P37:20, P41:L18, P68:L16, P70:L24–P71:L1; **AU4.19 Dep.** P74:L4–6, P94:L22–23, P120:L18–P121:L19; POM Ex. RRR, Deposition of GMR Games, August 24, 2020 ("**GMR Dep.**") P41:L18–25, P43:L1–22 |
| 30.1 | Although two written location agreements were provided, Unis had many accounts already in Beaver County. | **AU3.19 Dep.** P53:L6–14, P54:L1–8, P108:L17–P109:L10; **AU3.20 Dep.** P102:5–P103:7, P101:L14–P103:L7, P51:L25–P52:L7, P125:L16–19, P17:11–18:9 |
| 30.2 | Albert Unis has been in business for 30 years. | **AU3.20 Dep.** P64:20 |
| 31.1 | The written location agreements identify PSG and the machines used in the locations had the PSG trademark. | POM Ex. W |
| 33.1 | The PSG stylized serif form of the trademark was displayed to users of game software product as an initial screen. | Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; |

| | | |
|---|---|---|
| | | **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 34.1 | Pennsylvania Skill Games had used a stylized serif form of the mark on its splash screens on its skill games used by other manufacturers since at least as early as 2010. | Ex. 7, POM Ex. OO-1, POM Ex. OO-2; Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P125:L9–P126:L5; **AU3.20 Dep.** P16:L10–24; **AU4.19 Dep.** P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 36.1 | The Equipment Purchase Agreement in the name of Pennsylvania Skill Games LLC reflects the assignment having been completed and impliedly acknowledged by Pace and Miele. | Ex. 7, Ex. 8.2; **AU3.20 Dep.** P17:L11–P18:L5 |
| 36.2 | Daniel Warren acted as "mentor" and "CFO" knowing of assignment having taken place. | Ex. 7, Ex. 8.2, POM Ex. Y, Ex. 30; **AU3.20 Dep.** P17:L23–P18:L5 |

| 36.3 | Albert Unis assisted with providing lodging and automobile support with Pace did not have capital in order to open the Pennsylvania market. | See ¶29; Ex. 7, Ex. 8.2, POM Ex. Y; Ex. 30; **AU3.20 Dep.** P17:L11–P18:L5 |
|------|------|------|
| 41.1 | Pace supplied the first draft of the Equipment Purchase Agreement from its internal samples. | Ex. 11.1–11.2 |
| 44.1 | Any price change in the Equipment Purchase Agreement requires good faith, be necessitated by and constrained by the increase in "material costs" and compliance with no other vendors receiving "prices lower than [PSG] pays." | Ex. 7, Ex. 8.2, POM Ex. Y; **AU3.19 Dep.** P160:L15, P148:L13–P149:L1; **AU3.20 Dep.** P94:L4–13, P95:L23–P97:L13, P39:L6–20, P42:L18–24, P43:L9–13, P44:L11–P45:L14, P91:5–11 P98:L10–25, P95:L23–P97:L6; AU4.19 P79:L8–L12 P82:L6–P86:L18, P84:L8, P208:L7–L18 |
| 44.2 | Vendors in Beaver County are paying lower rates that PSG. | Ex. 4.1–4.5, Ex. 40 |
| 44.3 | Cool Vending only had two machines and was paying less than PSG | Ex. 4.3, Ex. 40; POM Ex. PPP, Deposition of James McDanel, July 8, 2020, P13:L6–16 |
| 44.4 | Some of the same vendors receiving lower pricing specifically referenced by Albert Unis and known to be doing competitive business in Beaver County. | Ex. 21.1–21.5; **AU3.20 Dep.** P26:L9–P27:2 |
| 45.1 | PSG had a significant presence in the market with its brand and the Pace game was unproven. | **AU3.19 Dep.** P71:L8–11; **AU3.20 Dep.** P117:L2–P118:L18; **AU4.19 Dep.** P55:L2–8; **AU4.21 Dep.** P115:L15–P117:L25 |
| 47.1 | Orders from January 25, 2015, until April 23, 2018 include orders PSG placed with Pace-O-Matic, Inc, itself, which continued until November 14, 2020, and DNW Group, LLC (Daniel Warren). | Ex. 38; Ex. 40 |
| 47.2 | The POM Parties stopped selling hardware to PSG, thereby preventing PSG from additional orders. | Ex. 31, Ex. 38, Ex. 40 |
| 49.1 | The Equipment Purchase Agreement was intended to be exclusive in Beaver County, PA. | Ex. 7, Ex. 8.2, POM Ex. Y; AU3.19 Dep. P71:L8–11; AU4.19 P55:L2–8 |
| 50.1 | POM Parties do not ask operators (prior to "approval") what county (or location) they intend to place games or even make threshold determinations that vendors in the county are likely to place machines in Beaver County. | Ex. 2; Ex. 3; Ex. 21.1–21.5; POM Ex. CC, Deposition of Miele Manufacturing by Louis Miele dated October 5, |

