**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

                Plaintiffs/Counterclaim
                Defendants,

                v.

PENNSYLVANIA SKILL GAMES, LLC,

                Defendant/Counterclaim
                Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

The Honorable Patricia L. Dodge

-----------------------------------------------------------------------------------------------------------------------

PENNSYLVANIA SKILL GAMES, LLC

                Plaintiff,

                v.

PACE-O-MATIC, INC. and MIELE
MANUFACTURING, INC.,

                Defendants.

**POM PARTIES' REPLY TO PENNSYLVANIA SKILL GAMES' SUPPLEMENT TO
RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS**

Pursuant to LCvR 56.D and the Court's May 5, 2021 Order [ECF No. 146], POM of

Pennsylvania, LLC, ("POM"), Savvy Dog Systems, LLC ("Savvy Dog"), Pace-O-Matic, Inc.

("Pace") and Miele Manufacturing, Inc. ("Miele") (together, the "POM Parties"), submit this Reply

to the Supplemental Responsive Statement of Material Facts filed by Pennsylvania Skill Games,

LLC ("PSG") [ECF No. 147]. All exhibit references ("POM Ex.__") refer to the Appendix filed

in support of the POM Parties' original Concise Statement of Material Facts; whereas, ("PSG Ex.

__") refers to the exhibits within PSG's appendix supporting its Responsive Statement of Facts.

Now, in reply to the supplemental responsive statement of material facts, the POM Parties state:

{14017604.7}

| 1.1 | The POM Parties admit that Michael Pace testified: | POM Ex. L, Michael Pace April 24, 2019 Dep. ("Pace Dep.") 23:18–22. |
|---|---|---|
| | "And then I found out over the years how to design and develop the skill-dominant doctrine-type game, which evidently I'm the only one that's ever done it, which is something that we [Pace] specialize in today." | |
| | But, the POM Parties deny that this fact is material for the disposition of their pending Motion for Summary Judgment. | |
| 1.2 | The POM Parties deny that Pace was only doing business in Pennsylvania through Albert Unis, III ("AU3") beginning in 2012. | POM Ex. L, Pace Dep. 23:9–22. |
| | | POM Ex. L, Pace Dep. 24:25–25:25; 29:2–18. |
| | Responding further, Pace initially considered moving into the Pennsylvania market in 2007 when Mr. Pace met with the Pennsylvania attorney, Andrew Giorgione. Pace then focused on a project in Buffalo, New York from 2007 until 2010. In 2010, Pace returned its focus to the Pennsylvania market and began developing a high-resolution game, which it completed in 2012. Pace then sold 10 of these high-resolution Pennsylvania Skill games in 2013. | POM Ex. G, POM000053–58; |
| | | POM Ex. AAA, POM000019; |
| | | POM Ex. L, Pace Dep. 32:11–16; |
| | | POM Ex. X, Ryan Wood April 24, 2019 Dep. 9:12–22, 13:9–12, 32:11–16, 66:13–67:9, 93:20–95:17 and |
| | The POM Parties deny any conversation between them and AU3 prior to 2015, and no evidence of record supports another conclusion. The POM Parties deny that Albert Unis, III had any influence on any business decision. | POM Ex. HH, Daniel Warren July 7, 2019 Deposition ("Warren 2019 Dep."), 33:4–10. |
| 1.3 | The POM Parties deny that the seizure of Pace's Pennsylvania Skill games is material to the disposition of their pending Motion for Summary Judgment. This assertion also is argument and a conclusion of law. | POM Ex. YY, Report of Nick Farley & Associates regarding "Review and Examination of the *Cutting EDGE Pennsylvania Skill System version **SKL 402.52 PEN*** developed by POM of Pennsylvania, LLC. |
| | Responding further, the POM Parties deny any implication that Pace's Pennsylvania Skill game is an illegal gambling device and denies that the seizure of such games demonstrates that such games are illegal gambling devices. Further, the testimony cited by AU4 is unrelated to any alleged seizure of Pace machines owned by PSG. As such, it is irrelevant. Finally, the question of a "compliant" skill game is a matter of law and expert opinion. PSG has no expert opinion on the subject and the legality of the POM | POM Ex. ZZ. |

2

{14017604.7}

| | | |
|---|---|---|
| | Parties' games has already been adjudicated in their favor. | |
| 1.4 | This "fact" is unintelligible due to missing words. The POM Parties deny that the version/build at issue in *In re Pace-O-Matic Equipment, Terminal IS No. 142613*, No. MD-965-2013 (the "Beaver County Case"), was not the version being released in the market place. Responding further, Pace sold software version "SKL402.44PEN" to PA Games as evidenced by the invoice dated September 2, 2013. This assertion by PSG also is unintelligible as to "was not version being released in the marketplace." Questions related to the similarity of various game builds are subjects of expert testimony, of which PSG has none, so this assertion is both immaterial and irrelevant. | POM Ex. G. |
| 1.5 | The POM Parties deny that the only skill-based component of the current game is a "follow me" feature that is optional. Responding further, whether certain aspects of Pace's Pennsylvania Skill game is "skill-based," is argumentative and improper to assert as a material fact. Nevertheless, Pace's Pennsylvania Skill game is predominantly a skill-based and compliant with the laws and regulations of the Commonwealth of Pennsylvania. Further, PSG misquoted Mr. O'Bier's testimony. He did not testify that the "follow-me" feature is optional. It is part of the game play. | POM Ex. YY; POM Ex. ZZ; and POM Ex. GGG, Christopher O'Bier October 9, 2020 Deposition, 60:4–19. |
| 1.6 | Admitted in part and denied in part. Pace's Pennsylvania Skill game contains 12 game themes, which include two types of games based on a 3x3 tic-tac-toe arrangement (Rapid branded and not branded Rapid), and two different types of bonus methods. | POM Ex. YY (ECF No. 44–1, at 3–4, and 6–8). |
| 1.7 | Admitted, but the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. | |
| 1.8 | The POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. To the extent that a response is required, the POM Parties admit that the Pennsylvania Skill game contains a preview feature that allows the player to | POM Ex. GGG, O'Bier Dep. 60:4–19. |

3

| | | |
|---|---|---|
| | preview the next game for a period of seconds before money is placed into the game, and that the player can use this preview feature an unlimited number of times. | |
| 1.9 | The POM Parties admit only that Ryan Wood's February 2, 2015 email refers to AU3 as the customer that is putting "all the games out in Beaver County." This statement is immaterial and colloquial as part of an introduction (for the first time) of a potential customer to Pace staff. Responding further, the POM Parties deny that AU3—or PSG—had purchased a significant number of Pennsylvania Skill terminals. As of February 2, 2015, AU3 purchased six (6) terminals. But, just prior to Mr. Wood's email, on AU3 executed a document dated January 29, 2015, on behalf on an entity identified as Albert Unis and Associates ("AUA"), which obligated AUA to purchase "25 terminals with their first order and a minimum of 10 terminals per month three months after delivery of the first order." It is denied that this snippet from a single email creates a material fact. | PSG Ex. 34; POM Ex. EEE, at POM000830; and POM Ex. Y, AUA Document. |
| 1.10 | The POM Parties admit only that Ryan Wood's February 2, 2015 email refers to AU3 as the customer in Beaver County who is putting out "all the machines" as a colloquial introduction (for the first time) of Unis and Pace. It is denied that this snippet from a single email creates a material fact. | |
| 2.1 | The POM Parties deny that the seizure of Pace's Pennsylvania Skill games is material to the disposition of their pending Motion for Summary Judgment.<br><br>Responding further, the POM Parties deny any implication that Pace's Pennsylvania Skill game is an illegal gambling device and denies that the seizure of such games demonstrates that such games are illegal gambling devices. Further, the testimony cited by AU4 is unrelated to any alleged seizure of Pace machines owned by PSG, nor has there been any adjudication that Pace machines are illegal. As such, this is irrelevant and immaterial. | POM Ex. YY and ZZ |
| 3.1 | The POM Parties deny that Pace moved away from the Pennsylvania project until 2012 when Pace was contacted by AU3. Responding further, Pace returned its focus to the Pennsylvania market and began | POM Ex. L, Pace Dep. 29:2–18. |

4

| | | |
|---|---|---|
| | developing a high-resolution game in 2010, after Pace completed the development of a game for New York. In 2010, Pace began developing a high-resolution game terminal for the Pennsylvania market, which it completed in 2012. Pace then sold 10 of these high-resolution games in 2013. | POM Ex. G, POM000053–58; POM Ex. AAA, POM000019; |
| | The POM Parties deny any conversation between them and AU3 prior to 2015. | POM Ex. L, Pace Dep. 32:11–16; POM Ex. X, Ryan Wood April 24, 2019 Dep. 9:12–22, 11:10–12:13, 13:9–12, 66:13–67:9, 93:20–95:17; and POM Ex. HH, Warren 2019 Dep. 33:4–10. |
| 3.2 | To the extent that the POM Parties can discern what "product" means, this is denied. PSG Ex. 29 clearly states that Pace is working on lots of products in lots of markets. Further, even if true, it is not a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 3.3 | The POM Parties deny that Pace had no name as of August 10, 2012. Minutes from Pace's internal marking meeting on August 10, 2012, state that it "[n]eed[ed] a *new* name for this product[.]" PSG Ex. 29, at POM 000718 (emphasis added). Responding further, Pace first used the name "Pennsylvania Skill game" in 2007, and intended to develop a different name, but could not find a product name that it liked better. | PSG Ex. 29, POM 000718; and POM Ex. L, Pace Dep. 26:8–17. |
| 4.1 | Denied. The POM Parties support this denial with the fact that Pace first used the name "Pennsylvania Skill game" in 2007, and intended to develop a different name, but could not find a product name that it liked better. By December 19, 2012, if not earlier, Pace decided to move forward with the product name "Pennsylvania Skill." The POM Parties expressly deny that any conversation with AU3 occurred until 2015. | POM Ex. L, Pace Dep. 26:8–17; POM Ex. F, at POM 000451; POM Ex. L, Pace Dep. 32:11–16; POM Ex. X, Wood Dep. 9:12–22, 11:10–12:13, 13:9–12, 66:13–67:9, 93:20–95:17; and POM Ex. HH, Warren 2019 Dep. 33:4–10. |
| 4.2 | The POM Parties deny that the "first run" of Pace's Pennsylvania Skill game had not been made as of | POM Ex. G. |

{14017604.7}

| | | |
|---|---|---|
| | January 13, 2015. Rather, Pace sold its first 10 Pennsylvania Skill game terminals on or before September 2, 2013.<br><br>Further, the POM Parties deny that this fact is a material fact necessary for the Court's consideration of The POM Parties' pending Motion for Summary Judgment. | |
| 4.3 | The POM Parties admit that Ryan Wood's January 13, 2015 confirmed, "I will keep my word on you part of the first run." Responding further, the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. | PSG Ex. 6. |
| 4.4 | Admitted, but the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. | PSG Ex. 8.1–8.2. |
| 4.5 | Admitted, but the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. | PSG Ex. 8.1–8.2. |
| 6.1 | The POM Parties deny that PSG only permitted use of its trademark if Pace maintained the terms and conditions of their agreement.<br><br>This denial is supported by AU3's testimony that he did not use a trademark, and that the words and graphics he placed on various games were not intended to be a trademark. Also, AU4 testified that the Stylized Mark was first used on Pace's Pennsylvania Skill game terminal where he saw the Stylized Mark for the first time.<br><br>This denial is also supported by the fact that the words which PSG relies on "Pennsylvania Skill Games" are distinguishable from the Word Mark ("Pennsylvania Skill") at issue, and the graphics relied on by PSG are distinguishable from the Stylized Mark at issue in this litigation.<br><br>Furthermore, PSG cannot have used either a word mark or a stylized mark at any point prior to May 1, 2015, because PSG did not exist until that date. And, Pace developed the Stylized Mark in January 2015, months before PSG was formed. | POM Ex. Y;<br><br>POM Ex. BB, May 20, 2015 Equipment Purchase Agreement;<br><br>POM Ex. R, Albert Unis, III, April 17, 2019 Deposition ("AU3 2019 Dep."), 48:23–49:3, 127:8–18, 130:24–131:12;<br><br>POM Ex. S, Albert Unis, IV April 18, 2019 Deposition ("AU4 2019 Dep.") 29:5–17, 176:10–23, 182:12–183:3;<br><br>*Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"),*with* POM Ex. PP-1, and POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); |

