## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

        Plaintiffs,

        V.

PENNSYLVANIA SKILL GAMES, LLC,

        Defendant.

PENNSYLVANIA SKILL GAMES, LLC,

        Plaintiff,

        V.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

        Defendants.

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES'
BRIEF IN OPPOSITION TO POM
PARTIES MOTION TO RE-OPEN DIS-
COVERY [ECF 150]**

Stepping back from the emotional self-serving letter presented by the POM Parties and the pejorative adjectives ("brandishing"...paper), the discrete admissive facts presented to this Court do not support relief.  The facts for consideration are as follows:

1.      The POM Parties presented this Court with an undated "statement." [ECF150-1] The date of a statement is important, and the POM Parties and their counsel know the date is important for a statement, such as would be necessary for an affidavit.  Yet, the date is conspicuously missing from the "statement." Moreover, any reference to any date of the statement is conspicuously missing from any averment in the joint Motion.  [ECF 150].  Only after directed nec-

essary inquiry from the undersigned to counsel for the POM Parties on July 21st and July 22nd, 2021, PSG was able to determine that the "statement" was received by counsel for the POM Parties more than two months ago, on May 26, 2021, and was withheld from presentation to this Court or the undersigned until filing at ECF 150.[1]

2.       In ¶12 of their joint Motion, the POM Parties assert that the undersigned would not agree to re-open discovery.  The date is again conspicuously missing from that averment, perhaps leading this Court to believe that the conversation was recent, which it was not.

3.       On May 26, 2021 (being the same date that counsel for the POM Parties received the "statement," then unbeknownst to PSG and not provided to PSG), counsel for the POM Parties indicated that he was going to send a letter, and the undersigned responded *on the same date,* being May 26, 2021.  Exhibit 1.

4.       Two days later, late in the day on May 28, 2021, counsel for the POM Parties sent ECF 105-2,[2] being their Exhibit 2 letter, which consists of meandering, self-serving and accusatorial assertions, some of which are years obsolete and regarding non-parties.[3]  [ECF 150-2]  *On the same date,* May 28, 2021, as a result of the nature, tone and presentation of the argumentative assertions to which PSG has unfortunately become accustomed, the undersigned indicated that resolution would need to occur in the record.  Exhibit 2.

---

1 ECF 150-2 is dated May 28, 2021 and references a declaration at p.1, ¶2, noting that counsel for the POM Parties confirmed in writing, on July 22, 2021, having received the statement from Mr. Hatch, ECF 150-1, on May 26, 2021, prior to ECF 150-2.

2 May 28, 2021, was the Memorial Day Holiday Weekend.

3 The undersigned was not aware that the "statement" existed.  This became known for the first time at ECF 150, and the date of the "statement" was received by counsel for the POM Parties (May 26, 2021) became disclosed only last week by directed inquiry, on July 21 and 22, 2021.  The ECF 105-2 letter has claims well prior to the close of discovery, such as a claim about the PSG website and use of a picture of Mr. Unis with Mr. Pace, which has been in use for years, and prior to both depositions of Albert Unis, IV.  Michael Pace is not a party.  *See,* ECF 150-2, p. 3, ¶6; Exhibit 3, hereto.  Statements about who owns the mark begs the trial question, and the flaming accusations of counsel for the POM Parties simply are not meaningful or material for this Court's consideration.

That was May 28, 2021, at which time the posture of the case was that summary judgment motion practice had not yet been completed, being between ECF 147 and ECF 148, and issues might have been more efficiently managed at that time.

5.      During the POM Parties' delay, for which no excuse is presented, the undersigned has learned that the surveillance footage from which the picture used by counsel for the POM Parties in ECF 150-2 has been destroyed and is apparently no longer available.

6.      Because the POM Letter, ECF 105-2, has a pictorial extraction from surveillance camera footage, and because counsel for the POM Parties commanded *PSG* to preserve evidence, at ECF 105-2, p. 4, ¶2, the undersigned made July 21 and 22, 2021, inquiries as to whether the footage that would exculpate PSG was preserved.  *Alas,* during the time of the POM Parties' delay in presenting the heretofore unknown "statement," the surveillance footage evidence has been destroyed, including all context regarding the extracted picture used at ECF 150-2.[4]

7.      There are a multitude of issues not presented to this Court, which forthright candor requires:

a.      The location at issue *formerly* had skill game machines.  The language used in the joint Motion and in the "statement" omits to make that fact clear to this Court, and, read carefully, the language is oblique.  In fact, the games that were on the premises were seized by the Pennsylvania State Police pursuant to 18 Pa.C.S.A. 5513 of the Crimes Code.  *See,* Exhibit 3.  As a result of that criminal seizure, there are currently no skill games in the location now or

_____

4 We note the minor point that paragraph 7 of the ECF 150-1 statement uses the pejorative characterization of "bizarre" and "unkempt."  The pejorative term "bizarre" has been used before by counsel for the POM Parties, at 2:20-cv-01177-PLD, ECF 81, ¶26, as well as again here at ECF 150-2, p. 3, ¶2, and as well as in the "statement," which suggests participation or prodding in the characterization used by Mr. Hatch.  The term "unkempt" also appears to be misplaced, as the picture chosen demonstrates a neat haircut, a professionally embroidered jersey, and shorts and shoes that some would say is quite kempt for a person who moves large game machines in and out of trucks and into stores.

