14601922

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

### REPLY TO OPPOSITION TO MOTION TO WITHDRAW EXPERT REPORT AND DISCLOSURE

AND NOW COME Pace-O-Matic, Inc. ("Pace"), POM of Pennsylvania, LLC, Savvy Dog Systems, LLC, and Miele Manufacturing, Inc., ("Miele") (hereinafter referred to collectively as the "POM Parties"), by and through their undersigned counsel, and file the within Reply to Opposition to Motion to Withdraw Expert Report and Disclosure and states as follows:

### INTRODUCTION

The POM Parties submitted a simple motion to withdraw an expert report and designation of a witness who had not been deposed. This request is within the POM Parties' rights, the rules, and the case law. The motion also is appropriate considering the re-set deadlines in this case and because the issue of whether the game software contained within PENNSYLVANIA SKILL-branded Pace-O-Matic gaming machines are games of predominant skill is not before this Court.

PSG responded to this Motion with a misstatement of the record and has, again, relied entirely upon conjecture, unfounded accusations, and generic claims of "prejudice." Notably absent from PSG's submission are any facts or citation to applicable authority. PSG also is

14516869

apparently attempting to re-open fact discovery without submitting an affirmative, separate motion for such relief or justifying its basis.

Though PSG has not presented an affirmative motion to re-open discovery and/or compel the deposition of Mr. Farley or any related records, the POM Parties will respond in opposition to that argument.

## I.      The POM Parties' Request is Appropriate and In Accord with Case Law

The POM Parties filed the report of Nicholas Farley on September 19, 2019 in an abundance of caution due to an impending deadline set by Judge Mitchell. (ECF No. 44). Notably, PSG did not file an expert report at that time and missed the deadline.

Following summary judgment, this Court re-set the expert disclosure and report deadlines. (ECF No. 162). The Order is otherwise silent. Notably, PSG did not request or seek clarification from this Court on the issue despite having the opportunity to do so, and this Court's Order did not require an amendment or retention of any prior-filed report.

Mr. Farley has not been deposed in this case. Despite PSG's assertions, the Farley Report has not been used substantively. As such, no prejudice to PSG exists if the report is withdrawn because doing so will not remove any substantive evidence used in the case. Indeed, the POM Parties have no obligation, duty, or burden to establish the predominant skill features of the software, nor is the issue before this Court. If anything, withdrawal of the Farley Report is necessary to ensure that only relevant matters are put before a jury at trial. Otherwise, the Farley Report is silent as to any other matter.

District Courts have ruled that a "de-designated" expert that has not been deposed also should not be subject to further discovery. See, Elena Myers Court v. LLB Gym LLC, No. 16-4848, 2018 WL 3156800 at *2 (E.D. Pa. June 28, 2018) ("[T]he predominant conclusion, and the one the Court reaches here, is that the de-designation of [the expert] from testifying to non-

2

testifying expert shield him from a trial deposition..."); Callaway Golf Co. v. Dunlop Slazenger

Group Americas Inc., No. Civ. 01-669, 2002 WL 19906628 at*3 (D. Delaware 2002) ("A

common theme is apparent throughout the cases reviewed from various jurisdictions- the

conversion of an expert designated for trial purposes . . . to a consulting expert . . . is allowed and

results in insulating that expert from discovery, absent the showing of exceptional

circumstances."); Babcock & Wilcox Ebensburg Power, Inc. v. Zurich American Ins. Co., No.

3:02-299, 2005 WL 6763296 (W.D. Pa. Sep. 8, 2005) (using the balancing approach espoused in

House v. Combined Ins. Co. of America, 168 F.R.D. 236 (N.D. Iowa 1996)  and *disallowing* the

use of deposition testimony).

Even in a scenario where a de-designated expert *had been deposed*, a Court within the

Western District of Pennsylvania still denied the opposing party's request to admit the expert's

deposition testimony into evidence. Babcock & Wilcox Ebensburg Power, Inc. v. Zurich

American Ins. Co., No. 3:02-299, 2005 WL 6763296 at *1.

