**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

------------------------------------------------------------------------------------------------------------------

PENNSYLVANIA SKILL GAMES, LLC

Plaintiff,

v.

PACE-O-MATIC, INC. and MIELE
MANUFACTURING, INC.,

Defendants.

**POM PARTIES' PRETRIAL STATEMENT**

Pursuant to Federal Rules of Civil Procedure 26(a)(4) and this Court's Pretrial Scheduling Order, Plaintiffs and Counterclaim Defendants POM of Pennsylvania, LLC, ("POM"), Savvy Dog Systems, LLC ("Savvy Dog"), Pace-O-Matic, Inc. ("Pace") and Miele Manufacturing, Inc. ("Miele") (together, the "POM Parties"), by and through their counsel, Spilman Thomas & Battle, PLLLC, hereby makes the following pretrial statement:

A.      **NARRATIVE OF MATERIAL FACTS**

In 2007, Pace began considering Pennsylvania as a potential market for expansion. After years of consideration, it created in 2012 a skill game it believed to comply with Pennsylvania law. Pace settled on the name "Pennsylvania Skill" for this game as early as 2012. This name paralleled others that Pace actively used in other markets, e.g., "Georgia Skill."

As a matter of prudence, Pace sought a judicial determination as to whether its game was legal under Pennsylvania law. Pace and Attorney Wayne DeLuca agreed in the fall of 2013 to put a game containing Pace software version 402.44 into a Pennsylvania location and organized a "controlled pickup" with the state police. Pace then delivered to Attorney DeLuca a terminal containing the Pace software for the controlled pickup. Prior to this time, in September, 2013, Pace sold games in Pennsylvania containing the same software, which displayed the words "PENNSYLVANIA SKILL" as such:



2

Subsequently, Attorney DeLuca asked a client, Albert Unis, III ("AU3"), to "pick up a game and put it in a bar." AU3 signed a receipt for the game under his own name, picked up the machine that displayed graphics identical to the image above, and put the machine in the American Italian Club in Ambridge, Pennsylvania. The state police impounded the game on November 9, 2013, Pace filed an action to recover impounded property, and after a trial on the merits, the Court of Common Pleas of Beaver County issued a ruling on December 23, 2014 (the "Beaver County Ruling") stating that the Pace software was predominantly a game of skill. There is no question or issue of fact on one significant point: AU3 had **no** involvement in the litigation involving the Beaver County Ruling and there is no evidence of record that AU3 and anyone from Pace ever communicated, in any way, prior to or during this time.

Prior to January 12, 2015, Pace created a name and artwork for the new Pennsylvania game. The first discussions regarding a branded name for the game occurred in September 2012. The words PENNSYLVANIA SKILL were used in conjunction with software builds for the Pace game in 2013 and appeared the phrase appeared on software sold in the Commonwealth in 2013, as shown above. Early versions of artwork featuring PENNSYLVANIA SKILL were created as early as January 23, 2014.

For example, a version of the PENNSYLVANIA SKILL stylized logo, appeared as follows as early as December 14, 2014:



After several modifications to the design elements of the PENNSYLVANIA SKILL trademark, all of which were accomplished by Pace through its subcontractors, Pace created the following final design trademark of PENNSYLVANIA SKILL on January 12, 2015, which appears as such:



Days later on January 14, 2015, after the Beaver County Decision and the creation of the above design mark, Ryan Wood ("Wood") of Pace had discussions with AU3 about selling Pace machines in Pennsylvania. AU3 owned a business called Aliquippa Industrial Park, Inc. ("AIP") through which AU3 distributed dart boards, billiard tables, and other coin-operated machines in Western Pennsylvania. Wood submitted an email that culminated in a term sheet between Pace and an amorphous "entity" called Albert Unis and Affiliates ("AUA").[1] This document (the "AUA Document") was executed on January 29, 2015 and required AUA to purchase 25 machines up front and then after a period of three months, AUA would be required to purchase 10 machines per month from that point forward. It did not.

AU3 then began negotiating a separate written contract to benefit his son Albert Unis, IV ("AU4") who was just out of high school. PSG's attorney, William Rodgers, drafted a contract that was entitled an Equipment Purchase Agreement ("EPA"). The parties then negotiated the terms for several months until the EPA was finally executed in May 2015. The EPA contained an

---

[1] There is no precise definition of what an "affiliate" is. AU3 stated that anyone he designated, known or unknown, at any time, was an affiliate and would be bound by the term sheet. Further, he defines an affiliate as other game operators, whether competitors or not, who work in Beaver County. Apparently, anyone can be an Albert Unis Affiliate, whether they want to or not.

undefined term called a "Right of First Refusal," which PSG claims to mean it has an "exclusive" right to place Pace machines in Beaver County such that no other operators could enter the territory. The EPA contains no such exclusivity provision. Further, the terms of the "right of first refusal" primarily relate to pricing, not "exclusivity," and it is an unreasonable interpretation of the EPA to suggest that PSG can sit back for years, do nothing, and exclude other operators (to the extent this even happened) from an entire county where Pace single-handedly obtained a favorable ruling.

