## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NUMBER: 2:18-cv-00722-PLD |
| Plaintiffs, v. | The Hon. Patricia L. Dodge |
| PENNSYLVANIA SKILL GAMES, LLC, | **PRETRIAL STATEMENT OF PENNSYLVANIA SKILL GAMES** |
| Defendant. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Plaintiff, v. | |
| PACE-O-MATIC, INC. and MIELE MAN-UFACTURING, INC. | |
| Defendants. | |

### A.  Brief Narrative Statement

The Honorable Court is familiar with the consolidated cases and the issues, particularly following an extensive review of the POM Parties'[1] jointly filed Motion to Dismiss and PSG's responses thereto.

Reference is made to the "EPA" [ECF 135-9].  Generally speaking, the principal issue in the case is the set of obligations under the EPA, including the seminal concomitant use of a trademark that had been used and was being used by PSG at the time of the EPA as a word mark and a logo.

---

1 .  "PSG" means Pennsylvania Skill Games, LLC.  "POM Parties" means all or every other party in the superset consolidated cases, unless the context requires a more specific designation.

The EPA was the culmination of a long process of discussions and work by the parties relating to PSG being the lead distributor for Pace-O-Matic games in Pennsylvania, which was initiated within PSG's locale of Beaver County.  The EPA was signed in the physical hands of three adults, acting for Pennsylvania Skill Games, Miele Manufacturing, and Pace-O-Matic.  The EPA followed an earlier written January agreement, which was also signed by Pace-O-Matic and Miele.

The plaintiffs in the Lead Case are POM of Pennsylvania, LLC, t/d/b/a Pace-O-Matic and Savvy Dog Systems, LLC.  The Lead Case was filed first, on June 1, 2018, prior to the consolidated *Pennsylvania Skill Games, LLC v. Pace-O-Matic, Inc. and Miele Manufacturing, Inc.*, 2:18-cv-941, which was filed second, on July 18, 2018.  The reason why there are two cases is because PSG's counsel at the time sent an EPA breach letter to Pace and Miele with a copy of a presumptive state court filing.   The POM Parties filed first from a tactical perspective.

The EPA was intended to be the fruition of Albert Unis, III ("Albert") transferring the business to his son, Albert Unis, IV ("Albie").  Albert had been working in the games business for many years.  These Pace games were very close to illegal casino slot games, so they determined to do a "controlled pickup" by the Pennsylvania State Police.  There is no dispute that Albert used his client, the "American-Italian Club," as the selected venue for the seizure, in Beaver County.

Indeed, the lawsuit occurred in Beaver County and the Court ultimately held, on December 23, 2013, that the Pace game was a "skill game" (not a gambling device) and this ruling opened up the entire state of Pennsylvania for these slot-like casino-like machines.  It was a Pace manu-factured game, and an Albert venue, jointly working to achieve legalization.  These games are now so popular, they are almost ubiquitous throughout Pennsylvania at gas stations and mini-marts, as well as, *e.g.,* the large busy hub at Breezewood Gateway Travel Plaza that has dedicated an entire

floor to these profitable games.  The Beaver lawsuit at Albert's venue was the seminal cause for this to happen.

Because PSG was the master distributor after the Beaver County lawsuit ruling, the games used PSG's name, "PENNSYLVANIA SKILL" with the updated version of the PSG's existing logo.

The EPA provided deal-critical market protections for PSG, particularly regarding Beaver County, which was local to Albert and Albie.  However, Pace and Miele breached the provisions of the EPA by failing to adhere to the terms of the EPA regarding, among other things, PSG's pricing and market protections.  After this litigation ensued, the POM Parties began instituting "new requirements" for its vendors, and PSG's position is that it was not required to waive or to confound the protections set forth in the EPA.  Because PSG would not waive or confound its EPA protections, PSG would not sign the POM Parties' self-interested unilaterally-created new superseding terms.  The POM Parties retaliated and stopped selling hardware to PSG in breach of the EPC, and they increased the fill prices beyond the most favored nation protections set forth in the EPA.  In violation of the EPA, adding insult to injury, the POM Parties even sold to PSG's competitors with more favorable pricing than PSG.

The expert calculations and historical purchases and earnings demonstrate that the income from these slot-machine-like games is astonishing.  The games are operated by computer software fill codes and the replenishment of play is achieved by calling for a new code.  When the POM Parties were presented with immediate buy opportunities from PSG competitors, the POM Parties took the unlawful deals, playing the probabilities of practical costs of PSG's ability to enforce the EPA through to trial.  PSG has endured to bring the matter to trial, and the $7M–$212M damage calculation is simply the math of it for the volume of these legalized casino-like slot-like machines.

