14601922

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a        CIVIL ACTION NO. 2:18-CV-00722-PLD
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,                            CONSOLIDATED

    Plaintiffs/Counterclaim        The Honorable Patricia L. Dodge
    Defendants,

      v.

PENNSYLVANIA SKILL GAMES, LLC,

    Defendant/Counterclaim
    Plaintiff.

**BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE AND**
**TESTIMONY REGARDING VARIOUS ISSUES RELATED TO PACE SOFTWARE**

  AND NOW COMES Pace-O-Matic, Inc. ("Pace"), POM of Pennsylvania, LLC ("POM"),

Savvy Dog Systems, LLC ("Savvy Dog"), and Miele Manufacturing, Inc., ("Miele") (hereinafter

referred to collectively as the "POM Parties"), by and through their undersigned counsel, and file

the within Brief in Support of their Motion *In Limine* to Exclude Evidence and Testimony

Regarding Various Issues Related to Pace Software:

**INTRODUCTION**

  This case involves competing trademark, breach of contract, and unfair competition

claims among other related causes of action. This Court is undoubtedly aware of the claims by

and between the parties and the boundaries of issues in dispute.

  However, one issue should not be put before a jury at trial: Whether the software

contained within PENNSYLVANIA SKILL-branded Pace-O-Matic machines is legal or in

compliance with Commonwealth law.

  Indeed, Pennsylvania state courts have considered the "legality" of Pace software

numerous times and in each occasion have ruled in Pace's favor, holding that the outcome of the

14516869

games are predominantly based on skill, not chance. None has ruled against Pace[1]. PSG should not be permitted at trial to attack or call into question this reality considering the limitations of the claims at issue and the lack of expert testimony on a technical subject.

It is expected that PSG will attempt to offer evidence at trial that software created by Pace and licensed by the POM Parties is somehow "illegal" or otherwise not a game in which skill predominates over chance. Further, it is anticipated that PSG will attempt to offer evidence that the game play between the original version of Pace software from 2013[2] is materially different than each and every subsequent software update distributed in Pennsylvania. PSG is therefore expected to argue in vague and unsupported terms that the software is not "compliant." In any case, and for the reasons set forth herein, PSG should be excluded from offering any testimony or evidence at trial that suggests the POM Parties' games are illegal or otherwise not compliant with Pennsylvania law.

The POM Parties therefore Move In *Limine* to exclude or preclude any such attempts to offer evidence, testimony, or argument by PSG at trial.

1. **Challenging the "Legality" of the Pace Software is Highly Technical and Requires Expert Testimony that PSG Cannot Offer**

The parties previously argued the issue of whether the POM Parties could withdraw an expert disclosure of Nick Farley, who is a consulting expert to the POM Parties. This Court granted the POM Parties' Motion to Withdraw, and stated, "It is worth noting that PSG has the

---

[1]   Based on the content of this Brief and the citations contained herein regarding Pace's litigation in Pennsylvania Courts regarding the legality of its software, it is requested that this Honorable Court take judicial notice pursuant to F.R.E. 201 that the Pace software is legal under Pennsylvania law.

[2]   This software is known as version 402.44 and was at issue in the Beaver County Court of Common Pleas case at No. MD 965-2013 (the "Beaver County Ruling"). This case held, without appeal, that the Pace software is legal under Pennsylvania law.

14516869

burden of proof regarding its claim of non-compliance and could, if it chose to do so, offer expert testimony on this issue. To date, it has chosen a different trial strategy. This does not require POM to submit any expert testimony to a claim to which it does not bear the burden, however." [ECF No. 178, pgs. 3-4]. A true and correct copy of this Honorable Court's Order is attached as Exhibit 1.

Expert discovery closed on June 30, 2022. PSG did not offer any expert testimony regarding the legality of the POM Parties' games or software. PSG's witness list filed on September 20, 2022 is devoid of any witnesses who could competently testify as to the legality of the games, even if permitted. If PSG were to offer such a fact witness, to include the principal of PSG itself (who is not designated as an expert), such testimony would be impermissible lay testimony.

F.R.E. 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
>> (a) rationally based on the witness's perception;
>>
>> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>>
>> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

There is no question that any fact or evidence regarding legality of the Pace software (or compliance with Commonwealth law) will require scientific, technical, or other specialized knowledge within the confines of Rule 702. PSG cannot side step this requirement through fact witness testimony that merely offers perceptions of the game play and general conclusions that the games' outcome is predominantly based on the player's skill.

Initially, the Commonwealth must be a party to an action in which a judicial determination of a device's legality is sought.  That is because it is the Commonwealth's burden

to establish that a purported illegal gambling device is in fact contraband. The Commonwealth cannot rely simply on its opinion or belief that property is contraband, or that the property could potentially be used for an illegal purpose. See Com. v. Twelve Dodge City Video Poker Machines, 537 A.2d 812, 814 (Pa. 1988) ("The mere possibility of using a device for gambling purposes is not what allows for its confiscation . . . ").

