**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**BRIEF IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE THE JURY FROM DETERMINING ACCOUNTING PROFITS**

AND NOW COMES Defendants Pace-O-Matic, Inc. ("Pace"), Miele Manufacturing, Inc., ("Miele"), POM of Pennsylvania ("POM"), and Savvy Dog Systems, LLC ("Savvy Dog") (hereinafter referred to as the "POM Parties"), by and through their undersigned counsel, and file the within Brief in Support of Motion *In Limine* to Exclude the Jury from Determining Accounting Profits. Alternatively, the POM Parties request the Court bifurcate the issue of damages solely with respect to the disgorgement of profits until after a verdict regarding ownership of the PENNSYLVANIA SKILL trademarks.

**INTRODUCTION**

Pennsylvania Skill Games, LLC ("PSG") has offered several damages theories, one of which includes disgorgement of all profits made by Pace, POM of Pennsylvania, and Miele for all Pennsylvania operations from June 6, 2016 until January 1, 2021. PSG's expert refers to these damages as "unjust enrichment." See, Expert Report of Jeff Anderson, pgs. 6 through 9, a copy of which is filed under seal at ECF No. 173-1. Mr. Anderson states that "unjust enrichment may

be defined as the gross profit Defendants earned at the expense of PSG. Since Defendants profited by using the Trademark without permission, PSG is entitled to such profits." Id. at 6. Mr. Anderson then goes on to simply add up all profits made by all the POM Parties during the aforementioned time period and opines that this huge amount of money should be paid to PSG with no other analysis or justification.

Mr. Anderson's deposition (portions of which are attached hereto as Exhibit 1) confirms this simplistic process, in which he simply states that his only obligation is to add up profits and put them in a report. He admits performing no analysis to determine if the "unjust enrichment" damages he espouses are actually attributable to the POM Parties use of the trademark. (Ex. 1, 87:18-88:1).

PSG claims the burden to deduct expenses from an unjust enrichment calculation shifts to the POM Parties once revenues are shown. This is true only if PSG first demonstrates that profits at issue are "attributable" to the trademark. PSG has not met that threshold, so no burden shifts to the POM Parties. This issue is briefed in the POM Parties' Motion *In Limine* seeking a Daubert hearing and to exclude or limit Mr. Anderson's opinions regarding disgorgement/unjust enrichment damages.

This Court is well aware that the parties contest the ownership of the PENNSYLVANIA SKILL trademark. Further, there are questions of fact regarding "oral contracts," oral licenses, application of the statute of frauds, laches, and a litany of other factual/legal predicates that require a finding of fact or verdict before damages are remotely relevant. Both parties have work left to do at trial.

The POM Parties contend that the determination of PSG's entitlement to unjust enrichment damages in the form of profits disgorgement should not be tried to the jury. Alternatively, these damages issues should be bifurcated until after a verdict is rendered.

Therefore, PSG should not be permitted to put the disgorgement/unjust enrichment damages (e.g., all profits made over a period of years) in front of a jury under any circumstances.

First, the equitable remedies in the form of unjust enrichment disgorgement are properly vested in the trial court, not a jury. Second, even if the Court determines that under some circumstances it were appropriate to allow a jury to make equitable remedies determinations, the POM Parties contend that the complexity of the issues relating to an equitable accounting in this case should preclude submitting these issues to a jury. Accordingly, the determination of equitable relief in this case should not be tried to the jury, but rather this Court.

Alternatively, the POM Parties requests the Court to bifurcate the issue of damages solely with respect to the disgorgement of profits until after a verdict regarding ownership of the PENNSYLVANIA SKILL trademarks. To be entitled to unjust enrichment damages, PSG must first establish trademark ownership. Ownership of the trademarks is in dispute and will be resolved at trial. However, it would be unfairly prejudicial to the POM Parties for PSG to put the entirety of profits earned by each of the POM Parties without establishing the predicate of: (1) ownership; and (2) being attributable to the mark. There are no punitive damages in this case, and therefore, PSG should not be permitted to place the entirety of earnings before the jury on its bare allegations as it would be unfairly prejudicial and would mislead the jury.

