14601922

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC,

             Plaintiffs/Counterclaim Defendants,

v.

PENNSYLVANIA SKILL GAMES, LLC,

             Defendant/Counterclaim Plaintiff.

CIVIL ACTION NO. 2:18-CV-00722-PLD

CONSOLIDATED

The Honorable Patricia L. Dodge

## BRIEF IN SUPPORT OF MOTION IN LIMINE TO
## PARTIALLY EXCLUDE TESTIMONY OF EXPERT WITNESS JEFF ANDERSON

AND NOW COMES Defendants Pace-O-Matic, Inc. ("Pace"), Miele Manufacturing, Inc., ("Miele"), POM of Pennsylvania ("POM"), and Savvy Dog Systems, LLC ("Savvy Dog") (hereinafter referred to as the "POM Parties"), by and through their undersigned counsel, and file the within Brief in Support of Motion *In Limine* to Partially Exclude the Testimony of Counterclaim Plaintiff's Purported Expert Witness Jeff Anderson. Alternatively, the POM Parties request that the Court hold a pre-trial evidentiary hearing under Fed. R. Evid. 702 to evaluate the methodology used by PSG's expert Jeff Anderson with respect to the disgorgement of profits/unjust enrichment theory he espoused and any related legal issues.

### INTRODUCTION

Portions of the expert report of Jeff Anderson offered by Pennsylvania Skill Games, LLC ("PSG"), are unreliable and inadmissible under F.R.E. 702.

Central to this motion is PSG's requested disgorgement amount of $211,857,647.37 million, which Mr. Anderson expressly refers to as "unjust enrichment." See Expert Report of

Jeff Anderson, ECF No. 173-1, pgs. 6 through 9. Mr. Anderson states that "unjust enrichment may be defined as the gross profit Defendants earned at the expense of PSG. Since Defendants profited by using the Trademark without permission, PSG is entitled to such profits." Id. at 6. Mr. Anderson simply adds up all profits allegedly made by all the POM Parties over approximately five years within Pennsylvania and opines that this huge amount of money should be paid to PSG with no other analysis or justification. Without some restraint, PSG will attempt to drop this "damages" number in front of a jury without first satisfying mandatory elements to establish ownership of the marks, which would be unfairly prejudicial to the POM Parties under the facts of this case.

Mr. Anderson's deposition confirms this simplistic process, in which he simply states his only obligation is to add up profits and put them in a report. He admits to performing no analysis to determine if the "unjust enrichment" damages he espouses are actually *attributable* to the POM Parties use of the trademark. A true and correct copy of Mr. Anderson's deposition transcript with the relevant portions highlighted is attached as Exhibit 1. This is troubling, as the POM Parties sell software, parts, accessories, computer licenses, computer hardware, and other items that do not bear the trademarks at issue.

Further, Mr. Anderson did not (in this analysis) review a single financial document from PSG, a single trademark application, or any other related document other than the financial records of three of the POM Parties. (ECF 173-1, Ex. B).

Considering the deficiencies within Mr. Anderson's report, as discussed more fully below, the Court should exercise its gatekeeping function, and exclude Mr. Anderson's testimony regarding disgorgement of profits/unjust enrichment premised upon his unsound

methodology, insufficient (and incorrect) facts on which his opinion is based, and failure to reliably apply the facts of the case to his work.[1]

## **LEGAL STANDARD**

Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. provide the framework governing the admissibility of expert testimony. Accordingly,

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, trial judges should admit into evidence reliable testimony from qualified experts that is helpful to the factfinder and *exclude* expert testimony where the proposed expert is unqualified, the expert's conclusions or methods are unreliable, or the expert's testimony would be unhelpful. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-95 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149-52 (1999); Dominguez v. Yahoo!, Inc., No. CV 13-1887, 2017 WL 390267 at *13 (E.D. Pa. Jan. 27, 2017).

Distilled to its essence, "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." Elcock v. Kmart Corp., 233

---

[1] The POM Parties have filed a separate Motion *In Limine* asking the Court to exclude the jury from determining accounting of profits or, in the alternative, to bifurcate the issue of damages solely with respect to the disgorgement of profits pending the outcome of the underlying infringement claims. To the extent applicable, the contents of that Motion *in Limine* are incorporated herein. Therefore, alternatively, if this Court rules that Mr. Anderson's methodology is admissible, the POM Parties move this Court to limit his testimony on disgorgement or unjust enrichment damages to proceedings outside the presence of the jury or in a bifurcated proceeding *if* PSG establishes liability.

F.3d 734, 741 (3d Cir. 2000); Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404-05 (3d Cir. 2003). To satisfy the reliability requirement, the proponent must show both that the expert's opinions are the "product of reliable principles and methods" and that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(c), (d); See General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[C]onclusions and methodology are not entirely distinct from one another."). As the Third Circuit has explained, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." Id.

