**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**OPPOSITION TO PENNSYLVANIA SKILL GAMES' MOTION *IN LIMINE***

AND NOW COMES Defendants Pace-O-Matic, Inc. ("Pace"), Miele Manufacturing, Inc., ("Miele"), POM of Pennsylvania ("POM"), and Savvy Dog Systems, LLC ("Savvy Dog") (hereinafter referred to as the "POM Parties"), by and through their undersigned counsel, and files the following Opposition to Pennsylvania Skill Games' ("PSG") Motion *in Limine*:

**INTRODUCTION**

PSG filed a single, consolidated motion *in limine* that seeks to exclude or otherwise preclude the POM Parties' use of key evidence that has never been challenged, has never been the subject of a discovery motion, and likely is absolutely devastating to PSG's claims. Further, PSG attempts to call foul on the POM Parties' rebuttal expert based on an irrelevant "gotcha" question and because there was no capitulation as to PSG's exorbitant and baseless damages demands.

PSG's arguments are unsupported, occasionally unintelligible, and ultimately improper. This Court should therefore deny PSG's Motion *in Limine* for the reasons set forth below:

**<u>OPPOSITION TO MOTION *IN LIMINE* NO. 1</u>**

PSG asks the Court to hold a Daubert Hearing related to William Krieger (the POM Parties' rebuttal witness) and requests it exclude all or portions of the rebuttal, claiming Mr. Krieger is "not qualified" and "applied invalid methodologies and assessments." [ECF No. 205, at ¶ 1]. PSG materially misunderstands the nature and basis of Mr. Krieger's opinions and testimony. PSG's attack does not address any actual <u>Daubert</u> issues, as Mr. Krieger is well qualified to testify as a financial expert and utilized widely accepted methodologies. Instead, PSG attacks certain assumptions that serve as the basis for Mr. Krieger's opinion.

**A.  Mr. Krieger's damages opinion is relevant, reliable, and will assist the Court**

PSG merely disagrees with Mr. Krieger's conclusions in an effort to shield its own expert's opinions from criticism. As set forth in <u>Calhoun v. Yamaha Motor Corp., U.S.A.</u>, the reliability requirement is satisfied if an expert's testimony is based upon "the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" 350 F.3d 316, 321 (3d Cir. 2003). However, <u>F.R.E.</u> 702 does not require the party proffering the expert to demonstrate the "correctness" of the expert's opinion. <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 744 (3d Cir. 1994). Rather, the party need only demonstrate "by a preponderance of the evidence" that the expert's opinion bears adequate indicia of reliability. <u>Id.</u>

In effort to exclude Mr. Krieger's opinions, PSG admits errors regarding its <u>own</u> alleged damages. PSG fails to identify a specific opinion or piece of testimony to strike, let alone a cogent basis how Mr. Krieger's methodology is flawed or inadmissible. Further, PSG fails to provide deposition transcripts or any other material on which this Court can base its decision.

**1.    Unjust Enrichment**

PSG claims Mr. Krieger "was obligated to present expenses applicable to the CONSOR calculation and failed to do so." [ECF No. 206, at 4]. Exactly how this claimed error renders Mr.

Krieger's opinion speculative remains unclear—and PSG has confused <u>potential</u> burden shifting of evidence with the standards under a Rule 702 challenge[1]. Still, Mr. Krieger testified that a "cost analysis" was irrelevant given Jeff Anderson's claim that 100% of the POM Parties' revenues are attributable to the alleged mark without analysis. (Krieger Depo., pg. 122:1-21; A true and correct copy of Mr. Krieger's deposition transcript with the relevant portions highlighted is attached as Exhibit 1). Regardless, the issue of costs and deductions under 15 U.S.C.A. § 1117(a) is a question of fact that can be resolved at trial through Mr. Krieger's own testimony, as well as verified financial records and credible witness testimony, not to mention the fact that PSG has several evidentiary burdens to meet before the "disgorgement" damages would be relevant. <u>See</u> <u>Coverteach Fabricating, Inc. v. TVM Building Products, Inc.</u>, 855 F.3d 163, 177 (3d Cir. 2017); <u>Banjo Buddies, Inc. v. Renosky</u>, 399 F.3d 168 (3d Cir. 2005).

