**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

      Plaintiffs,

      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant.

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES'
MEMORANDUM IN OPPOSITION TO
POM PARTIES MOTION IN LIMINE
ECF 207 – PACE SOFTWARE**

PENNSYLVANIA SKILL GAMES, LLC,

      Plaintiff,

      v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

      Defendants.

The POM Parties' joint motion regarding "various issues related to Pace software" is mis-characterized and misplaced.  Therefore, on the one hand, because the motion misses the pertinent issue, it begs for a stipulation of some sort that was apparently misunderstood in the meet and confer between counsel.  However, on the other hand, the general question raised is worthy of consideration generally by this Court in advance of trial, because it implicates evidentiary rulings that are anticipated to occur at trial, depending upon the actual adducement of evidence.

This Court knows that principal issues in this case are grounded by or through the EPA [ECF 135-9, Exhibit 7].  The Court will take note of the language used in the EPA; to wit:

> **Whereas, Buyer specifically seeks to purchase only Compliant Terminals or Hard-ware Components that contain the above referenced skill games and software plays which were the subject of the above-referenced litigation;**

Therefore, the precise (if not subtle) issue is for this Court is to rule upon evidence that is introduced for the purpose of determining the fact question of what the parties agreed to and intended by the terms and conditions as used in the EPA.  Indeed, this Court will take notice of the POM Motion to Dismiss [ECF 122] raising legality as an issue in the case; to wit:

> **PSG operates electronic gaming machines containing illegal or adjudicated games that that display the numbers 402.44 on the exterior of the machine in addition to the word and stylized PENNSYLVANIA SKILL mark.**

ECF 122-1, No. 60, as well as in their Amended Answer and Counterclaim [*e.g,* ECF 35 ¶¶ 22, 34, 35, 36, 43 (at ¶43, "all games provided by Counterclaim Defendants were adjudicated as legal in Pennsylvania and continue to be in legal compliance with Commonwealth law"); ECF 1 ¶¶ 33, 36–38, 41–43, 52, 64: 2:18-cv-00941-RCM; ECF 198, POM Pretrial Statement, p. 8, bullet 10; 198-2, Nos. 18, 33 (Farley Report), 46 (PSG "illegal" games)][1,2]

As a result, the general question jointly raised by the POM Parties flows on the following necessary evidentiary components:

a. What is the testimony adduced at trial regarding what the parties agree to buy and sell; that is, among other things, what are "Compliant Terminals" and what was agreed to satisfy the above agreed standards as a matter of the EPA contract?  This is a question of fact for the jury much like any other contract dispute.

b. Over the course of the eight or so years, the POM Parties have modified the software, which, *e.g,,* started with three games as reviewed in the Beaver Case but now has thirteen games, with significantly different attributes of game play.  Many of the intended witnesses, and certainly Albie Unis, will be able to testify to attributes of gameplay, at

---

[1] When counsel for the POM Parties raised this issue at the meet and confer, the undersigned indicated that it appears that it is a trial question and the POM Parties have opened or will open the door on the "legality" question, as the POM Parties have over and over and over asserted the concept that "PSG" (but not the POM Parties) deals with "unadjudicated or illegal" games, and the undersigned expects that the Court recalls this fact from the Motion to Dismiss.

[2] Without suggesting that the POM Parties calculated to exclude the swans with the claimed geese, even a superficial reading of the Proposed Order as suggested argues the point out of court; to wit: *Which actual version of the software*? The language used in the Proposed Order says "*known as* 402.44." Evidence of the versioning will be introduced at trial, and the matter is not as discrete as suggested.  The exact version reviewed by the Beaver County Court had only three games is one precise "version." The current "version" has 13 games, however, "so known" is a different fact. The POM Parties are seeking a ruling on a trial fact as to "which version," however known, is being considered.

the time of the Beaver Case, now, and over the term of eight years of upgrades. Are these updates and upgrades continuing to be "Compliant Terminals," etc., as agreed in the EPA contract? Again, this is a question of fact for the jury much like any other contract dispute.

c. The third issue is more complex, and the term "compliance" needs to be carefully assessed by the Court, because it travels in at least two directions, depending upon the foundation; that is, whether the software: i) is in compliance with Pennsylvania law; and/or ii) is in compliance with the EPA contract at issue? As to the latter issue, once again, it is a fact question for the jury, such as any other contract dispute. As to the former issue, whether this Court must rule on the legality of the software, or any version thereof, depends upon the foundation testimony adduced at trial, being a mixed question, part of which is a jury determination and part of which is a legal determination.

