**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POM OF PENNSYLVANIA, LLC, t/d/b/a PACE-O-MATIC, and SAVVY DOG SYSTEMS, LLC, | CIVIL ACTION NO. 2:18-CV-00722-PLD |
| | CONSOLIDATED |
| Plaintiffs/Counterclaim Defendants, | The Honorable Patricia L. Dodge |
| v. | |
| PENNSYLVANIA SKILL GAMES, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

-----------------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| PENNSYLVANIA SKILL GAMES, LLC | |
| Plaintiff, | |
| v. | |
| PACE-O-MATIC, INC. and MIELE MANUFACTURING, INC., | |
| Defendants. | |

---

### PROPOSED JURY INSTRUCTIONS

---

1

**<u>Introductory Note:</u>**

Please note, the Third Circuit does not have model jury instructions for trademark infringement. The Seventh Circuit and Ninth Circuit do. Model trademark infringement instructions are also published by LexisNexis.

Where patterned after a model jury instruction, the jury instruction is quoted. The source of the model jury instruction is noted in the instruction caption or, if only a portion consists of model instruction content, in brackets in the instruction. Where an instruction is derived from a model instruction(s), modifications to the model instruction are shown in redlines for ease of reference.

I.        **PRELIMINARY INSTRUCTIONS FOR USE AT COMMENCEMENT OF TRIAL**

A.  **Role of the Jury**[1]

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

**This proposed instruction is agreed upon by the parties.**

_____

**Authority / Source(s):**

[1] Model Civil Jury Instructions for the Third Circuit, § 1.1 (August 2020).

B. **Description of Case[2]**

This is a dispute between businesses regarding their business relationship. The Plaintiffs in this case are Pace-O-Matic, Inc., POM of Pennsylvania, LLC, Savvy Dog Systems, LLC, and Miele Manufacturing, Inc. I will refer to the Plaintiffs as the "POM Parties" to save time and avoid confusion.

The Defendant is Pennsylvania Skill Games, LLC. I may refer to the Defendant as "Pennsylvania Skill Games" without the LLC designation.

The POM Parties and Pennsylvania Skill Games each filed separate lawsuits against each other. The two cases have been merged into this lawsuit. Each is a plaintiff and defendant in their respective cases. The POM Parties are designated as plaintiffs in this case for the technicalities of administering the lawsuit, but this has no bearing on rights or claims.  Said otherwise, each side has claims against each other.

The Parties claim a breach of contract against each other involving a document called an Equipment Purchase Agreement. Pennsylvania Skill Games also claims it has an oral contract with the POM Parties that it claims has been breached.

---

### PSG's Proposed Text to Insert

POM of Pennsylvania and Savvy Dog Systems are parties to this action because Pace-O-Matic claims that it transferred rights to those companies.  Pennsylvania Skill Games disputes that Pace-O-Matic had the right to make those transfers.  Pennsylvania Skill Games claims that

---

**Authority / Source(s):**

[2] Model Civil Jury Instructions for the Third Circuit, § 1.2 (August 2020) [modified]

4

Pace-O-Matic breached their agreement by failing to adhere to pricing, exclusivity provisions for Beaver County, and use of the trademark.

————

*The POM Parties object to PSG's proposed additional text, except for the last sentence, "Pennsylvania Skill Games claims that Pace-O-Matic breached their agreement by failing to adhere to pricing, exclusivity provisions for Beaver County, and use of the trademark."*

The POM Parties and Pennsylvania Skill Games claim they own a trademark over a phrase "PENNSYLVANIA SKILL," which is used with graphics in conjunction with electronic gaming machines and game placement services by operators. Among other claims, the parties claim that the other is liable for infringement, unfair competition and false advertising regarding the use of that trademark.

Both sides deny any liability to each other.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that the parties must prove to make their cases:

### The POM Parties' Proposed Text to Insert

To make out a claim for trademark infringement, a party must establish that:

1. The mark in question is valid and legally protectable;

2. It owns the mark; and

3.      Generally speaking, the other party's use of the mark to identify goods and

services is likely to create confusion concerning the origin of goods and services.[3]

To make out a claim for breach of contract, a party must establish that:

1.      The existences of a contract, including its essential terms;

2.      A breach of the contract; and

3.      Resultant damages.[4]

_____

## PSG's Proposed Text to Insert

To make out a claim for breach of contract, a party must establish that:

1.      The existences of a contract, including its essential terms;

2.      A breach of the contract; and

3.      Resultant damages.[5]

To make out a claim for trademark infringement, a party must establish that:

1.      The mark in question is valid and legally protectable;

2.      It owns the mark; and

3.      Generally speaking, the other party's use of the mark to identify goods and

services is likely to create confusion concerning the origin of goods and services.[6]

_____

**Authority / Source(s):**

[3] *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017); *Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc.,* 214 F.3d 432, 437 (3d Cir. 2000).
[4] *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004); *McCabe v. Marywood University*, 166 A.3d 1257, 1262 (Pa. Super. Ct. 2017)
[5] *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004); *McCabe v. Marywood University*, 166 A.3d 1257, 1262 (Pa. Super. Ct. 2017)
**Authority / Source(s):**

_____

*There is a fundamental difference between the parties as to the order in which the jury will hear the legal instructions on trademark liability and breach of contract. This issue is discussed in its entirety at the beginning of Section III. The POM Parties objection to PSG's proposed additional text is reflective of this difference and based on the order in which PSG lists the claims.*

The trial will proceed in the following manner: [7]

First, attorney(s) for the POM Parties will make an opening statement to you. Next, attorneys for  Pennsylvania Skill Games may make an opening statement. What is said in the opening statements is not evidence; it is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, each party is given an opportunity to present their evidence.

The POM Parties go first because they have the burden of proof on their claims against Pennsylvania Skill Games for trademark infringement, unfair competition, breach of contract, and breaches of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. The POM Parties will present witnesses on those claims, whom counsel for Pennsylvania Skill Games may cross-examine, and the POM Parties may also present evidence on those claims and their defenses.

_____

[6] *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017); *Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc.,* 214 F.3d 432, 437 (3d Cir. 2000).
[7] This is not a stipulation or waiver of procedure, awaiting clarification from the Court as to procedure.

7

Following the POM Parties' case,  Pennsylvania Skill Games may present witnesses and evidence on its defenses to the POM Parties' claims and on its counterclaims against the POM Parties for breach of contract, trademark infringement, unfair competition, among other things. Counsel for the POM Parties may cross-examine witnesses for Pennsylvania Skill Games.

After that, the POM Parties may present evidence and call witnesses to testify on their defenses to Pennsylvania Skill Games' counterclaims, defenses, and counsel for  Pennsylvania Skill Games may cross-examine those witnesses.

After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. After that you will retire to the jury room to deliberate on your verdict in this case.

C. **The POM Parties**

**PSG's Proposed Instruction**

The POM Parties are four separate parties.  Each of those four parties must completely prove its claims and defenses.  All four parties are represented by the same legal counsel. During the case, you should mindful of the witness and the testimony, because you will be required at the end of the case to determine the rights and liabilities of each party separately.

**This instruction is agreed upon by the parties.**

D. **Conduct of the Jury**[8]

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all the evidence and have retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you access the Internet and communicate with others via cell phones, smart phones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology. But you must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. And you may not use these devices to communicate electronically by postings or sending messages of any kind about the case, including e-mail, instant messages, text messages, or through any blog, website, Internet chat room, or by way of any other social networking websites or services including Facebook, Twitter, LinkedIn, Instagram, TikTok, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you. That is why you are asked to wear your juror tags. It shows that you are not to be approached in any way.

_____

**Authority / Sources:**

[8] Model Civil Jury Instructions for the Third Circuit, § 1.3 (August 2020)

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or social media post or radio or television report relating to this case, do not read the article or post and do not watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the Internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

**This proposed instruction is agreed upon by the parties.**

## E. Bench Conferences[9]

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Sources:**

[9] Model Civil Jury Instructions for the Third Circuit, § 1.4 (August 2020)

**F.  <u>Note Taking</u>[10]**

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use—they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.  <u>Note-taking is permitted, not required</u>. Each of you may take notes. No one is required to take notes.

2.  <u>Be brief</u>. Do not try to summarize all of the testimony. Notes are not to be used in place of the evidence. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task.

---

**<u>Authority / Source(s):</u>**

[10] Model Civil Jury Instructions for the Third Circuit, § 1.9 (August 2020)

3. <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

4. <u>Do not take your notes away from court</u>. I repeat, at the end of each day, please leave your notes in the jury room. If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

**This proposed instruction is agreed upon by the parties.**

G. **Evidence**[11]

The evidence from which you are to find the facts consists of the following:

1.    The testimony of the witnesses;

2.    Documents and other things received as exhibits;

3.    Any facts that are stipulated—that is, formally agreed to by the parties; and

4.    Any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.    Statements, arguments, and questions of the lawyers for the parties in this case;

2.    Objections by lawyers;

3.    Any testimony I tell you to disregard; and

4.    Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not

---

**Authority / Source(s):**

[11] Model Civil Jury Instructions for the Third Circuit, § 1.5 (August 2020)

permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence may be considered for only a limited purpose, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record, and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

**This proposed instruction is agreed upon by the parties.**

## H. <u>Direct and Circumstantial Evidence</u>[12]

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**This proposed instruction is agreed upon by the parties.**

---

**<u>Authority / Source(s):</u>**

[12] Model Civil Jury Instructions for the Third Circuit, § 1.6 (August 2020)

## I.  Credibility of Witnesses[13]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, or only part of it, or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1.      The opportunity and ability of the witness to see or hear or know the things the witness testifies about;

2.      The quality of the witness's understanding and memory;

3.      The witness's manner and demeanor while testifying;

4.      Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

5.      Whether the witness's testimony is contradicted by anything the witness said or wrote before trial or by other evidence;

6.      How reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.      Any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Source(s):**

[13] Model Civil Jury Instructions for the Third Circuit, § 1.7 (August 2020)

## J.  **Standards of Proof**

### a.  **Preponderance of the Evidence**[14]

This is a civil case. The parties have claims against each other. Each side has the burden to prove their case by what is called the preponderance of the evidence. That means each side has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently, if you were to put the evidence favorable to one side and the evidence favorable to the other on opposite sides of the scales, you must determine which party has met its burden to make the scales tip somewhat on its side. If the POM Parties fail to meet this burden, the verdict must be for Pennsylvania Skill Games. Conversely, if you find that Pennsylvania Skill Games has failed to meet its burden, the verdict must be for the POM Parties. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any claim or fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, each party has the burden of proving the elements of a defense by a preponderance of the evidence. I will instruct you on the facts that will be necessary for you to find on a particular affirmative defense. An affirmative defense is proven if you find, after considering all evidence in the case, that the party asserting the

_____

**Authority / Source(s):**

[14] Model Civil Jury Instructions for the Third Circuit, § 1.10 (August 2020)

19

affirmative defense has succeeded in proving that the required facts are more likely so than not so.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

**This proposed instruction is agreed upon by the parties.**

**b.  Clear and Convincing Evidence[15]**

There are some issues in this case that require you to apply a different standard of proof. On certain affirmative defenses, and on these affirmative defenses alone, the party asserting the defense has the burden to prove its defense by what is called clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that a claim or fact sought to be proved by the evidence is true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.

Again, other than on certain affirmative defenses, all other parts of the case require you to apply the preponderance of evidence standard.

**This proposed instruction is agreed upon by the parties.**

---

[15] Model Civil Jury Instructions for the Third Circuit, § 1.11 (August 2020) [modified]

## II.    GENERAL INSTRUCTIONS FOR USE DURING TRIAL

### A. Use of Depositions[16]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Only portions of the deposition will be played for you. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

If portions of transcript are read rather than shown on video, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Source(s):**

[16] Model Civil Jury Instructions for the Third Circuit, § 2.5 (August 2020) [modified]

21

**B. Use of Interrogatories[17]**

You will now hear answers [party name] gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.

---

**The POM Parties' Proposed Text to Insert**

You must consider [party's name]'s answers to interrogatories in the same manner as if the answers were made from the witness stand.

_____

**PSG's Proposed Text to Insert**

You must consider [party's name]'s answers to interrogatories in the same manner as if the answers were made from the witness stand, but subject to any further testimony or explanation at trial.

*PSG Note: The additional language may not be required. The propriety of reading transcripts other than for impeachment for parties testifying at trial has been briefed by the parties and is the subject of pending motions. See, ECF 244. It is well-settled that model rules are guides and do not substitute the sound discretion of the court for the context. See, O'brien v. The Middle East Forum, No. 21-2646, 2023 WL 107655 (3rd. Cir. 2023)*

_____

*The POM Parties object to PSG's proposed addition because the text "but subject to any further testimony or explanation at trial" improperly deviates from the Third Circuit's Model*

_____

**Authority / Source(s):**

[17] Model Civil Jury Instructions for the Third Circuit, § 2.6 (August 2020) [modified]

*Civil Jury Instructions. PSG's proposed text will also confuse the jury as it obviates the principle that answers to interrogatories qualify as an admission of PSG. See Fidelity & Deposit Co. of Maryland v. Hudson United Bank, 653 F.2d 766, 777 (3d Cir. 1981) (citations omitted). Further, PSG does not cite to any authority in support of this proposed text. The POM Parties therefore request that this Court follow the Model Instructions as written.*

### C.  Charts and Summaries in Evidence[18]

Both sides have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Source(s):**

[18] Model Civil Jury Instructions for the Third Circuit, § 2.7 (August 2020)

### D.  <u>Charts and Summaries Not Admitted in Evidence</u>[19]

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

**This proposed instruction is agreed upon by the parties.**

---

**<u>Authority / Source(s):</u>**

[19] Model Civil Jury Instructions for the Third Circuit, § 2.8 (August 2020)

**E.  Striking Evidence[20]**

I have ordered that [describe the evidence] be struck [stricken] from the record and I am instructing you that you must disregard that information [testimony]. That means that when you are deciding the case, you must not consider that information [testimony] in any way.

