**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

          Plaintiffs,

          v.

PENNSYLVANIA SKILL GAMES, LLC,

          Defendant.

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES' SUP-
PLEMENTAL BRIEF ECF 296**

PENNSYLVANIA SKILL GAMES, LLC,

          Plaintiff,

          v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

          Defendants.

      PSG incorporates ECF 296.  This Court granted leave to supplement the hearsay objections.

PSG includes unredacted Trial Exhibit 37, <u>Exhibit A</u> hereto, in such form as included in the exhibit

binders previously scheduled in December.   To avoid delays, Trial Exhibit 94, <u>Exhibit B</u> is also

included at this time.

      1.      <u>Exhibit A</u> an internal email from Michael Pace to his staff and produced by him,

and <u>Exhibit B</u>, a notification letter by Mr. Neiser directly to PSG are: 1) <u>truthful</u> statements; 2)

<u>written</u> by party opponents; 3) on highly probative matters of <u>critical</u> and <u>crucial</u> points directly at

issue in this litigation; and 4) were within the Index Binders and <u>long known</u> by all parties.[1]

---

[1] The redacted version set forth in ECF 296, Exhibit B, was apparently replaced by the POM Parties with the re-
dacted version when the trial binders were updated.  The Joint Exhibit List was not revised to indicate that redaction.
ECF 296 on January 30, 2023.  The undersigned discovered the redacted version when preparing for trial.

2.      Regarding the Michael Pace email, it was written effectively immediately, being the immediate next day following the 1.5H conversation with Mr. Unis.  Mr. Pace accurately describes the serious situation in which he was a participant in the telephone meeting and he ends with the emphatic "immediately."  The issue related to the "exclusive" territory is certainly a critical issue in this case.  The document is <u>trustworthy</u> and highly <u>probative</u>.

3.      Regarding the notification letter from Mr. Neiser, it is again on a critical issue: it truthfully states the reason why the POM Parties are breaching the EPA.  This letter comports with their Amended Complaint, Trial Exhibit 61.  Mr. Unis is entitled to testify as to his understanding as to why the POM Parties are refusing to sell games to him, being for the exact reason the POM Parties have admitted by this truthful and probative written communication.  Indeed, the POM Parties continued, and continued, continued to try to extort, harass and to intimidate PSG to sign their *post-litigation* newly created operator terms, which PSG refused as a party to the pre-litigation EPA at issue.  This ties directly to Trial Exhibit 61, Amended Complaint:

> 34. Upon information and belief, PSG offers and sells game machines under the PENN-SYLVANIA SKILL marks through its route to restaurants, bars, gaming arcades and other entertainment venues featuring electronic games of skill and has installed non-compliant games in Pennsylvania using Ohio-compliant software and equipment in violation of its agreement with POM and in violation of Pennsylvania law.

*See, also, id.,* ¶88, with facts stated of record and only the count or cause of action withdrawn by on February 1, 2023 [ECF 290].

4.      These communications are properly admissible.  An out-of-court statement introduced for a reason other than to prove the truth of its contents is not hearsay.  Both communications self-evidence with independent legal significant that they occurred, whether or not the contents are truthful.  Both are notifications.

2

5.      This Court appears inclined to Rule that the subject documents are hearsay.  However, rule 801(d) sets out a hearsay exception for "Admissions by a Party-Opponent."  FRE 801(d) provides that a statement is admissible under this exception if it is "offered against a party" and is (A) the declarant's own statement, in an individual or representative capacity.

