**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

POM OF PENNSYLVANIA, LLC, t/d/b/a
PACE-O-MATIC, and SAVVY DOG
SYSTEMS, LLC,

      Plaintiffs,

      v.

PENNSYLVANIA SKILL GAMES, LLC,

      Defendant.

---

PENNSYLVANIA SKILL GAMES, LLC,

      Plaintiff,

      v.

PACE-O-MATIC, INC. and MIELE MAN-
UFACTURING, INC.

      Defendants.

---

CIVIL ACTION NUMBER:
2:18-cv-00722-PLD

The Hon. Patricia L. Dodge

**PENNSYLVANIA SKILL GAMES
OPPOSITION TO PRELIMINARY IN-
JUNCTION AND DECLARATORY RE-
LIEF**

**Procedural Posture**[1]

As an initial consideration, as a matter of law, Pennsylvania Skill Games respectfully moves this Court to strike off—or otherwise summarily deny—any motion practice seeking affirmative relief by Pace-O-Matic or Miele Manufacturing, neither of whom is a party entitled to seek affirmative relief in either of the consolidated cases. Moreover, the motion by the POM Parties is misnomered as a "Post-Trial" Motion, notwithstanding that the bifurcated trial in this matter is currently pending, incomplete, no judgment has been entered, and no trial on relief or damages has yet occurred.

---

[1] As of this date, no judgment has been entered. Nothing in this response is intended to be a waiver of Pennsylvania Skill Games' right to conduct post-judgment motion practice to the extent permitted by the Federal Rules of Civil Procedure. The content of this Brief in Opposition is limited by Order, dated March 21, 2023, ECF 352.

By Order of Court, dated November 22, 2022, ECF 251, this Honorable Court ordered bifurcation of trial in this matter.  At the time of the Order, both Pennsylvania Skill Games and the POM Parties had requested and defended legal and equitable relief, each claiming ownership of the term "PENNSYLVANIA SKILL."[2]

The trial duly began on February 13, 2023, with the liability phase ending February 24, 2023, by jury verdict finding for Savvy Dog Systems and POM of Pennsylvania as to ownership of the trademarks at issue, by ECF 332.  As of this date of filing, no judgment has been entered, and the trial on requested relief and any damages, or defending against the same, has not yet occurred.  The second phase of the trial has been scheduled by Order of Court, for May 23–24, 2023, ECF 355.

The jury also found, contrary to the plea of the POM Parties, and consistent with the position of Pennsylvania Skill Games, that the Equipment Purchase Agreement ("EPA") was effective through the verdict and as long as the POM Parties are in the market.[3]  Consistent with the related jury instruction, it is Pennsylvania Skill Games' position that the jury determined that the EPA was effective through the verdict and as long as the POM Parties are in the market. A verdict was reached only as to ownership of the mark.  Notwithstanding the verdict, destruction of the status quo, and the pendency of the question before this Court, the POM Parties have refused to continue to comply with the EPA, ECF 336.

---

2 The only party with a contract claim, POM of Pennsylvania, withdrew its breach of contract claim and with it waived any claim, including any compulsory claim or counterclaim as a matter of law.  Transcript February 22, 2023, P78:L1–5, P83:L8–13.

3 The POM Parties requested this verdict slip and consented to the instruction.  Transcript, February 22, 2023, P28:L21–P29:L1, by the Court, "**I have confirmed that the description of term, the legal instruction about term, comes directly from Pennsylvania case law. So I don't think there is any issue with that language including the unless clause because I believe there is at least an argument that the contract is perpetual as long as the POM Parties are in the market.**" *See also, id.,* P68:L23–P69:L1, contrary to Pennsylvania Skill Games' closing at P106:L13–20. The jury clearly made its factual determination: 21. Is the equipment purchase agreement still in effect today? __X__ Yes. ECF 332.

No hearing has occurred with regard to granting a preliminary injunction, and evidence at the first phase of the bifurcated trial was limited to liability.  The second phase of the trial for presentation and defenses of non-liability issues have been scheduled for May 23–24, 2023, ECF 354.  A ruling on whether the jury determined the term of the EPA is pending by Order, ECF 353. To date, neither party has been heard or fully heard on the issue of equitable relief, although the May 23rd trial is scheduled to occur next month.