| | | | |
|---|---|---|---|
| | | | 2020 ("**Meile.20 Dep.**": P211:L8–P212:L9 |
| 50.2 | Pace employs former Pennsylvania State Police Officers trolling locations and Miele and Pace control the venue areas and look for compliance problems. | **Goodling Dep.** 18:3–10, 34:2–7 |
| 50.3 | Miele is former owner of MCM Elements. | Deposition of MCM Elements, by Daniel Miser, October 23, 2020 ("**Miser Dep.**") P28:L7, |
| 50.4 | MCM Elements owns software that digitally tracks operator game locations. | **Miser Dep.** P38:L5, P40:L11 |
| 50.5 | MCM Elements was recently transferred to Pace-O-Matic. | Miser Dep. P14:L6–9 |
| 50.6 | Miele requests location agreements requested from operators. | Ex. 2; 33; Lazar Dep. P49:L11–P50:7; P49:L11–P50:L7 |
| 50.7 | "Compliance Officers" wear badges when entering venues. | **Goodling Dep.** P38:L11–17 |
| 50.8 | PSG sent cease and desist letters that provided actual knowledge and context to the POM Parties of the identity of specific offending vendors in Beaver County. | Ex. 7, Ex. 8.2, POM Ex. Y, Ex. 21.1–21.5 |
| 50.9 | Miele told ProATM "don't worry about it" when noticed by PSG as a violation of the exclusive for Beaver County. | Ex. 21.1–21.4; POM Ex. QQQ, Deposition of ProATM, ("**ProATM Dep.**") September 15, 2020, P45:L1–19 |
| 50.10 | Dan Warren and Michael Pace assured Albert Unis that they could manage the exclusivity provisions. | **AU3.19 Dep.** 145:15–146:15 |
| 56.1 | PSG has operated electronic games in the Commonwealth of Pennsylvania that bear its stylized and word version of its trademark on electronic gaming machines that operate using software other vendors prior to 2012, as well as on and after 2012. | Ex. 7, POM Ex. OO-1, POM Ex. OO-2; Ex. 11.1, Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P71:L8–11, P125:L9–P126:L5; **AU3.20 Dep.** P16:L10–24; **AU4.19 Dep.** P55:L2–8, P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16– |

| | | |
|---|---|---|
| | | 19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 57.1 | PSG has operated electronic games in the Commonwealth of Pennsylvania that bear its stylized and word version of its trademark on electronic gaming machines that operate using software other vendors, whether or not claimed to be competitors of Pace at this time, prior to 2012, as well as on and after 2012. | Ex. 7, POM Ex. OO-1, POM Ex. OO-2; Ex. 11.1, Ex. 13.1–13.2, Ex. 14.1–14.3; **AU3.19 Dep.** P35:L6–7, P44:L6–P45:L22, P46:L5–19, P49:L10–11; P71:L8–11, P125:L9–P126:L5; **AU3.20 Dep.** P16:L10–24; **AU4.19 Dep.** P55:L2–8, P206:L17–P207:L6; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 57.2 | Pace wanted performance targets and exclusivity from PSG representing other vendors in the Equipment Purchase Agreement, which was denied by PSG. | Ex. 7, Ex. 11.1; **AU3.19** P71:L8–11, P109:L25–P110:L8; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25 |
| 57.3 | PSG represented at that time and continues to manage multiple vendors under its branding. The Pace game was new and unproven in 2015. | Ex. 7; **AU3.19 Dep.** P15:L11–17, P72:L15–P74:L20 |