6

| | | | |
|---|---|---|---|
| | | | POM Ex. R, AU3 2019 Dep. 53:8–14; and |
| | | | POM Ex. I, at POM002329–45. |
| 6.2 | The POM Parties deny that PSG, Albert Unis, IV ("AU4"), AU3, or any entity associated with AU3 entered into any agreement with any of the POM Parties in 2012. This denial is supported by the testimony of Mr. Pace, Mr. Warren, and Mr. Wood who uniformly testified that no Pace representative spoke with AU3 or AU4 prior to 2015. | | POM Ex. L, Pace Dep. 32:11–16; |
| | | | POM Ex. X, Wood Dep. 9:12–22, 11:10–12:13, 13:9–12, 66:13–67:9, 93:20–95:17; and |
| | | | POM Ex. HH, Warren 2019 Dep. 33:4–10. |
| | Additionally, AU3 testified that his first communication with a Pace representative was with Ryan Wood sometime in 2012 or 2013, and took place in in attorney Wayne DeLuca's office in Mr. DeLuca's presence. Mr. Wood wan not hired by Pace until February 1, 2013. Thus, the oral agreement alleged by PSG is not even a possibility. | | POM Ex. R, AU3 2019 Dep. 61:11–21; and |
| | Furthermore, Mr. DeLuca who had represented AU3 in a prior case and who was representing Pace in 2013, testified that he was unaware of any contract between the POM Parties and AU3, AU4, or PSG, other than the Equipment Purchase Agreement dated May 20, 2015 ("EPA"). | | POM Ex. T, Wayne DeLuca July 10, 2020 Dep. 100:25–101:10. |
| 6.3 | Denied. The POM Parties admit only that AU3 and his one-time attorney, Wayne DeLuca, communicated prior to the 2013 "controlled pickup" of a single Pennsylvania Skill game, which was the subject of the Beaver County Decision. The POM Parties deny that AU3 initiated these communications or that any communication related to any issue other than collection of this game by AU3 occurred between any POM Party and AU3 or AU4. Rather, Mr. DeLuca confirmed that he contacted AU3 first. | | POM Ex. T, DeLuca Dep. 49:4–7; and |
| | | | POM Ex. J. |
| | The POM Parties also deny that the Court of Common Pleas of Beaver County, Pennsylvania reached a decision in the Beaver County Case on December 23, 2013; rather, the decision was reached on December 23, 2014. | | |
| 6.4 | The POM Parties admit only that Pace and Miele on one hand, and an entity identified as Albert Unis and Affiliates, on the other hand, entered into an | | POM Ex. Y; and |

{14017604.7}

| | | |
|---|---|---|
| | agreement dated January 19, 2015 ("AUA Document"). Responding further, the POM Parties deny that the AUA Document represented the documentation of any prior agreement. | POM Ex. X, Wood Dep. 7:25–13:12. |
| 6.5 | The POM Parties admit that Daniel Warren provided AU3 with a draft of the AUA Document on January 29, 2015. It is expressly denied that any of the POM parties created a draft of the Equipment Purchase Agreement. | PSG Ex. 8.1, at PSG - 713; and <br><br> PSG Ex. 11.1–11.2; <br><br> POM Ex. T, DeLuca Dep. 56:9–58:5. |
| 6.6 | The POM Parties admit that the file containing the initial AUA Document was saved as "PA Distributor Agreement.doc." Responding further, the POM Parties deny that the file name demonstrates that the AUA Document was intended by the parties to serve as a distributor. AU3 and AU4 confirmed that they were operators and intended to be operators of Pennsylvania Skill games—they were not distributors. And, PSG's Counterclaim asserts that PSG was an operator of electronic video game machines. Neither PSG's Counterclaim, nor PSG's Complaint against the POM Parties alleges that PSG would serve as a distributor of Pace's Pennsylvania Skill game. <br><br> Furthermore, the POM Parties deny that the file name of the document sent by Mr. Warren is a material fact necessary for the Court's consideration of the OMP Parties' pending Motion for Summary Judgment. | PSG Ex. 8.1–8.2; and <br><br> POM Ex. R, AU3 2019 Dep. 27:8–19; and <br> POM Ex. S, AU4 2019 Dep. 45:18–46:3, 184:4–10, and 213:10–23; <br> POM Ex. B, (PSG Counterclaim, ¶ 8); and <br> POM Ex. C–1, (PSG's Complaint, ¶ 8) |
| 6.7 | The POM Parties deny that the file name of the AUA Document demonstrates that the parties intended for AUA to be a distributor—let alone a master distributor. Responding further, AU3 was an operator, not a distributor. | PSG Ex. 8.1–8.2; and <br> POM Ex. R, AU3 2019 Dep. 27:8–19; and <br> POM Ex. S, AU4 2019 Dep. 45:18–46:3, 184:4–10, and 213:10–23. |
| 6.8 | Denied. Miele is not a signatory to this document. Further, this fact is not a material fact necessary for the Court's consideration of the POM Parties' pending Motino for Summary Judgment. | |
| 6.9 | The POM Parties admit only that Pace and Miele on one hand, and PSG on the other hand, entered into an | POM Ex. S, AU4 2019 Dep. 33:7–15. |

8

| | | |
|---|---|---|
| | Equipment Purchase Agreement dated May 20, 2015 ("EPA"). The POM Parties deny that the EPA was executed in the furtherance of a pre-existing relationship as PSG did not exist prior to May 1, 2015. | |
| 6.10 | The POM Parties deny drafting the terms of the EPA. This denial is supported by PSG Ex. 11.2, which demonstrates that PSG's attorney, Bill Rodgers, faxed an initial draft of the EPA on March 12, 2015, to Mr. DeLuca. On April 2, 2015, Mr. Warren then indicated to Mr. DeLuca, Mr. Wood, and Mr. Pace that he would insert the terms prepared by Mr. Rodgers in one of Pace's shells. PSG Ex. 11.1. Furthermore, Mr. DeLuca confirmed that Mr. Rodgers drafted the EPA. | PSG Ex. 11.1–11.2; and POM Ex. T, DeLuca Dep. 56:9–58:5. |
| 6.11 | The POM Parties admit that Mr. Warren indicated that he would provide a "shell" for the EPA, but the POM Parties deny that they initially drafted the terms of the EPA. In fact, PSG Ex. 11.2 demonstrates that PSG's attorney, Bill Rodgers, faxed an initial draft of the EPA to Mr. DeLuca on March 12, 2015. Mr. Warren then indicated he would insert the terms prepared by Mr. Rodgers in one of Pace's shells. But, it would appear as if Mr. Warren did not in fact provide a shell as the final EPA is not printed on Pace letter head as the AUA Document had been.<br><br>Furthermore, Mr. DeLuca confirmed that Mr. Rodgers drafted the EPA. | PSG Ex. 11.1–11.2; and POM Ex. T, DeLuca Dep. 56:9–58:5. |
| 6.12 | The POM Parties deny that development of the Pennsylvania market other than with AU3, AU4, and PSG (or any unincorporated entity associated with AU3 that informally did business as Pennsylvania Skill Games) violated the EPA. The EPA contains no such term. And, according to AU3, the alleged agreements covered only Beaver County, Pennsylvania. The EPA mentions nothing to the contrary. | POM Ex. BB, EPA; and POM Ex. Z, AU3 2020 Dep. 54:6–15 and 64:15–65:3. |
| 6.13 | Denied. The POM Parties cannot discern what the "process" means or a "continuum" or what PSG claims is a "Relationship Oral Agreement." The POM Parties deny that the EPA was a continuation of the "Relationship Oral Agreement" or any acknowledgment that AU4 had taken over any agreement between AU3 and the POM Parties. The | POM Ex. BB and POM Ex. Y. |

9

| | | |
|---|---|---|
| | terms of the EPA reflect no such continuation and whether the EPA modified the terms of a prior agreement is a legal conclusion, which is improper under Local Rule 56 and contrary to the Court's May 5, 2021 Order [ECF No. 145]. Furthermore, the terms of the EPA are distinguishable from the AUA Document. | |
| 7.1 | The POM Parties admit that Pace sold several games in interstate commerce beginning in September 2013. | *But see* POM Ex. J, Beaver County Order. |
| 8.1 | The POM Parties deny that PSG was the master distributor in Beaver County with an exclusive right to place games in Beaver County. The POM Parties' denial of this alleged fact is based on the fact that no document supports this interpretation, but rather, all evidence demonstrates that PSG intended to place games as an operator. AU3, AU4, and PSG are operators—not distributors. And, PSG's Counterclaim asserts that PSG was an operator of electronic video game machines. Neither PSG's Counterclaim, nor PSG's Complaint against the POM Parties alleges that PSG would serve as a distributor of Pace's Pennsylvania Skill game. | POM Ex. BB, EPA; POM Ex. R, AU3 2019 Dep. 27:8–19 and213:10–23; POM Ex. S, AU4 2019 Dep. 45:18–46:3, 184:4–10, and 213:10–23; POM Ex. B, (PSG Counterclaim, ¶ 8); and POM Ex. C–1, (PSG's Complaint, ¶ 8) |
| 8.2 | The POM Parties deny that PSG was the master distributor in Beaver County or that any of the POM Parties agreed to any such arrangement. This denial is supported by the fact that PSG was not a party to the AUA Document and the AUA Document does not contain the word "exclusive." Whether the AUA Document modified the terms of some pre-existing oral agreement is a legal conclusion that is improper under Local Rule 56 and contrary to the Court's May 5, 2021 Order [ECF No. 145]. Additionally, AU3, AU4, and PSG are operators—not distributors. PSG's Counterclaim asserts that PSG was an operator of electronic video game machines. Neither PSG's Counterclaim, nor PSG's Complaint against the POM Parties alleges that PSG would serve as a distributor of Pace's Pennsylvania Skill game. | POM Ex. Y; POM Ex. S, AU4 2019 Dep. 111:6–12 and 126:22–24; POM Ex. Z, AU3 2020 Dep. 87:11–88:24; POM Ex. R, AU3 2019 Dep. 27:8–19 and 213:10–23; POM Ex. S, AU4 2019 Dep. 45:18–46:3, 184:4–10, and 213:10–23; POM Ex. B, (PSG Counterclaim, ¶ 8); and POM Ex. C–1, (PSG's Complaint, ¶ 8) |
| 8.3 | The POM Parties deny that Pace's alleged intention to do business with one vendor in Beaver County is a material fact for the disposition of the POM Parties' pending Motion for Summary Judgment. This | |