3

at the time set forth in the "statement."  The joint Motion is not forthrightly clear that the location is a *former* Pace-O-Matic location no longer having skill games on the premises.  *Id.*

        b.      Paragraph 5 of the "statement" indicates that an inquiry was made about placing games into a location that had no games.  This is not a cause of action.  PSG is in the skill games business and is entitled to solicit new business.  The POM Parties regularly make visits to establishments.  *See, e.g.,* ECF 135, ¶16, ECF 147, ¶50.7; Deposition of Rick Goodling, P38:L11–17.  *Nothing probative whatsoever* is proffered in the "statement" or the joint Motion regarding the issues before this Court for resolution.

        c.      Paragraph 6 of the joint Motion indicates, by admission, that Mr. Unis approached to "collect" documents related to a seizure, which is also admitted at ECF-2, p. 1, ¶3. *Id.* This is not a cause of action.  Mr. Unis is entitled to investigate his rights, which include interest in the seizure that occurred related to the pending Pennsylvania Senate Bill 212, 2021 Session, relating to criminalization of gaming machines.  Adducement of the truth, by fair inquiry and voluntary third-party production, might be distasteful to Pace-O-Matic, but that is neither unfair nor a cause of action for the granting of relief.

        d.      In ¶10 of the joint Motion, the POM Parties aver that there was some "attempt" to circumvent the discovery closure in this case; however, there is no case law cited for the proposition that closure of discovery is an implied injunction against fair industry inquiries which are not commercial in nature for a dynamic context for which there is justification and privilege to investigate on separate grounds.  Moreover, there is a distinction between discovery closing for respective party obligations to respond under the schedule, and the acquisition of investigation data that is volunteered at any time, by anyone, particularly in a dynamic industry. Simply stated, if the POM Parties desire to assert a violation of any order of this Court, that order

needs to be referenced with the law that supports it.  However, of course, that assertion argues the POM Parties out of court on that basis, as that basis is not probative of the pre-existing substantive claims and issues in this case.

e.    Mr. Unis did not identify himself as Pace-O-Matic [Exhibit 3], and apparently, without the puerile claims of damage, it appears that there is no injury whatsoever, and it is not even made clear, on any good faith basis, for the joint Motion that asserts standing of all the POM Parties, which would need to be clarified in any discovery.  There are no machines in the location, there is no assertion of any business lost or gained, Mr. Hatch apparently knew to call a Pace-O-Matic/Miele/POM of PA/Savvy Dog representative for whatever clarity might have been required.  The assertion in the joint Motion, ¶16 is devoid of any basis for a liability or damage. A "mistake" or even a disputed misrepresentation during an investigation is not probative as to who owns the trademark at issue in the litigation.

8.    If the POM Parties believe that they have a claim for a misidentification during an investigation on a tangential point, perhaps that cause of action may be brought in state court on some identity theory.  In that case, PSG would have a basis to deny the claim and the injury, and would be afforded a full and fair opportunity to address the cause of action, as well as its privileges, justifications and affirmative defenses afforded under the law.

9.    Apart from the *lack of probative value*, the *intentional delay*, and the *destruction of evidence*,[5] the POM Parties conveniently isolate only two witnesses for discovery, being Mr.

---

[5]  It is suggested that counsel for the POM Parties knew of issues regarding preservation of data, and specifically charged PSG to preserve data at ECF 150-2, p. 4, ¶2.  Yet for its own witness, also while using extracted pictorial data from the subject evidence, placed before this Court, did not command Mr. Hatch to preserve the surveillance tape, which is now destroyed during the POM Parties' delay.  As a result, PSG should be entitled to the presumption that the evidence is exculpatory, and the Court should consider a sanction or admonishment that counsel for the POM Parties would delay the motion until after summary judgment practice and to allow the evidence of its witness to be destroyed during the interim.  *See, e.g., Schmid v. Milwaukee Elec. Tool Corp.*,13 F.3d 76 (3rd Cir. 1994) (where party has destroyed evidence relevant to dispute being litigated, "spoliation inference" arises, to effect that destroyed evidence would have been unfavorable to position of offending party.)

Unis and Mr. Hatch, both of whom have already supplied sworn statements.  However, the POM Parties opening the door on new claims and evidence, in light of destroyed evidence, must concede that Mr. Unis is entitled to a full and fair opportunity to defend his action and the context of that action.  If this Court is inclined to open this door, being that the discovery is not a new cause of action, but probative as to who owns the trademark and that the discovery would be meaningful to the jury rather than confusing them, PSG seeks an open discovery period for the right to defend itself by developing necessary record of circumstantial evidence, including by subpoena practice on Mr. DeLeo [ECF 150-1, ¶12] and Mr. Hatch, formal demands for the surveillance tape, and any other witness whose testimony or evidence provides a fair right for PSG to defend the claim, without which prejudice will occur.

10.    The request by the POM Parties will cause cost and complications that clearly outweigh what the POM Parties have already admitted was an investigative and not a commercial cause.  Apart from the lack of probative value, the intentional delay, and the destruction of evidence, the POM Parties have conflated issues and their request is not probative of the issues already claimed and before this Honorable Court for determination.  The POM Parties have clearly failed to meet their burden to re-open discovery.


WHEREFORE, Pennsylvania Skill Games prays that this Court DENY re-opening discovery.

Dated: July 27, 2021                              s/Gregg R. Zegarelli
                                                  Gregg R. Zegarelli, Esq.
                                                  Pa. I.D. #52717
                                                  TECHNOLOGY & ENTREPRENEURIAL
                                                    VENTURES LAW GROUP, P.C.
                                                  2585 Washington Road, Suite 134
                                                  Pittsburgh, PA 15241-2565, USA
                                                  v.412.833.0600 f.412.833.0601

**CERTIFICATE OF SERVICE**

I hereby certify my belief that a true and correct copy of the foregoing Request for Reconsideration was served upon the following counsel via the Court's CM/ECF System on the date set forth below:

July 27, 2021

Julian E. Neiser, Esq.
SPILMAN THOMAS & BATTLE, PLLC
jneiser@spilmanlaw.com

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com