Elena Myers is directly on point. Judge Pratter in the Eastern District of Pennsylvania

ruled that a defendant could not compel the deposition of a de-designated expert under nearly

identical circumstances as here. Elena Myers at *4. The plaintiff designated an expert to testify

as to industry hiring standards. The plaintiff sought to de-designate the expert after a failed

summary judgment, which converted the witness into a non-testifying consulting expert. Id. at

*1, *2. The defendants requested a deposition of the previously designated expert, to which the

plaintiff refused. The defendants filed a motion to compel. Id.

The Court noted the majority approach of allowing work product

protection/consultatitative privilege to be restored even if a testifying witnesses designation is

withdrawn after his/her opinions have been disclosed. Id. at 2. This is true even if the report is

3

14516869

"used" in a "single pre-trial brief[1]." The Court noted that the plaintiff lost her summary judgment, which means the trial court ultimately gave the report no weight. Id. Further, the cases relied upon by the defendant were distinguishable because the de-designated expert had never sat for a deposition. Id.  As such, the de-designated expert was not deposed.

Here, Mr. Farley was never deposed, and while his report may have been mentioned at summary judgment (but was never substantively used, as will be discussed later in this Reply), that motion ultimately failed. As such this Court gave the report no weight.

Based on the above cases, the POM Parties' request is proper and the Motion to Withdraw should be granted. Conversely, PSG has failed to articulate "exceptional circumstances" to defeat the Motion to Withdraw. See, Babcock & Wilcox, supra.

PSG cites to a single case in its opposition without any context: Guinn v. CRST Van Expedited, No. CIV-09-1198-D, 2011 WL 2414393 (W.D. Ok. June 10, 2011). This case is factually inapplicable. In Guinn, plaintiff hired an expert to testify about customs and safety practices within the trucking industry and designated him as a testifying expert. Guinn, No. Civ-09-1198-D, 20011 WL 2414393 at *1. The plaintiff's expert was deposed and he prepared an expert report. Id. Following the deposition, the defendant decided that it did not need to hire its own expert and an additional witness would be duplicative because the Plaintiff's expert essentially covered the all the issues. Id.

Plaintiff decided to not call its expert as a witness at trial. The defendant attempted to use deposition designations of the expert at trial, to which plaintiff objected on the basis that the expert will not be testifying and allowing defendant to introduce the expert's testimony would be

---

[1] PSG attempts to suggest that the Farley Report was used substantively at summary judgment. This Reply will discuss how the report was not substantively used and PSG's characterization is flawed.

contrary to the expert witness provisions of F.R.C.P. 26. Id. Plaintiff also alleged prejudice if the expert were permitted to testify on behalf of the defendant. Id.

Crucially, the plaintiff never formally moved to de-designate its expert: it simply did not list the individual on its *second amended final pretrial report* (after listing the individual as a testifying expert on the previous two final pretrial reports. The Court in Guinn addressed the differences and protections afforded to non-testifying expert witnesses. Id. at *2. It focused in particular on the "exceptional circumstances" exception to the protections afforded to non-testifying witnesses and held that the defendant was entitled to the expert's report (even though the expert was no-longer testifying). Id. The Court noted that the Defendant could not hire its own expert without delaying the trial. Id. at *3.

Here there is no argument or indication that PSG was ever going to rely on Mr. Farley affirmatively. There is no affirmative obligation on the POM Parties to present any expert. No depositions have occurred involving Mr. Farley, so the Guinn case does not apply.

F.R.C.P. 26(a)(1) only requires parties to disclose expert witnesses who may testify. Indeed, the initial disclosure filed by the POM Parties years ago stated that Farley may testify (which is consistent with the rule). Put another way, if the parties were required to maintain the *status quo* regarding prior expert disclosures as they existed under the first deadline set by Judge Mitchell, then PSG should not be permitted to offer any expert report at all because they failed to meet the last deadline. Because the Court has re-set the deadlines, she has given PSG new life to file a report and designate a new expert. This cannot be a one-way street, and the POM Parties should similarly have the ability to withdraw its expert report and designation under the auspices of the re-set deadlines.