PSG also claims "verbal agreements" with Pace occurred in or about 2012 or 2013 that form the basis for nearly all of PSG's claims in this lawsuit. AU3 claims that Pace agreed to "jointly develop" a game with him for the Pennsylvania market, that he permitted Pace to "use" the trademark PENNSYLVANIA SKILL, and the parties agreed that AU3 would "open the Pennsylvania market." There is no evidence suggesting an actual or potential discussion between Pace and anyone affiliated with PSG at any time or for any reason until 2015, and there is no evidence of record that any of AU3's claims have any validity.

In fact, PSG did not exist until months after the first interaction between Pace and AU3. The EPA was drafted and signed in May 2015. Weeks before execution, AU4 organized a company called Pennsylvania Skill Games, LLC.  At or about this time, AU4 admits he saw the PENNSYLVANIA SKILL design mark for the first time—on marketing materials Pace provided and in which AU4 admits he had no involvement or direction. None of the POM Parties' witnesses acknowledge ever *hearing* of the Unises until the spring of 2015.

PSG had a commercial head start in Beaver County and was armed with both Pace's support and the Beaver County Ruling that Pace obtained through more than a year of litigation. After all, PSG said it was entrenched in Beaver County and would purchase "hundreds" of

machines. Pace supported PSG with preferred pricing, creation of the PENNSYLVANIA SKILL trademark, creation of the game itself, and provided PSG with marketing materials. Instead of working diligently to take advantage of these benefits, PSG instead sat on its laurels and did nothing. It failed to purchase the "hundreds" of games it promised, and instead bought approximately 80 games from May 2018 until January 2019.  Instead of being a significant player in the market, which PSG claimed it would be, PSG remained a small-time operator. And instead of working through its own problems, PSG started looking for someone to blame.

By early 2018, the relationship between the parties began to sour. PSG filed a predatory trademark application for the word and design PENNSYLVANIA SKILL mark on the United States Patent and Trademark Office's Principal Register. PSG had the audacity to use the artwork Pace created in its application despite acknowledging during discovery that it had no involvement in its creation. The PSG trademark applications also contain numerous misrepresentations of fact and falsehood regarding its usage of the trademarks.

Pace filed this suit only after being threatened with a draft complaint by PSG and learning about the attempt by PSG to register the PENNSYLVANIA SKILL marks. Since that time, PSG has placed the marks on what are believed to be illegal or unadjudicated games. This intentional conduct by PSG not only harms the PENNSYLVANIA SKILL brand, but also undermines the significant efforts Pace and Miele have made to expand the skill game market in Pennsylvania.

PSG also has made claims in the public domain that it actively participated in litigating the legality of Pace's software, that it jointly developed the games with Pace, and is laying some ownership or other claims for the successes of the POM Parties. These claims are patently false and the only support PSG will have for these claims at trial is the testimony of AU3. There are no documents or corroborated testimony for any of AU3's claims.

PSG also has engaged in false advertising by placing the PENNSYLVANIA SKILL mark on machines that do not contain Pace software, but feature graphics suggesting that the games are genuine Pace products. PSG has admitted to this conduct. For example, the image below is of a PSG-owned game:



PSG "modified" the top header of the game where the PENNSYVLANIA SKILL design mark should be by adding the text SKL402.44PEN and the word "GAMES" to the mark. This is significant and demonstrates false advertising and unfair competition because: (1) the software version identified on the game is the one that was litigated in the Beaver County ruling that Pace obtained in its favor in 2014, which means the game is held out by PSG to the consuming public and law enforcement to be a legal Pace game; (2) the software running on this game is *not* from Pace and is illegal or unadjudicated under Pennsylvania law, so the representation of being Pace software is blatantly false; and (3) the addition of the word "GAMES" is an unauthorized variation of the PENNSYLVANIA SKILL mark. This is just one example of PSG's malfeasance.