PSG will establish at trial:

1. The EPA is legally enforceable on the terms set forth therein, and PSG is not in violation of the EPA.

2. PSG contributed critical seminal value to legalization of the Pace games in Pennsylvania.

3. That the trademark at issue is legally enforceable by PSG and PSG is using it as the senior user.

4. That the contributions, if any, by the POM Parties staff in adding "canned art" to a freshened logo are immaterial and inure to the ownership of PSG, whether as set forth in the EPA or by operation of law.

5. That all rights in the trademark at issue inure to the ownership of PSG.

6. The successful denial of the claims made by the POM Parties and as set forth in their Pretrial Statement, and that the POM Parties knowingly, capriciously, willfully, and intentionally breached the EPA and violated PSG's trademark.

7. The POM Parties are entitled to the damages claimed.

## B.  Damages Claimed and Relief Sought

PSG claims the following damages, including, but not limited to, the damages claimed in the pleading in this action:

1. Permanent injunctive relief against the POM Parties preventing any further use, directly or indirectly through any common interest or control, of PSG's "PENNSYLVANIA SKILL" trademark.

2. Declaratory relief that "PENNSYLVANIA SKILL" is the trademark of PSG, that US Patent & Trademark Reg. No. 5,887,224 is a valid registration, that US Patent & Trademark Application Serial No. 87/856,442 is entitled to registration.

3. Declaratory relief that US Patent & Trademark Application Serial No 87/941.545 is not entitled to registration, that US Patent & Trademark Application Serial No. 87/856,442 is not entitled to registration, and the POM Parties' Pennsylvania state registrations were illegally acquired by misrepresentation and knowledge of the earlier federal filings by PSG and are thereby made null and void.

4. That the EPA is valid and enforceable under the terms set forth therein, with equitable relief enforcing the provisions of the EPA.

4

5. POM Parties have violated the EPA and are liable for monetary damages as set forth by PSG's expert.  See Section G, <u>Exhibit 3</u>.

6. Statutory and all damages provided by law, attorneys' fees and costs to the fullest extent provided by applicable law, including, but not limited to, as set forth in PSG's expert report.

### C. Witness List

PSG's witness list is attached hereto as <u>Exhibit 1</u>.

### D. Designation of Witnesses

PSG's witness list is attached hereto as <u>Exhibit 2</u>; provided, however, that PSG must necessarily reserve rights without waiver regarding the POM Parties' abstract deferral by indicating witnesses potentially not appearing for the trial with a delay reference to a November 14, 2022 deadline (PSG presuming all witnesses for the POM Parties' case in chief would be present in person before this Court).  Counsel will need to meet and confer in this regard to obtain clarity on the content of the POM Parties' proffer as set forth in Section D of their joint Pretrial Statement and proceed thereafter accordingly.

### E. Identification of Documents and Exhibits

PSG's witness list is attached hereto as <u>Exhibit 2</u>, reserving all rights identified by the POM Parties or as otherwise permitted by law.

### F. Legal Issues to be Addressed at the Final Pretrial Conference

Generally, as of the date of this Pretrial Statement, there are no unusual issues to identify for the Pretrial Conference.  However, PSG notes: i) there is a fair volume of sealed and confidential documents that will need to be managed at trial; ii) evidence was acquired through a related case of *Pennsylvania Skill Games, LLC v. Action Skill Games, LLC v. POM of Pennsylvania, LLC and Savvy Dog Systems, LLC, Intervenors,* No. 2:20-cv-01177-PLD, regarding which counsel will need to meet and confer in this regard; iii) witnesses are identified on the POM Parties' witness

list heretofore unknown to PSG, for which a meet and confer will be required; and iv) the POM Parties have indicated a volume of internal documents, although the POM Parties' witness list and attendees at trial has not been yet made clear as aforesaid, so a meet and confer will need to occur in this regard.  PSG anticipates that issues are likely to arise as the trial date approaches and will raise the issues in due course by amendment or other proper procedure.

**G.  Expert Disclosures Pursuant to Fed.R.Civ.P. 26(a)(2)**

PSG has attached hereto as <u>Exhibit 3</u> the expert disclosure for its damages expert, Jeff Anderson, CONSOR®.  The Expert Report is filed at ECF Nos. 172, 184 and 202 (unredacted) and ECF Nos. 173, 203 (redacted).

PSG reserves all rights without waiver to amend this Pretrial Statement to the fullest extent permitted by law.

September 20, 2022

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing Pretrial Statement was served upon all counsel via the Court's CM/ECF System September 20, 2022.

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com