In such cases, "[t]he proper inquiry is whether the machine is so intrinsically connected with gambling as to constitute a gambling device *per se*." Commonwealth v. Irwin, 636 A.2d 1106, 1107 (Pa. Super. 1993) (internal citation omitted). "A machine is a gambling device *per se* if it can be used for no purpose other than gambling." Id. at 1107. A determination of whether a machine is a gambling device *per se* is made by comparing the characteristics of the machine against the elements necessary to gambling, namely: (a) consideration; (b) result determined by chance rather than skill; and (c) reward. Commonwealth v. Wintel, Inc., 829 A.2d 753, 757-758 (Pa. Super. 2003) (citing Commonwealth v. Two Electronic Poker Game Machines, 465 A.2d 973, 977 (Pa. 1983)).

In determining whether a game is one of chance or skill, a court must evaluate the relative amounts of skill and chance present in the play of the machine and the extent to which skill or chance determines the outcome. Two Electronic Poker Game Machines, 465 A.2d at 977-978. In order for a game to constitute gambling, it must be a game where chance predominates rather than skill. Id. A showing of a large element of chance, without more, is not sufficient, and the outcome need not be wholly determined by skill in order for a machine to fall outside the gambling *per se* category. Id. The mere fact that a machine involves a substantial element of chance is insufficient to find that a machine is a gambling device. Id.

The foregoing standard naturally requires technical expertise, because it involves a qualitative evaluation of the subject software. *See, e.g.,* Gracie Techs., Inc. v. Commonwealth,

14516869

No. 627 C.D. 2019, 2020 WL 1231395, at *1 (Pa. Cmwlth. Mar. 13, 2020) (explaining that both parties presented expert testimony concerning whether purported gambling devices met standard for predominant factor test that skill predominated rather than chance).

The legality of the POM Skill Games is the subject of two cases currently pending before the Pennsylvania Commonwealth Court, captioned POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania Department of Revenue, et al., 418 MD 2018 and POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement, 503 MD 2018.   Presently, the Skill Games are legal games of skill—and not illegal gambling devices—as determined by the Beaver County Court of Common Pleas.  See In re: Pace-O-Matic Equipment, Terminal I.D. No. 142613, M.D. No. 965-2013 (Beaver Co. C.C.P. Dec. 23, 2014).[3]

**2.  The "Legality" of the Pace Software is Not at Issue and Therefore is Irrelevant**

The POM Parties acknowledge that interpretation of an Equipment Purchase Agreement ("EPA") is at issue. The EPA does indeed reference "compliant" terminals.  However, PSG has not articulated any actual damages, losses, or harm as a result of any "non-compliant" terminals—nor has it asserted any basis to claim that the POM Parties needed PSG to approve any changes to software subsequent to the EPA. The POM Parties also acknowledge that one of PSG's counterclaims (Count I – Trademark Infringement) alleges the POM Parties sold machines that contain software allegedly different from the software at issue in the Beaver County Ruling, e.g., new versions of the software or technical updates render the games "non-

---

[3] A copy of the Beaver County decision is attached hereto as Exhibit 2.  The POM Skill Games have also been treated as legal games of skill by the Pennsylvania Office of Attorney General, which issued Stipulated Orders permitting the return of POM Skill Games to the establishment from which they were seized.  See Exhibit 3.  Similarly, the district attorneys of Centre and Lawrence counties have concluded that POM Skill Games are games of skill, not games of chance.  See Exhibit 4.  By contrast, no court in Pennsylvania has ever held that the PENNSYLVANIA SKILL-branded Pace games are games of chance.

14516869

compliant." (ECF No. 30 at 40-41).  Since pleading that issue, PSG has neither produced any evidence that the POM Parties' games are "illegal," nor has it offered any expert testimony on this issue, as noted above. Instead, PSG has focused entirely on alleged economic damages unrelated to whether the games are "compliant." PSG's expert report does not address the issue, PSG's pretrial statement does not claim damages on the issue, and there is no record evidence thus far that PSG has suffered any economic or non-economic damages even assuming its argument is true.

Quite simply, the argument of "compliance" is merely a "scorched earth" argument designed to inflame a jury without cause or basis[4], as the remainder of  PSG's claims are so threadbare and speculative that it must resort to such tactics.

3.   **Even if "Legality" or "Compliance" Were Relevant, Any Testimony or Evidence on the Issue is Subject to Exclusion Under F.R.E. 403**

F.R.E. 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Assuming, *arguendo*, the issues of legality or whether the games are compliant with Commonwealth law are deemed to be relevant, Rule 403 should serve to preclude the testimony. Without expert testimony, the issues in the case will be confused, the jury will be misled, and the limited time available for trial will be wasted.

---

[4] On one hand, PSG is seeking many millions of dollars in damages related to trademark infringement and seeks disgorgement of profits based upon all sales of terminals, fills, parts, or any other source of revenue by all the POM Parties regardless of whether these sales are attributed to the trademark itself and without first establishing ownership of the trademark and a secondary meaning. On the other, it seems PSG also is arguing it is entitled to all profits from all sales related to the allegedly "non-compliant" software. PSG cannot have its cake and eat it, too.