Therefore, at the very least, the POM Parties move this Court to bifurcate the issue of damages solely with respect to the disgorgement of profits pending the outcome of the underlying infringement claims.[1]

_____

[1] The POM Parties have filed a separate Motion *In Limine* asking the Court to conduct a pre-trial evidentiary hearing to evaluate the methodology used by PSG's expert Jeff Anderson testimony with respect to the disgorgement of profits under Fed. R. Evid. 702.

## **ARGUMENT**

### I.    **DETERMINATION OF EQUITABLE REMEDIES IS VESTED IN THE COURT**

PSG ostensibly relies upon Section 35(a) of the Lanham Act for an accounting of profits as an equitable remedy for Lanham Act violations. See 15 U.S.C. § 1117(a). Specifically, Section 35(a) states (with emphasis supplied):

> When a violation of any right of the registrant[2] of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, **shall have been** established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and **subject to the principles of equity**, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

Id. Thus, unlike any damages which a plaintiff might prove, an award of a defendant's wrongful profits does not automatically follow a determination of trademark infringement liability. A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 209 (3d Cir. 1999); See also Gucci Am., Inc. v. Daffy's, Inc., 354 F.3d 228, 243 (3d Cir. 2003).

Section 35(a) does not merely make the award of a defendant's wrongful profits "subject to the principals of equity," it vests the courts with exceptional equitable powers that require exercise of the trial court's discretion and judgment:

> If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its **discretion enter judgment for such sum as the court shall find to be just**, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

---

[2] The POM Parties have also filed a separate Motion *In Limine* regarding a limitation on the use of trademark applications to claim "ownership" of the trademarks. As that Motion notes, PSG has registered only the word mark on the supplemental register, which is subject to a cancellation proceeding and confers no right of ownership. There is no trademark registration for the design mark. Further, this Court ruled at summary judgment that the word mark PENNSYLVANIA SKILL is descriptive and a secondary meaning must be established at trial. [ECF No. 157 at 14, fn. 12]. Therefore, PSG lacks any statutory "ownership" right, which must be established *before* PSG can avail itself of any damages under the Lanham Act, including disgorgement.

15 U.S.C. § 1117(a) (emphasis added). As the Third Circuit has held, under Section 35(a) Congress made "an individualized equitable inquiry central to awarding remedies under the Lanham Act." Gucci Am., Inc., 354 F.3d at 243. Moreover, the determination of whether an accounting is appropriate in a given case is intimately linked to the grant of other equitable remedies vested in the trial court. A&H Sportswear, Inc., 166 F.3d at 209 (an accounting of wrongful profits "will be denied where an injunction satisfies the equities of the case.").

The specific issue raised in this Motion *in Limine* is not a novel one. In fact, in Kars 4 Kids Inc. v. America Can!, the District Court of New Jersey recently considered a similar motion and determined that a claim for disgorgement of profits "[was] equitable in nature, and for which no right to a jury exists." No. 3:14-cv-7770, 2019 WL 2078670 at *2 (D.N.J. May 10, 2019). "Because disgorgement is an equitable remedy," the Third Circuit left this determination undisturbed. Kars 4 Kids Inc. v. America Can!, 8 F.4th 209, 217 (3d Cir. 2021). Moreover, the Sixth, Ninth, and Eleventh Circuits have found that a claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply. See Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1358-59 (11th Cir. 2019); Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1074-76 (9th Cir. 2015); Ferrari S.P.A. v. Roberts, 944 F.2d 1235, 1248 (6th Cir. 1991).

Determining whether an accounting of wrongful profits will be allowed under the equities of a given case is a complex determination under the controlling Third Circuit law. In exercising its discretionary equitable powers to grant or deny a disgorgement of defendant's profits, the trial court must weigh the following, non-exclusive factors:

> (1) [w]hether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay

by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005). At least some of these factors (e.g., adequacy of other remedies) are unsuited for determination by a jury, much less the weighing and balancing of all of the factors required to assure an equitable judgment.