Even if the requirements of Rule 702 are satisfied, an expert's testimony still should be excluded if the probative value of that testimony is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

Finally, the party asserting admissibility of expert testimony bears the burden of demonstrating, by a preponderance of the evidence, the testimony satisfies Rule 702. Fed. R. Evid. 702 advisory committee's note (citing Fed. R. Evid. 104(a); Bourjaily v. United States, 483 U.S. 171 (1987)); Daubert, 509 U.S. at 593 n.10. Thus, PSG ultimately bears the burden of establishing that the proffered testimony of its experts is admissible. As discussed in detail below, it cannot meet that burden.

## ARGUMENT

Mr. Anderson's methodology fails due an incomplete and incorrect assessment of the POM Parties' revenues "attributable" to the mark. He also uses incorrect time periods and relies upon insufficient and demonstrably incorrect and insufficient facts. As such, a portion of the opinions set forth in his report are inherently unreliable and should be inadmissible.

### A. Anderson's Methodology is Flawed

First and foremost, as noted in the POM Parties' Motion to Exclude the Jury from Determining Accounting Profits, the jury should neither hear the amount of profits made by the POM Parties nor make any such determination. This is an equitable remedy to be determined by the Court following a showing of liability.

Second, while the POM Parties acknowledge that it ultimately and *eventually* may have the burden to establish that certain profits should not be disgorged, PSG still bears the *initial* burden to establish that the POM Parties' profits are "attributable" to use of the trademark. "[A] mark holder is only entitled to those profits attributable to the unlawful use of its mark." Gucci America, Inc. v. Daffy's, Inc., 354 F.3d 228, 242 (3d Cir. 2003) (quoting Quick Techs. Inc. v. Sage Group PLC, 313 F.3d 338, 350 (5th Cir. 2003); See also Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 484 (D.N.J. 2009) ("The plaintiff bears the burden of showing that the [defendant's] sales for which it seeks disgorgement occurred because of the alleged false advertising."); Castrol, Inc. v. Pennzoil Quaker St. Co., 169 F.2d 332, 343 (D.N.J. 2001) ("[plaintiff] must demonstrate with reasonable certainty the portion of [defendant's] profits attributable to the willful and intentional false advertising before the Court can order disgorgement"). Accordingly, any calculation for lost profits may be satisfied by circumstantial evidence from which a "probable" or "approximate" loss can be ascertained by "reasonable inference." Bracco Diagnostics, Inc., 627 F. Supp. 2d at 490 (citing Broan Mfg. v. Associated Distrib., 923 F.2d 1232, 1236 (6th Cir.1991).

PSG did not meet this initial burden. It appears PSG believes it merely needs to declare an infringement and provide proof of the POM Parties' sales without first establishing that said sales were attributable to the trademark. [ECF No. 173-1, pg. 6 and Ex. 1]. PSG therefore has missed a critical step that renders all the testimony by Mr. Anderson on the subject to be

inadmissible as unreliable. This reality is confirmed in the highlighted sections of Exhibit 1, in which Mr. Anderson admits that he only determined the amount of sales for Pace, POM of Pennsylvania, and Miele without connecting the dots to revenues attributable to the trademarks at issue.

For this reason alone, Mr. Anderson's opinion on disgorgement of profits/unjust enrichment should be deemed to be inadmissible or a hearing on the issue should be held.

**B. Anderson's Opinions Regarding Disgorgement/Unjust Enrichment Damages are Inadmissible Due to a Failure to Reasonably Apply the Facts to His Opinion and for Reliance on Incorrect Facts or Data**

To establish that proffered expert testimony is reliable, the testimony "must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." Reger v. A.I. Dupont Hosp., 259 F. App'x 499, 500 (3d Cir. 2008) (quoting Schnedier, 320 F.3d at 404); See also In re Paoli, 35 F.3d at 742 (to be reliable, opinion must be based on "valid reasoning and reliable methodology").

Applying these factors, it is clear that Mr. Anderson's testimony is insufficiently reliable to permit its presentation to the jury or this Court.

*First*, Mr. Anderson's testimony regarding the appropriate methodology for apportioning revenue is quintessential *ipse dixit* testimony. During his deposition, Mr. Anderson admitted that that he did no analysis to determine if the "unjust enrichment" damages he espouses are actually attributable to the POM Parties use of the trademark. Nothing. (Ex. 1). Mr. Anderson's testimony regarding the issue of "unjust enrichment" damages can be summarized as follows: He added up all revenues of the POM Parties for a five-year period (which in and of itself is flawed), claimed that all profits in Pennsylvania were "attributable" to the trademark, and did no further analysis. (See, ECF No. 173-1, pg. 5).

6

Mr. Anderson's opinion on the appropriate methodology used to calculate disgorgement/unjust enrichment damages is, by his own fatal admissions, simply his own incomplete editorial of what profits are "attributable" to the trademark at issue. Mr. Anderson's testimony therefore falls far short of carrying the burden to establish his testimony as reliable and admissible. See Oddi v. Ford Motor Co., 234 F.3d 136, 145, 158 (3d Cir. 2000) (affirming prohibition against causation expert, reasoning that purported expert's testimony "is based on nothing more than his training and years of experience as an engineer" and that expert's "ipse dixit does not withstand Daubert 's scrutiny").