PSG also takes issue with Mr. Krieger's analysis that "evenly divided Savvy Dog's licensing income by the number of intellectual property assets." This argument however mischaracterizes Mr. Krieger's methodology, which included an analysis of the licensing fees paid to Savvy Dog for the use of that mark. Further, Mr. Krieger's analysis of Savvy Dog's IP agreement is only one portion of his complete analysis of the mark's value and its contribution to the POM Parties' profits. As stated by Mr. Krieger, his consideration of the IP agreement illustrates the absurdity in attributing over $211,000,000 of gross profits to the mark. (Krieger Depo., pgs. 45:11-46:13 and 48:20-49:15).

## 2.    Lost Profits

---

[1] The POM Parties have filed two separate motions *in limine* asking this Court to partially exclude the testimony of PSG's expert testimony and to exclude the jury from determining accounting profits. [ECF Nos. 211-214]. As set forth in these motions, PSG bears the *initial* burden to establish that the POM Parties' profits are "attributable" to the trademark. [ECF No. 214, at 5]. Moreover, the POM Parties contend the determination of PSG's entitlement to unjust enrichment damages in the form of profits disgorgement should not be tried to the jury. [ECF No. 212, at 2].

With respect to PSG's attempt to discredit Mr. Krieger's lost profits opinion, the phrase "throw everything but the kitchen sink" immediately comes to mind. According to PSG, Mr. Krieger misapplied the Compound Annual Growth Rate (CAGR), failed to analyze the relationship between the actual business as operated by PSG relative to the specific factual market or operational conditions, failed to examine the revenues and expenses in PSG's financial statements, and failed to acknowledge the discounts applicable to PSG. [ECF No. 206, at 4]. On the contrary, Mr. Krieger's analysis considered the fill revenues from June 6, 2016 to February 28, 2018, deducted the costs PSG would have incurred to acquire terminals and fill licenses, and considered the additional operating costs PSG would have had to incur to generate the gross profits realized by the Selected Operators. (Krieger Expert Report, at ¶ 70). Rather than explain why or how this methodology is improper, PSG baselessly identifies it as speculative[2]. In other words, PSG's issue with Mr. Krieger is he did not apply the same methodology as its own expert.

Additionally, PSG requests that Mr. Krieger be estopped from challenging PSG's lost profits after 2018 because he assumed the EPA was abandoned in 2018. However, the term or termination of the EPA is a question of fact to be resolved at trial. Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("the burden of exploring the facts and assumptions underlying the testimony of an expert witness falls on opposing counsel during cross-examination"). Conversely, PSG has failed to identify certain facts relied upon by Mr. Krieger that are simply wrong or misapplied in such a way to render his opinion unreliable.

### 3.   Reasonable Royalties

---

[2] The only financial information produced by PSG in this matter is PSG's Balance Sheet as of August 31, 2015, Profit & Loss Statement for August 2015, Profit & Loss Statement for January through August 2015, and Albert Unis, IV's tax returns from 2015-2020. While Mr. Krieger analyzed and cited to these documents throughout his report interestingly, none of these documents was addressed by Plaintiff's expert.

PSG claims that the POM Parties' damages of $50,000 is ungrounded speculation and improperly based on the Georgia-Pacific factors, which relate to patent damages. While the Georgia-Pacific factors originated in a patent case, courts have since frequently recognized these factors as useful and admissible methodology in determining reasonable royalty damages in trademark cases. See Coryn Group II, LLC v. O.C. Seacrets, Inc., No. WDQ-08-2764, 2010 WL 1375301 at *8 (D. Md. Mar. 30, 2010); A & L Labs., Inc. v. Bou–Matic, LLC, No. 02-4862, 2004 WL 1745865 at *2. (D. Minn. Aug. 2, 2004). The use of the Georgia-Pacific factors to construct a hypothetical negotiation at the time of first infringement is a widely accepted and utilized methodology to determine a reasonable royalty. Mr. Krieger's analysis using these factors is not speculation. Further, Mr. Krieger's methodology for determining reasonable royalty damages using the Georgia-Pacific does not require adherence to a strict mathematical formula, as the Federal Circuit has opined numerous times. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1335 (Fed. Cir. 2009) ("the flexible analysis of all applicable Georgia-Pacific factors provides a useful and legally required framework for assessing the damages award").