The POM Parties conveniently conflate issues to try now to sanitize their own bad behavior of fact, and breach of contract, that must be reviewed by the jury. Indeed, whether PSG games have been otherwise finally adjudicated to be illegal may be a matter of judicial notice and perhaps a jury instruction, but will depend upon each specific "version" referenced. However, PSG is certainly entitled to testify as to the term or condition of "compliant" as PSG understands that term as used in the EPA. Depending upon the foundation testimony, whether contentious or not, that term will bear out the standard or conflicting standard for the jury to determine regarding the asserted breach of contract.[3]

---

[3] This Court will take notice of the meandering of the POM Parties' arguments over the course of this litigation. *See, e.g.,* ECF 121-1, Nos. 2–3, 50. The POM Parties filed an expert report and designated an expert witness and then, *over the objection of PSG*, withdrew the designation and expert. The reason that he was only recently withdrawn is that the subject of his report was simply identifying the attributes of game play (assuming that it survived the Daubert hearing), and cross-examination at trial or deposition would expose the inadequacies in the public record. Mr. Farley did nothing more than observe, no better or worse than any person or juror—or high-school student—the attributes of the game, and then "concluded" it was a "skill game." Mr. Farley was not cross-examined or challenged in the Beaver County case that arose by the "controlled" PA State Police pickup from PSG's carefully selected client venue. As this Court can observe from the filing still of public record at ECF-44, Mr. Farley has no credentials whatsoever in mental or physical dexterity, acuity, mind-to-hand coordination, mental effort, or any other scientific credential that matches a game-play attribute to human ability, skill. At this latest step, PSG has shifted its argument recently only because it had to do so at the point of exposure by expert depositions and trial.

PSG does not need to await a third-party court to rule on the legality of the software as it relates to Pennsylvania law, as this Court is more than equipped to make that determination. It can be and is an issue in this case.

Moreover, the slight-of-hand that the POM Parties proffer that an expert "highly technical" is required is a clearly flawed premise. Indeed, this Court does not need an expert to assist this Court with determining that no skill or insufficient skill is required by watching a mindless "slap loss" (mindlessly slapping the play button) in the same manner that countless people are doing themselves at the local gas station or mini-mart convenience store. If this Court is not sure as to whether the foundation can be laid, then this Court should await the attempt for an evidentiary foundation at trial.[4]

For example, if the evidentiary foundation of "Compliant Terminals" in the context means a game of sufficient skill, then, whether or not the games provided by the POM Parties are of "sufficient skill" pursuant to the EPA does not rest upon a legal foundation of statute, any differently than a jury determining whether something created as purple is "dark blue" pursuant to a contract provision. It is simply a fact question.

Or, for example, if the foundation of "Compliant Terminals" in the context means that the POM Parties agreed, such as a guarantee, that the games would not be seized by the Pennsylvania State Police, or require that fines be paid, or that liquor establishments would not lose or be in reasonable jeopardy of losing their licenses, then the evidence is again simply put to the jury that those things indeed occurred, as a matter of judicial notice and not requiring this Court's opinion

---

[4] The issue then would not be whether the evidence of legality is probative for a "compliance" question, but whether the Court really would need an expert to rule on the legality of the game play as a skill game. No expert is required where the court and jury can make a determination themselves, such as this case. Saying an expert is needed is simply part of a self-interested story created by the POM Parties in a judicial process that is baited into the assumption.

4

on the correctness of those facts.  That is, the fact is that seizures are occurring, not reviewing the correctness of those seizures.

But, without eliminating either of the above examples, if the testimony is that the games must be in compliance with Pennsylvania law, than, once again, PSG does not need to wait for the accidents of third party lawsuits, but can present evidence that the EPA contract is being breached because facts exist that prove, more likely than not, that the POM Parties are violating Pennsylvania law, although part of that question is for the jury and perhaps part of that question is either by clear instruction to the jury or reserved to this Court.[5]

If the jury determines, as a question of fact, that the terms used by the parties means games that will not change, or be seized or be adjudicated illegal, that is for the jury.  Whether a police seizure or a final adjudication occurred is a matter for judicial notice and an instruction accordingly.  But how that perhaps judicially noticed fact applies to the EPA is a question reserved to the jury.

The relevance is further substantiated by the "controlled pickup" and the Beaver County case, that implicate and make relevant what has occurred with the games in the marketplace since then as it relates to the EPA.  To exclude evidence would be to prevent PSG from proving its claims.

Therefore, the evidence sought to be excluded must await a foundation.  Apart from this Court determining itself first-hand, compliance with Pennsylvania law, determining the EPA terms and conditions regarding "Compliant Terminals" is clearly a question of fact like any other contract.  Let us call "Fact A" being what was agreed to by the parties.  What happened in the market

---

[5] If some manner of an offer of proof is appropriate, and without necessary releasing information reserved for trial, if the evidence is not adduced otherwise, it is expected that Albie Unis will testify to the effect that all of the examples were understood to be within the context of what are Compliant Terminals as agreed, that is, games of skill, not jeopardized in the market, and compliant with law.  Justice requires the full and fair opportunity to present the case.

regarding seizures, fines, penalties, disruptions, court cases, adjudications, etc., are matters of fact as they exist, as such, and the evidence is that the facts exist, not that the facts are correctly resulted. Let us call this, "**Group Facts B.**"  If Group Facts B rest upon legal issues or determinations, judicial notice can be taken where appropriate, and the jury can be instructed accordingly.  Whether the factual existence of Group Facts B is a violation of EPA Fact A is clearly a question reserved to the jury.

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
  VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing Memorandum in Opposition was served upon all counsel of record via the Court's CM/ECF System on the date set forth below:

October 11, 2022

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com