**This proposed instruction is agreed upon by the parties.**

───────────────

**Authority / Source(s):**

[20] Model Civil Jury Instructions for the Third Circuit, § 2.9 (August 2020)

**F.  Evidence Admitted for a Limited Purpose**[21]

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Source(s):**

[21] Model Civil Jury Instructions for the Third Circuit, § 2.10 (August 2020)

### G. __Attorney-Client Privilege[22]__

You may hear [witness] decline to answer questions because of the attorney-client privilege.  Sometimes this is conjunction with an objection of counsel.  I may be asked to rule on the propriety of the witness asserting the privilege or set boundaries for a qualified answer from the witness.  To any extent that I rule that the question cannot be answered without revealing an attorney-client privilege, you should proceed with the understanding that the attorney-client privilege is a privilege recognized in federal law to encourage full and frank communications between clients and lawyers. If a witness invoke the attorney-client privilege while testifying, or an objection of counsel is made, you shouldn't draw any conclusion adverse to either party simply because a witness has invoked the privilege. Nor should you speculate on what the witness might have testified if the privilege had not been raised. Confine your deliberations to the testimony that you have heard and to the documents in evidence.

**This proposed instruction is agreed upon by the parties.**

---

__Authority/Source(s):__

[22] Fed. R. Evid. 501; *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Wachtel v. Health Net, Inc.,* 482 F.3d 225, 231 (3d Cir. 2007); *Cottillion v. United Refining Co.*, 279 F.R.D. 290 (W.D. Pa. 2011)

## H.  <u>Recess Admonition</u>[23]

We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier.] During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet. Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to my Deputy Clerk to give to me. I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.

[I will not repeat these admonitions each time we recess, but you will be reminded of them on occasion.]

**This proposed instruction is agreed upon by the parties.**

_____

**Authority / Source(s):**

[23] Model Civil Jury Instructions for the Third Circuit, § 2.14 (August 2020)

## III.    <u>LEGAL INSTRUCTIONS</u>

*As indicated above, there is a fundamental difference between the parties as to the order in which the jury will hear the legal instructions on trademark liability and breach of contract. PSG asserts the breach of contract instructions should be read first because the trademark issues arises "from a relationship of assent" between the parties. The POM Parties disagree and maintain the parties' claims for trademark and breach of contract are separate causes of action regardless of the nature of the parties' relationship. The POM Parties therefore contend the trademark instructions should be read first.*

*Accordingly, the order below in which the trademark instructions are presented first is based only upon the order as presented in the parties' pleadings. The parties therefore defer to the Court to determine the order in which the particular instructions are read to the jury.*

## LEGAL INSTRUCTIONS – TRADEMARK LIABILITY

### A. Trademark Liability – Theories and Policies[24]

The trademark laws balance three often-conflicting goals:

1. Protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market;

2. Protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and

3. Protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if a party is liable to the other for violating the trademark laws. These facts are relevant to whether a party is liable for:

1. Infringing a party's trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

2. Unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of a party's goods;

4. Infringing a party's trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers; and

―――――――――――――

**Authority/Source(s):**

[24] Model Civil Jury Instructions for the Ninth Circuit, § 15.5 (September 2022) [modified]

32

5.      False advertising, by making a false statement that was material and that tended to deceive consumers, injuring a party in the market.

**This proposed instruction is agreed upon by the parties.**

B. **Trademark Infringement – Nature of Claims**[25]

One part of this case involves words and graphics identified as "PENNSYLVANIA SKILL."

POM of Pennsylvania and Savvy Dog claim they own the trademark. Pennsylvania Skill Games filed a counterclaim and separate complaint stating that it owns the trademark. Both sides have denied liability to each other. You have to decide who owns it, and once you have done so, has the other side: (1) infringed on the trademark; and/or (2) engaged in unfair competition using the trademark; and/or (3) have they engaged in false advertising using the trademark.

I will now instruct you on the law that you will apply to make this decision.

A trademark is a word, symbol, or combination of words or symbols used by the owner of that trademark to identify its product, to distinguish its product from those manufactured or sold by others, and to indicate the source of the product.[26] The purpose of trademark law is to

_____

**Authority / Source(s):**

[25] Lanham Act claims for unfair competition and trademark infringement are analyzed identically. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (measuring infringement and unfair competition by the same standards); *Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 100-02 (3d Cir. 2006); *Am. Diabetes Ass'n v. Friskney Family Trust, LLC*, 2016 WL 1359584, at *17 (E.D. Pa. Apr. 6, 2016). Similarly, claims brought under Pennsylvania common law for trademark infringement and unfair competition are coextensive with identical Lanham Act claims. *See, e.g., R.J. Ants., Inc. v. Marinelli Enters.*, LLC, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce.") (citing *Allen–Myland v. Intl. Bus. Machines Corp.*, 746 F. Supp. 520, 553 (E.D. Pa. 1990); *Moore Push–Pin Co. v. Moore Business Forms, Inc.*, 678 F. Supp. 113, 116 (E.D. Pa. 1987)).
[26] Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.1. (2017).

prevent confusion about the source of products or services.[27] Trademark rights are earned, in part, by using the asserted trademark before the defendant's accused use of the trademark.[28]

A trademark can sometimes be different from a trade name. A trade name is the name of a business. A trademark differentiates goods created by the trademark holder from competitors.[29]

## The POM Parties' Proposed Text to Insert

Both sides are claiming a right to ownership of the PENNSYLVANIA SKILL trademark. Pace-O-Matic, POM of Pennsylvania and Savvy Dog claim they created the trademark in conjunction with skill game machines that were designed by Pace-O-Matic and eventually manufactured by Miele Manufacturing. They claim that the trademark was created independently from any input or involvement by PSG, and that the use of PENNSYLVANIA SKILL as a trademark is distinguished from the business name "Pennsylvania Skill Games."

Conversely, PSG claims that a predecessor company used the name "Pennsylvania Skill Games" before the POM Parties. Additionally, PSG claims that an oral contract existed between the parties that enabled the POM Parties to use the trademark, but PSG claims that this right ended due to a breach of contract.

[27] *Id.*

[28] *Sheila's Shine Prod., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 122 (5th Cir. 1973) ("[A] trademark is not a right in gross or at large. A trademark instead is part of the accumulated goodwill of an established business, and the right to a particular mark derives from its use in connection with an established business or trade."); *see also Nat. Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1395 (3d Cir. 1985); *Zazu Designs v. L'Oreal S.A.*, 979 F.2d 499, 503 (7th Cir. 1992) ("Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated … one must win the race to the marketplace to establish the exclusive right to a mark.").

[29] *Delaware Valley Financial Group, Inc. v. Principal Life Ins. Co.*, 640 F. Supp. 2d 603, 618 (E.D. Pa. 2009) (citing *Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc.,* 669 F. Supp. 1297, 1317 (E.D. Pa. 1987)

*PSG objects to this statement as factually unsupported. It does not distinguish the time differential in the word and design, It overstates and mischaracterizes PSG's position. It uses "predecessor" language only for PSG that is not fairly matched to the fact that neither Savvy Dog nor POM of PA were developers of either the word or the design, but takes a claim only if the transfers are valid. It does not clarify that there is no claim by Miele or Pace for infringement.*

Said otherwise, both parties are claiming a trademark right to PENNYSYLVANIA SKILL and they both dispute the other side's claims.

C.  **Trademark Infringement & Unfair Competition – Elements & Burden of Proof**

To prevail on claims of trademark infringement and unfair competition under federal law, each side must prove the following elements by a preponderance of the evidence:[30]

1.      They own a valid and legally protected trademark for PENNSYLVANIA SKILL; and

2.      The other side used PENNSYLVANIA SKILL in a manner that is likely to cause confusion as to the source, sponsorship, affiliation, or approval of source of its products.[31]

---

**The POM Parties' Proposed Text to Insert**

In addition to federal law, POM of Pennsylvania and Savvy Dog have a claim for a violation of the Pennsylvania Trademark Act. PSG does not.

____

*PSG objects that this can only be stated in a manner of the Supplemental Registry.  Any such statement should include a statement that PSG asserts that the registrations are invalid and improperly obtained.*

---

**Authority/Source(s):**

[30] Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2. (2017).

[31] *Id.* at cmt. 2; *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) ("To prevail on a claim for trademark infringement and unfair competition under the Lanham Act, the owner of a valid and legally protectable mark … must show that a defendant's use of a similar mark for its goods 'causes a likelihood of confusion.'") (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)); *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 474 (3rd Cir. 1994) ("Reverse confusion occurs when a larger, more powerful company uses the trademark of a smaller, less powerful senior owner and thereby causes likely confusion as to the source of the senior user's goods or services.") (citing *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)); Model Civil Jury Instructions for the Ninth Circuit, § 15.6 (September 2022).

36

**PSG Proposed Text**

Both parties have a claim under the Pennsylvania trademark law, and it will be for you, the jury, to determine if or who owns the trademark at issue in this case.

———

*The POM Parties object to PSG's proposed additional language. PSG does not raise a claim under the Pennsylvania Trademark Act in any of its pleadings.*

The elements of a claim for trademark infringement under federal law and under Pennsylvania law are the same for purposes of assessing liability.[32] Below I will provide additional information about each of these required elements.

If you find that POM of Pennsylvania and Savvy Dog did not prove each of these elements by a preponderance of the evidence, then you must find for Pennsylvania Skill Games.[33]

**The POM Parties' Proposed Text to Insert**

If, on the other hand, you find that Pennsylvania Skill Games has proved each of these elements by a preponderance of the evidence, you must then consider POM of Pennsylvania and

---

[32] *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement . . . and federal unfair competition . . . by identical standards."); *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce.") (citing *Moore Push–Pin Co. v. Moore Business Forms, Inc.*, 678 F. Supp. 113, 116 (E.D. Pa. 1987); *Allen–Myland v. Intl. Bus. Machines Corp.*, 746 F. Supp. 520, 553 (E.D. Pa. 1990)). Those claims must be analyzed separately, however, for damages purposes, the POM Parties have a claim for punitive damages under Pennsylvania law—a form of recovery that is *not* available under the Lanham Act.

[33] Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2. (2017).

37

Savvy Dog's defenses and counterclaims against Pennsylvania Skill Games: (1) that Pennsylvania Skill Games claims are barred because the POM Parties' use of PENNSYLVANIA SKILL constitutes fair use of ordinary descriptive terms, regardless of whether confusion was likely; and (2) that Pennsylvania Skill Games has abandoned its ownership of the PENNSYLVANIA SKILL mark.

———————————

**PSG's Proposed Text to Insert**

If, on the other hand, you find that a party has proved each of these elements by a preponderance of the evidence, you must then consider the defenses of the other party.

———————————

*The POM Parties object to PSG's proposed additional text as it insufficiently outlines the affirmative defenses raised by the POM Parties for the jury.*

*PSG objects that the POM Parties have not mutually addressed defenses.*

Before instructing you on those defenses and counterclaims, I will provide further details on the elements both parties must prove on their claims for infringement and unfair competition.

### D.  Definition – Trademark [34]
### (15 U.S.C. § 1127)

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.

A person who uses the trademark of another without their permission may be liable for damages.

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Sources:**

[34] Model Civil Jury Instructions for the Ninth Circuit, § 15.2 (January 2017)

### E.  **Trademarks versus Trade Names**

Trademarks and trade names are technically distinct.[35] A trade name is any word or words, symbol, or combination thereof, used to identify a business and to distinguish it from the business of others.[36] A trade name symbolizes the reputation of a business as a whole, and applies not to vendible goods but to the business and its goodwill.[37] In contrast, trademarks are designed to identify and distinguish goods.[38]

The major legal distinction between trademarks and trade names is that trade names cannot be registered.[39]

---

### **PSG's Proposed Text to Insert**

unless the tradename also functions as a trademark; that is, it is not used solely as a trade name.[40]

———

*PSG's objects that, without the caveat, it implies that a trademark and a trade name are mutually exclusive, which they clearly are not.*

---

**Authority/Source(s):**

[35] *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989); *See* 15 U.S.C. § 1127

[36] Model Civil Jury Instructions for the Ninth Circuit, § 15.4 (January 2017) [modified]

[37] *Id.*; *Railroad Salvage of Conn., Inc. v. Railroad Salvage, Inc.*, 561 F. Supp. 1014, 1019 (D. R.I. 1983) (citing *New West Corp. v. NYM Co.,* 595 F.2d 1194, 1201 (9th Cir.1979); *American Optical Corp. v. North American Optical Corp.*, 489 F.Supp. 443, 447 (N.D.N.Y.1979); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.*, 371 F.Supp. 900, 907 (W.D.Ark.1974)).

[38] *Delaware Valley Financial Group, Inc. v. Principal Life Ins. Co.*, 640 F. Supp. 2d 603, 618 (E.D. Pa. 2009)

[39] *Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989)

[40] See, Trademark Manual of Examining Procedure, §1202.01 ("solely as trade name").

As a practical matter however, courts are rarely called upon to distinguish between trade names and trademarks. Trade names often function as trademarks as well. Because of this functional overlap, the same broad standards of protection apply to trademarks and trade names.[41] For example, in cases such as this one, a party's use of a corporate name as a trademark on goods may be characterized as infringement or unfair competition.[42] Conversely, a party's use of a trademark as part of its corporate title and name, can be viewed as trademark infringement.[43] In short, a tradename can be used as a trademark; that is, they are not mutually exclusive. For example, "Best Buy" may be both a trade name and a trademark.

---

[41] Cmt. to § 15.4, Model Civil Jury Instructions for the Ninth Circuit (January 2017); *See American Steel Foundries v. Robertson*, 269 U.S. 372, 380 (1926)

[42] *John Roberts Mfg. Co. v. University of Notre Dame Du Lac*, 258 F.2d 256 (7th Cir. 1958) (enjoining use of university name on rings); *Texas Tech University v. Spiegelberg*, 461 F. Supp. 2d 510 (N.D. Tex. 2006) (granting summary judgment for plaintiff of infringement by retail store selling apparel imprinted with the university's name and insignia).