6.      Rule 803(1)–(2) of the Federal Rules of Evidence are often considered together and provide:

> **803(1).  "Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." FRE 803(2) "Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."**

The Advisory Committee Notes are instructive; to wit:

> **The underlying theory of Exception [paragraph] (1) is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation. Moreover, if the witness is the declarant, he may be examined on the statement. If the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement. Morgan, Basic Problems of Evidence 340-341 (1962).  The theory of Exception [paragraph] (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. 6 Wigmore § 1747, p. 135. Spontaneity is the key factor in each instance, though arrived at by somewhat different routes. ...**
>
> **With respect to the *time element,* Exception [paragraph] (1) recognizes that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable. Under Exception [paragraph] (2) the standard of measurement is the duration of the state of excitement. "How long can excitement prevail? Obviously there are no pat answers and the character of the transaction or event will largely determine the significance of the time factor." Slough, Spontaneous Statements and State of Mind, 46 Iowa L.Rev. 224, 243 (1961); McCormick § 272, p. 580. *Participation* by the declarant is not required: a non-participant may be moved to describe what he perceives, and one may be startled by an event in which he is not an actor. Slough, *supra*; McCormick, *supra*; 6 Wigmore § 1755; Annot. 78 A.L.R.2d 300.... *see Insurance Co. v. Mosely,* 75 U.S. (8 Wall.) 397, 19 L.Ed. 437 (1869); *Wheeler v. United States,* 93 U.S. App.D.C. 159, 211 F.2d 19 (1953), *cert. denied* 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140; *Wetherbee v. Safety Casualty Co.,* 219 F.2d 274 (5th Cir.1955); *Lampe v. United States,* 97 U.S.App.D.C. 160, 229 F.2d 43 (1956). Nevertheless, on occasion the only evidence may be the content of the statement itself, and rulings that it may be sufficient are described as "increasing," Slough,**

*supra* at 246, and as the "prevailing practice," McCormick § 272, p. 579. **Illustrative are *Armour & Co. v. Industrial Commission,* 78 Colo. 569, 243 P. 546 (1926); *Young v. Stewart,* 191 N.C. 297, 131 S.E. 735 (1926). Moreover, under Rule 104(a) the judge is not limited by the hearsay rule in passing upon preliminary questions of fact.**

Rules 803(5) provides:

> **"803(5) Recorded Recollection. A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge.  If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."**

The veracity of this exception for the pre-litigation evidence is far more reliable than the post-litigation self-serving Compliance Report forms.  The Advisory Committee Notes are again instructive; to wit:

> **A hearsay exception for recorded recollection is generally recognized and has been described as having "long been favored by the federal and practically all the state courts that have had occasion to decide the question." *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965), citing numerous cases and sustaining the exception against a claimed denial of the right of confrontation. Many additional cases are cited in Annot., 82 A.L.R.2d 473, 520. The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them. *Owens v. State,* 67 Md. 307, 316, 10 A. 210, 212 (1887).**

Rule 803(6) expressly provides:

> **Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.**

The Trial Exhibits clearly demonstrate the usage of email communications.

    7.   FRE 807 sets forth:

**(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804: (1) the statement is supported by sufficient guarantees of trustworthiness- after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.**

The Advisory Notes again set forth: "**Under the amendment, the court should proceed directly to a determination of whether the hearsay is supported by guarantees of trustworthiness. See Rule 104(a). As with any hearsay statement offered under an exception, the court's threshold finding that admissibility requirements are met merely *means that the jury may consider the statement and not that it must assume the statement to be true.***"  This rule "**was necessary to permit courts to admit evidence in exceptional circumstances where the evidence was necessary, highly probative, and carried a guarantee of trustworthiness equivalent to or superior to that which underlies the other recognized exceptions.**" *United States v. Renville,* 779 F.2d 430, 439 (8th Cir.1985).  Indeed, the jury can be instructed as set forth by the Advisory Notes.

8.    With so many applicable exceptions to this trustworthy and probative communication written by a party on critical issues, Exhibit A and Exhibit B are admissible, in the interests of justice.  *See, U.S. v. Lentz,* 282 F.Supp.2d 399, *aff'd* 58 Fed.Appx. 961, 2003 WL 253949 (E.D.VA, 2002).

WHEREFORE, PSG prays that the evidence be deemed admissible at trial.

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.  Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, – p.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

5

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF System on the date set forth below:

February 12, 2023

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
  VENTURES LAW GROUP, – p.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

6