**Elements Required for Injunction**

A party seeking a preliminary injunction must demonstrate that each of the following factors favors the requested relief: (1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest.  *Shire US, Inc. v. Barr Labs. Inc.,* 329 F.3d 348, 352 (3d Cir.2003). Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *AT & T v. Winback & Conserve Program, Inc.,* 42 F.3d 1421, 1426–27 (3d Cir.1994) (citation omitted). The moving party must produce evidence sufficient to demonstrate that all four factors favor preliminary relief before a court may issue an injunction. *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 192 (3d Cir.1990). When a movant seeks a preliminary injunction that is directed at not merely preserving the status quo but at providing mandatory relief, the burden on the moving party is "particularly heavy." *Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir.1980).

A preliminary injunction may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor.  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, at 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "This 'clear showing' requires

factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films,* 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (*citing Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984)).

The basic function of a preliminary injunction is to "preserve the status quo *ante litem* pending a determination of the action on the merits." L.*A. Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir. 1980).

### Argument

These consolidated cases were filed approximately four years ago, in 2018.  No request for a preliminary injunction was filed by Savvy Dog or POM of Pennsylvania until now, apparently seeking to preserve a "status quo" for approximately one month until the trial on the merits where an appropriate and complete record can be made other than for liability determinations.

The POM Parties' motion is out of order, being now stale in light of four years without constraining activity by seeking "preliminary" equitable relief, and also not ripe, in that the trial on the merits fully to adduce the record is scheduled by Order, ECF355, next month.

Although not yet a final judgment, ownership has been provisionally ruled upon by the jury verdict, but irreparable harm has not been established by necessary evidence for movant's burden. The POM Parties did not introduce any expert report that matches the usage to the brand to the claim for relief.  They did they produce any expert survey.  The did not produce any expert allocation of revenue attributable to the mark at issue in light of the game play in question. The evidence regarding ownership by liability is a different body of evidence than irreparable harm.

Critically important, the "status quo" requires this Court's assessment of the EPA, ECF 353, in terms of effectiveness and damages arising from the fact that the POM Parties have

purported to terminate the EPA, being evidence yet to be adduced.  Pennsylvania Skill Games is

not some rogue infringer out-of-the-blue, but it is a claimant (and until a non-appealable judgment

exists) to the mark at issue, having used a form of the mark prior to the existence of the EPA.  Trial

Exhibit 82.  Moreover, neither Pace-O-Matic nor Miele Manufacturing are not proper parties for

any ruling by an affirmative remedy regarding the EPA through these consolidated cases.

In these types of circumstances, "the entire course of conduct between a patent or trade-

mark owner and an accused infringer may create an implied license." *McCoy v. Mitsuboshi Cut-*

*lery, Inc.,* 67 F.3d 917, 920 (Fed.Cir.1995)  For example, simply put, Hoover cannot sell vacuum

cleaners bearing the mark through field operators and distributers without that downline having an

implied license to use the brand.  Indeed, the United States Supreme Court stated that:

> **Any language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action for a tort.**

*De Forest Radio Tel. & Tel. Co. v. United States,* 273 U.S. 236, 241, 47 S.Ct. 366, 71 L.Ed. 625

(1927). *See also ITOFCA, Inc. v. MegaTrans Logistics, Inc.,* 322 F.3d 928, 940 (7th Cir.2003) ("A

copyright owner can grant a nonexclusive license "orally, or may even be implied from con-

duct...In fact, consent given in the form of mere permission or lack of objection is also equivalent

to a nonexclusive license and is not required to be in writing."); *Doeblers' Pennsylvania Hybrids,*

*Inc. v. Doebler,* 442 F.3d 812, 824 (3d Cir.2006) ("Although it appears that there is no express

written license agreement between the parties, a trademark license can also be implied."); *Villa-*

*nova Univ. v. Villanova Alumni Educ. Found., Inc.,* 123 F.Supp.2d 293, 308 (E.D.Pa.2000) ("It is

irrelevant whether the parties thought of the arrangement at the time in terms of an implied license.