20

| 60.1 | PSG would not accept performance that might impact his current success in the marketplace with other vendors or new conditions. | Ex. 7, Ex. 11.1, Ex. 12.1–12.2; **AU3.19** P71:L8–11, P109:L25–P110:L8; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25 |
|---|---|---|
| 61.1 | 402.44 is now the current released version of the Pace software. | **AU4.19 Dep.** P9:L19 |
| 66.1 | The February 14, 2018, POM's general counsel, Greg Cline states "My client requests...that you comply with the terms of the Equipment Purchase Agreement...". | Ex. 21.3 |
| 66.2 | Louis Miele testified that the Equipment Purchase Agreement is effective, but he has not had any vendor contact him who volunteered the location. | **Meile.20 Dep.** P211:L8–P212:L9 |
| 66.3 | No prior "termination" or "default notice" is referenced in the Cline letter. | Ex. 21.3 |
| 66.4 | None of the POM Parties never once provided a accounts or leads pursuant to the Equipment Purchase Agreement. | AE4.19 Dep. P114:L23–P115:L1 |
| 66.5 | On April 17, 2018, Dan Warren indicate "the account is clean." | Ex. 10 |
| 67.1 | The Pace claim to $8,000 was disputed, but paid anyway as a practical matter. | Ex. 21.1–2.3; Ex. 10 |
| 68.1 | The application for registration serial No. 87856441 claimed a first use in commerce of claimed a date at least as early as 6/1/2010. | Ex. 13 |
| 70.1 | On May 30, 2018, Savvy Dog signed and filed two trademark applications with the United States Patent and Trademark Office, Serial No. 87941545 for the Word Mark PENNSYLVANIA SKILL, and Serial No. 87941440 for the combination mark (Stylized mark) with knowledge of PSG's claims and prior filings of record. | Ex. 19.1–19.3, POM Ex. PP |
| 71.1 | On November 28, 2018, Savvy Dog signed and filed state trademark applications with knowledge of PSG's claims and prior filings of record. | Ex. 19.1–19.3, POM Ex. GG, Ex. 28 |
| 71.2 | Savvy Dog, Inc. signed the applications as the alter ego of Pace-O-Matic, Inc. | POM Ex. GG |
| 74.1 | At the time, the stylized additions to the PSG trademark were solely to assist PSG with the PSG "marketing efforts." pursuant to and consistent with the Equipment Purchase Agreement, §6. | Ex. 7 Ex. 8.1, POM Ex. Y; **Ex. 14.1–14.3; AU3.19 Dep.** P35:L2–11;   P42:L4–L10; **AU3.20 Dep.** P124:L2–8; **AU4.19 Dep.** P188:L2–P189:1 |

| 76.1 | In the middle of 2015, the version of PSG's trademark that Ryan Wood, on behalf of Pace, provided PSG was as agreed minor modification to the existing fonted serif stylized design in accordance with the Equipment Purchase Agreement, §6 to support PSG's marketing efforts and not contrary to it. | Ex. 7 Ex. 8.1, POM Ex. Y; **Ex. 14.1–14.3; AU3.19 Dep.** P35:L2–11;    P42:L4–L10; **AU3.20 Dep.** P124:L2–8; **AU4.19 Dep.** P188:L2–P189:1 |
|---|---|---|
| 77.1 | PSG was targeting the local venues, targets and exclusivity were specifically rejected for inclusion in the Equipment Purchase Agreement. | Ex. 7, Ex. 11.1, Ex. 40, **AU3.19** P48:L3–7, P71:L8–11,    P109:L25–P110:L8; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25 |
| 77.2 | PSG has been marketing directly to locations as an operator since 2009, and in accordance with all requirements set forth in the Equipment Purchase Agreement. | Ex. 7, Ex. 8.2, POM Ex. Y, Ex. 11.1, Ex. 14.1–14.3, Ex. 40; **AU3.19 Dep.** P15:L11–17, P20:L9–16, P46:L5–19, P71:L8–11,    P72:L15–P74:L20,    P109:L1–10, P109:L25–P110:L8; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11,    P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2,    P19:L22–P20:L7, P22:L14–18,    P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25;    P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 78.1 | Unis and PSG have always operated for competing vendors and there is no agreed duty to the contrary: performance targets and exclusivity was specifically rejected for inclusion in the Equipment Purchase Agreement. | Ex. 7, Ex. 8.2, POM Ex. Y, Ex. 11.1; **AU3.19 Dep.** P15:L11–17,    P20:L9–16, P71:L8–11,    P72:L15–P74:L20,    P109:L1–10, P109:L25–P110:L8; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25; Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16– |