{14017604.7}

| | | |
|---|---|---|
| | assertion relates only to a stated preference, not an obligation. | |
| 8.4 | The POM Parties deny the existence of any agreement that granted AU3, AU4, and/or PSG an "exclusive" right. Reference is made to the agreements for an accurate recitation of their contents. | POM Ex. Y and BB. |
| 8.5 | Denied. The POM Parties deny that they can "turn off fills" of any machine that still holds fills. Robert McDanel, an operator of Pennsylvania Skill games, explained that a fill is a license that allows the game to be played. Each license (or fill) generates $10,000 of gross revenue for the operator. These fills authorize a finite number of game plays. Once the machines net earnings hit $10,000 (players' fee to play less payouts to winners), the license expires. At which point, the operator must obtain a new fill before players can continue to plat on that Pennsylvania Skill game terminal. | POM Ex. GGG, Robert McDanel Aug. 24, 2020 Deposition, 48:4–19 and 50:16–51:18. |
| 8.6 | The POM Parties deny that Pace stopped providing licenses for game plays ("fills") for Pennsylvania Skill games placed in a location known as Jack Pot Fever upon notice from PSG. The POM Parties deny that they can stop fills once loaded onto a machine. Furthermore, PSG failed to identify any evidence supporting its assertion that the POM Parties stopped fills for Jack Pot Fever. In fact, Jack Pot Fever is not discussed in any of the POM Party witness depositions. | |
| 8.7 | The POM Parties deny that Pace refused to comply with any agreement with PSG when it refused to stop providing fills for Pennsylvania Skill games placed in a location known as Talerico's in Beaver County, Pennsylvania. Whether Pace or any of the POM Parties had a duty to take any action in response to the notice sent by PSG implicates a legal conclusion and is therefore not a material fact under Local Rule 56. | |
| 8.9 | The POM Parties admit that Pace restructured its organization in 2017, but denies that this fact is material to the disposition of the POM Parties' pending Motion for Summary Judgment. Further, this | |

11

| | | |
|---|---|---|
| | issue was the subject of a prior Order by this Court and is not material. | |
| 8.10 | The POM Parties admit that Pace made a sale to PSG, which is represented by an invoice dated November 1, 2019. The POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. | PSG Ex. 18. |
| 8.11 | Admitted. | PSG Ex. 30 |
| 8.12 | Whether L&M Amusements is an operator of Pace games is not a material fact to the disposition of the POM Parties' pending Motion for Summary Judgment because L&M Amusements is not a party to either of the consolidated actions or any of the alleged agreements at issue in these consolidated cases. | |
| 8.13 | Denied. Miele Amusements is not a party to this consolidated action, and thus, Miele Amusements' claims that it is a distributor of Pace Pennsylvania Skill games is not material to the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 8.14 | Denied. Miele Manufacturing, Inc., a party to this consolidated action, is registered to do business in Pennsylvania and has been since February 13, 2015. | Presumably PSG Ex. 22.7, but filed at ECF No. 135-41, at 7–8, and 14. |
| 9.1 | It is unclear what PSG means by stating "has words." The POM Parties object to the alleged fact that the EPA "has words permitting [PSG] to assign its rights." The Court's May 5, 2021 Order limited PSG's supplement to facts stated in PSG's Responsive Statement of Material Facts [ECF No. 135-1]. This fact was not included in PSG's Responsive Statement of Facts. As such, this alleged fact is not properly before the Court.<br><br>Responding further, the POM Parties admit only that the EPA states in paragraph 7, "Buyer may assign its rights and obligations under this Agreement *with the written-consent of Seller* which shall not be unreasonably withheld."<br><br>Finally, the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment as there has been no allegation | POM Ex. BB, EPA, at ¶ 7 (emphasis added). |

| | | |
|---|---|---|
| | that PSG requested or assigned any interest. This also calls for a legal conclusion. | |
| 9.2 | It is unclear what PSG means by "does not have words." The POM Parties admit that the EPA does not expressly grant the Pace or Miele the right to assign any rights or obligations purportedly created by the EPA. Whether such a right was implied within the EPA constitutes a legal conclusion, which the POM Parties therefore deny.<br><br>Responding further, the POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment. This also calls for a legal conclusion. | POM Ex. BB. |
| 9.3 | The POM Parties expressly deny that Pace merely provided the background art in the furtherance of Section 7.6 (presumably in reference to Paragraph 6) of the EPA. Pace created, designed, and originated the idea and text of the PENNSYLVANIA SKILL Word Mark, and designed the Stylized Mark. Finally, AU3 confirmed that he had "no involvement "with [Pace] in developing the Stylized Mark. | POM Ex. HH, Warren 2019 Dep. 45:13–46:11;<br><br>POM Ex. Z, AU3 2020 Dep. 111:11–112:12;<br><br>POM Ex. S, AU4 2019 Dep. 122:4–123:23;<br><br>POM Ex. M, Miele 2019 Dep. 52:20–53:6;<br><br>POM Ex. S, AU4 2019 Dep. 182:12–183:3;<br><br>POM Ex. I; and |
| 9.4 | The POM Parties admit only that the EPA did not obligate PSG to assist the POM Parties with marketing, except to the extent that PSG marketed itself as an operator of Pace Pennsylvania Skill games. This also is a conclusion of law.<br><br>Responding further, the POM Parties deny that PSG used the Word Mark and/or Stylized Mark at issue in this litigation prior to Pace's development of these Marks, as the graphic and words used by AU3 in 2010 are distinguishable from the Marks at issue. Furthermore, in reference to the graphics and words used placed on to his machines, AU3 testified that "it wasn't a trademark, it was a word that we used and it was representing our company and it was just a word." Finally, the Stylized Mark was developed solely by Pace in January of 2015, which is prior to PSG's | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17,<br><br> *with* POM Ex. PP-1 (Word Mark) *and* POM Ex. PP-2, at 9–22 (Stylized Mark);<br><br>POM Ex. R, AU3 2019 Dep. 48:23–49:3, 53:8–14, 131:4–9; and<br><br>POM Ex. E;<br><br>POM Ex. F;<br><br>POM Ex. G; and<br><br>POM Ex. I. |

13

| | | |
|---|---|---|
| | formation and prior to the time the parties discussed the EPA. | |
| 9.5 | The POM Parties admit that Paragraph 6 of the EPA states, "Seller will support Buyer with previously agreed marking efforts." PSG is misquoting the EPA in this statement of fact. | POM Ex. BB, at ¶ 6. |
| 9.6 | The POM Parties do not dispute that AU3 referred to an unincorporated entity that he managed as Pennsylvania Skill Games. | POM Ex. R, AU3 2019 Dep. 37:17–21. 38:16–42:2, and 53:8–14; and |
| | The POM Parties deny that PSG has been using "Pennsylvania Skill Games" to designate its business since 2010 because PSG was not formed until May 1, 2015. | POM Ex. S, AU4 2019 Dep. 33:7–15. |
| 9.7 | Admitted, but not material to the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 10.1 | The POM Parties object to the alleged material fact that "AU3 use of 'PENNSYLVANIA SKILL GAMES' was intended to be a designation that distinguished the company from other [sic] venders." The Court's May 5, 2021 Order limited PSG's supplemental responsive statement of facts to facts stated in PSG's Responsive Statement of Material Facts [ECF No. 135-1]. This fact was not included in PSG's Responsive Statement of Facts. As such, this alleged fact is not properly before the Court. | |
| | To the extent a response is required, the POM Parties admit only that AU3 referred an unincorporated entity as Pennsylvania Skill Games. | |
| | The POM Parties deny that this fact is material to the disposition of their pending Motion for Summary Judgment because AU3 does not hold, and has not held, an interest in PSG. It remains unclear which unincorporated entity AU3 referred to as Pennsylvania Skill Games and whether AU3 had any ownership interest in such entity. | *Compare* POM Ex. R, AU3 2019 Dep. 38:16–42:2 and 61:7–10, *with* POM Ex. R, AU3 2019 Dep. 54:23–56:6; <br><br> *See also* POM Ex. R., AU3 2019 Dep. 17:11–18:17. |
| | Furthermore, the evidence cited by PSG does not support the proposition that AU3's use of the words "Pennsylvania Skill Games" was intended to be a designation that distinguished the company from other vendors. | |

14

| 10.2 | The POM Parties object to the alleged material fact that "'PENNSYLVANIA SKILL GAMES' was intended to be a designation that distinguished AU3 and PSG from other[sic] venders, since at least 2010." The Court's May 5, 2021 Order limited PSG's supplemental responsive statement of facts to facts stated in PSG's Responsive Statement of Material Facts [ECF No. 135-1]. This fact was not included in PSG's Responsive Statement of Facts. As such, this alleged fact should be stricken or otherwise not considered by the Court in deciding the POM Parties' Motion for Summary Judgment.<br><br>To the extent a response is required, the POM Parties admit only that AU3 referred to an unincorporated entity as Pennsylvania Skill Games, and appears to have done so in 2010.<br><br>The POM Parties deny that PSG used the words "Pennsylvania Skill Games" since at least 2010. The POM Parties support this denial based on the fact that PSG did not exist until May 1, 2015, and AU3's testimony indicated that he used the term "Pennsylvania Skill Games" in relation to at least one other entity, Aliquippa Industrial Park and/or Amato Music | POM Ex. S, AU4 2019 Dep. 33:7–15; and<br><br>POM Ex. R, AU3 2019 Dep. 38:16–42:2. |
| 10.3 | This alleged fact implicates a conclusion of law as to the term "generic," and as such, this alleged fact is improper and should be disregarded. | |
| 10.4 | This alleged fact implicates a conclusion of law as to the parties' rights under the EPA, and as such, this alleged fact is improper and should be disregarded. | |
| 11.1 | The POM Parties deny that PSG, or any entity affiliated with AU3 or AU4, used the Word Mark in interstate commerce as early as 2010. The POM Parties support this denial based on AU3's testimony that his entities operated exclusively in Pennsylvania, that the words "Pennsylvania Skill Games" were printed on "plexies" in Pennsylvania, those plexies were placed onto game terminals in Pennsylvania, and those terminals bearing the words "Pennsylvania Skill Games" were placed exclusively in Pennsylvania. Photographs or copies of the "plexies" have never been produced. | POM Ex. R, AU3 2019 Dep. 34:25–35:11, 42:4–44:5, 45:4–22; and |