## II.     No Prejudice to PSG Will Result if the Motion is Granted

PSG claims "extreme prejudice" if the Farley Report is withdrawn or if a deposition is not permitted. However, PSG has failed to articulate how or why it would be prejudiced other than just saying so. There is no cause of action or claim pleaded that relates to the legality of the software. There is no allegation by PSG that any legal damage or adverse effect has occurred as a result of the PENNSYLVANIA SKILL-branded Pace-O-Matic software.

PSG claims that the "Farley Card" has been used. The POM Parties have no idea what that means. PSG has resorted (again) to sophomoric innuendo with nothing to back it up.

PSG makes the misleading statement that, "The POM Parties already used Nick Farley Reports." (Opposition, pg. 2). Note how PSG uses the phrase "Nick Farley Reports" and how it carefully avoids specifying whether it is the report identified in the POM Parties' Motion to Withdraw or something else. PSG then "cites" to four examples where Farley "reports" were "used." While the citations are correct, the application is entirely misleading, as is the assertion of a "volume of record" that stands in opposition to withdrawing the expert designation.

First, PSG cites to a report by Mr. Farley cited in support of the 2014 Beaver County decision. As this Court may recall, this decision determined that the PENNSYLVANIA SKILL-branded Pace-O-Matic software and games were predominantly games of skill, thus deeming them to be legal. This report is a matter of public record. However, it is **NOT** the one submitted by the POM parties in this case as part of its past expert disclosure. Therefore, that report is irrelevant and PSG should have disclosed the distinction to this Court. Further, if PSG wanted to depose Farley on issues related to the Beaver County decision, it could have sought the deposition based upon a factual distinction and put the matter before the Court during discovery. It did not. (ECF No. 122-2, pg. 4, table entry #25, Ex. U, POM000024-49)**.**

6

Second, PSG cites to a *completely different* Farley report regarding a *completely different* type of software. In fact, it was PSG—not the POM Parties—that acquired that this report. PSG hired Farley in 2018, without the POM Parties' knowledge, to obtain permission from the Lawrence County District Attorney's Office to place games in that jurisdiction containing software from Encore Skill Systems. (ECF No. 122-2, pg. 9, table entry #64, Ex. FF). The Encore software is a "competitor" to the legal software used and licensed by the POM Parties, even though Encore has never been adjudicated to be a game of predominant skill. This report and related facts were offered at Summary Judgment to demonstrate bad faith by PSG and how it was unfairly competing with the POM Parties while simultaneously attempting to enforce the Equipment Purchase Agreement in Beaver County (the primary agreement at issue in this case).

To restate this rather bizarre fact pattern more simply, PSG is arguing that its own report, authored by Mr. Farley, on a completely different system that was intended to compete with the POM Parties, should serve as a barrier to withdrawal of an unrelated expert report.

Third, PSG relies upon the fact that Farley was disclosed as a witness in both initial disclosures and an expert witness disclosure. This is a red herring. If anything, it shows that PSG could easily have made the argument earlier on to take Farley's deposition instead of one of the many others. PSG has not been bashful about filing motions for any number of things, so it is hard to understand why it did not pursue that deposition years earlier.

Fourth, PSG claims exhibits from the deposition of attorney Wayne DeLuca that contained prior versions of the Farley Report (also unrelated to this case) constitutes a substantive "use" by the POM Parties. This is blatantly misleading. At certain times in the past, Attorney DeLuca represented Pace-O-Matic. PSG demanded a review DeLuca's entire file at the deposition. Contained within those documents were reports from Mr. Farley related to Mr.

DeLuca's prior representation. Those old reports were not "used" by the POM Parties in this case. They merely were in the file and were made part of the record because they were exhibits to Attorney DeLuca's deposition called by PSG. Any representation to the contrary is a gross mischaracterization.

Fifth, PSG refers in a footnote to "reference" the record, without any explanation or substance, to support its claim that the POM Parties "used" the Farley Report. These citations are duplicative to the matters raised in the paragraphs above and also refer to three paragraphs within the POM Parties' Summary Judgment memoranda. (ECF No. 123, pg. 30). Those paragraphs merely point out, accurately, that PSG has utterly failed to establish any facts to challenge the legality of the Pace Software.