The POM Parties will establish at trial:

- PSG had no involvement in the development of any Pace game or any aspect of the POM Parties' business;

- Pace created the trademark PENNSYLVANIA SKILL on its own accord and independently from PSG and used the mark in connection with the class of goods at issue in this case in interstate commerce;

- The Pace-created PENNSYLVANIA SKILL design mark has acquired secondary meaning in the marketplace solely through the efforts of Pace;

- Pace and its assignee, Savvy Dog, own the PENNSYLVANIA SKILL trademark, to the exclusion of all others, which has developed a secondary meaning in the marketplace through sales, marketing, and other efforts;

- Pace litigated the Beaver County case without any assistance from PSG or anyone affiliated with PSG;

- PSG failed to abide by its representations that it would buy and place "hundreds" of games in Pennsylvania;

- PSG failed to sell and/or market games in Beaver County, which resulted in an abandonment of the market;

- To the extent PSG may have had any trademark, it is limited in nature and was abandoned;

- The EPA has been terminated and/or abandoned since 2018 at the latest;

- PSG has unlawfully used the PENNSYLVANIA SKILL design mark in conjunction with illegal or unadjudicated games;

- PSG has misrepresented its role with the POM Parties, its involvement in the skill game market, and its role in relation to the POM Parties;

- PSG has suffered no damages despite its claims;

- PSG has engaged in unfair competition with the POM Parties; and

- The POM Parties have no further obligations to PSG.

**B.     DAMAGES CLAIMED AND RELIEF SOUGHT**

1.      Permanent injunctive relief, as pleaded the POM Parties' live Complaint.

2.      Entry of an Order that PSG expressly abandon the Trademark Applications for registration of PENNSYLVANIA SKILL trademarks;

3.      Entry of an Order that, at POM's and/or Savvy Dog's choosing, the registrant of the PSG domain names www.pennsylvaniaskillgames.com shall be changed from the current registrant to Savvy Dog, and that the domain name registry for the PSG domain name shall unlock and change the registrar of record for the PSG domain name to a registrar of POM's and/or Savvy Dog's selection, and that the domain name registrar shall take any steps necessary to transfer the PSG domain name to a registrar account of POM and/or Savvy Dog's selection; or that the same domain name registry shall disable the PSG domain name and render it inactive and non-transferable.

4.      That the POM Parties be awarded reasonable attorneys' fees and costs.

5.      Make a judicial declaration that Pace and Savvy Dog are the sole owners of the PENNSYLVANIA SKILL marks under common law rights.

6.      Award statutory damages under Pennsylvania and Federal law for trademark infringement, false advertising, and unfair competition, to include exemplary damages.

9

C.      **WITNESS LIST**

The POM Parties' Witness List is attached hereto as Exhibit 1. The POM Parties reserve the right to call any witness identified on Defendant's Witness List.

D.      **DESIGNATION OF WITNESS DEPOSITION TESTIMONY TO BE PRESENTED**

Per this Honorable Court's scheduling order, designations are due on November 14, 2022.

Additionally, it is possible that certain witnesses will be unavailable or outside this Court's jurisdiction. The POM Parties will confer with PSG to discuss the taking of depositions for use at trial to the extent necessary.

E.      **IDENTIFICATION OF DOCUMENTS AND EXHIBITS**

A preliminary exhibit list is attached hereto as Exhibit 2. The POM Parties also reserve the right to use any document identified by Defendant.

F.      **LEGAL ISSUES TO BE ADDRESSED AT THE FINAL PRETRIAL CONFERENCE**

1.      To the extent not already ruled upon, the admissibility of certain opinions by PSG's expert.

2.      While more procedural in nature, the sequence of the trial presentation considering the presence of counterclaims.

3.      Any outstanding issues related to damages or interpretation of the EPA that may involve questions of law.

10

4.      Resolution of questions relating to relief by the Court that cannot be awarded by a jury.


**G.      EXPERT DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(2)**

The POM parties have attached hereto as Exhibit 3 the expert disclosures for their expert William G. Krieger of Gleason & Associates, P.C., d/b/a Gleason Experts. This designation and rebuttal expert report was filed with this Court on March 29, 2022, ECF 187-00.

The POM parties reserve the right to amend their pretrial statement.

Respectfully submitted,

Dated:  September 6, 2022                            SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser _____
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PENNSYLVANIA SKILL GAMES LLC,          CIVIL ACTION NO. 2:18-CV-00722-PLD

    Plaintiff,          CONSOLIDATED

   v.          The Honorable Patricia L. Dodge

ACTION SKILL GAMES, LLC,

    Defendant.

## **CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing **POM's Pretrial Statement**

was served upon the undersigned counsel of record this 6th day of September, 2022 via the

Court's CM/ECF System:

      Via email to mailroom.grz@zegarelli.com

      Gregg R. Zegarelli, Esquire
      Zegarelli Technology & Entrepreneurial
       Ventures Law Group, P.C.
      2585 Washington Road, Suite 134
      Summerfield Commons Office Park
      Pittsburgh, PA  15241

      **Counsel for Plaintiff Pennsylvania
      Skill Games LLC**

        SPILMAN THOMAS & BATTLE, PLLC

        /s/ Julian E. Neiser
        Julian E. Neiser