6

In particular, Exhibits A and B identified in PSG's Pretrial [ECF No. 204] suggests that PSG intends to offer a video demonstration of the differences between software version 402.44 and the most current version of the software. There is no evidentiary value to such a demonstration and any alleged differences in the gameplay that go to legality or "compliance" cannot be discerned by such a skit. If any such demonstration attempts to call into question the skill element of the software or it crosses over into legality or compliance with Commonwealth law, the POM Parties would be unfairly prejudiced—and a sideshow of unnecessary evidence and testimony would need to be introduced in rebuttal.  The same would be true for the "comparative chart of gameplay" identified as Exhibit C to PSG's pretrial exhibit list. Not only do the POM Parties have no idea what this is, such an exhibit should not be allowed to question the legality of the games.

It is also an absurd and unfairly prejudicial argument for PSG to claim that Pace or any other POM Party should be required to freeze software development for the entire Commonwealth based upon a bald assertion that every software update since the Beaver County Ruling in 2014, however so slight, renders the games as "non-compliant" and therefore violative of a vague Equipment Purchase Agreement or PSG's trademark "rights."

There is no expert testimony, record evidence, or authority that exists to demand such a limitation. It would be unfairly prejudicial and outside the boundaries of lay witness testimony to make such a claim at trial without an expert witness armed with technical knowledge and some factual assertion that PSG has both been harmed and has credibly placed legality at issue. PSG has not done so even after four years of litigation, and the POM Parties are unaware of any legal precedent that would require it to submit each and every software update to a third party for a stamp of approval. No such mechanism even exists under Pennsylvania law, which is why the

7

14516869

"controlled pickup" process was necessary in regards to the Beaver County Ruling and in other cases[5].

What's more, the *entire* factual predicate for PSG's argument is based on an alleged oral agreement between Albert Unis, III, a non-party to this litigation, regarding an alleged permitted use of the PENNSYLVANIA SKILL trademark, which just so happens to lack any documentation, memorialization, contract, text message, or any other tangible proof that a "trademark" was ever discussed until PSG decided to file its predatory trademark applications and threaten this suit. The POM Parties vehemently deny any claim that PSG ever discussed a trademark or that any trademark even existed before Pace created it, but recognize PSG's ability to make it at trial. However, the ability to make an argument at trial on one issue should not give license to allow much broader testimony that attacks the "legality" of the software, which can only be established through expert testimony.

### 4. Any Facts or Evidence by PSG on the Subject of Legality or Compliance With Law Would Constitute a Conclusion of Law

PSG also should be precluded from presenting testimony or evidence on the issue of legality or "compliance" because doing so would result in the rendering of legal opinions that invade the province of the court. Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) McKean v. Nationwide Ins. Co., No. 3:12-CV-1206, 2014 WL 12524685, at *2 (M.D. Pa. May 13, 2014). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. First National State Bank v. Reliance Elec. Co., 668

---

[5] The POM Parties produced change logs for subsequent Pace software versions and offered Chris O'Bier as a corporate designee to discuss the changes to the software. This discovery occurred in October, 2021 and PSG has had ample time to designate an expert and submit a report based upon this information if it truly believed there were issues with the software.

14516869

F.2d 725, 731 (3d Cir. 1981). <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 217 (3d Cir. 2006).

**5.  If PSG is Permitted to Present Testimony on Legality or "Compliance," the POM Parties Should be Permitted to Submit Rebuttal Expert Testimony**

As the Court noted in its ruling cited above regarding the withdrawal of the Farley report, PSG has "chosen a different path" regarding its trial strategy. It has not offered an expert report for rebuttal, and based upon the arguments set forth in the POM Parties' Motion and this Brief, it should be precluded from mentioning the issue of legality or "compliance."

However, if this Honorable Court disagrees with this Motion and permits PSG to introduce evidence and testimony on this subject at trial, it is requested that the POM Parties be permitted to submit a rebuttal expert witness.

**CONCLUSION**

Based on the foregoing, the POM Parties move this Court *in limine* to exclude and preclude PSG from offering evidence, testimony, or argument related to: (1) the legality of the software contained on any of the gaming machines at issue; and (2) compliance of said software with Commonwealth law. This exclusion should extend to opening statements, any witness examination, documentary evidence, and/or argument, to include the video demonstration sought by PSG or the "comparative chart of gameplay."

This Court need only look at prior arguments and motions practice of PSG to appreciate that PSG will be attempting to "throw everything against the wall to see what sticks." PSG's arguments in its challenge to the POM Parties' Motion to Withdraw Expert and PSG's Motion for Joinder should serve as a harbinger of things to come if PSG is permitted to raise arguments that lack any connection to the claims at issue.

14516869

Respectfully submitted,

Dated:  September 30, 2022

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

10

14601922

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

        Plaintiffs/Counterclaim
        Defendants,

The Honorable Patricia L. Dodge

        v.

PENNSYLVANIA SKILL GAMES, LLC,

        Defendant/Counterclaim
        Plaintiff.

## CERTIFICATE OF SERVICE

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy

Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on

the 30th day of September, 2022, I served the foregoing **Brief** to counsel of record via the Court's

CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
     Julian E. Neiser