Accordingly, the accounting of allegedly wrongful profits issue should be tried to the Court alone. See generally Oxford Indus. Inc. v. Hartmarx Corp., 15 U.S.P.Q.2d 1648, 1649-50 (N.D. Ill. 1990) (under 15 U.S.C. § 1117(a), the court, not the jury, must assess wrongful profits and determine the amount of the judgment); Big & Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 408 F. Supp. 1219, 1241, 189 U.S.P.Q. 17, 36-37 (D. Colo. 1976), aff'd 561 F.2d 1365 (10th Cir. 1977) (equitable accounting determined by court alone following jury verdict); see also Banff. Ltd. v. Colberts, Inc., 996 F.2d 33, 35 (2d Cir. 1993) (accounting of wrongful profits determined, together with permanent injunction and attorneys' fee requests, by trial court on post-trial motion following jury verdict). Such division of responsibilities between the trial court and a jury is wholly consistent with established jury trial procedure. See Jurgens v. McKasy, 927 F.2d 1552, 1557 (Fed. Cir. 1991) ("the judge decides issues of law and issues committed to his discretion, and the jury decides issues of fact...")

Even were the Court to involve the jury with the determination of the equitable accounting, the jury should not be charged with allowing or disallowing the accounting. Rather, the jury should merely be charged with making factual determinations related to the factual factors to be weighed and balanced by this Court in the exercise of its equitable discretion. See Stuart v. Collins, 489 F. Supp. 827, 834 (S.D.N.Y. 1980) (adjustment of profits award made by trial judge, who gave only advisory effect to specific findings made by jury; concluding that

statutory authorization to increase or decrease awardable profits goes only to the judge and not the jury).

## II.    THE ACCOUNTING ISSUES HERE ARE TOO COMPLEX FOR A JURY

The POM Parties respectfully submit that the Court should not charge the jury in this case with determining disgorgement/unjust enrichment damages because the accounting here is too complex. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) ("When accounts between parties that are of such a 'complicated nature,' only a court of equity can satisfactorily unraveled them.") (citing Kirby v. Lake Shore & Mich. S. R. Co., 120 U.S. 130, 134 (1887)).

As indicated above, the first requirement for disgorgement requires PSG to establish that it owns the trademark, PENNSYLVANIA SKILL. Under the controlling Third Circuit law however, "[a] mark holder is only entitled to those profits attributable to the unlawful use of its mark." Gucci Am., Inc., 354 F.3d at 242 (3d Cir. 2003) (quoting Quick Techs. Inc. v. Sage Group PLC, 313 F.3d 338, 350 (5th Cir. 2003); See also Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 484 (D.N.J. 2009) ("The plaintiff bears the burden of showing that the [defendant's] sales for which it seeks disgorgement occurred because of the alleged false advertising."); Castrol, Inc. v. Pennzoil Quaker St. Co., 169 F.Supp.2d 332, 343 (D.N.J. 2001) ("[plaintiff] must demonstrate with reasonable certainty the portion of [defendant's] profits attributable to the willful and intentional false advertising before the Court can order disgorgement").

Accordingly, PSG, not the POM Parties, must prove which of the POM Parties' sales are attributable to the unlawful use of the mark. Gucci Am., Inc., 354 F.3d at 242 n.15. If the plaintiff cannot prove which of the defendant's sales were attributable to the allegedly infringing conduct, an award of defendant's profits should be denied. Id. at 243. Only after plaintiff establishes which of

the defendant's sales were attributable to the infringement does the burden of proof shift to defendant to prove any costs or other deductions. See 15 U.S.C. § 1117(a).

PSG has not shown with any reasonable certainty, let alone attempted to show, how it satisfies its initial burden. Mr. Anderson expressly admitted that he did no analysis to determine if the "unjust enrichment" damages he espouses were actually attributable to the POM Parties use of the trademark. (Ex. 1). Because Mr. Anderson's report lacks a sound basis of extrapolating actual profits, PSG is essentially asking the jury to resort to guesswork to render a decision on the issue of disgorgement.