**Second**, Mr. Anderson's assumption of "ownership" of the trademark is based on insufficient and incorrect facts[2].  The POM Parties acknowledge that the issue of ownership is in dispute and disputed factual issues are not properly raised in a Daubert motion. However, admissibility hinges on reliance upon sufficient facts or data and Mr. Anderson's report is lacking in this regard.

Indeed, Mr. Anderson assumes PSG's ownership of the marks and *valid registration*. As noted in the POM Parties' Motion *In Limine* regarding bifurcation of disgorgement/unjust enrichment damages, as well as its motion related to trademarks, ownership of a trademark can only be established in this litigation on the merits, as: (1) the design mark is not registered with the USPTO; and (2) the word mark has only common law rights of enforcement and damages due to its relegation to the supplemental register (which is subject to cancellation proceedings).

---

[2] As argued more fully in the POM Parties Motion *In Limine* to Limit Evidence and Testimony Related to Ownership of Trademarks, PSG lacks any *prima facie* "right" afforded to a trademark registrant with respect to the design mark, and the word mark appears only on the supplemental register, which provides neither a right of ownership nor the remedies set forth in Section 1117 until after a verdict.

Filings on the supplemental register are governed by 15 U.S.C.A. §§ 1091 to 1096. 15 U.S.C.A. §§ 1094 states that registrations on the supplemental register shall not be subject to or receive the advantages of Sections 1057(b). Next, Section 1057(b) confers the advantage of *prima facie* evidence of validity and ownership by virtue of registration. However, because Section 1094 creates an exception to Section 1057(b), there is no *prima facie* evidence of ownership via registration on the supplemental register. See E.T. Browne Drug Co. v. Cococare Products, Inc., 538 F.3d 185, 191 (3d Cir. 2008) (Plaintiff with only a Supplemental Registration has the burden to prove "the existence of a protectable mark."). More simply, the supplemental register provides extremely limited rights that are nearly identical to common law rights.

Further, 15 U.S.C.A. § 1117 places a precondition on establishing ownership in a civil action to an entitlement of damages under the Lanham Act (with emphasis supplied):

**(a) Profits; damages and costs; attorney fees**
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, **shall have been** established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

***Third***, the time period Mr. Anderson employed in his unjust enrichment analysis is June 6, 2016 to December 31, 2021. However, pursuant to 15 U.S.C.A. § 1111, "…in any suit for infringement under this chapter by such a registrant … no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration." The registration date of the word mark on the supplemental register is October 15, 2019 according to the USPTO[3]. This is a fact upon which this Court can take judicial notice.

---

[3] https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4807:3ptkar.2.2

8

Therefore, nearly three years of profits assumed by Mr. Anderson are incorrectly claimed as damages because they predate the registration.

Finally, in addition to these fatal deficiencies, Mr. Anderson's testimony will not assist the jury or this Court. Unlike traditionally admissible expert testimony, in which an expert with specialized knowledge explains a complicated subject matter to members of the jury, Mr. Anderson offers nothing more than his view as to what trademark law requires in order to apportion sales from the defendant and a generalized assessment of all profits by all the POM Parties. Such testimony is improper, as it invades the province of the Court to interpret trademark law on apportionment. See Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (a trial court "must ensure that an expert does not testify as to the governing law of the case" because "it would usurp the District Court's pivotal role in explaining the law to the jury"); United States v. Leo, 941 F.2d 181, 196-97 (3d Cir. 1991) (remarking that "it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury"); United States v. Monaghan, 648 F. Supp. 2d 658, 661 (E.D. Pa. 2009) (observing that "testimony concerning the law itself ... is inappropriate expert testimony"). As the Middle District has remarked, "[t]he need to restrict experts from offering legal conclusions is obviously most important where the expert is offering testimony to a jury as a fact-finder." Coregis Ins. Co. v. City of Harrisburg, No. 03-920, 2005 WL2990694, at *2 n.3 (M.D. Pa. Nov. 8, 2005).

**CONCLUSION**

For the reasons stated above, PSG has fallen far short of carrying its burden to establish that the testimony of Jeff Anderson on the subject of unjust enrichment damages or disgorgement will assist the jury and is admissible. Accordingly, all such evidence related to this topic by Mr. Anderson should be excluded and the profits of the POM Parties should not be presented before the jury or this Court for any reason and in any form. Alternatively, the POM Parties requests the Court to hold a pre-trial evidentiary hearing to evaluate the methodology used by PSG's expert Jeff Anderson testimony with respect to the disgorgement of profits under Fed. R. Evid. 702.

Respectfully submitted,

Dated:  September 30, 2022                SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
    Julian E. Neiser
    Pa. Id. No. 87306
    One Oxford Centre, Suite 3440
    301 Grant Street
    Pittsburgh, PA  15219
    T:  (412) 325-1116
    F:  (412) 325-3324
    E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| Plaintiffs/Counterclaim Defendants, | CONSOLIDATED<br><br>The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**CERTIFICATE OF SERVICE**

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on the 30th day of September, 2022, I served the foregoing **Brief** to counsel of record via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By:  /s/ Julian E. Neiser
    Julian E. Neiser

11