While PSG labels Mr. Krieger's analysis to be a "failed matter of purported science," the Federal Circuit has expressly held to the contrary. Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1232 (Fed. Cir. 2014) ("Although we recognize the desire for bright line rules and the need for district courts to start somewhere, courts must consider the facts of record when instructing the jury and should avoid rote reference to any particular damages formula."). As discussed during his deposition, Mr. Krieger did not simply speculate a licensing fee of $50,000, but applied the accepted methodology through the Georgia-Pacific factors. (Krieger Depo., pgs. 145:25-148:7 and 154:2-13). Thus, Mr. Krieger did not choose an unreliable method of calculation from which a jury, after hearing the facts, can render its verdict.

**B.  Mr. Krieger opines on economics and financials – his areas of expertise**

Mr. Krieger is a certified public accountant with extensive experience in quantifying financial damages related to breach of contract claims, intellectual property infringement, and other areas. (Krieger Expert Report, at Appendix 1). Rather than challenge his credentials, PSG merely asserts that Mr. Krieger has never been a witness in a trademark case and failed to answer simple questions during his deposition such as "*how long does a trademark last*?" An expert's qualifications however should be assessed liberally and recognize "that a broad range of knowledge, skills, and training qualify an expert as such." In re Paoli, 35 F.3d at 741. Accordingly, the focus is on whether the qualifications that an expert does have provide a foundation for the witness to testify meaningfully on a given matter. See Buzzerd v. Flagship Carwash of Port St. Lucie, Inc., 669 F. Supp. 2d 514, 522 (M.D. Pa. 2009).

According to PSG, Mr. Krieger was required to recall the exact term of a trademark at his deposition or risk being excluded on qualification grounds under Daubert. Depositions however are not tests of memory. Mr. Krieger simply stated that he did not recall the exact term of a trademark. (Krieger Depo., pgs. 25:10-26:11). More importantly, the term of the trademark is not at issue in this matter and has no effect on the determination of damages. The failure to recall something from memory at a deposition has no bearing on the expert's damages analysis and is not a basis for exclusion under Daubert.

If called upon, Mr. Krieger is prepared to testify that trademarks do not expire after a set period of time. Trademarks will persist so long as the owner continues to use the trademark in commerce. Yet while Mr. Krieger is prepared to testify to these facts, he will also unequivocally testify that such information has no effect whatsoever on the determination of damages in this matter.

PSG disagrees with Mr. Krieger's analysis and hopes this Court will shield Mr. Anderson's opinions from criticism. But PSG's arguments, which are not grounded in law or

6

fact, give this Court no reason to exclude Mr. Krieger's testimony. PSG takes its disagreements with Mr. Krieger – which can be resolved at trial – and reframes them as supposed admissibility challenges. Indeed, Mr. Krieger is extremely well-qualified, his testimony is relevant and reliable, and will assist the Court in evaluating the economic component of this case. PSG's meritless attacks, if anything, goes to the weight of Mr. Krieger's testimony, not its admissibility. PSG's Motion *In Limine* should therefore be denied in its entirety.

### OPPOSITION TO MOTION *IN LIMINE* NO. 2

PSG vaguely challenges the "integrity" of certain email threads and asks the Court to exclude these emails unless the author or custodian testifies that those emails represent a final and complete thread of the conversation by all parties. [ECF No. 205, at ¶ 2]. If this Court is uncertain as to the authority behind PSG's purported integrity-based admissibility standard, it can rest assured that the POM Parties are equally confused[3]. Claims of inaccuracy and incompleteness go to the weight of the evidence – not admissibility. United States v. Panza, 750 F.2d 1141, 1151 (2d Cir. 1984); Matador Drilling Company v. Post, 662 F.2d 1190, 1199 (5th Cir. 1981). More importantly however, PSG carries the burden to show that a business record indicates a lack of trustworthiness under F.R.E. 803(6)(E) – not the POM Parties. Ultimately, PSG's argument is a smoke and mirrors effort to exclude, *in limine*, documents that are ***absolutely devastating*** to its case, that have been produced *years ago*, and demonstrate that PSG's entire arguments are a work of fiction. PSG cites no example of incompleteness or "stray" threads. It is just guessing and hoping.