[43] *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505 (5th Cir. 1979) (use of senior user's mark WORLD in competitor's new corporate name "Armstrong World Industries, Inc." was held not an infringement); *Atlas Supply Co. v. Atlas Brake Shops, Inc.,* 360 F.2d 16 (6th Cir. 1966) (enjoining use of ATLAS in defendant's corporate name when used in combination with the word "brakes"); *Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495 (2d Cir. 1962) (enjoining use of service mark SAFEWAY as part of defendant's corporate name "Safeway Properties, Inc."); *Stover v. Farmers' Educational and Co-op. Union of America*, 250 F.2d 809, 812–813 (8th Cir. 1958) (use of newspaper trademark in defendant's corporate name held contempt of injunction); *Alfred Dunhill of London, Inc. v. Dunhill Shirt Co.*, 213 F. Supp. 179, 184  (S.D. N.Y. 1963) (defendant's use of DUNHILL in the sale of its shirts and in its corporate name infringed plaintiff's trademark DUNHILL).

**F. Senior User**

<u>The POM Parties' Proposed Instruction[44]</u>

The law entitles the trademark owner to exclude others from using that trademark. A party acquires the right to exclude others from using a trademark by being the first to lawfully use it in the marketplace or by lawfully using it before the alleged infringer. A party also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the party and the mark prior to the alleged infringer's use. This party may be referred to as the senior user.

A trademark is "used" for purposes of this instruction when it is transported or sold in interstate commerce and the trademark is attached to the product, or placed on its label or container, or, if that is not practical, placed on documents associated with the goods or their sale.

If you find PENNSYLVANIA SKILL to be valid, that is, inherently distinctive, you must consider whether the senior user used PENNSYLVANIA SKILL as a trademark to identify its products before the alleged infringer began to use PENNSYLVANIA SKILL to market its products in the area where the senior user sells its products.

If you find that PENNSYLVANIA SKILL is not inherently distinctive, but shown to be descriptive and has acquired secondary meaning, the senior user has the burden of showing by a preponderance of the evidence that PENNYSLVANIA SKILL had gained secondary meaning before the alleged infringer first began to use PENNSYLVANIA SKILL.[45]

---

**Authority/Source(s):**

[44] Model Civil Jury Instructions for the Ninth Circuit, § 15.13 (June 2022)
[45] *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)

42

**PSG's Proposed Instruction**

You will need to determine who used the mark "PENNSYLVANIA SKILL" first.  An internal use is not a public commercial use, and, for purposes of determining the first to use for trademark purposes, the standard to apply is who used the mark first.  A use for services is when the mark is used in conjunction with the services, including advertising materials.  A use for products is when applied with or in conjunction with the goods, or packing use with the goods.  For purposes of establishing seniority, you may not consider use of the mark in question during the period that the mark is claimed to be infringing, because an infringer is creating a market illegally.  Seniority is determined by the earliest use in interstate commerce.  The user who first appropriates the mark obtains an enforceable right to exclude others from using it as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.[46]  In addition to its claim to a trademark, PSG asserts that the EPA governs the use of the term "PENNSYLVANIA SKILL as part of the agreed marketing requirements."

---

[46] See generally McCarthy, supra, § 17:3; *La Societe Anonyme des Parfumes Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271 (2nd Cir.1974)

43

### G. Surveys

<b><u>PSG's Proposed Instruction</u></b>

Neither party is submitting a market survey.  Accordingly, you may not assume that the market reputation is the same as any one particular witness indicates for the witness.  In other words, whether one witness is aware of the mark or not aware of the mark is not an indication of the marketplace or general reputation.  A witness may testify to a use for purposes of establishing who was first in the market, but not to establish reputation in the market.  You should use your common sense based upon the evidence.

———————————

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction as it is a mischaracterization of law and improperly instructs the jury on how to weigh customer testimony. Specifically, PSG's instruction that a witness may not testify to "to establish reputation in the market" is incorrect. As stated by the Third Circuit, "customer testimony [is] relevant to the secondary meaning inquiry only insofar as [it is] probative of the strength of the "Commerce" mark in the collective consumer consciousness." Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 440 (3d Cir. 2000). Additionally, PSG fails to cite any authority in support of its proposed instruction.*

*The POM Parties find this instruction to be unnecessary and therefore do not offer an alternative proposed instruction.*

## H.  Assignment by PACE-O-MATIC

### PSG's Proposed Instruction

Pennsylvania Skill Games has claimed that Pace-O-Matic, as signer of the Equipment Purchase Agreement was not permitted to assign rights under the EPA to POM of Pennsylvania, or claimed trademark rights to Savvy Dog.  Accordingly, Pennsylvania Skill Games asserts that neither POM of Pennsylvania nor Savvy Dog are owner of rights or proper parties in this action. If you determine that the assignment of rights was not permitted, then neither of those parties has rights or claims under the EPA.  A trademark may only be assigned appurtenant, or with the goodwill of the business related to the business.  Trademarks have no existence independent of the article, service or business in connection with which the mark is used.[47]

--------------------

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction because it is irrelevant and will confuse the jury as it improperly conflates the terms of the EPA. PSG's instruction misrepresents the fact that any trademark right exists pursuant to a contract, or that any alleged contract is connected in any way to the trademark. The POM Parties dispute PSG's theory and maintain that PSG has not sufficiently raised this issue in its pleadings. Further, PSG fails to cite any authority in support its proposed instruction.*

*The POM Parties find this instruction to be unnecessary and therefore do not offer an alternative instruction.*

--------------------

[47] *Presley's Estate v. Russen,* 513 F.Supp. 1339211 U.S.P.Q. 415 (E.D.NJ 1981)

### I. Assignment and Use by the POM Parties

### PSG's Proposed Instruction

If you determine that the use of the trademark in question was permissive by the contract or relationship of the parties, the value of the mark inures to the owner of the trademark. A permissive right to use a trademark is called a "license."[48] A licensing agreement may be recognized whether oral or in writing. Ownership rights in a trademark or service mark may be acquired and maintained through the use of the mark by a controlled licensee even when the only use of the mark has been made, and is being made, by the licensee. A license may be implied by the context even if is not an expressly set forth or named as such in any agreement.[49]

――――――――――――

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction for the same reasons as set forth in its objection to Instruction "H".*

――――――――――――

[48] *Pneutek, Inc. v. Scherr,* 211 USPQ 824, 833 (TTAB 1981).

[49] *In re Raven Marine, Inc.,* 217 USPQ 68, 69 (TTAB 1983) (citing *Basic Inc. v. Rex,* 167 USPQ 696, 697 (TTAB 1970)); *see Sock It To Me, Inc. v. Aiping Fan,* 2020 USPQ2d 10611, at *3-4 (TTAB 2020) (citing *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.),* 43 USPQ2d 1440, 1447 (TTAB 1997); Univ. Book Store v. Univ. of Wis. Bd. of Regents, 33 USPQ2d 1385, 1396 (TTAB 1994)) ("Even if there is no formal written agreement, a license can be implied."). *Turner v. HMH Publ'g Co.,* 380 F.2d 224, 229, 154 USPQ 330, 334 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 156 USPQ 720 (1967); *Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.,* 225 USPQ 438, 440 (TTAB 1984) (holding that use of the mark by petitioner's affiliated banks considered to inure to the benefit of petitioner bank holding company, even though the bank holding company could not legally render banking services and, thus, could not use the mark).

**J. Infringement – Elements and Burden of Proof – Trademark[50]**
**(15 U.S.C. § 1125(a) – Federal Unregistered Mark – Trademark Infringement)**

For the federal claim of trademark infringement of an unregistered trademark, you, the jury, must find from a preponderance of the evidence:

1. The PENNSYLVANIA SKILL mark is a valid, protectable trademark;

2. Which party owns the PENNSYLVANIA SKILL mark as a trademark; and

3. The other party's use of the PENNSYLVANIA SKILL mark was without the consent of the owner in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.[51]

The elements of federal registered and unregistered trademark infringement are the same.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[50] Model Civil Jury Instructions for the Ninth Circuit, § 15.6 (September 2022) [modified]
[51] For the three elements of unregistered mark infringement: *800 Spirits Inc. v. Liquor By Wire, Inc.*, 14 F. Supp. 2d 675, 678 (D.N.J. 1998) (*citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 120 L. Ed. 2d 615, 112 S. Ct. 2753 (1992)).

### K.  Infringement – Elements – Validity/Ownership – General

#### The POM Parties' Proposed Instruction

One way for a party to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark.[52]

Both the POM Parties and Pennsylvania Skill Games have offered into evidence [applications and/or supplemental registrations] filed with the United States Patent and Trademark Office. These documents are not certificates of registration as I just described. Therefore, you are not to consider this evidence as prima facie proof of ownership or the trademark's validity.[53]

‒‒‒

*PSG objects to this instruction because it exceeds the law and facts.  PSG has a Supplemental Registry registration certificate and is entitled to offer it at trial provide that it is not mischaracterized for legal effect.  That registration exists for the evidentiary purposes that are allowed by law, understanding that it does not have a legal presumption as an incident.  This instruction disregards the registration and the difference in application from a registration, albeit on the Supplemental Register.*

‒‒‒

**Authority/Source(s):**

[52] Model Civil Jury Instructions for the Ninth Circuit, § 15.8 (January 2017)
[53] Order of Court granting Motion in Limine to Limit Testimony and Evidence Related to Ownership of Trademarks providing no party may use any trademark application or supplemental registration as prima facie proof of ownership. [ECF 250 / Case No. 2:18-cv-00722-PLD]

**PSG's Proposed Instruction**

Pennsylvania Skill Games has a registration from the United States Patent and Trademark Office.  The registration is on the "supplemental register" and does not afford Pennsylvania Skill Games with any legal presumption of ownership.  However, it does evidence that the mark in question was reviewed by the United States Patent & Trademark Office as capable of supporting a valid and subsisting trademark. Also, Savvy Dog has registrations at the Commonwealth of Pennsylvania, which do not grant any legal presumption of ownership.  Each party disputes the propriety of the other's registration, and for purposes of this case, you are not to consider that the respective registrations are proof or any presumption of ownership. You may, however, consider the statements made by the respective parties in their application filings, admissions made by the parties in the filings, the timing of the filings, and other circumstances regarding the filing, but the granting of the registrations by any government agency in and of themselves are not proof of ownership.

—

*The POM Parties object to PSG's proposed instruction based on this Court's prior rulings.*

49

L. **Infringement – Elements – Validity – Unregistered Mark[54]**

---

**The POM Parties' Proposed Text to Insert**

The design mark PENNSYLVANIA SKILL is not a registered trademark. Unregistered trademarks however can be valid and provide the trademark owner with the exclusive right to use that mark.

———

**PSG's Proposed Text to Insert**

PENNSYLVANIA SKILL as a word mark is a registered trademark on the Supplemental Register with the United States Patent & Trademark Office. The meaning of that registration will be explained to you shortly.  However, even unregistered trademarks however can be valid and provide the trademark owner with the exclusive right to use that mark.  A word mark registration is broader than a design mark registration because it is filed without any limitation to any particular font style, size or color as set forth in the registration certificate.

---

As I mentioned a moment ago, the party claiming infringement of an unregistered trademark must prove by a preponderance of the evidence that PENNSYLVANIA SKILL is valid.

A valid trademark is a word, name, symbol, device, or any combination of thereof that is either: (1) inherently distinctive; or (2) descriptive but has acquired a secondary meaning.[55]

---

**Authority/Source(s):**

[54] Model Civil Jury Instructions for the Ninth Circuit, § 15.9 (January 2017) [modified]
[55] *Wal-Mart Stores, Inc. v, Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000)

50

51

Only if you determine that PENNSYLVANIA SKILL is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in a separate instruction.

51

## M. <u>Infringement – Elements – Validity – Inherently Distinctive</u>[56]

In this case, each side claims they have established PENNSYLVANIA SKILL as a valid trademark for their products. A party must establish validity by showing its trademark was distinctive prior to defendant's accused use.[57] To determine whether a party has proved this, you must consider whether the evidence shows that the PENNSYLVANIA SKILL mark was inherently distinctive, or that, even if not inherently distinctive, PENNSYLVANIA SKILL had acquired distinctiveness through use.[58]

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product. Inherently distinctive trademarks include all marks that are suggestive, arbitrary, or fanciful, and does not include trademarks that are either generic or merely descriptive.[59]

---

**Authority / Source(s):**

[56] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S. Ct. 2753,2760, 120 L. Ed. 2d 615 (1992); *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110 (3d Cir. 2004); *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 282 (3d Cir. 2001).
[57] *Duffy v. Charles Schwab & Co.*, 97 F. Supp. 2d 592, 598 (D.N.J. 2000) (effect of lack of registration to rely upon).
[58] *Tillery v. Leonard & Sciolla, LLP*, 521 F. Supp. 2d 346, 349 (E.D. Pa. 2007) (determination of acquired distinctiveness or secondary meaning inquires as to whether it attained "prior to the alleged infringement").
[59] *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110 (3d Cir. 2004) (types of inherently distinctive marks).

**PSG's Proposed Text to Insert**

If you determine that the minimum threshold for a trademark existed at the time of any agreement by the parties related to the trademark, and if you determine the other party used the trademark pursuant to a license or permissive right, then the grantor of that permission is entitled the reputation and market rights developed by its licensee.[60]

_____

*The POM Parties have no alternative to this proposed text and instead object to PSG's proposed additional text because it is confusing as written and will therefore confuse the jury. Further, PSG fails to cite any applicable authority in support of its proposed addition.*

---

[60] *In re Raven Marine, Inc.,* 217 USPQ 68, 69 (TTAB 1983) (citing *Basic Inc. v. Rex,* 167 USPQ 696, 697 (TTAB 1970)); *see Sock It To Me, Inc. v. Aiping Fan,* 2020 USPQ2d 10611, at *3-4 (TTAB 2020) (citing *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.),* 43 USPQ2d 1440, 1447 (TTAB 1997); Univ. Book Store v. Univ. of Wis. Bd. of Regents, 33 USPQ2d 1385, 1396 (TTAB 1994)) ("Even if there is no formal written agreement, a license can be implied."). *Turner v. HMH Publ'g Co.,* 380 F.2d 224, 229, 154 USPQ 330, 334 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 156 USPQ 720 (1967); *Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.,* 225 USPQ 438, 440 (TTAB 1984) (holding that use of the mark by petitioner's affiliated banks considered to inure to the benefit of petitioner bank holding company, even though the bank holding company could not legally render banking services and, thus, could not use the mark).