The test for whether or not an implied license existed is based solely on the objective conduct of

the parties."); *cf. Zeliinski v. Columbia 300, Inc.*, 335 f.3D 633, 638 (7th Cir. 2003) (vacating punitive damages award because "defendant reasonably believed it had an oral agreement").

It is uncontroverted that the parties were associated by mutual assent through the existence of the EPA, and there is no credible evidence that there was a *dispute* over the trademark until Pennsylvania Skill Games threatened a lawsuit through its counsel. Trial Exhibit 79. That is, until the circumstances by which this action was filed, there was nothing but continued mutual benefit through the relationship as it had been occurring. The issue arose when the exclusivity provision became an issue pursuant to the EPA with the brand being used by competitors of Pennsylvania Skill Games. Pennsylvania Skill Games trusts that this Court finds that the issues relating to the right of refusal, and that causation to initiate a lawsuit, were not frivolous and grounded notwithstanding the jury verdict.

Indeed, the EPA was signed in the name of "Pennsylvania Skill Games, LLC." Trial Exhibit 6. There is no evidence of a dispute over the name at this time. The EPA relationship that began on May 20, 2015, was expressly consensual by the EPA—with all parties profiting from the fills and game play—and the use of the marks by all parties was through the sale of software fills voluntarily by the POM Parties through its claimed termination post-verdict, which remains at issue by Order, ECF 353. Pennsylvaniaskillgames.com was registered in good faith long prior to the name dispute arising, March 2, 2016, Trial Exhibit 22. The domain name has the term "games" which matches its corporate trade name, which openly existed and was used in the EPA. When the POM Parties stopped selling hardware to Pennsylvania Skill Games after filing the consolidated lawsuits, Pennsylvania Skill Games mitigated by purchasing third party machines and used a name or formative that it believed to be its own. Testimony of Lou Miele, February 15, 2023, P192:L1–6.

This Court should note the distinction between: a) those games that Pennsylvania Skill Games was operating that were Pace-O-Matic games using the ownership-disputed "Bell Logo"; and b) the games that were the mitigation games placed after the date of the lawsuits as a result of the POM Parties refusing to sell additional hardware to Pennsylvania Skill Games. *Id.*

As to the former category, the activities by Pennsylvania Skill Games were by the fills made by the POM Parties for games properly branded and regarding which the POM Parties shared in the profit.  There has been nothing proved that indicates damage attributable to the usage by Pennsylvania Skill Games within this category (ownership claims are different).  As to the second category, the cause is by the contract dispute that survived summary judgment and regards hardware that Pennsylvania Skill Games could no longer purchase and was mitigating.

> **"Q. Are you providing fills to Pennsylvania Skill Games, LLC? A. Yes, sir. Q. To this day? A. Yes, sir. Q. So if they call and they want a fill today, you'll give them one? A. Yes, sir."**

Testimony of Lou Miele, February 15, 2023, P117:L19–P118:L1.  This is the testimony of Louis Miele at trial regarding Pace-O-Matic games, pursuant to all averred facts and the enforceability of the EPA, and notwithstanding his knowledge of Pennsylvania Skill Games third-party mitigation machines.  Moreover, Mr. Miele also testified that Pennsylvania Skill Games was the nth degree of a small player; to wit:

> **"Q. Do they buy very many fills? A. No, sir. Q. If you had a range of high to lowest performing operators in the Commonwealth of Pennsylvania, where would Pennsylvania Skill Games, LLC, fall? A. Scale of 1 to 10? Q. Yeah. A. Negative 10.**

Michael Pace testified in the Transcript, dated February 13, 2023, at P46:L18; P48:L22 that the mark was grounded as "**generic**" and there is no expert report to guide this Court as to the impact of such a minor player's use of the mark on a relatively small set of games.  Indeed, the POM Parties, without any survey or expert, introduced three fact witnesses none of whom could directly

attribute the reputation relating to the mark to Pace-O-Matic or Savvy Dog, and all of whom attributed the reputation with the mark to Miele Manufacturing,[4] who has no claim.[5]

Upon entry of the verdict, in good faith and without admission and with reservation of rights, Pennsylvania Skill Games has provisionally removed any designation of "Pennsylvania" and "Skill" from the third-party mitigation machines and also took down the website at pennsylvaniaskillgames.com.[6]

Apart from the timing and the lack of grounds by the POM Parties as set forth above contradicting the relief requested, Pennsylvania Skill Games asserts that the request for relief is overbroad.