| | | |
|---|---|---|
| | | 19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
| 82.1 | Miele is a competitor of PSG. | Ex. 1 |
| 82.2 | The fill price charged to PSG's credit card by Miele and Pace is a greater price than being paid by at least one other operator. | Ex. 4.1–4.5, Ex. 7 |
| 82.3 | The fill price charged to PSG's credit card by Miele and Pace is greater than the amount required by the Equipment Purchase Agreement, §4. | Ex. 7 |
| 82.4 | When Miele has directly or indirectly acquired the location identities, he can "disapprove" the operator and take the business directly. | Ex. 2 |
| 82.5 | PSG is the only operator with a written contract that precedes the new documents sought by Miele and Pace in 2018, after the litigation. | Ex. 2, Ex. 7, Ex. 8.2, POM Ex. Y; **Lazar Dep.** P49:L11–P50:7; P49:L11–P50:L7 |
| 82.6 | The unnoticed price increase by Miele and Pace caused at least one account to eliminate PSG machines as a result. | AU4.21 Dep. P88:20–P91:L12; Ex. 36, Deposition of Devinder Kumar, January 27, 2021 ("**Kumar Dep.**") P16:L5–7, P17:L11–20, P19:L16–20, P21:L18–P22:L2, P22:L17–P24:L4 |
| 82.7 | The unnoticed price increase by Miele and Pace caused at least one account to find out better options with Banilla games. | **Kumar Dep.** P27:L2–8 |
| 82.8 | Miele and Pace violated the terms of Albert Unis, IV recurrent credit card authorization by automatically removing funds for an unnoticed price increase, which is not the amount of the authorized recurring charge. | Ex. 20; **AU4.21 Dep.** P72:L11–P76:20, P119:L5–P123:L6 |
| 82.9 | Dale Lazar fees only decreased as an operator. | POM Ex. II., Dale Lazar Deposition, July 7, 2020, "**Lazar Dep.**" P49:L4–8; P48:22–49:3 |