{14017604.7}

|  | | |
|---|---|---|
|  | Furthermore, AU3 testified that Pennsylvania Skill Games "wasn't a trademark, it was a word that we used and it was representing our company and it was just a word." | POM Ex. R, AU3 2019 Dep. 48:23–49:3, 53:8–14, and 131:4–9. |
| 11.2 | This "fact" is unintelligible due to grammar, typos, and punctuation and should be disregarded. The POM Parties deny that PSG, or any entity affiliated with AU3 or AU4, used the Stylized Mark at issue in this litigation prior to Pace's development of Stylized Mark, nor do the citations relied upon by PSG support this statement.<br><br>The POM Parties support this denial by distinguishing the graphics from 2010 that PSG relies on, with the Stylized Mark at issue in this litigation.<br><br>Furthermore, AU3 testified that the words "Pennsylvania Skill Games" and the graphics he placed on electronic games were not trademarks, but merely referenced his unincorporated business. AU3 also confirmed that he had no involvement with Pace in the development of the Stylized Mark.<br><br>The POM Parties also support this denial with AU4's testimony confirming that the Pace developed the Stylized Mark and first time he saw the Stylized Mark was on Pace' Pennsylvania Skill game terminal. | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"),<br><br> *with* POM Ex. PP-2, at 9–22 (depicting the Stylized Mark);<br><br>POM Ex. R, AU3 2019 Dep. 48:23–49:3, 53:8–14, 131:4–9,133:8–24; and<br><br>POM Ex. S, AU4 2019 Dep. 29:6–17 and 182:12–183:3; and |
| 11.4 | The POM Parties cannot discern what "all the time" means. The POM Parties admit only that AU3 and AU4 used a variety of background art for the graphics that bore the unregistered d/b/a name of their business "Pennsylvania Skill Games."<br><br>The POM Parties expressly deny that the background art, i.e. the Stylized Mark, changed. The POM Parties support this denial with the version of the Stylized Mark it initially developed, which has remained consistent.<br><br>Furthermore, the POM Parties deny that PSG's alleged use of the words "Pennsylvania Skill Games" and graphics depicting those words, are material to the disposition of the POM Parties' pending Motion for Summary Judgment. In that motion, the parties dispute the ownership of the Word Mark and the Stylized Mark, which both relate to PENNSYLVANIA SKILL. | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"),<br><br>*with* POM Ex. I, at POM002337–39 (depicting Stylized Mark in development by Pace), POM Ex. PP-2, at 9–22 (depicting the Stylized Mark in Savvy Dog's May 30, 2018 USTPCO Application). |

{14017604.7}

| 11.5 | This "fact" by PSG is unintelligible. The POM Parties cannot discern what "Pace used the existing stylized logo which looks the same, using a similar stylized fonting" means. The POM Parties expressly deny that Pace used an existing stylized logo, which PSG presumably is alleging to look similar to the graphics used by AU3. The graphics that AU3 created all state "Pennsylvania Skill Games" with a variety of backgrounds and clip art; whereas, the Stylized Mark used by the POM Parties states "Pennsylvania Skill" and depicts a liberty bell, the constitution, and white stars on a blue background. The PENNSYVLANIA SKILL mark created by the POM Parties is used in conjunction with a specific class of goods set forth in the trademark applications, as opposed to PSG's usage on pool tables, jukeboxes, and other completely unrelated devices that do not pay money to users.The two designs are fundamentally different (to include PSG's use of the word "games"), as are their related classes of goods. | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"), *with* POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); |
| 11.6 | This is a legal conclusion. To the extent that PSG's reference to a "refreshed PSG brand" is referring to the Stylized Mark, the POM Parties deny that PSG's "preexisting serif stylized fonting" played any role in distinguishing Pace's Pennsylvania Skill games in the Pennsylvania Market. In support of this denial, the POM Parties rely on the fact that AU3 and AU4's competitors had not heard of Pennsylvania Skill [G/g]ames prior to Pace's early sales of its Pennsylvania Skill game. Furthermore, the POM Parties deny that any "serif stylized fonting" used by AU3, AU4, or any entity associated with them, could assist in creating a market distinct because their font, the words displayed, and the graphics used are fundamentally different from the Stylized Mark.<br><br>The POM Parties also deny that PSG had a preexisting word mark because:<br><br>    (a) PSG did not exist until May 1, 2015;<br><br>    (b) the unincorporated entity known as Pennsylvania Skill Games used the words "Pennsylvania Skill Games" on a variety of games;<br><br>    (c) AU3 used the term to identify the business rather than a specific product; and | POM Ex. II, Lazar July 9, 2020 Dep. 48:8-11;<br><br>POM Ex. GGG, R. McDanel Dep. 31:11–32:20, 72:20–22, and 76:10-15;<br><br>POM Ex. OOO, Michael Mangiere July 9, 2020 Dep. 27:7–10, 28:16–31:7, 59:20–60:2, and 61:3–8;<br><br>POM Ex. RRR, Richard W. Bigrig August 24, 2020 Dep. 41:18-43:15;<br><br>POM Ex. QQQ, Brent Mayes Sept. 15, 2020 Dep. 68:11–25;<br><br>(a) POM Ex. S, AU4 2019 Dep. 33:7–15;<br><br>(b) *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"), |

17

| | | |
|---|---|---|
| | (d) AU3 testified that "it wasn't a trademark, it was a word that we used and it was representing our company and it was just a word." | *with* POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); <br><br> (c) POM Ex. R, AU3 2019 Dep. 53:8–14; 41:23–42:3; <br><br> (d) POM Ex. R, AU3 2019 Dep. 48:23–49:3, 53:8–14, and 131:4–9. |
| 11.7 | The POM Parties deny that the Stylized mark was created in conjunction with the EPA. In support of this denial, the POM Parties rely in part on Pace internal emails dated between January 9, 2015 to January 13, 2015 [POM002329–45], which discuss the need for a new compliance page in the Pennsylvania Skill software following the Beaver County Case and the need for a stronger branding statement. Two graphics were proposed, and one style—the Stylized Mark— was selected at that time. The EPA was first discussed months later. Reference is made to the EPA for an accurate recitation of its contents, and PSG is making a legal conclusion related to the contents of that document. The evidence cited by PSG does not support this "fact" and should be stricken. PSG was not involved in the creation of the stylized mark and therefore is making a speculative argument as to the creation of the elements of the trademark. | POM Ex. I, POM002329–45; and <br><br> POM Ex. BB. |
| 11.8 | This "fact" is unintelligible, as it states "[t]hree bar owners and deponents testified that the association of the brand with PSG." This is not a sentence. The POM Parties admit only that three bar owners, who had agreements with AU3 to place electronic game machines at there establishments and who witnessed AU3 or AU4 place games being the words "Pennsylvania Skill Games," associated those games with AU3 and his unincorporated business. Specifically, the three witnesses testified to seeing the words Pennsylvania Skill Games and the graphics displayed in their affidavits on Megatouch machines, nonspecific electronic video games. | POM Ex. JJ, Kendrew Dep. 13:24–14:5, 18:5–19, 22:14–18; <br><br> POM Ex. LL, Martin Dep. 25: 7–13 and 30:11-16; and <br><br> POM Ex. VV, Dutcher Dep. 7:24–8:13 and 31:19-32:15; and <br><br> PSG Ex. 14.1–14.3. |
| 11.9 | The POM Parties admit that the Stylized Mark was not created or used prior to January 12, 2015. | POM Ex. L, Pace Dep. 59:4–17; <br><br> POM Ex. G; and |

{14017604.7}

| | | |
|---|---|---|
| | The POM Parties deny that the Word mark was not used prior to January 12, 2015. In support of this denial, the POM Parties rely on Mr. Pace's testimony that the Word Mark was used in 2012 when Pace completed its Pennsylvania Skill game. This denial is further supported by the sale of ten (10) Pennsylvania Skill terminals on September 2, 2013, and pictures of the game sold in 2013. | POM Ex. AAA. |
| 11.10 | The POM Parties admit that Pace created the Stylized mark between January 9, 2015 and January 13, 2015. | POM Ex. I, POM002329–45. |
| 11.11 | Admitted. | |
| 11.12 | This is a legal conclusion. The POM Parties deny that their use of the Stylized mark is junior to the date of PSG's first use of the Stylized Mark as PSG did not start to use the Stylized Mark until after Pace created it.<br><br>The POM Parties support this denial with AU4's admission that the first time the Stylized mark was used was by Pace in its Pennsylvania Skill game, and further confirming that he had not seen the Stylized mark prior to Pace's use of the Stylized Mark in its software and on its terminals.<br><br>The POM Parties also support this denial with AU3's testimony that he did not use the words "Pennsylvania Skill Games" as a trademark and it served only as a trade name. | POM Ex. S, AU4 2019 Dep. 126:22–24 and 176:10–23; and<br><br>POM Ex. R, AU3 2019 Dep. 48:23–49:3, 53:8–14, and 131:4–9. |
| 13.1 | This "fact" is unintelligible and should be disregarded. The POM Parties have no idea what PSG is saying here. To the extent a response is required, the POM Parties admit only that Pace sold 10 Pennsylvania Skill game terminals on September 16, 2013, shortly before AU3 picked up a single terminal, which had been arranged to be the subject of a controlled pickup by the Pennsylvania Bureau of Liquor Control Enforcement on November 19, 2013. Pace further admits that it did not sell any Pennsylvania Skill game terminals from September 16, 2013, until December 24, 2014, when the Court of Common Pleas of Beaver County, Pennsylvania held that the Pennsylvania Skill game was not an illegal gambling machine in the Beaver County Case. | *See* POM Ex. G and POM Ex. J. |

{14017604.7}

| 15.1 | The POM Parties deny that Mr. DeLuca's representation of AU3 through the controlled pickup is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
|---|---|---|
| | To the extent that a response is required, the POM Parties deny that Mr. DeLuca and AU3 were engaged in an attorney-client relationship that related to the controlled pickup. | POM Ex. T, DeLuca Dep. 48:14–49:3. |
| 15.2 | The POM Parties deny that Mr. DeLuca's alleged representation of AU3 through the controlled pickup is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| | To the extent that a response is required, the POM Parties deny that Mr. DeLuca and AU3 were engaged in an attorney-client relationship that related to the controlled pickup. This denial is supported by the fact that Mr. DeLuca called AU3 and asked him to place the machine. | POM Ex. T, DeLuca Dep. 48:14–50:18 and 50:11–22. |
| | The POM Parties admit that Mr. DeLuca represented Pace in the Beaver County Case and that the attorney-client relationship was formed before well before the controlled pickup on November 19, 2013. Further, the POM Parties deny that any "joint effort" occurred. Attorney DeLuca testified that AU3 placed the game for him and AU3 "wasn't involved after that." | |
| 15.3 | This "fact" is unintelligible as a fragment and should be disregarded. To the extent a response is required, the POM Parties admit that Mr. DeLuca represented AU3 prior to his representation of Pace. | |
| | But, the POM Parties deny that Mr. DeLuca's representation of AU3 before and/or during the controlled pickup is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 15.4 | The POM Parties deny that Mr. DeLuca's representation of AU3 is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |

20

| | | |
|---|---|---|
| | The POM Parties deny that Mr. DeLuca represented Pace only for the limited purpose of drafting the EPA. The POM Parties support this denial with Mr. DeLuca's testimony regarding his involvement in Pace's decision to organize the controlled pickup and prove that the Pennsylvania Skill game was not an illegal gambling device in the Beaver County Case. Mr. DeLuca's testimony was confirmed by Mr. Wood's testimony.<br><br>The POM Parties admit that Mr. Rodgers represented PSG in the drafting of the EPA. | POM Ex. T, DeLuca Dep. 30:4–21; and<br><br>POM Ex. L, Pace Dep. 30:7–31:18.<br><br>POM Ex. Wood 2019 Dep. 59:19–63:17. |
| 15.5 | The POM Parties deny that Mr. DeLuca's representation of AU3 is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 15.6 | The POM Parties deny that Mr. DeLuca's representation of AU3 is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 15.7 | The POM Parties deny that the distinction between "friendly pickup" and "controlled pickup" is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. The record evidence cited by PSG does not support this contention. | |
| 15.8 | The POM Parties admit only that AU3 agreed to place a single Pennsylvania Skill game terminal in a location in Beaver County that Mr. DeLuca arranged to be picked up by the Pennsylvania Bureau of Liquor Control Enforcement on November 19, 2013 with no risk to anyone.<br><br>The POM Parties deny that AU3 had any other involvement in the Beaver County Case and they support this denial with Mr. DeLuca's testimony confirming that AU3 was not involved in the case at any point after the pickup. | POM Ex. Z, AU3 2020 Dep. 60:19–61:11; and<br><br><br><br>POM Ex. T, DeLuca Dep. 46:6–18, 50:11–18, and 99:13–24. |
| 15.9 | Admitted only that the Pace game featuring the trademark PENNSYLVANIA SKILL was placed in the American Italian Club by an individual named Albert Unis, III. | |