In addition to the above misleading citations, PSG's opposition failed to disclose that it was able to depose Pace-O-Matic corporate designees on the software used in its PENNSYLVANIA SKILL-branded machines. PSG was able to depose Chris O'Bier of Pace-O-Matic about the software, its versioning, and its features.

Specifically, PSG's 30(b)(6) notice requested a witness to testify about:

> the development of the game technology bearing the "PENNSYLVANIA SKILL" designation and/or placed into Beaver County, in the .44 version and progressions thereafter to the current version, the directives and policies for versioning, as well as the methodologies used for versioning and differences in the source code that was inspected by Nick Farley and referenced in his report (this requests includes an expectation that a developer or other technology proficient designee will be made)

Pace-O-Matic did indeed produce such a witness, PSG had the opportunity to ask questions to the designee about the subject for which he was designated, and no objection was made by PSG due to a lack of preparedness or limiting of questioning by counsel. No motion to compel was filed. In fact, PSG offered the Farley Report as an exhibit at this deposition but never asked a single question about it:

8

MR. ZEGARELLI: And just for the record, I will say that the documents that we've identified as Exhibit 15 is what I received in the production that was earlier referenced, plus my request for the production, as well as the Nick Farley report, which was approximately 55 pages.

So, the documents that are the exhibit plus the request that I issued and the Nick Farley report is the scope of the data that was provided. And I'm not going to, at least at this moment, put the Nick Farley report in front of you, Mr. O'Bier.

(See attached Ex. 1, Deposition of Chris O'Bier, 48:5-16).

Despite the fact that the Farley Report was an exhibit offered by PSG and having the Pace-O-Matic corporate designee available for deposition, PSG never used the exhibit in any substantive way. To be clear, PSG did not use the exhibit at all. PSG did, however, have a full and complete ability to conduct a fact deposition on the subject of the software and the versioning and it instead chose to talk about other matters.

A review of the summary judgment filings on behalf of the POM Parties show no affirmative use of the Farley Report. Therefore, the PSG argument of using a "Farley Card" is not only improper, it's wrong.

PSG had its chance to complete discovery and the time has passed for any further inquiries. PSG will not be prejudiced to allow withdrawal of the Farley Report. To the contrary, it was granted extraordinary latitude to build its case and received every possible courtesy in doing so. If past is prologue in this case, the POM Parties will be prejudiced because they will be forced to spend even more money and time on fact discovery that should have ended long ago and will likely have to engage in further motions practice to protect against disclosure of privileged information on matters that are irrelevant to the claims at issue.

9

## IV.   PSG's Conjecture Should Be Ignored

PSG makes several flippant and baseless comments that require some response, but substantively should be ignored.

PSG--with no basis, fact, or authority--alleges that Farley never was competent to issue any opinion in the past regarding legality of the games, nor does the state have resources to refute any such opinions. (PSG Opposition, pg. 1, fn. 1). This sweeping statement is akin to an op-ed piece without any citation to authority or record. The reality is that the PENNSYLVANIA SKILL-branded Pace-O-Matic software and related games in Pennsylvania have repeatedly been deemed to be predominantly skill-based, including the Beaver County case that has been a subject of this litigation. Pace-O-Matic has testified before the Commonwealth legislature and has successfully defended the legality of its software numerous time. Mr. Farley was accepted by a sitting judge in Beaver County and his opinion carried the day. Therefore, PSG's unfounded criticism of that judge is improper and baseless.

PSG's claim of "waiver" of attorney client privilege is equally baseless. It is unclear how PSG gets to this sweeping conclusion, but PSG has failed to cite a single fact or case to establish how attorney-client privilege has been waived other than because they "say so." There is no allegation of disclosure of privileged materials or any fact or conduct that would lead to such a result. This Court is well aware that F.R.C.P. 26 (a)(4) provides broad protections against discovery or disclosure of communications between counsel and expert, including non-testifying consulting experts. It is settled that a party does not place privileged information "at issue" by simply referring to or highlighting the existence of a privileged communication. Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994). Instead, a party waives a privilege where it selectively describes some specific aspect or detail of the communication and then seeks to advance a legal position by reliance on the specifically disclosed aspect of the

10

14516869

communication. Id. Gorchock v. Firstenergy Corp., No. 2:17CV1496, 2021 WL 2401351, at *1 (W.D. Pa. June 11, 2021). In fact, the Court in Elena Myers expressly stated that the privilege is "restored." Elena Myers, 2018 WL 3156800 at *2.