In response, if needed, the POM Parties will be testifying in detail as to why revenues are not attributable to the trademarks, which is their right. Considering the nature of this testimony and the complexity of the issues, such matters should not be left to a jury.

## III. ALTERNATIVELY, THE COURT SHOULD BIFURCATE THE ISSUE OF DISGORGEMENT AFTER LIABILITY IS ESTABLISHED

Should the Court deny the POM Parties' Motion *In Limine* to Exclude the Jury from Determining Accounting of Profit, the POM Parties requests the Court to bifurcate the issue of damages solely with respect to the disgorgement of profits pending the outcome of the underlying infringement claims. In doing so, the jury would not be able to hear the overall unjust enrichment total sought by PSG until after it establishes liability.

F.R.C.P. 42(b) governs a request by a party to sever, stay, or bifurcate litigation and provides, in relevant part, as follows:

> [f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims...

Fed R.Civ.P. 42(b). Further, it is well settled that the decision to bifurcate claims pursuant to Fed. R. Civ. Pro. 42(b) rests squarely within the sound discretion of this Court. Idzojtic v. Pennsylvania R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972) (with respect to bifurcation, "[t]he

8

district court is given broad discretion in reaching its decision"); See also Barr Laboratories, Inc. v. Abbott Laboratories, 978 F.2d 98, 105 (3d Cir. 1992) ("[t]he standard of review on appeal from the granting of a motion to bifurcate a trial pursuant to Federal Rule of Civil Procedure 42(b) is abuse of discretion).

Ruling on a motion to bifurcate "requires balancing of several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." Official Comm. of Unsecured Credits v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000); Johnson v. King Media, Inc., No. CIV.A 01-2311, 2002 WL 1372363 at *6 (E.D. Pa. June 24, 2002). Federal district courts located in Pennsylvania consider specific "special factors" in determining whether to bifurcate multiple claims or issues in a single action, which include:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.

Id.

As noted above, the issue of bifurcation can be eliminated entirely if the unjust enrichment disgorgement issue is removed from the jury or if no liability is found. However, if this Court is not inclined to decide that issue separately, bifurcation of these damages can be done utilizing the same jury in the same amount of time currently scheduled for trial.

Indeed, if PSG wins on the trademark claims in a bifurcated trial, then it has the opportunity to be heard on damages with the same jury at which point it can introduce its unjust enrichment assessment. The Court can be satisfied that PSG has won on the merits and without the prejudicial impact of placing all of the POM Parties' profits before the jury. PSG will not be

prejudiced if it is required to establish liability before disclosing the amount of profits at issue to the jury.

Conversely, if PSG is able to put the entirety of all the POM Parties' profits in front of the jury (an extraordinary number, especially considering the nature of this case) before first establishing liability, the POM Parties will be prejudiced. The amount of profits as damages has no bearing on liability, ownership, or the alleged oral contract claims raised by PSG. Therefore, placing such an incredible number in front of the jury while they are still considering the factual predicates to liability would be inherently confusing, and thus prejudicial to the POM Parties. Additionally, the financial results of all parties has been handled under seal at all times in this case. If PSG is able to compel that information to be disclosed in a public forum without first establishing liability, the POM Parties will be unduly prejudiced and may in fact be exposed to unfair publicity and public disclosure of confidential information that need not be unveiled until fault is found.

## CONCLUSION

Based on the foregoing, the POM Parties move this Court *in limine* to exclude the jury from determining accounting of profits and instead have this Honorable Court make such a determination. Alternatively, the POM Parties move this Court *in limine* and pursuant to F.R.C.P. 42(b) to bifurcate the issue of damages solely with respect to the disgorgement of profits until after a verdict regarding ownership of the PENNSYLVANIA SKILL trademarks. Considering the scope of intricacies of this request for relief, the POM Parties respectfully requests the Court to hold oral arguments on this Motion *In Limine* to Exclude the Jury from Determining Accounting Profits.

Respectfully submitted,

Dated:  September 30, 2022

SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**CERTIFICATE OF SERVICE**

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on the 30th day of September, 2022, I served the foregoing **Brief** to counsel of record via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
     Julian E. Neiser