---

[3] PSG's Brief in Support [ECF No. 206] only generally cites to authority outside the Third Circuit and relies heavily on In re: Oil Spill by the Oil Rig "Deepwater Horizon", No. MDL-2179, 2012 WL 85447 at *1-6 (E.D. La. Jan. 11, 2012). It should however be noted that, in Thomas v. Bronco Oilfield Services, this Court applied the framework set forth in In re Oil Spill with respect to the Defendant's internal company emails and found them to be admissible. 503 F.Supp.3d 276, 291 n. 11 (W.D. Pa. 2020).

According to PSG, the question here "is not necessarily a matter that the email, or portion of the thread, is 'authentic,' but that the record as provided has integrity for the subject or matter presented." [ECF No. 206, at 6]. The POM Parties have no idea what that means.

Indeed, PSG cannot challenge the POM Parties' threshold authentication of the emails at this stage as a number of the witnesses identified in the POM Parties' Witness List either sent, received, or were copied on these emails[4]. See F.R.E. 901(b)(1); Egan v. Live Nation Worldwide, Inc., 764 Fed.Appx. 204, 209 (3d Cir. 2019) ("Rule 901(b)(1) requires only knowledge, not contemporaneous personal knowledge"). Furthermore, the POM Parties can establish the foundational elements of the business records exception through these witnesses. See F.R.E. 803(6); United States v. Console, 13 F.3d 641, 657 (3d Cir. 1993) (recognizing the term "other qualified witness" should be construed broadly); United States v. Duncan, 919 F.2d 981, 986 (5th Cir. 1990) (recognizing Rule 803(6) does not require the witness who lays the foundation "to be the author of the record or be able to personally attest to its accuracy").

The inherent reliability of records is the basis for the business records exception to hearsay rule. See Uitts v. General Motors Corp., 411 F.Supp. 1380, 1382 (E.D. Pa. 1974). All that is required to establish the reliability is a showing that the records were, (i) made at or near the time by ... a person with knowledge, (ii) kept in the ordinary course of a regularly conducted business activity, and (iii) it was the regular practice of that business activity to make the records. United States v. Jimenez, 513 F.3d 62, 77 (3d Cir. 2008). Remarkably, however, PSG does not lay a specific challenge to the POM Parties' ability to establish these foundational elements.

---

[4] PSG has misrepresented the POM Parties' ability and willingness to produce witnesses at trial. PSG was told *repeatedly* that a number of witnesses that were present during the critical times in question have moved on to other employment, but if they are identified on the "will call" witness list, the POM Parties expect to call them live and all but one or two are confirmed. The POM Parties made that representation while offering to not object to any pre-trial depositions for witnesses that are unavailable and cannot appear in person, as the POM Parties simply do not control them. Therefore, the allegation of "vacillating" regarding witness availability is flatly untrue and inappropriate.

Instead, PSG's claim is premised on its speculative belief there may be additional emails or replies not accounted for in the original thread. [See ECF No. 206, at 5-7]. Again however, PSG carries the burden to show the records indicate a lack of trustworthiness. F.R.E 803(6)(E). And yet, despite taking nearly 30 depositions and submitting five separate document requests, PSG fails to identify a single piece of evidence or testimony to support this claim. PSG's desperate request that this Court exclude emails "for which there is not any reply or clear closure of the conversation" demonstrates the absurdity behind this claim.

As this Court is aware, PSG was granted substantial latitude in conducting discovery. It was not shy about depositions, requests for production of documents, and filing motions of all stripes. If PSG thought for a second that emails—which just so happen to eviscerate a significant portion of its case—lacked "integrity," it should have addressed those issues in a discovery motion years ago. It did not. PSG's Motion *in Limine* should therefore be denied.