N. **Infringement – Elements – Validity – Acquired Distinctiveness – Secondary Meaning**

Another way to establish validity is for a party to demonstrate that it acquired distinctiveness in the trademark PENNSYLVANIA SKILL.

A word or name acquires sufficient distinctiveness when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.[61] It is sufficient to show that a significant number of the consuming public associates the PENNSYLVANIA SKILL Mark with a single source. The party claiming ownership need not prove that all or even a majority of the consuming public understands this meaning, only a significant number of the consuming public. It is for you to decide how many constitute a significant number.

---

**PSG's Proposed Text to Insert**

However, neither party has submitted a market survey as to market conditions, nor has any party offered an expert in this regard.  Accordingly, if any witness testifies it is solely that witness's testimony and not evidence of a survey or more than what the witness testifies to as a fact.

If you determine that the minimum threshold for a trademark existed at the time of any agreement by the parties related to the trademark, and if you determine the other party used the

---

**Authority/Source(s):**

[61] *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210-211 (2000) (primary significance test).

trademark pursuant to a license or permissive right, then the grantor of that permission is entitled

the reputation and market rights developed by its licensee.[62]

---------------------

*The POM Parties have no alternative instruction to suggest and instead object to PSG's*

*proposed additional text for the same reasons set forth in its objection to Instruction "G".*

---

When you are determining whether PENNSYLVANIA SKILL has acquired

distinctiveness, consider the following factors:[63] (1) the extent of sales and advertising leading to

buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer

surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the

company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

The presence or absence of any particular factor should not necessarily resolve whether

PENNSYLVANIA SKILL has acquired distinctiveness and you should only consider these

factors to the  extent relevant.

---

[62] *In re Raven Marine, Inc.,* 217 USPQ 68, 69 (TTAB 1983) (citing *Basic Inc. v. Rex,* 167 USPQ 696, 697 (TTAB 1970)); *see Sock It To Me, Inc. v. Aiping Fan,* 2020 USPQ2d 10611, at *3-4 (TTAB 2020) (citing *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.),* 43 USPQ2d 1440, 1447 (TTAB 1997); Univ. Book Store v. Univ. of Wis. Bd. of Regents, 33 USPQ2d 1385, 1396 (TTAB 1994)) ("Even if there is no formal written agreement, a license can be implied."). *Turner v. HMH Publ'g Co.,* 380 F.2d 224, 229, 154 USPQ 330, 334 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 156 USPQ 720 (1967); *Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.,* 225 USPQ 438, 440 (TTAB 1984) (holding that use of the mark by petitioner's affiliated banks considered to inure to the benefit of petitioner bank holding company, even though the bank holding company could not legally render banking services and, thus, could not use the mark).
[63] *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 231 (3d Cir. 2017) (providing list of factors to consider "to the extent relevant")

**PSG's Proposed Text to Insert**

Also, you will need to be careful with determining the timing and circumstances with how any market was created, and not to use the period of time that occurred after the claimed infringement as benefiting the claimed infringer. That, you should be mindful to whether those factors occurred by an infringer or licensee, and if so, the use will be attributed to the owner of the mark.[64]

———————————

*The POM Parties have no alternative text to add and instead object to PSG's proposed additional text because it is confusing as written and will therefore confuse the jury. Further, PSG fails to cite any applicable authority in support of its proposed addition.*

———————————

[64] *In re Raven Marine, Inc.,* 217 USPQ 68, 69 (TTAB 1983) (citing *Basic Inc. v. Rex,* 167 USPQ 696, 697 (TTAB 1970)); *see Sock It To Me, Inc. v. Aiping Fan,* 2020 USPQ2d 10611, at *3-4 (TTAB 2020) (citing *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.),* 43 USPQ2d 1440, 1447 (TTAB 1997); Univ. Book Store v. Univ. of Wis. Bd. of Regents, 33 USPQ2d 1385, 1396 (TTAB 1994)) ("Even if there is no formal written agreement, a license can be implied."). *Turner v. HMH Publ'g Co.,* 380 F.2d 224, 229, 154 USPQ 330, 334 (5th Cir. 1967), cert. denied, 389 U.S. 1006, 156 USPQ 720 (1967); *Cent. Fid. Banks, Inc. v. First Bankers Corp. of Fla.,* 225 USPQ 438, 440 (TTAB 1984) (holding that use of the mark by petitioner's affiliated banks considered to inure to the benefit of petitioner bank holding company, even though the bank holding company could not legally render banking services and, thus, could not use the mark).

## O. **Infringement – Intentional Infringement / Willfulness**

As previously explained, while a defendant's actions need not be intentional or willful to be infringing, you will need to specifically answer the question here of whether one of the parties acted intentionally or willfully. This encompasses a number of culpable mental states, including an intent of promoting confusion and appropriating the prior user's good will, or reckless infringement.[65] Intentional or willful infringement can be inferred by the fact that a party continued the infringing behavior after being given notice.[66]

For reverse confusion, in addition to these showing, it may also be satisfied by a showing that the party acted with deliberate intent to push the plaintiff out of the market or other culpable conduct.[67]

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[65] *Romag Fasteners, Inc. v. Fossil Grp., Inc.,* 140 S. Ct. 1492, 1498 (2020) (Hon. Sotomayor, concurring) (recent Supreme Court trademark willfulness decision) ("I agree that 15 U.S.C. § 1117(a) does not impose a "willfulness" prerequisite for awarding profits in trademark infringement actions. Courts of equity, however, defined "willfulness" to encompass a range of culpable mental states—including the equivalent of recklessness, but excluding "good faith" or negligence."); *Kars 4 Kids Inc. v. Am. Can!*, 2021 U.S. App. LEXIS 23672, *13, 8 F.4th 209, 221 (3d Cir. 2021) (trademark infringement appeal; "the jury instructions here allowed the jury to identify willfulness based on recklessness alone, not intent")

[66] MSJ Order p. 21 quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) (Reed, J.).

[67] *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 232, 2000 U.S. App. LEXIS 30205, *87-88, 57 U.S.P.Q.2D (BNA) 1097, 1120 (3d. Cir. 2000) (In reverse confusion case, "should an intent to confuse exist, it would be relevant to the likelihood of confusion analysis in the same manner as it would for a direct confusion claim. For instance [we have previously] highlighted the possibility that the larger company had adopted the mark with the deliberate intent of pushing its rival out of the market, and that it was this sort of usurpation of business identity that the reverse confusion doctrine was designed to prevent." (citation omitted)).

## P.  **Infringement – Elements and Burden of Proof – Pennsylvania Trademark Act**

### **The POM Parties' Proposed Instruction**

You must decide whether Pennsylvania Skill Games engaged in trademark infringement under Pennsylvania state law, in addition to the federal claims. The standards for trademark infringement under Pennsylvania and federal law are the same[68] and extend to all activity in the United States.[69]

Therefore, if you find infringement for federal trademark infringement, you must also find infringement for Pennsylvania trademark infringement. Similarly, if you do not find any federal trademark infringement, you must not find Pennsylvania trademark infringement.

_____

*PSG objects that the instruction should be abstract and mutual.*

--------

**Authority/Source(s):**

[68] *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (same standards); *Transdermal Prods. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 553 (E.D. Penn.1996) (contributory infringement applies for Pennsylvania state trademark infringement claim as well); *Allen-Myland, Inc. v. IBM Corp.,* 746 F.Supp. 520, 552-53 (E.D. Pa. 1990) (the elements of an unfair competition claim under Pennsylvania common law are identical to those required under the Lanham Act, except that no showing regarding interstate commerce is necessary under Pennsylvania law)

[69] Bifurcation order selected Pennsylvania under choice of law as one state law applicable for all state law infringement, not the laws of one or more other states in which activity took place.

_____

## **PSG's Proposed Instruction**

You must decide whether a party engaged in trademark infringement under Pennsylvania state law, in addition to the federal claims. The standards for trademark infringement under Pennsylvania and federal law are the same and extend to all activity in the United States.

Therefore, if you find infringement for federal trademark infringement, you must also find infringement for Pennsylvania trademark infringement. Similarly, if you do not find any federal trademark infringement, you must not find Pennsylvania trademark infringement.

_____

*The POM Parties object to PSG's proposed instruction, specifically, it's use of the term "a party," because PSG does not raise a claim under the Pennsylvania Trademark Act in its pleadings.*

**Q.  Defenses – Descriptive or "Classic" Fair Use (15 U.S.C. § 1115(b)(4))**

The owner of a trademark cannot exclude others from making a fair use of that trademark if there is a legally protectible right for the use. A party makes fair use of a mark when that party uses it as other than a trademark, to accurately describe its own product in good faith and not as an infringer.

---

### The POM Parties' Proposed Additional Text

If you find that Pennsylvania Skill Games is the owner of a valid trademark, the POM Parties contend that it fairly used the trademark to describe its products. The POM Parties then will have the burden of proving its fair use of the mark by a preponderance of the evidence.

The POM Parties make fair use of a trademark when it:

1.      Used the mark other than as a trademark;

2.      Used the mark fairly and in good faith; and

3.      Used the mark only to describe the POM Parties' goods as those of the POM Parties and not at all to describe Pennsylvania Skill Games' product.[70]

You may also consider the extent of confusion in determining whether the use was fair or not.[71]

---

**Authority/Source(s):**

[70] *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123 (2004); 15 U.S.C. § 1115(b)(4).

[71] *Century 21 Real Estate Corp. v. Lendingtree, Inc.,* 425 F.3d 211, 245 (3d Cir. 2005) ("even though a finding of likely confusion would not foreclose assertion of the statutory descriptive fair use defense, courts might nonetheless factor the extent of confusion into determining whether the purportedly descriptive use was not fair.")

**<u>PSG's Proposed Additional Text</u>**

If you find that one party is the owner of a valid trademark and was used in violation of agreement or law, then you will need to determine the affirmative defense of fair use. The party asserting fair use has the burden of proving its fair use of the mark by a preponderance of the evidence.

An infringer make fair use of a trademark when it:

1.      Used the mark other than as a trademark;

2.      Used the mark fairly and in good faith; and

3.      Used the mark not as an infringer.

You may also consider the extent of confusion in determining whether the use was fair or not. If you determine that the POM Parties are infringers, they cannot also be fair users.

───────────

*The POM Parties object to the last sentence in PSG's proposed additional text because it is a mischaracterization of law and not supported by any authority.*

61

**R. Defenses – Loss of Trademark Rights Through Intentional Abandonment[72]**

The owner of a trademark cannot exclude others from using the mark if it the owner intentionally abandoned the trademark. The POM Parties contend that, even if Pennsylvania Skill Games can show that it is the senior user of the PENNSYLVANIA SKILL mark, Pennsylvania Skill Games abandoned any trademark rights in PENNSYLVANIA SKILL. The POM Parties have the burden of proving abandonment by clear and convincing evidence.

In determining whether the Pennsylvania Skill Games abandoned the right to exclusive use of PENNSYLVANIA SKILL, you must determine whether the POM Parties:

1.     Discontinued its use of the trademark in the ordinary course of trade with the intent not to resume usage; or

2.     Acted or failed to act in a way that the trademark's primary significance to all appreciable segments of prospective purchasers has become the product itself, and not the origin of the product.

To establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed.

A trademark owner may find its trademark abandoned where it fails to take legal action against infringers of its trademark. If such infringement becomes sufficiently widespread, and so many others are using the mark that an appreciable segment of the public no longer primarily

--------

**Authority/Source(s):**

[72] 15 U.S.C. § 1127*; United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 138 (3d Cir. 1981); *United States Jaycees v. Phila. Jaycees*, 639 F.2d 134, 139 (3d Cir. 1981); 1 Gilson on Trademarks § 3.05 (2018).

associates the mark with a single source of goods or services, the mark will be considered abandoned.

---

### The POM Parties' Proposed Text to Insert

Non-use of the trademark for three consecutive years raises a rebuttable presumption of abandonment, which may be rebutted if you find Pennsylvania Skill Games' cessation lacked an intention not to resume use at a later point.