To the extent that this Court would enter a preliminary order regarding maintaining status quo prior to the imminent trial and process to occur through the second phase of trial, it should concomitantly, as a matter of fair equity, enter an order that the EPA fills be continued until further order.

Indeed, any manner of order that generally stops the use by Pennsylvania Skill Games of the mark, it would be an indirect ruling on the current effectiveness of the EPA, because the benefit of the EPA implies the right to use the brand, as set forth above. *See, e.g.,* the POM Parties' Brief, ¶5.i–ii, iv, which contradicts the effectiveness of the EPA, iii–v. which would need to be qualified accordingly. Moreover, the POM Parties' request at ¶6 does not make any distinction between

---

4 "Q. Understood. Are you familiar with a brand called Pennsylvania Skill? A. Not per se. I mean, to me it's a skill game. We're in Pennsylvania, so it's a Pennsylvania skill game. Q. Understood." Testimony of Gulotta, February 16, 2023, P26:L22-25  "Q. And is there a particular company you associate this brand with? A. Yes, Pace-O-Matic or Miele." Testimony of McDanel, February 16, 2023, 38:13–15 "Q. Is there a company or companies that you associate that brand with? A. Absolutely. Q. Who? A. Miele Manufacturing. Q. Thank you." Testimony of Bigrigg, February 14, 2023, P22:L1–6.

5 "Q. Okay. Now, do you claim that you own the brand, Pennsylvania Skill Games, with the bell logo? A. No, sir. Q. Okay. So you are not an owner? A. No, sir." Testimony of Miele, February 15, 2023, PL192:L15–19.

6 Pennsylvania Skill Games intends to submit an Affidavit in support herewith.

the two categories of the usage of the brand, as set forth above, and seeks confidential information that is unnecessary and ungrounded.  The POM Parties assert more than 20,000 machines of which approximately only 20 are the "mitigation machines" by Pennsylvania Skill Games.[7]  The POM Parties are seeking information regarding locations that is not curative for any purpose and without any evidentiary grounds of the same, but only to harass Pennsylvania Skill Games, as they admit locations are secret,[8] which is itself tantamount to "naked licensing" in derogation of its own claimed injury and rights. *See, generally,* McCarthy on Trademarks, ¶18:48.

WHEREFORE, Pennsylvania Skill Games prays that the preliminary injunctive and equitable relief be DENIED at this time, asserting, as set forth above, that a one-month "preliminary injunction" after four years without it, is clearly unnecessary and ungrounded.  The POM Parties have failed to meet their burden for extraordinary relief or for relief being requested without protective bond.  Moreover, the request for relief has been mooted where it might otherwise be injurious, and in every other instance, equity is better served until the parties have a full and fair opportunity to be heard with introduction of evidence as scheduled in short order, next month.

---

[7] POM Parties Opening Statement, February 13, 2023, P4:L11; Testimony of Pace, February 14, 2023, P19:L22.

[8] "Q. Okay. So before we took the break, I think you had testified that you had never given an opportunity to Pennsylvania Skill Games as it relates to placing a terminal in locations, and I think your testimony was, Mr. Pace, that you don't control where operators place games; is that right? A. We do not control where operators place games. Q. Okay. And are you saying that you're unable to know where operators place games? A. Yeah, operators are very secretive about where they place their games, and generally, no one knows where they are. Q. Okay. But isn't it true that you can simply ask? Oh, I'm sure we could ask." Testimony of Miele, February 14, 2023, P48:L1-13.

April 3, 2023

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

## CERTIFICATE OF SERVICE

I hereby certify my belief that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF System on April 3, 2023.

Respectfully submitted,

s/Gregg R. Zegarelli
Gregg R. Zegarelli, Esq.
Pa. I.D. #52717

TECHNOLOGY & ENTREPRENEURIAL
 VENTURES LAW GROUP, P.C.
2585 Washington Road, Suite 134
Summerfield Commons Office Park
Pittsburgh, PA 15241-2565, USA
 v.412.833.0600 f.412.833.0601
mailroom.grz@zegarelli.com

11