| 82.10 | Miele requested Lazar to sign "horrendous" Ex. 2 during a promotion to get operators to sign it, approximately 20 months prior to July 9, 2020, or December 9, 2018. | Ex. 2, 33; **Lazar Dep.** P49:L11–P50:7; P49:L11–P50:L7 |
|---|---|---|
| 82.11 | In bad faith and retaliation for PSG not signing the Ex. 2 agreement on the unilateral terms prepared by Miele and Pace, Miele and Pace charged unauthorized, new and nonrecurring, unnoticed increases in fill prices at amounts greater than other vendors. | Daniel Warren Designee Deposition, October 8, 2020 P99:L12–P115:6; **AU4.21 Dep.** P72:L11–19, P74:L3–P77:L20 |
| 84.1 | Marvin Harris was one of many PSG workers to physically go to locations to market the placement of Pace machines. | Ex. 33; AU3.20 P38:L8–15, P118:L22–P119:L11 |
| 85.1 | The Equipment Purchase Agreement specifically did not include minimum performance requirements. | Ex. 7, Ex. 8.1, POM Ex. Y, Ex. 11.1; Ex. 33; **AU3.19** P71:L8–11, P109:L25–P110:L8; **AU3.20 Dep.** P38:L8–15, P118:L22–P119:L11; **AU4.19 Dep.** P55:L2–8, P116:L25–P117:L25 |
| 85.2 | Miele financed PSG competitors against PSG in Beaver County and while using the PSG trademark. | Ex. 4.5, Ex. 7, Ex. 8.2, POM Ex. Y |
| 88.1 | Miele uses the term "we" and Albert Unis testified to the significant assistance in the Beaver County case litigation. | Ex. 24.5; **AU4.19 Dep.** P101:L21–23, P200:L14–23, P202:L23–203:14 |
| 89.1 | The POM Parties are infringers because the conditional permissive right or license granted to them has failed and they are creating "reverse confusion" by advertising their business using PSG's mark to achieve market penetration and awareness. | Ex. 7, POM Ex. HHH, POM Ex. KKK; **AU3.19 Dep.** P125:L9–P126:L5, P160:L12–P161:L8; **AU3.20 Dep.** P33:L10, P39:L1–9, P42:L1–P43:13, P44:L11–P45:L14, P83:L20–24, P89:L5–19, P91:L5–20 |
| 90.1 | Robert McDanel, Michael Mangiere, James McDanel, Richard BigRig and Brent Mayes are all competitors of (or corporate designees) of PSG and beneficiaries of the breach claimed of Pace and Miele. | Ex. 4.1–4.5; POM Ex. GGG, POM Ex. OOO, POM Ex. PPP, POM Ex. PPP, POM Ex. RRR, POM Ex. QQQ |
| 90.2 | Robert McDanel, Michael Mangiere, James McDanel, Richard BigRig and Brent Mayes are all beneficiaries of the breach claimed of Pace and Miele. | Ex. 4.1–4.5; POM Ex. GGG, POM Ex. OOO, POM Ex. PPP, POM Ex. PPP, POM Ex. RRR, POM Ex. QQQ |
| 90.3 | Robert McDanel, Michael Mangiere, James McDanel, Richard BigRig and Brent Mayes are all are contracting operators rather than venues. | Ex. 4.1–4.5; POM Ex. GGG, POM Ex. OOO, POM Ex. PPP, POM Ex. PPP, POM Ex. RRR, POM Ex. QQQ |

24

| 90.4 | Venue establishment non-competitor owners Kendrew, Martin and Dutch, contradictorily testified that the PSG's mark was associated with PSG as the senior user. | Ex. 14.2, Affidavit of Brian Dutcher, February 12, 2020; Ex. 14.1, Affidavit of Pamela Kendrew, February 10, 2020; Ex. 14.3, Affidavit of Curtis Martin, February 12, 2020; **Dutcher Dep.** P8:L1–13, P8:L6, P9:L16–19, P16:L7–9, P21:L19–23, P32:L9–15; **Kendrew Dep.** P12:L6–11, P15:L1–14, P15:L23–P16:L1, P16:L23–P17:L2, P19:L22–P20:L7, P22:L14–18, P32:L2–22, P33:L8–18; **Martin Dep.** P17:L9–P19:25; P21:L17–21, P25:L7–L20, P26:L1–23, P26:L19 |
|---|---|---|
| 90.5 | Albert Unis released the names of competitive confidential information to Pace for the purpose of their relationship, Pace using the information with such persons. | Ex. 21.1–21.5; AU3.20 P26:L9–P27:6 |
| 93.1 | Pace games were confiscated from other locations with or without commingling. | Ex. 27 |
| 94.1 | The POM Parties ship directly to locations using intermediaries. | Ex. 1; **Warren Dep.1** P81:17–P83:L10; **Goodling Dep.** P84:L8–P85:L5; **AU3.20 Dep.** P42:L18–P43:L13 |

May 19, 2021

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing document was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

 May 19, 2021

Julian E. Neiser, Esq.
jneiser@spilmanlaw.com
James C. Walls , III
jwalls3@spilmanlaw.com
SPILMAN THOMAS & BATTLE, PLLC

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com