21

| 15.10 | The POM Parties deny that the reason the location agreed to host the controlled pick up is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment.<br><br>To the extent a response is required, the POM Parties deny that there was any risk to anyone involved in the controlled pickup. The POM Parties support this denial with Mr. DeLuca's testimony confirming that he had arranged the controlled pickup with the guarantee that no one involved would be at risk. | POM Ex. T, DeLuca Dep. 46:6–18. |
|---|---|---|
| 15.11 | The POM Parties deny that AU3 was involved in the Beaver County Case. AU3's decision not to hide like other vendors is not a material fact necessary for the disposition of the POM Parties' Motion for Summary Judgment. The POM Parties have no idea what PSG is saying here. | |
| 15.12 | The POM Parties deny that AU3 provided any business experiential advice for the Beaver County Case. This denial is supported by Mr. DeLuca's testimony indicating that AU3 had no involvement in the Beaver County Case. Mr. DeLuca testified that AU3 had no involvement in the case. | POM Ex. T, DeLuca Dep. 50:11–18 and 99:13–24. |
| 15.13 | Denied. AU3 was not involved in the Beaver County Case at all. Note that the evidence cited by PSG is AU3 making a self-proclamation of how much credit he should have. The lawyer who tried the case, Mr. DeLuca, says he is entitled to none. | POM Ex. T, DeLuca Dep. 50:11–18 and 99:13–24. |
| 15.14 | Admitted that AU3 claims he paid a permit fee. The amount or the actual payment of same is unconfirmed. | |
| 15.15 | The POM Parties are unclear as to the specific material facts PSG asserts in paragraph 15.15. Nevertheless, the POM Parties deny that AU3 assisted Pace with opening the Pennsylvania market or the Pennsylvania Skill game's performance.<br><br>In support of this denial, the POM Parties rely on Mr. Pace's testimony that his Fall of 2015 visit to Beaver County to address issues AU3 and AU4 had with the profitability of the Pennsylvania Skill games. Mr. Wood confirmed that AU3 and AU4 had performance issues due to the manner in which the games were placed—not the games themselves. There is no | POM Ex. L, Pace Dep. 42:2–43:22; and<br><br>POM Ex. X, Wood 2019 Dep. 24:20–19 and 45:2–10. |

22

| | | |
|---|---|---|
| | evidence of record that AU3 provided any assistance to any POM Party. | |
| 15.16 | The POM Parties expressly deny that AU3 provided any assistance with the development of Pace's Pennsylvania Skill game.<br><br>The POM Parties support this denial with AU3's own admission that he did not provided any technical knowledge prior to the software development, he did not play the game prior to placing it for the controlled pick, he did not even turn the game on before he placed it in the American Italian Club for the controlled pick up. AU4 also confirmed that Pace developed the Pennsylvania Skill game software. | POM Ex. Z, AU3 2020 Dep. 59:2–16;<br><br>POM Ex. R, AU3 2019 Dep. 63:10–19, 65:5–66:8, 70:24–74:3, 77:9–79:5; and<br><br>POM Ex. S, AU4 2019 Dep. 184:4–10 and 186:5–23. |
| 15.17 | Denied. While the POM Parties are unclear as to what PSG means by alleging that Messrs. Unis "opened the market in Pennsylvania," the POM Parties deny that this alleged fact is material to the disposition of their pending Motion for Summary Judgment.<br><br>To the extent a response is required, AU3 did not open the Pennsylvania market by placing a single Pennsylvania Skill terminal in a single location for the controlled pickup. Pace designed the game, the POM Parties lobbied for the game, Pace's counsel arranged for the terminal to be picked up by the authorities at no risk to the operator or the location, Pace and its attorney proved the Pennsylvania Skill software complied with Pennsylvania law in the Beaver County Case, and the POM Parties marketed and sold the Pennsylvania Skill games across the state. Thus, to the extent opening the market means developing a product and bringing it to market, Pace and the POM Parties opened the Pennsylvania market. The record evidence cited by PSG does not support its contention and should be stricken. | POM Ex. L, Pace Dep. 29:2–31:18;<br><br>POM Ex. X, Wood 2019 Dep. 24:20–19 and 59:3–61:14; and<br><br>POM Ex. M, Miele 2019 Dep. 28:22–30:13. |
| 15.18 | The POM Parties deny that Daniel Warren personally guaranteed he could protect the territory by stopping fills. This "fact" also is a conclusion of law. Further, this is an irrelevant fact, as the EPA does not require enforcement of any territory by PSG, and reference is made to that document for an accurate recitation of its contents. | POM Ex. HH, Warren 2019 Dep. 65:19–23; and<br><br>POM Ex. BB. |

| 15.19 | The POM Parties are unclear on the facts PSG asserts in paragraph 15.19, but the POM Parties deny that AU3's "engagement" with Mr. Harris is a material fact necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| | To the extent a response is required, Mr. Harris testified that he had no involvement with compliance; rather, he was "there just to enhance, you know, his business." | POM Ex. NNN, Harris Dep. 11:14–25. |
| 15.20 | The POM Parties deny that other vendors' use of illegal games is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 16.1 | The POM Parties deny that whether the POM Parties sell to operators and venues through intermediaries is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| | Responding further, the POM Parties expressly deny that any of the POM Parties sell Pennsylvania Skill games to venues. This denial is based on Lou Miele's testimony that Miele, the exclusive distributor of Pennsylvania Skill, sells to venues. | POM Ex. CC, Miele 2020 Dep. 151:15–152:16; |
| | And, the POM Parties deny that they sell Pennsylvania Skill games through intermediaries. Rather, Miele is the exclusive distributor of Pennsylvania Skill and sells directly to operators. If an operator is unable to afford the cost of the terminal, the operator can enter into a revenue sharing deal with a third party that allows the operator to place the terminal without actually purchasing the terminal. | POM Ex. HH, Warren 2019 Dep. 84:24–85:25; POM Ex. M, Miele 2019 Dep. 18:6–14; and POM Ex. L, Pace Dep. 65:5–6. |
| 16.2 | The POM Parties deny that Lou Miele acting as an operator through L&M or any other entity is material to the disposition of the POM Parties' pending Motion for Summary Judgment. Neither Mr. Miele, nor L&M are parties to this consolidated action. | |
| 18.1 | The POM Parties deny that whether the POM Parties sell to third parties is a material fact necessary for the disposition for the POM Parties' pending Motion for Summary Judgment. | |

| | | |
|---|---|---|
| | The POM Parties object to the argumentative characterization of a "conspiratorial scheme," which disregards the Court's May 5, 2021 Order and should be stricken. | |
| 18.2 | The POM Parties deny that PSG's May 2, 2018 notice of suit is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 18.3 | The POM parties' dent that the decision to initiate this suit is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. This "fact""is irrelevant. Pace filed a writ of summons because PSG sent Pace a draft complaint it was going to file. | |
| 18.4 | The POM Parties' deny that the June 7, 2018 "summit" is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | |
| 20.1 | The POM Parties deny that whether the AU3 or the American Italian Club had trepidation with their involvement in the controlled pickup is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. The POM Parties cannot speculate as to any "trepidation," but respond with testimony from DeLuca where he stated there was no risk. | POM Ex. T, DeLuca Dep. 46:6–18. |
| 23.2 | This "fact" is unintelligible and the POM Parties cannot discern what "already placed prior to October 1, 2013 for months" means. The precise date that AU3 picked up the Pennsylvania Skill terminal used in the controlled pickup is not material to the disposition of the POM Parties' pending Motion for Summary Judgment.<br><br>While AU3 testified in 2020 that he picked the Pennsylvania Skill terminal up prior to the date indicated on the receipt (October 1, 2013), AU3 testified in 2019 that he picked the terminal up on the date he signed the receipt. There is no evidence cited by PSG related to this "fact" that establishes any other sequence of events. | *Compare* POM Ex. Z, AU3 2020 Dep. 48:2–51:22,<br><br>*with* POM Ex. R, AU3 2019 Dep. 67:10–68:2, 75:18–76:11, 109:8–12. |

{14017604.7}

| 24.1 | The POM Parties admit that Pace developed the Pennsylvania Skill game that AU3 placed at the American Italian Club in 2013 for the previously arranged controlled pickup. The POM Parties deny that any other significance exists in connection with AU3 placing a game in the American Italian Club. | POM Ex. T, DeLuca Dep. 47:24–48:8 and 50:11–18. |
|---|---|---|
| 24.2 | The POM Parties admit only that the Beaver County Court of Common Pleas considered Pennsylvania Skill software version 402.44 in the Beaver County Case, but the POM Parties deny that the opinion issued in the Beaver County Case was limited only to that software version. <br><br> The POM Parties support this denial with the fact that the opinion issued in the Beaver County Case does not mention a specific software version, but rather analyzes specific features of the game and determines whether the game is a game of skill or of chance. | POM Ex. J. |
| 25.1 | This "fact" is not material to the Court's consideration of the POM Parties' pending Motion for Summary Judgment. This "fact" also is unintelligible and the POM Parties have no idea what PSG is saying here. | |
| 27.1 | While Mr. Wood emailed AU3 on January 14, 2015, the POM Parties deny that any deal existed at that time. In support of this denial, the POM Parties rely on Mr. Wood's testimony explaining the language of his January 14, 2015 email. | POM Ex. X, Wood 2019 Dep. 7:25–12:13 and 13:9–12. |
| 29.1 | Denied. The AUA document was entered into between Pace and Miele on one hand, and an entity identified as "Albert Unis and Affiliates ('AUA')." The document then uses the moniker AUA in reference to a single specific entity, not a group of entities. Further, the AUA Document does not identify any affiliates or contain any terms authorizing AUA to make any assignments. This "fact" also constitutes a conclusion of law and suggests that AU3 was able to control competitors without their consent or approval, which is argumentative and irrelevant to this case. | POM Ex. Y |
| 30.1 | The facts asserted in paragraph 30.1 are not material facts necessary for the Court's consideration of the POM Parties' pending Motion for Summary | |

26

| | | |
|---|---|---|
| | Judgment. It is unclear what "many" means. PSG has not produced this information in discovery. | |
| 30.2 | The facts asserted in paragraph 30.2 are not material facts necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. It is unclear what "in business" means. | |
| 31.1 | The POM Parties deny that the location agreements included in POM Ex. W, or the machines placed in those locations, had the PSG trademark. This "fact" also constitutes a conclusion of law.<br><br>The POM Parties support this denial with the following facts:<br><br>(a) the location agreements identify the operator as "Pennsylvania Skill Games," which is different from the Word Mark at issue ("Pennsylvania Skill");<br><br>(b) PSG failed to provide any evidence depicting the machines actually placed in the locations referenced in POM Ex. W, the American Italian Club or the Musical Political Italian Club; and<br><br>(c) The graphics that AU3 used on machines include the words "Pennsylvania Skill Games Reserve Your Game Today [AU3 Phone Number]," and are distinguishable from the Stylized Mark. | (a) *Compare* POM Ex. W, *with* POM Ex. PP-1 (Savvy Dog Word Mark Application);<br><br>(b) POM Ex. UU, Danial David, American Italian Club, May 16, 2019 Deposition, 11:16–19; and<br><br>(c) *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"),<br><br> *with* POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); |
| 33.1 | This "fact" is unintelligible as the POM Parties cannot discern what a "serif form" of the trademark is, nor can they discern who "users of game software product" are. The POM Parties admit only that AU3 included a graphic on MegaTouch machines that include the words "Pennsylvania Skill Games Reserve Your Game Today [AU3 Phone Number]," and that this graphic was visible to users when the game was first turned on, but not at any other time. This class of goods is distinguishable from the class of goods that form the basis for the trademark applications at issue.<br><br>Responding further, the POM Parties expressly deny that the graphics identified by PSG constitute a | POM Ex. PP–1 and PP–2.<br><br><br>POM Ex. R, AU3 2019 Dep. 48:23–49:3, 127:8–18, 130:24–131:12; |