PSG's use of sophomoric nicknames and innuendo, e.g., the "Farley Card" and conducting a "shell game" is both inappropriate and argumentative, as is its attempt to state that the POM Parties are seeking to "avoid scrutiny" of the software. The Farley report was used in the most cursory fashion in this matter, primarily to establish that PSG has utterly failed to produce a single shred of evidence to support its contention that the software used in the Pace games is not "compliant." The fact is that the POM Parties have conducted business fully within the public eye, have participated fully with law enforcement and the Commonwealth legislature to regulate the skill gaming industry and obtain court rulings that the game software is legal. PSG cannot say the same.

Also, there is no reason why PSG should have access to source code of the Pace-O-Matic software, nor has it stated a basis for gaining access to it based upon the issues remaining in the case and the most recent expert designation by PSG that relates only to damages. Again, the legality of the games is not at issue, PSG is attempting to compete with the POM Parties, and the legality of the software is not at issue (and as stated above, went as far as to try and introduce a competing game into the Pennsylvania market). This should be the subject of a motion to compel discovery if PSG wants this issue to be heard.

Finally, PSG claims (without citation to authority) the need for "good cause" to be shown to support the POM Parties' Motion. As far as the POM Parties can tell, there is no such standard. A review of the applicable case law suggests that no such standard exists. To the contrary, PSG must meet an "exceptional circumstance" burden to obtain a deposition of Mr. Farley.

11

## CONCLUSION

After years of litigation, this case should be getting smaller and not bigger. There is no obligation for the POM Parties to work up PSG's case. It is the POM Parties' election and right to withdraw the report without waiver or loss of attorney client or work product protection, as Mr. Farley would then be considered a non-testifying consulting witness, which is the POM Parties' intent. As such, the POM Parties motion should be granted.

There is no basis whatsoever for PSG to reopen discovery and depose Mr. Farley under the existing law or the facts of the case. So far, PSG has taken an excessive number of depositions. Respectfully, PSG should not be permitted to continue to waste the POM Parties' time and money based upon the non-existent arguments just to cast stones at the POM Parties' business. Eventually, it will have to prove its own case with its own evidence.

The only matter before this Court is the withdrawal of the Farley Report. The POM Parties respectfully submit that the PSG Opposition does not sufficiently raise any basis for this Motion to be denied, nor should its Opposition serve as a motion to reopen discovery and take the deposition of Mr. Farley.

Respectfully submitted,

Dated:  February 2, 2022                SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

12

14601922

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

      Plaintiffs/Counterclaim
      Defendants,

The Honorable Patricia L. Dodge

      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant/Counterclaim
      Plaintiff.

## CERTIFICATE OF SERVICE

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy

Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on

the 2nd day of February 2022, I served the foregoing **Reply** to counsel of record via the Court's

CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
  Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
     Julian E. Neiser

# Exhibit "1"

48

Q.   All right.  So this information is helpful to you when you test the software?

A.   Yes, sir.

Q.   That's fine.  Okay.

MR. ZEGARELLI:  And just for the record, I will say that the documents that we've identified as Exhibit 15 is what I received in the production that was earlier referenced, plus my request for the production, as well as the Nick Farley report, which was approximately 55 pages.

So, the documents that are the exhibit plus the request that I issued and the Nick Farley report is the scope of the data that was provided.

And I'm not going to, at least at this moment, put the Nick Farley report in front of you, Mr. O'Bier.

And this would be a good place to break for counsel.  And then, what would you say, Julian, we'll reconvene at 10:30, or I'm sorry, 11:30?

MR. NEISER:  Yes, yes.

MR. ZEGARELLI:  All right.  We'll reconvene at 11:30.  Thank you.

VIDEOGRAPHER:  Off the record at 10:48.

(Brief recess, 10:48 a.m.)

VIDEOGRAPHER:  On the record at 11:32.