### OPPOSITION TO MOTION *IN LIMINE* NO. 3

The POM Parties' Pretrial Statement identifies six different invoices. And yet, PSG raises a relevance issue with respect to only one – Invoice No. 10495 evidencing the sale of the first PENNSYLVANIA SKILL game to another operator in September 2013. [ECF No. 205, at ¶ 3]. This invoice clearly demonstrates that Pace created the trademark on its own accord and used it in connection with the class of goods at issue – and had developed, marketed, and sold the game before ever hearing of PSG or anyone affiliated with it. However, without engaging in any substantive analysis, PSG simply claims this invoice "is not probative of any precise issue in this case, being use of the trademark at issue." This is simply wrong and PSG's intentions are obvious. Not only does this invoice definitively establish the date on which the first PENNSYLVANIA SKILL game was sold and used the trademark in interstate commerce, it will be used with other testimony to establish what software was on the machine, when it was

created, and a number of other elements that will refute PSG's incredible claims of "developing" the game and being a factor in the POM Parties' business decisions to enter the Pennsylvania market. PSG's Motion *in Limine* should therefore be denied.

## OPPOSITION TO MOTION *IN* LIMINE NO. 4

Finally, PSG requests that this Court preclude the POM Parties' use or refence to the terms "compliance," "compliance officers," and "compliance reports" as these terms are unfairly prejudicial and confusing to a jury. [ECF No. 205, at ¶ 4]. However, the fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under F.R.E. 403. Excluded evidence must be unfairly prejudicial, not just prejudicial. Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 669-670 (3d Cir. 2002).

According to PSG, the "compliance reports" designated by the POM Parties are self-serving and intended to show PSG has used games that are "illegal" without final adjudication. This assertion however mischaracterizes the purpose behind these documents. Rather, these reports are probative of the fact that PSG has placed the Pennsylvania Skill mark on machines that do not contain the Pace software and that PSG is a rogue operator that has unfairly competed with the POM Parties through subterfuge and dishonesty. This goes to the heart of the POM Parties' false advertising and unfair competition claim since the software version on these machines was the subject of the Beaver County litigation. In other words, PSG does not seek to exclude this evidence because it will portray PSG as a bad-actor, but because it establishes the fact that PSG marketed its games to the public and law enforcement that it was a legal Pace game. PSG's Motion *in Limine* should therefore be denied.

## CONCLUSION

Based on the foregoing, the POM Parties respectfully request this Court deny PSG's Motion *in Limine* in its entirety.

Respectfully submitted,

Dated:  October 11, 2022                 SPILMAN THOMAS & BATTLE, PLLC

By:/s/ Julian E. Neiser
   Julian E. Neiser
   Pa. Id. No. 87306
   One Oxford Centre, Suite 3440
   301 Grant Street
   Pittsburgh, PA  15219
   T:  (412) 325-1116
   F:  (412) 325-3324
   E:  jneiser@spilmanlaw.com

**Attorneys for Pace-O-Matic, Inc., Miele Manufacturing, Inc., POM of Pennsylvania, LLC, and Savvy Dog Systems, LLC**

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

**CERTIFICATE OF SERVICE**

I, Julian E. Neiser, counsel for POM of Pennsylvania, LLC t/d/b/a Pace-O-Matic, Savvy Dog Systems, LLC, Pace-O-Matic, Inc. and Miele Manufacturing, Inc., do hereby certify that on the 11th day of October, 2022, I served the foregoing **Opposition to Pennsylvania Skill Games' Motion *in Limine*** to counsel of record via the Court's CM/ECF System:

Via email to mailroom.grz@zegarelli.com

Gregg R. Zegarelli, Esquire
Technology & Entrepreneurial
Ventures Law Group, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA  15241-2565

**Counsel for Pennsylvania Skill Games, LLC**

SPILMAN THOMAS & BATTLE, PLLC

By: /s/ Julian E. Neiser
        Julian E. Neiser

12