———

*PSG objects that the insertion is in applicable.*

---

S. **Defenses – Laches**

Both parties have claimed laches.  Laches is based on the theory that a party who has "slept" on its rights for an unreasonably long period of time should not be permitted to bring suit where the delay has prejudiced the other party.[73]

In order to prove laches, the party must prove by a preponderance of the evidence that:

1.      The party delayed in bringing its claim for an unreasonable length of time after it knew or should have known of its cause of action, and

2.      This delay resulted in prejudice.[74]

The length of time which may be considered unreasonable depends on the circumstances, but is nonetheless measured from when the party first knew of, or reasonably should have known of, the allegedly infringing activities to when the party first filed its claim.[75]

In examining whether a party suffered prejudice, you must determine whether a party suffered either evidentiary or economic prejudice.[76]

Evidentiary prejudice may arise by reason of a party's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of

---

**Authority/Source(s):**

[73] *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946 (3d Cir. 1971)
[74] *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 138 (3d Cir. 2005); *Joint Stock Soc. v. UDV N. Am., Inc.*, 266 F.3d 164, 185 n. 12 (3d Cir. 2001) (citing *Pappan Enter. v. Hardee's Food Sys.*, 143 F.3d 800, 804 (3d Cir. 1998)); *Sunquest Information Systems, Inc. v. Park City Solutions, Inc.*, 130 F.Supp.2d 680, 697 (W.D. Pa. 2000) (citing *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982))
[75] *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 221-22 (3d Cir. 2021); *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018); *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental*, 698 F.3d 9, 21 (1st Cir. 2012)
[76] *A. C. Aukerman Co. v. R. L. Chaides Const. Co.*, 960 F. 2d 1020, 1032 (Fed. Cir. 1992) (citing *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988))

memories of long past events.[77] On the other hand, economic prejudice may arise if you find the POM Parties incurred costs and expenses above and beyond the promoting and advertising of the infringing product, which likely would have been prevented by an earlier suit.[78]

**This proposed instruction is agreed upon by the parties.**

---

[77] *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 885 (5th Cir. 1979); *Smith v. Sinclair Ref. Co.*, 257 F.2d 328, 330 (2d Cir. 1958); *Gillons v. Shell Co.*, 86 F.2d 600, 608–09 (9th Cir. 1936), *cert. denied*, 302 U.S. 689, (1937)

[78] *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 701 (7th Cir. 1982); *American Home Prods. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1124 (6th Cir.1973), *cert. denied*, 414 U.S. 1158 (1974); Yates v. Smith, 271 F. 27, 31 (D. N.J. 1920); *see Jenn–Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48, 49–50 (3d Cir. 1972)

**T. Unfair Competition – Pennsylvania Unfair Trade Practices and Consumer Protection Law**

**POM Parties' Proposed Instruction**

You must also decide whether Pennsylvania Skill Games violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law. For purposes of this instruction, I will refer to the Pennsylvania Unfair Trade Practices and Consumer Protection Law simply as the "Unfair Trade Practices Law."

The Unfair Trade Practices Law makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in trade or commerce.[79] This includes:

1. Causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2. Causing a likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

3. Using deceptive representations or designations of geographic origin in connection with goods or services;

4. Representing that goods or services have sponsorship, approval, or characteristics that they do not have.[80]

Deceptive acts are acts that have the capacity or tendency to deceive, regardless of whether there was any intent to deceive.[81] In this case, you must consider whether PSG engaged

---

**Authority/Source(s):**

[79] 73 Pa. Stat. Ann. § 201-3; *See Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995) (opining the Supreme Court of Pennsylvania would hold that a competitor of the party allegedly violating the UTPCPL can assert a claim under the "unfair competition category of the 'advertising injury coverage'").

[80] 73 Pa. Stat. Ann. § 201-2(4)(ii-v).

[81] *Loduca v. WellPet LLC,* 549 F. Supp. 3d 391, 400 (E.D. Pa. 2021) (citing *Commonwealth v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018)).

in deceptive conduct which created a likelihood of confusion or of misunderstanding on the part of the POM Parties.

The standards for unfair competition under the Unfair Trade Practices Law and federal law are the same.[82] Therefore, if you find Pennsylvania Skill Games engaged in unfair competition under federal law, you must also find it breached the Unfair Trade Practices Law. Similarly, if you do not find any federal unfair competition, you must not find violation.

---

### PSG's Proposed Instruction

You must also decide whether either party violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law. For purposes of this instruction, I will refer to the Pennsylvania Unfair Trade Practices and Consumer Protection Law simply as the "Unfair Trade Practices Law."

The Unfair Trade Practices Law makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in trade or commerce. This includes:

1.    Causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

2.    Causing a likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

---

[82] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 497 (3d Cir. 2013) ("The UTPCPL regulates an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty") (citing *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007); *Douglas v. Osteen*, 560 F. Supp. 2d 362, 370 (E.D. Pa. 2008) (citing *Nor–Am Chemical Co. v. O.M. Scott & Sons Co.*, No. 86–3810, 1987 WL 13742, at *2 (E.D. Pa. July 15, 1987); *Gabriel v. O'Hara*, 534 A.2d 488, 491 n. 7 (Pa. Super. Ct. 1987) ("The UTPCPL is based on the Lanham Trademark Act, 15 U.S.C. § 1051 *et seq*").

3.      Using deceptive representations or designations of geographic origin in connection with goods or services;

4.      Representing that goods or services have sponsorship, approval, or characteristics that they do not have.

Deceptive acts are acts that have the capacity or tendency to deceive, regardless of whether there was any intent to deceive.  In this case, you must consider whether a party engaged in deceptive conduct which created a likelihood of confusion or of misunderstanding on the part of the parties.

The standards for unfair competition under the Unfair Trade Practices Law and federal law are the same.  Therefore, if you find that a party engaged in unfair competition under federal law, you must also find it breached the Unfair Trade Practices Law. Similarly, if you do not find any federal unfair competition, you must not find violation.

For a violation of the Pennsylvania law, the party asserting the claim must be a consumer transaction and not business to business.[83]

---

[83] *Gregg v. Ameriprise Financial,* 245 A.3d 637 (Pa. 2021)

**U.** **Unfair Competition – Pennsylvania Common Law - General**

Both parties also contend that the other party's unauthorized use of the

PENNSYLVANIA SKILL mark constitutes unfair competition under Pennsylvania common

law. This legal claim is different and broader than the unfair competition claims under federal

law and the Unfair Trade Practices Law that I have mentioned previously.[84] Thus, if you find that

a party has met its evidentiary burden in demonstrating trademark infringement, you must find

that that party has succeeded on its unfair competition claim under Pennsylvania common law.

However, if you find that a party has not met its burden on its trademark infringement claim, you

must still consider whether it has met its burden on its claim of unfair competition under

Pennsylvania common law.[85]

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[84] *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 582 (E.D. Pa.2002); *Haymond v. Lundy*, No. Civ.A. 99–5048, 2001 WL 15956, at *2 (E.D. Pa. Jan.5, 2001); *Gideons Int'l Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 580 (E.D. Pa.1999); *See Goebel Brewing Co. v. Esslingers, Inc.,* 95 A.2d 523, 525–26 (1953) ("The common law of trademarks is a portion of the broader law of unfair competition.")
[85] *House of Westmore v. Denney*, 151 F.2d 261, 265 (3d Cir. 1945) ("Unfair competition is based on equitable principles and may be distinguished from infringement of a trade-mark in that it does not involve the violation of the exclusive right to use a word, mark or symbol, but rather involves any violation of a right arising from the operation of an established business"); *Pennsylvania State University v. University Orthopedics, Ltd.*, 706 A.2d 863 (Pa. Super. Ct. 1998) (stating an action for unfair competition exists today separate and apart from any statutory rights which the owner of the trademark possesses).

## V. <u>Unfair Competition – Pennsylvania Common Law – Elements</u>

The elements for an unfair competition claim under Pennsylvania common law are identical to those establishing a claim under federal law, except for the requirement that the goods traveled through interstate commerce.[86] I have since provided you with these instructions, but nonetheless instruct you to consider the following with respect to the parties' claims under Pennsylvania common law.

Pennsylvania common law traditionally defines unfair competition as the "passing off" of a competitor's goods as one's own, thus creating confusion between one's own goods and the goods of one's competitor. However, the doctrine of unfair competition in Pennsylvania is not restricted to passing off.[87] Irrespective of the question of trademarks, a person coming into a field already occupied by a rival of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of his competitor.[88]

Thus, a party may also be deemed to have committed unfair competition under Pennsylvania common law if it engaged in deceptive marketing, that is, made representations

---

**Authority/Source(s):**

[86] *Browning King Co. v. Browning King Co.*, 176 F.2d 105, 106 (3d Cir. 1949); *see also  Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 582 (E.D. Pa.2002);
[87] *Scanvec Amiable Ltd. v. Chang*, 80 Fed.Appx. 171, 180 (3d Cir. 2003*); Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995) (citing *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 473 (1964)); *Giordano v. Claudio*, 714 F. Supp. 2d 508, 521 (E.D. Pa. 2010) ("Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information"); *Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.*, 192 A.2d 657 (Pa. 1963)
[88]

70

relating to its own goods, services, or commercial activities which were likely to deceive or mislead prospective purchasers to the commercial detriment of the other party.[89]

If you find that a party has engaged in any of these acts while in the course of competing against one another, then you may find that this conduct constitutes unfair competition under Pennsylvania common law.

**This proposed instruction is agreed upon by the parties.**

---

[89] Restatement (Third) of Unfair Competition § 2; *See Larry Pitt & Associates v. Lundy Law LLP*, 294 F. Supp. 3d 329, 343 (E.D. Pa. 2018) ("Pennsylvania follows the Restatement (Third) of Unfair Competition).

**W. <u>Supplemental Registry Registration.</u>**

<u>PSG's Proposed Instruction</u>

Pennsylvania Skill Games has a registration from the United States Patent and Trademark Office. The registration is on the "supplemental registry" and does not afford Pennsylvania Skill Games with any legal presumption of ownership. However, it does evidence that the mark in question was reviewed by the United States Patent & Trademark Office as capable of supporting a valid and subsisting trademark. Also, Savvy Dog has registrations at the Commonwealth of Pennsylvania, which do not grant any legal presumption of ownership. Each party disputes the propriety of the other's registration, and for purposes of this case, you are not to consider that the respective registrations are proof or any presumption of ownership. You may, however, consider the statements made by the respective parties in their application filings, admissions made by the parties in the filings, the timing of the filings, and other circumstances regarding the filing, but the granting of the registrations by any government agency in and of themselves are not proof of ownership.

———

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed additional text as it is duplicative and unnecessary in light of PSG's proposed instruction for Instruction "K".*

## X.  False Advertising – Elements and Burden of Proof[90]

In addition to claims for trademark infringement and unfair competition, both parties claim the other side engaged in false advertising. To succeed on this claim, a party must prove the following by a preponderance of the evidence:

1.  Either the POM Parties or Pennsylvania Skill Games made a false or misleading statement of fact in a commercial advertisement about the nature, quality, characteristic, or geographic origin as to its own product or the other party's product;

2.  The statement actually deceived or had the tendency to deceive a substantial segment of the intended audience;

3.  The deception was likely to influence the purchasing decisions of consumers.;

4.  The other party caused the false statement to enter interstate commerce;

5.  Either the POM Parties or Pennsylvania Skill Games has been or is likely to be injured as a result of the false statement. Injury includes direct diversion of sales from itself to the other party and/or a loss of goodwill associated with its products.[91]

For purposes of the first element with respect to a false or misleading statement, either party may establish that the other has made a false or misleading statement by proving that it has made a statement that left the intended audience with a false impression. A statement that is true

---

**Authority/Source(s):**

[90] Federal Civil Jury Instructions of the Seventh Circuit, § 13.3.1. (2017) [modified]
[91] For the five elements on false advertising claims: *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 228 n. 7 (3d Cir. 2017) (citing *Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 91-92 (3d Cir. 2000).

73

on its face can be misleading. In determining whether a statement is misleading, you should consider both the statement itself and the context in which it was made.[92]

For purposes of the fourth element relating to interstate commerce, a false statement enters interstate commerce if a party's products are transferred, advertised, and/or sold across state lines or if the products are transferred, advertised, and/or sold across state lines and the activities have a substantial effect on that party's business.

If you find that either the POM Parties or Pennsylvania Skill Games has proved each of these things, then you must find for that party. If, on the other hand, you find that either the POM Parties or Pennsylvania Skill Games has failed to prove any one of these things, then you must find for the other party.

**This proposed instruction is agreed upon by the parties.**

---

[92] *Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone Poulenc Rorer Pharms. Inc.*, 19 F.3d 125, 129 (3d Cir. 1994); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992); *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir. 1990).

## LEGAL INSTRUCTIONS – BREACH OF CONTRACT

### A. Breach of Contract – Nature of Claims

As I mentioned at the start of my instructions, both parties assert a breach of contract claim against each other involving a document called an Equipment Purchase Agreement, which I will refer to simply as the "EPA."

All of the claims sought by Pennsylvania Skill Games, with respect to its breach of contract claim, arise out of the POM Parties alleged breach of the right of first refusal relating to the sale of compliant terminals as defined in the EPA.[93]

---

### The POM Parties' Proposed Text to Insert

Because the EPA only envisions compliant terminals, you must not consider the sale of non-compliant terminals as evidence when determining whether the POM Parties breached the right of first refusal.[94]

___

*PSG objects to this text because it impacts a broad stroke fact conclusion at issue at trial far beyond any evidentiary ruling and exceeds the scope of fair instruction as a case conclusion of law.*

___

### PSG's Proposed Text to Insert

Among other things, the EPA has provisions regarding territorial rights, pricing and marketing that PSG claims was breached Pace-O-Matic and Miele Manufacturing.  Pace-O-

---

[93] Pretrial Conference Transcript, November 21, 2022, pp. 29:25 – 30:3.
[94] Pretrial Conference Transcript, November 21, 2022, pp. 30:3 – 30:7.

Matic purports to have transferred it rights and obligations to POM of Pennsylvania and Savvy Dog. Pennsylvania Skill Games disputes that such a transfer was permissible.

———

*The POM Parties object to PSG's proposed additional text based on this Court's prior rulings.*

Pennsylvania Skill Games also claims it entered into an oral contract with the POM Parties that Pennsylvania Skill Games claims has been breached.

The parties each deny it breached the agreements they assert.

Considering these claims, you have to decide separately whether the EPA and the alleged oral contract are legally enforceable agreements, and once you have done so, whether the other side has breached that particular agreement.

I will now instruct you on the law that you will apply to make this decision.

## B.  Contract – Definition[95]

A contract is a legally enforceable agreement between two or more parties.


**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[95] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.00 (April 2020)

## C.  **Contract – Essential Elements of a Contract[96]**

The POM Parties contend that the Equipment Purchase Agreement does not constitute a valid and enforceable contract. Pennsylvania Skill Games claims it does. To prove the parties entered into a legally enforceable contract, Pennsylvania Skill Games must prove the following three elements by a preponderance of the evidence:

1.      An offer;

2.      An acceptance of that offer; and

3.      "Consideration."