27

| | | |
|---|---|---|
| | trademark and further deny that these graphics can be attributed to PSG, the limited liability company that is a party to this action.<br><br>This denial is supported by AU3's testimony that he did not use a trademark, and that the words and graphics he placed on various games were not intended to be a trademark. The denial is also supported by the fact that the words which PSG relies on "Pennsylvania Skill Games" is distinguishable from the Word Mark ("Pennsylvania Skill") at issue, and the graphics relied on by PSG are distinguishable from the Stylized Mark at issue in this litigation.<br><br>Furthermore, PSG cannot have used either a word mark or a stylized mark at any point prior to May 1, 2015, because PSG did not exist until that date. | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"),<br><br> *with* POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); and<br><br>POM Ex. S, AU4 2019 Dep. 33:7–15.<br><br>POM Ex. PP–1;<br><br>POM Ex. OO–1; and<br><br>POM Ex. OO–2. |
| 34.1 | Denied that this is material or relevant. AU3 admitted that the words Pennsylvania Skill Games were a trade name, not a trademark. The trademark at issue is PENNSYLVANIA SKILL. | POM Ex. R, AU3 2019 Dep. 48:23–49:3, 127:8–18, 130:24–131:12; and<br><br>POM Ex. PP–1 and PP–2. |
| 36.1 | Denied. The POM Parties support this denial with the fact that the language of the EPA is distinguishable from the AUA Document, and the denial is further supported by the absence of language in the EPA refereeing to AUA, the AUA Document, or AU3. The record evidence submitted by PSG does not support this "fact." | *Compare* POM Ex. Y (AUA Document), *with* POM Ex. BB (EPA). |
| 36.2 | The POM Parties deny that Danny Warren was aware of any assignment, which is undefined in this "fact." This denial is supported by the absence of any evidence in support of Mr. Warren's knowledge of such an assignment. Furthermore, the POM Parties deny that these facts are material facts necessary for the disposition of the POM Parties pending Motion for Summary Judgment. | |
| 36.3 | The POM Parties deny that AU3's assistance with lodging and transportation, or any alleged funding, is a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment as PSG does not allege that these actions | |

28

| | | |
|---|---|---|
| | were performed in consideration of any alleged contract. | |
| | In support of this denial, the POM Parties rely on AU3's testimony regarding the terms of the alleged agreement, which include placing the Pennsylvania Skill game terminal in the American Italian Club in preparation of the previously arranged controlled pickup. | POM Ex. Z, AU3 2020 Dep. 55:14–57:14. |
| | The POM Parties have no idea what PSG means by "open the Pennsylvania market." | |
| 41.1 | The POM Parties deny that Pace supplied the first draft of the EPA from its internal samples. This denial is supported by PSG Ex. 11.2, which demonstrates that PSG's attorney, Bill Rodgers, faxed an initial draft of the EPA's terms on March 12, 2015, to Mr. DeLuca. On April 2, 2015, Mr. Warren then indicated to Mr. DeLuca, Mr. Wood, and Mr. Pace that he would insert the terms prepared by Mr. Rodgers in one of Pace's shells. PSG Ex. 11.1. However, the POM Parties deny drafting the EPA. | PSG Ex. 11.1–11.2; and POM Ex. T, DeLuca Dep. 54:2–8. |
| 44.1 | The facts asserted in paragraph 44.1 of PSG's Supplemental Responsive Statement of Facts purport to interpret the terms of the EPA, and therefore contain arguments and legal conclusions. Thus, no response is required. However, PSG's interpretation is misleading and there is no support in the cited evidence for this contention. | POM Ex. BB. |
| | To the extent a response is required, paragraph 1 of the EPA governs the initial price of two specific types of terminals and notes that the price of these terminals were "subject to change due to changes in material cost of the Complaint Terminals and Compliant Hardware Components." Whereas, paragraph 2 of the EPA governs the initial prices of software plays (fills). The price of fills were "subject to change in the future." Thus, the POM Parties deny that any price increase associated with the price of fills demanded an increase of material costs. | |
| | Finally, paragraph 4 of the EPA states in part, "Seller agrees not to sell the other vendor Complaint Terminals at prices lower than the Buyer pays. Seller | |

29

| | | |
|---|---|---|
| | also agrees to make sure that the other vendor does not offer sets of software plays to the location at prices below the market price at the time." The "other" vendor must be read in context and does not provide PSG the lifetime right to have lower fill or machine costs than any other operator in the Commonwealth. | |
| 44.2 | Denied. The evidence cited by PSG does not support PSG's assertion that vendors in Beaver County are paying lower rates that PSG. <br><br> PSG Ex. 4.1–4.2 relate to invoices from 2019; PSG Ex. 4.3 and 4.5 relates to invoices from 2018, and PSG Ex. 4.4 relates to invoices from 2020. On the other hand, PSG's invoices in PSG Ex. 40 contain invoices dated in 2015-2017, with a single invoice from 2019 (*See* PSG Ex. 40, at PSG000597). In PSG's single invoice from 2019, PSG purchased equipment from Pace and $1/10^{th}$ of a fill. Conversely, in PSG's competitors' invoices from 2019, the competitors only purchased full software fills. <br><br> Thus, the evidence cited by PSG does not support the assertion that PSG paid more for either equipment or fills. | PSG Ex. 4.1–4.5; and PSG Ex. 40. |
| 44.3 | The POM Parties deny that Cool Vending was paying less than PSG. This denial is support by the fact that Cool Vending purchased a single fill for $1,100 on October 19, 2018. In comparison, PSG Ex. 40 does not show PSG purchasing any software fills in 2018. | PSG Ex. 4.3; and PSG Ex. 40. |
| 45.1 | The POM Parties deny that PSG had significant presence in the market and further deny that PSG's presence in the market is a material fact that is necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. The POM Parties have no idea what the "market" is, the time period referred to, or any other qualifying aspect of this "fact." | POM Ex. II, Lazar Dep. 48:8-11; <br><br> POM Ex. GGG, R.McDanel Dep. 31:11–32:20, 72:20–22, and 76:10-15; <br><br> POM Ex. OOO, Mangiere Dep. 27:7–10, 28:16–31:7, 59:20–60:2, and 61:3–8; <br><br> POM Ex. RRR, Bigrig Dep. 41:18-43:15; and <br><br> POM Ex. QQQ, Mayes Dep. 68:11–25. |

30

| 47.1 | The POM Parties deny the alleged facts as stated in paragraph's 47.1 PSG's Supplemental Responsive Statement of Facts. PSG Ex. 38 contains a single Pace invoice related to a sale to PSG on November 14, 2017. PSG Ex. 40 discloses four invoices related to sales between Pace and PSG between December of 2016 and 2017, with a single invoice relates to a sale on November 1, 2019. While PSG Ex. 40 includes other Pace invoices, those invoices are addressed to AIP (Aliquippa Industrial Park). Finally, Ex. 40 contains a single invoice from DNW Group, LLC to AIP (Aliquippa Industrial Park), dated October 18, 2016. Further, this "fact" is not a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | PSG Ex. 38 and 40. |
|---|---|---|
| 47.2 | Admitted. | |
| 49.1 | This "fact" is vague and unintelligible. The POM Parties have no idea what "exclusive in Beaver County, PA" means. The POM Parties deny that the EPA was intended to provide any exclusive rights to anyone. In support of this denial, the POM Parties rely on the terms of the EPA, which do not mention exclusive. | POM Ex. BB. |
| 50.1 | Admitted. | |
| 50.2 | This "fact" is unintelligible due to missing words and because the POM Parties have no idea what "trolling" or "venue areas" or "compliance problems" mean. The POM Parties deny that Pace's employment of a former Pennsylvania State Police Officer, or the allegation that "Pace and Miele control the venue areas and look for compliance problems" are material facts necessary for the disposition of the POM Parties pending Motion for Summary Judgment.<br><br>Responding further, the POM Parties deny that Pace, Miele, or any agent of theirs, trolls venues, or exercises any "control" over venues.<br><br>The POM Parties admit only that Pace employees a former Pennsylvania State Police Officer and that Pace's compliance team investigates compliances issues. | |

31

| 50.3 | The POM Parties deny that Miele's former ownership of MCM Elements is a material fact necessary for the disposition of the POM Parties' pending Motion for Summary Judgment because Mr. Miele is not a party to this action. | |
|---|---|---|
| 50.4 | The POM Parties deny that MCM Elements' software is a material fact to the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 50.6 | The POM Parties admit that Miele requests location agreements from operators, but deny that Miele did so prior to 2019. Further, this fact is not a material fact necessary for the Court's consideration of the POM Parties' pending Motion for Summary Judgment. | *See* POM Ex. CC, Miele 2020 Dep. 161:22-162:3. |
| 50.7 | The POM Parties deny that whether compliance officers wear badges is a material fact necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 50.8 | The POM Parties admit only that PSG sent cease and desist letters dated February 6, 2018, to ProATM, LLC. <br><br> The POM Parties deny that PSG's cease and desist letter to ProATM is a material fact necessary for Court's consideration of the POM Parties' pending Motion for Summary Judgment. This "fact" also calls for a conclusion of law. | |
| 50.9 | The POM Parties admit that Brent Mayes, president of ProATM, LLC testified that after receiving PSG's cease and desist letter and forwarding it to Lou Miele, he was told, the he "didn't need to worry about it because it wasn't [his] problem." This "fact" is misleading and out of context. | POM Ex. QQQ, Mayes Dep. 43:2–45:15. |
| 50.10 | The POM Parties deny that Mr. Warren and Mr. Pace assured AU3 that they could manage the exclusivity provision. This denial is supported by the fact that there was no exclusivity provision in either the AUA Document or the EPA. | *See* POM Ex. Y and BB. |
| 56.1 | The POM Parties deny that PSG has operated electronic games the Commonwealth of Pennsylvania | |

| | | |
|---|---|---|
| | that bear its stylized and word version of its trademark on any electronic game terminals prior to 2012. | |
| | Specifically, the POM Parties deny that PSG had or has any word or stylized trademark. This denial is supported by AU3's testimony that he did not use a trademark, and that the words and graphics he placed on various games were not intended to be a trademark. The denial is also supported by the fact that the phrase that PSG relies on "Pennsylvania Skill Games" is distinguishable from the Word Mark ("Pennsylvania Skill") at issue, and the graphics that PSG relies on are distinguishable from the Stylized Mark at issue in this litigation. | POM Ex. R, AU3 2019 Dep. 48:23–49:3, 127:8–18, 130:24–131:12; *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"), *with* POM Ex. PP-1, and POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); |
| | Furthermore, PSG cannot have used either a word mark or a stylized mark at any point prior to May 1, 2015, because PSG did not exist until that date. | POM Ex. R, AU3 2019 Dep. 53:8–14; POM Ex. CCC; and POM Ex. JJJ, at ¶¶ 8–9. |
| 57.1 | The POM Parties deny that PSG has operated electronic games the Commonwealth of Pennsylvania that bear its stylized and word version of its trademark on any electronic game terminals prior to 2012. | |
| | Specifically, the POM Parties deny that PSG had or has any word or stylized trademark. This denial is supported by AU3's testimony that he did not use a trademark, and that the words and graphics he placed on various games were not intended to be a trademark. This denial is also supported by the fact that the phrase that PSG relies on "Pennsylvania Skill Games" is distinguishable from the Word Mark PENNSYLVANIA SKILL at issue, and the graphics that PSG relies on are distinguishable from the Stylized Mark at issue in this litigation, especially considering that PENNSYLVANIA SKILL has acquired a meaning of being synonymous with Pace's Pennsylvania Skill game. | POM Ex. R, AU3 2019 Dep. 48:23–49:3, 127:8–18, 130:24–131:12; *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"), *with* POM Ex. PP-1, and POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); and |
| | Furthermore, PSG cannot have used either a word mark or a stylized mark at any point before May 1, 2015, because PSG did not exist prior to that date. | POM Ex. R, AU3 2019 Dep. 53:8–14; |