**This proposed instruction is agreed upon by the parties.**

_____

**Authority/Source(s):**

[96] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.10 (April 2020) [modified]

D. <u>**Contract – Requisites of Valid "Offer" to Create a Contract**</u>[97]

An "offer" is a proposal indicating a willingness to enter into a contract, which, under the circumstances, the other party should reasonably understand will create a contract upon acceptance.

To be a valid offer, the terms must be clear and definite enough so that the parties understand what each party will be required to do under the contract.

**This proposed instruction is agreed upon by the parties.**

_____

**Authority/Source(s):**

[97] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.20 (April 2020)

79

### E.  Contract – Valid "Acceptance" of an Offer[98]

An offer is accepted by a clear indication by word or conduct that one agrees to be bound by every term of the offer without any changes.

It is not a valid acceptance if the response terms are different from the offer.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[98] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.30 (April 2020)

### F.  **<u>Contract – Requisites of Valid "Consideration"</u>** [99]

To create an enforceable contract, each party must intend to exchange something of value. We call this "consideration." Consideration may be money, but does not have to be money. Consideration may be a promise to do or not do something.

A promise to do something a party was already obligated to do is not sufficient to create a contract.

**This proposed instruction is agreed upon by the parties.**

_____

**<u>Authority/Source(s):</u>**

[99] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.40 (April 2020)

82

### G.  <u>Duty of Good Faith and Fair Dealing Implied in Every Contract</u>[100]

The duty of good faith and fair dealing is implied in every contract.

This implied duty of good faith and fair dealing applies only to discretionary obligations under the contract. It does not create new obligations or obligations inconsistent with specific terms in the contract.

Duties or obligations are discretionary when a party has some degree of choice in how to perform its obligations under the contract.

A party should not do anything to destroy or injure the other party's right to receive the benefits of the contract. Therefore, even discretionary duties and obligations must be performed in a reasonable manner consistent with the contract's purposes.

**This proposed instruction is agreed upon by the parties.**

---

[100]   SJII Pa.SSJI (Civ) 19.220

## H. __Breach of Warranty__[101]

### __PSG's Proposed Instruction__

Pennsylvania Skill Games claims that the POM Parties breached an express warranty under their contract.  An express warranty is a representation that the product will have certain characteristics or that it will perform in a certain way.  To find that the POM Parties created an express warranty, Pennsylvania Skill Games must prove that The POM Parties represented, verbally or in writing, that only compliant games were sold to Pennsylvania Skill Games.  To prove The POM Parties breached an express warranty, Pennsylvania Skill Games must prove the product did not have the characteristic or capability the POM Parties represented.

_____

*PSG asserts that a specific evidentiary ruling is not the determination of a triable fact. The record is clear in the pleadings that PSG asserts failure to comply with the expressed term of the standard of performance, eg, Count IV of the x722 counterclaim.*

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction because it deviates from PSG's contract claim and will confuse the jury. Neither the EPA nor PSG's pleadings contain an express warranty or raise a breach thereof. Further, as stated by this Court at the pre-trial conference held on November 21, 2022, "the question of whether there was a breach of the EPA arises out of whether there was a breach of the 'right of first refusal' with respect to the sale of 'compliant terminals' only ... even if one of the POM Parties supplied a non-compliant terminal, PSG does not allege that it has been harmed in connection with the breach of contract claim as a result."*

_____

[101] Pa.SSJI (Civ) § 20.10

## I.  Contract – Waiver of Strict Performance[102]

If you find that both the POM Parties and Pennsylvania Skill Games acquiesced to a performance different than that contained in the contract, strict performance of the contract will be considered waived.

**This proposed instruction is agreed upon by the parties.**

––––––––––––––––––––

**Authority/Source(s):**

[102] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.190 (January 2003); *Dempsey v. Stauffer*, 312 F.2d 360 (3d Cir. 1962); *First Mortgage Co. v. Carter*, 452 A.2d 835 (Pa. Super. Ct. 1982) (finding where benefits of substantial performance have been voluntarily accepted with knowledge that there have been omissions in achieving strict performance, party accepting performance will be precluded from asserting such omission as a defense)

### J. **Contract - Oral Contract**

Except in certain situations, a contract does not need to be written. The offer and acceptance may be based upon a verbal exchange between the parties.[103]

The burden of proving the oral contract is on Pennsylvania Skill Games.

---

### **The POM Parties' Proposed Additional Text**

Pennsylvania Skill Games must prove that the terms of the contract was clear and concise.[104]

___

*PSG objects that this is the creation of a legal element that is not the legal standard for contract formation as an instruction.*

___

### **PSG's Proposed Additional Text**

Pennsylvania Skill Games must prove that the terms of the contract as I have already described.

___

*The POM Parties object to PSG's proposed additional text because it is confusing as written. The Pennsylvania case law cited in footnote 102 is well established in support of the POM Parties' proposed text.*

---

**Authority/Source(s):**

[103] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.70 (April 2020) [modified]
[104] *Billet Promotions, Inc. v. IMI Cornelius, Inc.*, No. 95-1376, 1998 WL 721081 at *13 (E.D. Pa. Oct. 14, 1998); *Edmondson v. Zetusky*, 674 A.2d 760 (Pa. Cmwlth. 1996) (citing *Suravitz v. Prudential Insurance Co.*, 104 A. 754 (Pa. 1918)); *Boyle v. Steiman*, 631 A.2d 1025, 1033 (Pa. Super. Ct. 1993).

86

In deciding whether the parties entered into an oral contract, you are to consider the conduct of the parties and the surrounding circumstances as to the formation of the contract, the parties' conduct after the formation of the contract, and whether the parties' conduct would be reasonable in light of the alleged contract and the surrounding circumstances.[105]

---

[105] *Plumb Line Builders, LLC v. Hertzog*, No. 1846 MDA 2012, 2013 WL 11250840 at *6 (Pa. Super. Ct. November 7, 2013); *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct, 1995).

## K.  <u>Interpretation Against Drafter.</u>

### <u>PSG's Proposed Instruction</u>

To the extent that there are ambiguities in a contract, the ambiguities can be interpreted against the party who you believe was the drafter, unless you believe that both parties are the drafter of the provision at issue.[106]

—————

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction because neither party has raised a motion suggesting the EPA is ambiguous. PSG's proposed instruction will therefore confuse the jury.*

*The POM Parties find this instruction to be unnecessary and therefore do not offer an alternative instruction.*

---

[106] *Associates of Chapman Lake v. Long,* 253 A.3d 1210, 2021 PA.Super 77 (Pa.Super 2021)

### L.  **Breach of Contract – General**[107]

The POM Parties and Pennsylvania Skill Games both claim that the other side did not do what it agreed to do under the contract. We call this a "breach of contract." Each party claims that the other side's breach caused it harm for which that party should pay money damages. Each side must therefore prove the following by a preponderance of the evidence:

1.  The existence of a contract, including its essential terms; and

2.  The other party's breach a duty created by the contract.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[107] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.90 (April 2020) [modified]

**M. Breach of Contract – Material and Immaterial Breaches**[108]

If you decide that there was a breach of the contract, you must decide whether that breach was "material" or "immaterial."

A "material" breach of contract is important enough to allow a party to treat the contract as broken and ended. In that situation, the injured party has no more duties under the contract.

An "immaterial" breach does not end a contract. The injured party must still perform its duties and obligations under the contract, even though they still have a claim for damages for any losses as a result of the breach.

To decide if a breach is "material" or "immaterial" you should consider the following:

1.    At the time of the breach, whether the injured party was deprived of the benefit it reasonably expected when the contract was made;

2.    Whether the breaching party offered to correct the breach and the likelihood they would have corrected it, taking into account all the circumstances;

3.    Which party will suffer a greater hardship if the contract is deemed broken and ended;

4.    To what extent can the injured party be adequately compensated for any harm caused by the other party's breach; and

5.    Whether the breaching party acted within standards of good faith and fair dealing.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[108] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.110 (April 2020)

89

**N.  <u>Breach of Contract – Bilateral Material Breach – Effect of Breach</u>**[109]

As I just mentioned, both the POM Parties and Pennsylvania Skill Games have alleged the other breached the contract. If you find that both parties materially breached the contract, then neither may recover unless one has benefitted to the detriment of the other, and if so, you may award damages so as to compensate the party detrimented.

**This proposed instruction is agreed upon by the parties.**

---

**<u>Authority/Source(s):</u>**

[109] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.110 (January 2003); *see Armour & Co. v. Scott*, 360 F.Supp. 139 (W.D. Pa. 1972), *aff'd* 480 F.2d 611 (3d Cir. 1973)

90

### O.  **Defenses – Contract – Fraudulent Inducement**[110]

A party may defeat a claim of breach of contract by proving that it was induced to sign the contract due to the other party's fraud, regarding the existence of a past fact at the time of contract formation. This is known as fraud in the inducement and is an affirmative defense raised by the POM Parties that must be proved by clear and convincing evidence.

When a defendant has agreed to a contract because the plaintiff made misrepresentations, then, in some cases, the contract is voidable, and may not be enforced against the defendant. That means that the plaintiff cannot make the defendant perform what the contract required, or make the defendant pay the plaintiff money damages for failing to do what the contract required.

To meet its defense, the POM Parties must prove, by clear and convincing evidence that:

1.  Pennsylvania Skill Games made a representation material to the transaction;

2.  Pennsylvania Skill Games either knew its representation of a past fact was false or recklessly disregarded whether it was true or false;

3.  Pennsylvania Skill Games intended the POM Parties to rely on its misrepresentation of a past fact;

4.  The POM Parties justifiably relied on that misrepresentation of a past fact; and

5.  The POM Parties' injury was proximately cause by its reliance.

Whether reliance on an alleged misrepresentation is justified depends on whether the POM Parties knew that the information supplied was false.  Fraudulent inducement is not a

---

**Authority/Source(s):**

[110] *Batoff v. Charbonneau*, F. Supp. 3d 957*,* 968-70 (E.D. Pa. 2015); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *See also Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 204–05 (Pa. 2007)

91

92

breach of contract but a statement regarding a past or existing fact, and it must be proved by the

POM Parties by clear and convincing evidence.


**This proposed instruction is agreed upon by the parties.**

## P.  Defenses – Contract – Statute of Frauds[111]

Oral contracts are generally enforceable. But in certain circumstances, a contract must be written in order to be valid. One of the defenses the POM Parties have raised in this case is the Statute of Frauds.

If you find that an alleged oral contract in this case was a contract for the sale of goods having a price of $500 or more, then that contract must have been reduced to writing in order to be enforceable.

This writing must include all of the following terms:

1.      The identity of the parties;

2.      The subject matter of the contract; and

3.      The signature, initials, or letterhead of the party against whom enforcement of the contract is sought.

This writing requirement, however, can be satisfied by a single document or a number of separate documents.

**This proposed instruction is agreed upon by the parties.**

**Authority/Source(s):**

[111] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.270 (April 2020)

**Q.  Defenses – Contract – Failure of Consideration**

As an affirmative defense to Pennsylvania Skill Games' breach of contract claim, the POM Parties claim there was a lack of consideration to support the EPA.

As I mentioned earlier, consideration may be a promise to do or not do something. Stated differently, consideration consists of a benefit to the promisor, the party making the promise, or a detriment to the promisee, the party to whom the promise is made.[112]

However, it is not enough that the promisee suffered a detriment at the request of the promisor. There must be a "quid pro quo" or a "price" for the promise.[113] That is, each party must have bargained to exchange a promise from the other for something in return such as a payment, a benefit, or a promise from the other party to do or not do something that benefits the promising party. If a party does not provide consideration or does not receive consideration, there is no contract.[114]

---

**PSG's Proposed Additional Text to Insert**

It is important to mention that the affirmative defense by the POM Parties is a failure of consideration, meaning that there is a complete lack of consideration.  Consideration in a

---

**Authority/Source(s):**

[112] *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.,* 929 F. Supp. 2d 460 (W.D. Pa. 2013); *Pennsy Supply, Inc. v. American Ash Recycling Corp.,* 895 A.2d 595, 600-01 (Pa. Super. Ct. 2006) (citations omitted)
[113] *Id.*
[114] *Id.; see also Socko v. Mid-Atlantic Systems of CPA, Inc.*, 126 A.3d 1266 (Pa. 2015); *George W. Kistler, Inc. v. O'Brien*, 347 A.2d 311 (Pa. 1975); *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127 (Pa. 1940); *Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595 (Pa. Super. Ct. 2006); *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169 (Pa. Super. Ct. 2003)

contract does not need to be equivalent or mutual, but only some detriment or benefit on the party that it would not otherwise legally be required to do.

_____

*The POM Parties have no alternative language to add and instead object to the language used by PSG. The POM Parties have asserted a lack of consideration, not just a failure of consideration. See ECF 97-00, Affirmative Defenses 6, 8, and 15*

Therefore, if you find, by a preponderance of the evidence, there was no right, interest, profit or benefit accruing to the POM Parties or some forbearance, detriment, loss or responsibility, given, suffered, or undertaken by Pennsylvania Skill Games when entering into the EPA, then you must find that the EPA was not an enforceable contract.

**R.  Defenses – Contract – Waiver**[115]

---

### The POM Parties' Proposed Text to Insert

The POM Parties claim they were not required to indefinitely grant Pennsylvania Skill Games a "right of first refusal" under the EPA because Pennsylvania Skill Games gave up its right by not placing Compliant Terminals in locations in Beaver County. Additionally, the POM Parties claim that to the extent any oral contract may have existed, Pennsylvania Skill Games lost the ability to enforce any oral contract through its conduct and inaction.

––––

*PSG objects that this is a mistatement of the case, mixes up terms of waiver and abandonment, and characterizes PSG's argument through a denial of something not alleged as such, it is unfairly presented.*

––––

### PSG's Proposed Text to Insert

Pennsylvania Skill Games asserts that Pace-O-Matic and Miele Manufacturing violated a "right of first refusal" under the EPA.  The POM Parties claim that Pennsylvania Skill Games gave up its right by not already having terminals in the locations in Beaver County that were the subject of the right of refusal. Additionally, the POM Parties claim that to the extent any oral contract may have existed, Pennsylvania Skill Games lost the ability to enforce any oral contract through its conduct and inaction.