{14017604.7}

| | | |
|---|---|---|
| | PSG claims to have placed the words "Pennsylvania Skill Games" in conjunction with Megatouch machines, dart boards, and electronic games that do not pay money to players as depicted in PSG Ex. 14.1–14.3. And, the POM Parties admit that, after 2015, PSG placed the POM Parties' Stylized Mark and Word Mark PENNSLVANIA SKILL on electronic game terminals that contained software developed by manufacturers other than the POM Parties. It is denied that PSG had permission from any of the POM Parties to do so. | POM Ex. LL, Martin Dep. 25:7–20; POM Ex. JJ, Kendrew Dep. 20:15–21:9 |
| 57.2 | Admitted only that PSG did not include performance targets in the EPA nor does the EPA include any form of exclusivity from any party. It is denied that PSG never promised to perform as an inducement to enter into the EPA. | POM Ex. X, Wood Dep. 131:22–132:12; and POM Ex. HH, Warren 2019 Dep. 33: 14–23. |
| 57.3 | The POM Parties admit that PSG places electronic game machines developed by other manufacturers under the PENNSYLVANIA SKILL mark. The POM Parties admit that an unincorporated entity referred to by AU3 as Pennsylvania Skill Games, placed graphics depicting only the name of the entity on certain devices, and that AU3 admitted as a corporate designee that there was no actual or intended trademark by PSG. The POM Parties deny that PSG can claim any ownership of the Word Mark or Stylized Mark, and the POM Parties further deny that the Marks constitute PSG "branding." The POM Parties support this denial with emails demonstrating its development of the Stylized Mark, and AU3 and AU4's admissions that they had no involvement in Pace's development of the Stylized Mark. Importantly, the POM Parties expressly deny that it authorized PSG to place the Word Mark and the Stylized Mark, which Pace developed for the purpose of marketing its Pennsylvania Skill game, on electronic games that directly compete with Pace's Pennsylvania Skill game. Finally, whether Pace's Pennsylvania Skill game was unproven in 2015 is not a material fact necessary for | PSG Ex. 14.1, at 3–5, and PSG Ex. 14.2, at 9–11 (depicting AU3's graphics with the words "Pennsylvania Skill Games"); POM Ex. I, at POM002329–45; POM Ex. S, AU4 2019 Dep. 29:5–17, 176:10–23, 182:12–183:3; and POM Ex. R, AU3 2019 Dep. 133:8–24. |

34

| | | |
|---|---|---|
| | the disposition of the POM Parties pending Motion for Summary Judgment. | |
| 60.1 | PSG's reasoning for refusing any performance targets is not material for the disposition of the POM Parties pending Motion for Summary Judgment. The POM Parties cannot speculate what PSG was thinking, but note that this "fact" is an admission by PSG that the EPA was one-sided, unconscionable, and lacks consideration. | |
| 61.1 | The POM Parties deny that the current software version of the Pennsylvania Skill game is a material fact necessary for the disposition of the POM Parties pending Motion for Summary Judgment. To the extent a response is required, the current version of the Pennsylvania Skill software is 402.58. | POM Ex. GGG, O'Bier Dep. 51:11–14. |
| 66.1 | The POM Parties admit that Pace's general counsel stated in a February 14, 2018 letter, that, "[m]y client requests that you withdraw all allegations and threats against ProATM, LLC and comply with the terms of the Equipment Purchase Agreement both with respect to the right of first refusal and payment to Pace-O-Matic for equipment purchased." | PSG Ex. 21.3. |
| 66.2 | The POM Parties deny the characterization of Mr. Miele's testimony in paragraph 66.2 of PSG's Supplemental Responsive Statement of Facts. First, Mr. Miele did not testify that the EPA was still effective. Rather, the testimony cited by PSG discusses an instance in which Miele would have provided notice to PSG under the right of first refusal within the EPA. Second, Mr. Miele testified that, under the EPA, he would have notified PSG if Miele had been contacted by a viable location. | *See* POM Ex. CC, Miele 2020 Dep. 211:8–212:9; and POM Ex. M. Miele 2019 Dep. 63:13–64:1. |
| 66.3 | Admitted. | |
| 66.4 | This "fact" is unintelligible by virtue of a double negative, "None of the POM Parties never once provided…" It is denied that the EPA required provided accounts or leads and reference is made to that document for an accurate recitation of its | |

35

| | | |
|---|---|---|
| | contents. This "fact" also attempts to seek a legal conclusion. | |
| 66.5 | Admitted. The POM Parties deny that Mr. Warren's indication that PSG's account was clean as of April 17, 2018 is a material fact necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 67.1 | The POM Parties deny that PSG has satisfied the $8,000 debt owed to Pace. As this denial relates to a nonoccurrence, this denial is supported by the absence of evidence supporting PSG's assertion that the debt has been satisfied. The evidence PSG cites in support does not demonstrate the satisfaction of this debt. | |
| 68.1 | The POM Parties admit only that PSG's trademark application for the words "PENNSYLVANIA SKILL" was filed with the United States Patent and Trademark Office on July 2, 2018, at Serial No. 87856441 [PSG Ex. 13], asserted that PSG first used the words "PENNSYLVANIA SKILL" in commerce as early as June 1, 2010. | |
| 70.1 | Admitted. | |
| 71.1 | Admitted. | |
| 71.2 | The POM Parties deny that Savvy Dog is an alter ego of Pace, or took any action as an alter ego of Pace. Whether Savvy Dog is an alter ego of Pace constitutes a legal conclusions and is otherwise argumentative. As such, this argument contradicts the Court's May 5, 2021 Order and violations Local Rule 56. Thus, the POM Parties deny this legal conclusion. | |
| 74.1 | The POM Parties deny that PSG had any trademark, and further deny that Pace's development of the Word and Stylized Mark were related to the EPA in any way.<br><br>In support of these denials, the POM Parties rely on the following facts:<br><br>(a) PSG did not exist prior to May 1, 2015; | (a) POM Ex. S, AU4 2019 Dep. 33: 7–15;<br><br>(b) POM Ex. R, AU3 2019 Dep. 48:23–49:3, 127:8–18, 130:24–131:12;<br><br>(c) *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics |

{14017604.7}

| | | |
|---|---|---|
| | (b) AU3 testified that he used the words "Pennsylvania Skill Games" to identify his unincorporated entity and not as a trademark;<br><br>(c) the graphics asserted to by PSG's "trademark" [PSG Ex. 14.1, at 3–5, and PSG Ex. 14.2, at 9–11] are different from the Stylized Mark developed by Pace;<br><br>(d) neither AU3 nor AU4 played any role in the development of the Stylized Mark;<br><br>(e) Pace developed the Stylized Mark in January of 2015, months before the parties exchanged drafts of the EPA; and<br><br>(f) The marketing mentioned in paragraph 6 of the EPA referred to advertising material contained in a white folder provided by the POM Parties to AU3, AU4, and PSG. | with the words "Pennsylvania Skill Games"),<br><br>*with* POM Ex. PP-2;<br><br>(d) POM Ex. S, AU4 2019 Dep. 29:5–17, 176:10–23 and 182:12–183:3;<br><br>POM Ex. R, AU3 2019 Dep. 133:8–24; and<br><br>(e) POM Ex. I, at POM002329–45; PSG Ex. 11; and<br><br>(f) POM Ex. HH, Warren 2019 Dep. 45:13–46:11 and<br><br>POM Ex. M, Miele 2019 Dep. 52:20–53:6. |
| 76.1 | Denied. The POM Parties support the denial with AU4's testimony that the Stylized mark was first used on Pace's Pennsylvania Skill game, he had no idea where the Stylized Mark came from, and he had not seen the Stylized Mark prior to seeing a Pace Pennsylvania Skill terminal in 2015.<br><br>Additionally, AU3 confirmed that he had no involvement with Pace's development of the Stylized Mark.  Further, the citations relied upon by PSG do not support this fact or establish any such agreement. | POM Ex. S, AU4 2019 Dep. 29:5–17, 176:10–23 and 182:12–183:3; and<br><br>POM Ex. R, AU3 2019 Dep. 133:8–24. |
| 77.1 | This "fact" is unintelligible and the assertion cannot be discerned. | |
| 77.2 | The POM Parties deny that PSG has been marketing directly to venues since 2009 in accordance with the EPA because neither PSG, nor the EPA existed until May of 2015. This fact is unintelligible and immaterial because it doesn't say what PSG has been marketing, and drops a fragment by stating, "since 2009, and in accordance with all requirements set forth in the Equipment Purchase Agreement." The POM Parties have no idea what this fragment means, and it appears to make a conclusion of law. | POM Ex. BB; and<br><br>POM Ex. S, AU4 2019 Dep. 33: 7–15. |
| 78.1 | The POM Parties deny that the assertions in paragraph 78.1 of PSG's Supplemental Responsive Statement of Facts are material facts necessary for the disposition | POM Ex. BB. |

{14017604.7}

| | | |
|---|---|---|
| | of the POM parties' pending Motion for Summary Judgment. Reference is made to the EPA as to an accurate recitation of its contents. | |
| 82.1 | The POM Parties deny that Miele Manufacturing, Inc. is a competitor of PSG. Mr. Miele testified that Miele is the distributor of Pennsylvania Skill games, Miele sells exclusively to approved operators such as PSG, and Miele does not sell to locations. | POM Ex. M, Miele 2019 Dep. 29:13–21; and<br><br>POM Ex. CC, Miele 2020 Dep. 151:1–152:17. |
| 82.2 | The POM Parties deny the facts asserted in paragraph 82.2 of PSG's Supplemental Responsive Statement of Facts because PSG failed to identify the date or the amount of the alleged charge to PSG's credit card. Without this information, the POM Parties cannot determine whether the amount exceeded the market rate of fills at the time or exceeded the prices charged to the vendors identified in PSG Ex. 4.1–4.5. PSG Ex. 7 contains the EPA, which does not identify the amount PSG paid for fills beyond the initial price identified on May 20, 2015. Reference is made to the EPA for an accurate recitation of its contents, and there is no language in that document that imposes a restriction on fill prices to PSG based upon what other operators are charged. | POM Ex. BB. |
| 82.3 | The POM Parties deny the alleged material fact in paragraph 82.3 of PSG's Supplemental Responsive Statement of Facts because PSG failed to identify the date or the amount of the alleged charge to PSG's credit card. Without this information, the POM Parties cannot determine whether the amount exceeded the market rate of fills at the time. It is denied that the EPA created a mandatory or set price for fills. | POM Ex. BB. |
| 82.4 | The POM parties deny that this is a material fact necessary for the disposition of their pending Motion for Summary Judgment.<br><br>Furthermore, the alleged "facts" in paragraph 82.4 of PSG's Supplemental Responsive Statement of Facts are argumentative and unsupported by any evidence, particularly PSG Ex. 2, which is identified as PSG only support for these incendiary allegations. This "fact" has no relationship to the dispute between PSG and the POM Parties. | |