---

**Authority/Source(s):**

[115] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.240 (April 2020)

97

This is called waiving or giving up rights under the contract.

To succeed on this defense, the POM Parties must prove the following by clear and convincing evidence:

1.      Pennsylvania Skill Games knew it had a "right of first refusal" or other rights it claims under any oral contract, to the extent one existed; and

2.      Pennsylvania Skill Games freely and knowingly gave up its right to have the POM Parties perform their obligations under the EPA or any oral contract Pennsylvania Skill Games may claim.

A waiver may be oral or written or may arise from conduct that shows that Pennsylvania Skill Games gave up that right. Continuing to do business and trying to work out differences after a breach of contract is not necessarily a waiver of the breach.

Thus, if you find that the POM Parties have proven, by clear and convincing evidence, that Pennsylvania Skill Games voluntarily abandoned or relinquished its right of first refusal or any other right Pennsylvania Skill Games claims under any contract that you determine to have existed, you may find the POM Parties not liable to Pennsylvania Skill Games on its breach of contract claim in whole or in part.

**S. Claimed Assignment by Pace-O-Matic**

**PSG's Proposed Instruction**

Pennsylvania Skill Games has claimed that Pace-O-Matic, as signer of the Equipment Purchase Agreement was not permitted to assign rights under the EPA to POM of Pennsylvania, or claimed trademark rights to Savvy Dog. If you determine that the assignment of rights was not permitted, then neither of those parties has rights or claims under the EPA.

—————

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction for the same reasons set forth in its objection to Instruction "H" of the Trademark Liability section.*

T. **Defenses – Contract – Estoppel**

Each of the parties claim that the other is estopped to collect on its claims.

The doctrine of estoppel prevents a party from assuming a position or asserting a right to another's disadvantage that is inconsistent with a position previously taken by that party. Stated differently, it prevents a party from doing an act differently than the manner in which the other party was induced by word or deed to expect.[116]

The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement.[117] To succeed on this defense, the POM Parties must prove, by clear and convincing evidence, that:

1.   Pennsylvania Skill Games excused the POM Parties from performing under the EPA or any oral contract through its words or conduct;

2.   The POM Parties justifiably relied on Pennsylvania Skill Games' words or conduct when it stopped performing under the contract;

3.   The POM Parties would have continued performing under the contract if Pennsylvania Skill Games did not excuse its performance.[118]

---

**Authority/Source(s):**

[116] *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983); *see Chrysler Credit Corp. v. First Nat. Bank and Trust Co. of Washington*, 746 F.2d 200, 206 (3d Cir. 1984) (citing *Sabino v. Junio*, 272 A.2d 508 (Pa. 1971)
[117] *Id.*
[118] *Eagleview Corp. Ctr. Ass'n. v. Citadel Fed. Credit Union*, 150 A.3d 1024, 1032 (Pa. Cmwlth. 2016); *Liberty Prop. Tr. v. Day-Timers, Inc.*, 815 A.2d 1045, 1052 (Pa. Super. Ct. 2003); *see also Novelty Knitting Mills, Inc.*, 457 A.2d at 503 (Pa. 1983); *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975)

If you find that the POM Parties have proven both inducement by Pennsylvania Skill Games and justifiable reliance by the POM Parties to their detriment, you may find the POM Parties not liable to Pennsylvania Skill Games on its breach of contract claim in whole or in part.

**This instruction is agreed upon by the parties.**

IV.    **GENERAL INSTRUCTION ON LIABLITY**

**PSG's Proposed Instruction**

Pace-O-Matic claims to have made certain assignments of right, obligations and proprietary interests to POM of Pennsylvania and to Savvy Dog Systems.  Pennsylvania Skill Games contends that these purported assignments were not permitted under the EPA and made for the purpose of avoiding liability under the EPA. As jurors, it is for you to draw inferences as to whether any action done by person after happening of the events claimed in this case which might render the party liable, disposed of the property, on ground that such evidence tends to show that the party was consciousness of liability and acted for the purpose to evade liability for violations of law or under the EPA.[119]

_____

*The POM Parties have no alternative instruction to suggest and instead object to PSG's proposed instruction for the same reasons set forth in its objection to Instruction "H" of the Trademark Liability section.*

_____

[119] *Batick v.Seymour,* 443 A.2d 471, 186 Conn. 632 (1982); *see McCool v. Gehret,* 657 A.2d 269 (Del. Super. 1995) ("absolutely" entitled to allow jury to draw inferences).

## V.    DAMAGES INSTRUCTIONS [LIMITED TO PHASE 2 ONLY]

### A.  Opinion Testimony[120]

You have heard testimony containing opinions from [name of expert witness] designated as an expert in this case. In weighing this expert opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].

**This proposed instruction is agreed upon by the parties.**

---

**Authority / Source(s):**

[120] Model Civil Jury Instructions for the Third Circuit, § 2.11 (August 2020)

**B.  Expert Testimony in Support of a Claim and Rebuttal Testimony**

**PSG's Proposed Instruction**

Pennsylvania Skill Games has introduced an expert regarding its claim of damages.  The POM Parties have introduced an expert to rebut the Pennsylvania Skill Games' expert.  The POM Party's rebuttal expert's testimony is limited to challenging the evidence provided by the Pennsylvania Skill Games' expert.  The POM Parties have not introduced a damages expert.  Their rebuttal expert's testimony is not a substitute for their own damages expert and you may not use the POM Parties' rebuttal expert for the purpose of assessing and monetary damage claimed by the POM Parties.

### C. Trademark Damages – Actual/Compensatory Damages
   ### (15 U.S.C. § 1117(a))

If you find that PENNSYLVANIA SKILL is a valid trademark owned by one of the parties

and that the other party has infringed upon it, and that the infringing party does not have a defense

to the claim of infringement, you now must consider whether, and to what extent, a monetary

award may or will reasonably and fairly compensate [POM/Pennsylvania Skill Games] for any injury

you find was caused the infringement.[121]

### I.  Actual Damages

You may award actual damages that [POM/Pennsylvania Skill Games] has sustained

based upon the evidence introduced.[122] Damages means the amount of money which will

reasonably and fairly compensate the owner for any injury you find was caused by the other

party's infringement of the PENNSYLVANIA SKILL trademark.[123] However, a finding that a

party is liable for trademark infringement does not automatically give the other party the right to

recover monetary damages.[124] The party that proves ownership of the trademark may only recover

---

**Authority/Source(s):**

[121] Model Civil Jury Instructions for the Eleventh Circuit, § 10.1 (2020).

[122] *Id.*; *Top Tobacco, L.P. v. Easy Wholesale, Inc.,* No. 2:19-CV-04464-KSM, 2020 WL 9209710, at *3 (E.D. Pa. Oct. 14, 2020) ("[A] plaintiff may choose to pursue either actual damages or statutory damages.") (citing 15 U.S.C. § 1117(a)).

[123] Model Civil Jury Instructions for the Ninth Circuit, § 15.27 (2022).

[124] *See, e.g., A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 197, 209 (3d Cir. 1999) (holding that "we see no basis to award damages" absent "evidence of lost profits or other pecuniary harm proximately caused by" the use of a mark and that "an accounting for profits . . . does not follow as a matter of course upon a mere showing of an infringement."); *Caesars World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269, 274 (3d Cir. 1975) ("Unless there is at least some evidence of harm arising from defendant's violation, a court may not award a money judgment."); *Steak Umm Co., LLC v. Steak 'Em Up, Inc.,* No. CIV.A. 09-2857, 2011 WL 3679155, at *9 (E.D. Pa. Aug. 23, 2011) ("a plaintiff may be able to prove a violation of the Lanham Act, without providing evidence sufficient for an award of damages."); *Moore N. Am., Inc. v. Poser Bus. Forms, Inc.,* No. CIV.A. 97-712-SLR, 2001 WL 194074, at *1 (D. Del. Feb.

the economic injury to its business proximately resulting from the other party's wrongful acts.[125] [POM/Pennsylvania Skill Games] therefore has the burden of proving by a preponderance of the evidence that the other party's wrongful conduct caused it to suffer an actual and compensable injury.[126]

To recover damages, [POM/Pennsylvania Skill Games] must prove two things by a preponderance of the evidence:[127]

1.    [POM/Pennsylvania Skill Games]'s conduct caused actual confusion among consumers, such that consumers actually confused [POM/Pennsylvania Skill Games]'s products with [POM/Pennsylvania Skill Games]'s products, or that [POM/Pennsylvania Skill Games]'s customers actually mistakenly believed that [POM/Pennsylvania Skill Games] was using [POM/Pennsylvania Skill Games] PENNSYLVANIA SKILL software, that [POM/Pennsylvania Skill Games] authorized [POM/Pennsylvania Skill Games] to use PENNSYLVANIA SKILL, that PENNSYLVANIA SKILL was [POM/Pennsylvania Skill Games]'s product and software, or that [POM/Pennsylvania Skill Games] and [POM/Pennsylvania Skill Games] were affiliated or connected in any way. A finding of likely confusion, without more, cannot support an award of actual damages for trademark

20, 2001) ("[A]bsent any evidence of pecuniary harm or consumer confusion, defendant's relief is limited to injunctive relief.").

[125] Model Civil Jury Instructions for the Eleventh Circuit, § 10.1 (2020); *see also PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fla. 2015) ("[t]o recover actual damages [trademark plaintiff] was required to establish that [defendant's] Lanham Act violations proximately caused it to suffer monetary damages"); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("a plaintiff seeking monetary relief must link the violative conduct with actual harm to its business."); Federal Civil Jury Instructions for the Seventh Circuit, § 13.6.3 (2020).

[126] Model Civil Jury Instructions for the Ninth Circuit, § 15.27 (2022),

[127] Federal Civil Jury Instructions for the Seventh Circuit, § 13.6.3 (2020).

infringement[128]; and

2.    As a result, [POM/Pennsylvania Skill Games] sustained injury.[129]

In other words, [POM/Pennsylvania Skill Games]'s alleged infringement must have been the cause of [POM/Pennsylvania Skill Games]'s injury, in that the injury would not have occurred without [POM/Pennsylvania Skill Games]'s infringement. You can only reward [POM/Pennsylvania Skill Games] money damages to compensate it for injury or harm that was caused by [POM/Pennsylvania Skill Games]'s infringement.

If you find that [POM/Pennsylvania Skill Games] has proved these things, then you must consider what amount of money to award to [POM/Pennsylvania Skill Games] as damages, if

---

[128] *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987) ("Likelihood of confusion is insufficient; to recover damages plaintiff must prove it has been damaged by actual consumer confusion or deception resulting from the violation."); *Zurco, Inc. v. Sloan Valve Co.*, 785 F. Supp. 2d 476, 500–01 (W.D. Pa. 2011) ("In order to recover actual damages pursuant to Section 35(a)(2), a plaintiff must demonstrate that 'the violation caused actual confusion among consumers of the plaintiff's product.'") (quoting *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202,1204–05 (7th Cir. 1990); citing *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648–49 (3d Cir. 1958)); *see also* 5 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, § 30.74 (5th ed.) ("Courts require that a recovery of damages requires proof that some consumers were actually confused or deceived.").

[129] *Members 1st Fed. Credit Union v. Metro Bank*, No. 1:09-CV-1171, 2010 WL 4318839, at *3–4 (M.D. Pa. Oct. 22, 2010), on reconsideration, No. 1:09-CV-1171, 2011 WL 208743 (M.D. Pa. Jan. 21, 2011) ("'A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's Lanham Act violation, that the violation caused actual confusion among consumers of the plaintiff's product, and, as a result, that the plaintiff suffered actual injury, i.e., a loss of sales, profits, or present value (goodwill).'") (quoting *Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204–05 (7th Cir.1990)); see *also PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fla. 2015) ("[t]o recover actual damages [trademark plaintiff] was required to establish that [defendant's] Lanham Act violations proximately caused it to suffer monetary damages"); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("a plaintiff seeking monetary relief must link the violative conduct with actual harm to its business.").

any.[130] However, if you find [POM/Pennsylvania Skill Games] has failed to prove these things, you may not award [POM/Pennsylvania Skill Games] any monetary damages.[131]

You may consider the following types of injury:[132]

1.      Lost profits on sales. This consists of the revenue [POM/Pennsylvania Skill Games] would have earned but for [POM/Pennsylvania Skill Games]'s infringement, less expenses [POM/Pennsylvania Skill Games] would have sustained in earning those revenues.

2.      Loss of royalties. A royalty is a payment for the right to use a trademark. In determining lost royalties, you should determine the royalty that [POM/Pennsylvania Skill Games] and [POM/Pennsylvania Skill Games] would have agreed on if they had negotiated the terms of a royalty before [POM/Pennsylvania Skill Games]'s infringement.

3.      Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of

---

[130] Federal Civil Jury Instructions for the Seventh Circuit, § 13.6.3 (2020).

[131] *Caesars World, Inc. v. Venus Lounge, Inc*., 520 F.2d 269, 274 (3d Cir. 1975) ("Unless there is at least some evidence of harm arising from defendant's violation, a court may not award a money judgment."); *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.,* No. CV113684SRCCLW, 2016 WL 3545529, at *23 (D.N.J. June 29, 2016) ("[A] party that fails to provide 'at least some evidence of harm arising from defendant's violation' may not receive an award of profits or damages.") (quoting *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975)); *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. CIV.A. 09-2857, 2011 WL 3679155, at *9 (E.D. Pa. Aug. 23, 2011) ("a plaintiff may be able to prove a violation of the Lanham Act, without providing evidence sufficient for an award of damages."); *Moore N. Am., Inc. v. Poser Bus. Forms, Inc.,* No. CIV.A. 97-712-SLR, 2001 WL 194074, at *1 (D. Del. Feb. 20, 2001) ("[A]bsent any evidence of pecuniary harm or consumer confusion, defendant's relief is limited to injunctive relief.").

[132] Federal Civil Jury Instructions for the Seventh Circuit, § 13.6.3 (2020).