38

| 82.5 | The POM Parties deny that any agreement between the POM Parties and third parties is a material fact necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. Responding further, PSG asserts that the POM Parties breached the EPA. The POM Parties deny that any breach and deny the enforceability of the EPA. Breaches of any agreement other than the EPA are simply not at issue. PSG has refused to sign any other documents with the POM Parties, so this "fact" is irrelevant. | POM Ex. B, ECF No. 30, at ¶¶64–66. |
|------|------|------|
| 82.6 | The POM Parties deny that an "unnoticed" price increase by Miele and Pace caused at least one of PSG's accounts to eliminate PSG's machines as a result. This fact is not a material fact for the Court's consideration of the POM Parties' pending Motion for Summary Judgment as there was no contractual provision in the EPA that precluded a price increase. | PSG Ex. 36, Devinder Kumar January 27, 2021 Deposition, 16:5–17, and 21:15–22:2. |
| 82.7 | The POM Parties deny that an unnoticed price increase by Miele and Pace caused at least one of PSG's accounts to move to Banilla games. The POM Parties support this denial with Mr. Kumar's testimony in which he indicated that he purchased Banilla machines because he did not have to share his profits with an operator. | PSG Ex. 36, Kunmar Dep. 16:5–17 and 19:23–20:4. |
| 82.8 | The alleged "facts" in paragraph 82.8 of PSG's Supplemental Responsive Statement of Facts are argumentative and constitute legal conclusions. Furthermore, the alleged violation of a credit card authorization is not at issue. Therefore, these allegations do not contain material facts necessary for the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 82.9 | Whether Mr. Lazar's fees only decreased is not a material fact necessary for the disposition of the POM Parties' Motion for Summary Judgment. | |
| 82.10 | Mr. Lazar is not a party to this action and PSG Ex. 2 is not at issue in this litigation. The alleged facts in paragraph 82.8 of PSG's Supplemental Responsive Statement of Facts are not material facts necessary for the disposition of the POM Parties' Motion for Summary Judgment. This fact is argumentative, | |

39

| | | |
|---|---|---|
| | irrelevant, and has no connection at all with the litigation. | |
| 82.11 | The alleged "facts" in paragraph 82.8 of PSG's Supplemental Responsive Statement of Facts are argumentative and contrary to the Court's May 5, 2021 Order. As such, paragraph 82.11 should be stricken.<br><br>Furthermore, PSG's original Responsive Concise Statement to the POM Parties Concise Statement of Material Facts does not allege that the POM Parties increased PSG's fill prices in bad faith and in retaliation of PSG's refusal to sign the Miele's Operators Agreement. [ECF no. 144-01, at ¶ 82]. As such, these "facts" exceed the scope of the Court's May 5, 2021 Order, which limited PSG's supplemental response to facts that were included in its original response. To the extent a response is required, this argumentative "fact" is unsupported by any facts of record. | |
| 84.1 | Denied. AU3 October 20, 2020 deposition transcript states:<br><br>A. Because we approached them, and we had people approach every location, and told them that. Yes.<br><br>Q. Who is "we."<br><br>A. The people that – – the people that worked for [PSG].<br><br>Q. Who?<br><br>A. Marvin Harris for one.<br><br>Q. Okay. Who else?<br><br>A. That was – – that was enough. He went to every location.<br><br>POM Ex. Z, AU3 2020 Dep. 38:5–15. Further, Furthermore, PSG identified a total of four individuals who could be considered to be a "worker," including officers, managers, or owner, including AU4 as managing member, AU3 as a consultant, Marvin Harris as Vice President of Compliance, and Jody DeVincent as Vice President of Technology and Chief Strategy Officer. | POM Ex. N, PSG's Answers and Objections to POM of Pennsylvania, LLC's First Set of Interrogatories, No. 11. |

40

| 85.1 | Reference is made to the EPA for an accurate recitation of its contents. Otherwise, this is a conclusion of law. | POM Ex. BB. |
|---|---|---|
| 85.2 | The POM Parties deny that Miele financed PSG's competitors and further deny that Miele or any other POM Party used PSG's trademark.<br><br>Miele did not finance machines; rather, distinct entities—that are not party to this litigation—purchased terminals and allowed operators to place those terminals in exchange for a share of the revenue generated by the terminals.<br><br>PSG had no trademark. Pace developed the Word Mark and Stylized Mark. | POM Ex. M, Miele 2019 Dep. 18:8–21;<br><br>POM Ex. CC, Miele 2020 Dep.188:9-189:12;<br><br>POM Ex. HH, Warren 2019 Dep. 84:24–86:1;<br><br>POM Ex. F, at POM 000451; and<br><br> POM Ex. I, at POM002329–45. |
| 88.1 | The facts contained in paragraph 88.1 of PSG's Supplemental Responsive Statement of Facts are not material facts necessary for the disposition of the POM Parties' Motion for Summary Judgment. In PSG Ex. 24.5, Miele references litigation that POM asserted against the Commonwealth of Pennsylvania Department of Revenue and the City of Philadelphia. The Beaver County Case was decided on December 23, 2014 and did not involve either the Commonwealth of Pennsylvania Department of Revenue or the City of Philadelphia. Further, stating that someone testified to "significant assistance" does not create a fact that the assistance actually occurred. The POM Parties deny any assistance occurred. | POM Ex. J. |
| 89.1 | The alleged "facts" in paragraph 89.1 of PSG's Supplemental Responsive Statement of Facts are argumentative, constitute legal conclusions, and violate the Court's May 5, 2021 Order. As such, Paragraph 89.1 should be stricken.<br><br>To the extent that a response is required, the POM Parites deny that they are "infringers," deny the existence of any "conditional permissive right or license," deny any claim of "reverse confusion," and deny that PSG has any right to claim ownership of the Word Mark or Stylized Mark. In support of these denials, the POM Parties rely on the fact that the Pace developed the Word and Stylized Mark with no | POM Ex. F;<br><br>POM Ex. I,<br><br>POM Ex. DDD;<br><br>POM Ex. MMM; and |

41

| | | |
|---|---|---|
| | assistance from AU3, AU4, or any entity affiliated with AU3 or AU4. | POM Ex. S, AU4 2019 Dep. 182:12–183:3, |
| 90.1 | The alleged "facts" in paragraph 89.1 of PSG's Supplemental Responsive Statement of Facts are argumentative and contrary to the Court's May 5, 2021 Order. Furthermore, these alleged facts are not material to the POM Parties' pending Motion for Summary Judgment. This "fact" also calls for a conclusion of law. | |
| 90.2 | The alleged "facts" in paragraph 89.1 of PSG's Supplemental Responsive Statement of Facts are argumentative and contrary to the Court's May 5, 2021 Order. Furthermore, these alleged facts are not material to the POM Parties' pending Motion for Summary Judgment. This "fact" also constitutes a conclusion of law and is irrelevant. | |
| 90.3 | This "fact" is unintelligible due to misplaced words. It also is unclear what a "contracting operator" is in relation to a "venue." These facts are not material to the disposition of the POM Parties' pending Motion for Summary Judgment. | |
| 90.4 | The POM Parties deny that the testimony provided by Ms. Kendrew, Mr. Martin, or Mr. Dutcher support PSG's claim to be the senior user of the Word Mark or Stylized Mark at issue in this litigation. The POM Parties support his denial with the graphics Ms. Kendrew, Mr. Martin, and Mr. Dutcher testified to seeing on AU3 and AU4's electronic game machines, which are objectively distinguishable from the Word Mark and Stylized Mark at issue. | *Compare* PSG Ex. 14.1, at 3–5, PSG Ex. 14.2, at 9–11, and PSG Ex. 14.3, at 14–17 (depicting AU3's graphics with the words "Pennsylvania Skill Games"), *with* POM Ex. PP-1, and POM Ex. PP-2, at 9–22 (depicting the Stylized Mark "Pennsylvania Skill"); |
| 90.5 | The POM Parties are unclear as the facts alleged by PSG in paragraph 90.5 of its Supplemental Responsive Statement of Facts. Nevertheless, PSG has neither claimed that Pace nor the POM Parties used or misused confidential information. Thus, any alleged "fact" related to the misuse of confidential information is not a material fact necessary for the disposition of the POM parties' pending Motion for Summary Judgment. | |

{14017604.7}

| 93.1 | The POM Parties deny that the confiscation of Pace's Pennsylvania Skill terminals is a material fact for the disposition of the POM parties' pending Motion for Summary Judgment. Further, there is no modification of any Court Order or any superseding Order that changes the ruling in the Beaver County Decision. The legality of games is a matter of law and expert opinion, neither of which PSG offers to substantiate this "fact." | |
|------|------|------|
| 94.1 | The POM Parties deny that they ship Pennsylvania Skill terminals directly to locations using intermediaries. In support of this denial, the POM Parties rely on Miele testimony stating that its practice is to ship terminals directly to operators who then place the terminals in their locations. Furthermore, a number of Pennsylvania Skill game operators confirmed that Miele has never shipped Pennsylvania Skill terminals directly to a location. Therefore, the POM Parties admit they ship to operators and the operators place them wherever they see fit, and without any knowledge of any POM Party. | POM Ex. M, Miele 2019 Dep. 10–18; POM Ex. CC, Miele 2020 Dep. 187:12–22; POM Ex. GGG, R. McDanel Dep. 45:4–13; POM Ex. OOO, Mangiere Dep. 36:12–15; and POM Ex. QQQ, Mayes Dep. 59:7-14. |

Respectfully submitted,

Dated:  June 9, 2021

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ James C. Walls, III
Julian E. Neiser (Pa. Id. No. 87306)
E:  jneiser@spilmanlaw.com
James C. Walls, III (Pa. Id. No. 326841)
E:  jwalls3@spilmanlaw.com
One Oxford Centre, Suite 3440
301 Grant Street
Pittsburgh, PA  15219
T:  (412) 325-3301
F:  (412) 325-3324

**Attorneys for POM Of Pennsylvania, LLC, t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc.**

43

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a     CIVIL ACTION NO. 2:18-CV-00722-PLD
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,     CONSOLIDATED

        Plaintiffs/Counterclaim     The Honorable Patricia L. Dodge
        Defendants,

        v.

PENNSYLVANIA SKILL GAMES, LLC,

        Defendant/Counterclaim
        Plaintiff.

## CERTIFICATE OF SERVICE

I, James C. Walls, III, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy

Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on

this 9th day of June, 2021, I served the foregoing **POM Parties Reply to Pennsylvania Skill**

**Games' Supplement to Responsive Concise Statement of Material Facts** to counsel of record

via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
   Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By: /s/ James C. Walls, III
      Julian E. Neiser