[POM/Pennsylvania Skill Games]'s goodwill before the infringement with the value of [POM/Pennsylvania Skill Games]'s goodwill after the infringement.

4.    Cost of corrective advertising. This is the amount spent by [POM/Pennsylvania Skill Games] to counteract the effects of [POM/Pennsylvania Skill Games]'s use of PENNSYLVANIA SKILL and the amount necessary to dispel actual, public confusion that still lingers after [POM/Pennsylvania Skill Games]'s infringement stopped. But [POM/Pennsylvania Skill Games] can only recover a corrective advertising award if it proves by a preponderance of the evidence that such an award is most cost-effectively corrected through remedial advertising.[133]

---

**PSG's Proposed Additional Text to Insert**

Pennsylvania Skill Games is the federal registrant of the word mark "PENNSYLVNIA SKILL" and is afforded a federal statutory calculation of damages. In the regard, the POM Parties are responsible to set forth any deductions from the expert calculation of gross sales. In the event that you find that the POM Parties have failed to do so, the calculation of damages forth items that they claim shall be as set forth in the Expert Report of Pennsylvania Skill Games.[134]

---

[133] *Larry Pitt & Assocs. v. Lundy L. LLP*, 294 F. Supp. 3d 329, 342 (E.D. Pa. 2018) ("[A] court may only grant damages to pay for corrective advertising when such damages are justifiable as a surrogate for plaintiff's damages or defendant's profit. . . . Plaintiffs seeking such corrective advertising damages usually must show some public confusion caused by the defendant's conduct that injures the plaintiff and is most cost-effectively corrected through remedial advertising." (citing *Callaway Golf Co. v. Dunlop Slazenger*, 384 F. Supp. 2d 735, 741 (D. Del. 2005)).
[134] McCarthy on Trademarks, 4th Ed. § 30:66; 15 U.S.C. § 117.

*The POM Parties object to PSG's proposed additional text as a misstatement of the law.*

---

Should you decide that [POM/Pennsylvania Skill Games] is entitled to monetary damages, you are not required to calculate actual damages with absolute exactness—you may make reasonable approximations[135]—but an award of actual damages to [POM/Pennsylvania Skill Games] must be just and reasonable. You should be mindful that only expert testimony permits evidence of future damages and damages that require hypothetical or scientific assessment.

## II. Nominal Damages[136]

If you find that [POM/Pennsylvania Skill Games] infringed [POM/Pennsylvania Skill Games]'s PENNSYLVANIA SKILL trademark, but you do not find that [POM/Pennsylvania Skill Games] sustained any actual damages, you may return a verdict for [POM/Pennsylvania Skill Games] and award what are called "nominal" damages. Nominal damages may not exceed one dollar.[137]

---

[135] *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 967 F. Supp. 1457, 1478 (E.D. Pa. 1997) ("While a plaintiff bears the burden of proving both the existence of damages and the amount of damages, a plaintiff is held to a lower burden of proof in ascertaining the latter.") (citing *BASF Corp. v. Old World Trading Company, Inc.*, 41 F.3d 1081, 1094 (7th Cir.1994)).
[136] Model Civil Jury Instructions for the Eleventh Circuit, § 10.1 (2020; *see also Reed Pub. (Nederland) B.V. v. Execulink, Inc.,* No. CIV. A. 98-1049, 1998 WL 812246, at *2 (D.N.J. Nov. 17, 1998) (awarding nominal damages of $1.00 due to indeterminacy of plaintiff's damages).
[137] Model Civil Jury Instructions for the Ninth Circuit, § 5.6 (2021)

D. **Failure to Mitigate – Damages Defense**[138]

[POM/Pennsylvania Skill Games] has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. [POM/Pennsylvania Skill Games] has the burden of proving by a preponderance of the evidence that [POM/Pennsylvania Skill Games] failed to do so. Specifically, [POM/Pennsylvania Skill Games] must prove:

1.    That [POM/Pennsylvania Skill Games] failed to use reasonable efforts to mitigate damages; and

2.    The amount by which damages would have been mitigated.

If [POM/Pennsylvania Skill Games] makes such a showing, you may not award [POM/Pennsylvania Skill Games] any money to compensate it for damages that it unreasonably failed to mitigate.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[138] Model Civil Jury Instructions for the Ninth Circuit, § 5.3 (2021); *see* Restatement (Second) of Torts § 918 ("one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.").

### E.  **Punitive Damages – Pennsylvania State Trademark Infringement**

---

### **The POM Parties' Proposed Instruction**

The POM Parties also seek punitive damages against Pennsylvania Skill Games. You may award punitive damages, in addition to any compensatory damages, only if you find that the POM Parties proved by a preponderance of the evidence Pennsylvania Skill Games' conduct was outrageous.[139]

A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.[140] The purpose of finding punitive damages would be to punish Pennsylvania Skill Games for its conduct and to deter Pennsylvania Skill Games and others from committing similar acts.[141]

---

**Authority/Source(s):**

[139] Pa. SSJI (Civ), §8.00 (2020); *see also Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,* 921 F.2d 467, 471 (3d Cir. 1990) (recognizing that Pennsylvania follows section 908(2) of the Restatement (Second) of Torts and allows punitive damages to be assessed against tortfeasors where their conduct is found to be outrageous) (citing *Kirkbride v. Lisbon Contractors, Inc.,* 555 A.2d 800, 803 (Pa. 1989)); *Pennsylvania State Univ. v. Univ. Orthopedics, Ltd.,* 706 A.2d 863, 870 (Pa. Super. Ct. 1998); *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 883 (E.D. Pa. 2016) (noting that common law unfair competition encompasses common law trademark infringement); *Corabi v. Curtis Pub. Co.,* 262 A.2d 665, 666 (Pa. 1970) (noting jury verdict of punitive damages on common law unfair competition, but granting judgment not withstanding the verdict on other grounds).
[140] Pa. SSJI (Civ), §8.00 (2020); *see also Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) ("[P]unitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.").
[141] Pa. SSJI (Civ), §8.00 (2020); *see also Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.,* 921 F.2d 467, 471 (3d Cir. 1990) (recognizing that Pennsylvania follows section 908(2) of the Restatement (Second) of Torts and allows punitive damages to be assessed against tortfeasors where their conduct is found to be outrageous) (citing *Kirkbride v. Lisbon Contractors, Inc.,* 555 A.2d 800, 803 (Pa. 1989)); *Pennsylvania State Univ. v. Univ. Orthopedics, Ltd.,* 706 A.2d 863, 870 (Pa. Super. Ct. 1998); *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 883 (E.D. Pa. 2016) (noting that common law unfair competition encompasses common law trademark infringement); *Corabi v. Curtis Pub. Co.,* 262 A.2d 665, 666 (Pa. 1970) (noting jury

**PSG's Proposed Instruction**

The parties also seek punitive damages against the other. You may award punitive damages, in addition to any compensatory damages, only if you find that a party proved by a preponderance of the evidence that a party's conduct was outrageous or if the statute permits it.

A person's conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others. The purpose of finding punitive damages would be to punish the party for its conduct and to deter it and others from committing similar acts.

---

If you decide that a party is entitled to an award of punitive damages because a party's conduct was outrageous—in other words, malicious, wanton, willful, or oppressive—it is then your job to fix the amount of such damages.[142] In doing so, you may consider any or all of the following factors:

1. The character of the act;

2. the nature and extent of the harm, if any, to the party that the other party caused or intended to cause; in this regard you may include the party's trouble and expense in seeking to protect its interests in legal proceedings and in this suit;

3. the wealth of the party insofar as it is relevant in fixing an amount that will punish it, and deter it and others from like conduct in the future.

4. Any applicable affirmative defenses.

---

verdict of punitive damages on common law unfair competition, but granting judgment not withstanding the verdict on other grounds).
[142] Pa. SSJI (Civ), §8.20 (2020);

It is not necessary that you award compensatory damages in order to assess punitive damages, as long as you find in favor of the party on the question of liability and find that the conduct was malicious, wanton, willful, or oppressive. But punitive damages should not be awarded lightly. They are reserved for conduct that can be considered outrageous.[143] The amount of punitive damages awarded must not be the result of passion or prejudice against the party on the part of the jury.

---

[143] *Jacquin et Cie, Inc. v. Destilleria Serralles, Inc.*, 921 F.2d 467, 471 (3d Cir. 1990) (quoting *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989); RESTATEMENT (SECOND) OF TORTS § 908(2)).

F.  **Breach of Contract - Damages**[144]

I am now going to instruct you about damages relating to the parties' breach of contract claim.

If you find that [POM/Pennsylvania Skill Games] breached the contract, you should award an amount of money that will fairly and adequately compensate [POM/Pennsylvania Skill Games] for the harm caused by the breach, based upon the evidence introduced in the trial.

**The POM Parties' Proposed Text to Insert**

The amount you award today must compensate [POM/Pennsylvania Skill Games] completely for damage[s] sustained in the past.

**PSG's Proposed Text to Insert**

The amount you award today must compensate Pennsylvania Skill Games completely for damages sustained in the past, as well as damages it will sustain in the future. Because the POM Parties have not introduced an expert witness, you may not award future damages.

[POM/Pennsylvania Skill Games] claims the following type[s] of damages:

**1. Direct and consequential damages:**

Generally, damages include the amount of money that will put [POM/Pennsylvania Skill Games] in the position it would have been in if [POM/Pennsylvania Skill Games] had not breached the contract. It includes not only damages that directly result from the breach, but also those damages that were foreseeable at the time the parties entered into their contract.

---

**Authority/Source(s):**

[144] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.250 (April 2020)

**2. Reliance damages:**

Damages include the amount of money that would place [POM/Pennsylvania Skill Games] in the same position as if it never entered into the contract. These damages include the reasonable costs incurred by [POM/Pennsylvania Skill Games] to prepare to perform or to perform the contract.

From this amount, subtract the following:

a.  The value of any benefits that [POM/Pennsylvania Skill Games] received from [POM/Pennsylvania Skill Games]'s performance under the contract; and

b.  The amount of any loss that [POM/Pennsylvania Skill Games] proves [POM/Pennsylvania Skill Games] would have sustained if the contract had not been breached.

**3. Unjust enrichment damages:**

Damages include the value of any benefit received from the contract, in order to prevent it from being unjustly enriched by the breach of the contract.

From this amount, subtract the reasonable value of any benefit received by [Pennsylvania Skill Games/POM].

**4. Nominal damages:**

Even if [POM/Pennsylvania Skill Games] does not prove any damages as a result of the breach, [POM/Pennsylvania Skill Games] may be entitled to recover nominal damages for a technical violation of the law without proved damages.

Under the law, nominal damages are $1.

**G. Breach of Contract – Damages – Mitigation of Damages[145]**

If you find [POM/Pennsylvania Skill Games] breached the contract, [POM/Pennsylvania Skill Games] had a duty to make reasonable efforts to mitigate, or in other words avoid or reduce [POM/Pennsylvania Skill Games]'s damages.

[POM/Pennsylvania Skill Games] has the burden to prove [POM/Pennsylvania Skill Games] did not make reasonable efforts to avoid or reduce certain losses and could have done so without too much unreasonable risk, expense, or humiliation.

If [POM/Pennsylvania Skill Games] proves that [POM/Pennsylvania Skill Games] could have avoided or reduced certain losses without too much unreasonable risk, expense, or humiliation, [POM/Pennsylvania Skill Games] is not entitled to recover damages for these losses.

[POM/Pennsylvania Skill Games] had no duty to mitigate if [POM/Pennsylvania Skill Games] and [POM/Pennsylvania Skill Games] had an equal opportunity to avoid or reduce those damages.

If [POM/Pennsylvania Skill Games] made reasonable efforts to avoid or reduce damages, then your award should include reasonable amounts that it spent for this purpose.

**This proposed instruction is agreed upon by the parties.**

_____

**Authority/Source(s):**

[145] Pennsylvania Suggested Standard Civil Jury Instructions, § 19.260 (April 2020)

## VI.    INSTRUCTIONS FOR USE AT END OF TRIAL

### A. Deliberations[146]

When you retire to the jury room to deliberate, you may take with you [these instructions,] [your notes,] [and] the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other

---

**Authority/Source(s):**

[146] Model Civil Jury Instructions of the Third Circuit, § 3.1 (August 2020)

carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone [like iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook, Instagram, LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

119

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. Be sure to fill in all answers required on the verdict form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

**This proposed instruction is agreed upon by the parties.**

## B. **Number of Witnesses**[147]

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**This proposed instruction is agreed upon by the parties.**

---

**Authority/Source(s):**

[147] Model Civil Jury Instructions of the Third Circuit, § 3.2 (August 2020)

## C. **Deadlock**[148]

It is your duty as jurors to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with your individual judgments. Each of you must decide the case for yourself, but you should do so only after a consideration of the case with your fellow jurors, and you must be open to their opinions. You should not be influenced to vote a certain way, however, by the single fact that a majority of the jurors, or any of them, will vote in a certain way. In other words, you should not surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict, or solely because of the opinions of the other jurors.

In the course of your deliberations you should not hesitate to reexamine your own views, and to change your opinion if you are convinced that those views are wrong. To reach a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with a willingness to reexamine your own views.

Remember that you are not partisans; you are judges — judges of the facts. Your only interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence.

If you should fail to agree on a verdict, the case is left open and must be resolved at a later time. There is no reason to think that another trial would be conducted in a better way or that a different jury would decide it any better. Any future jury must be selected in the same manner and from the same source as you.

---

**Authority/Source(s):**

[148] Model Civil Jury Instructions of the Third Circuit, § 3.3 (August 2020)

122

We try cases to dispose of them and to reach a common conclusion if it is consistent with the conscience of each member of the jury. I suggest that, in deliberating, you each recognize that you are not infallible, that you listen to the opinions of the other jurors and that you do so carefully with a view to reaching a common conclusion, if you can. You may take all the time that you feel is necessary.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.

**This proposed instruction is agreed upon by the parties.**